RYAN Q. KEECH (SBN 280306)
Ryan.Keech@klgates.com
GABRIEL M. HUEY (SBN 291608)
Gabriel.Huey@klgates.com
KEVIN G. SULLIVAN (SBN 341596)
Kevin.Sullivan@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California  90067
Telephone: 310.553.5000
Fax No.:    310.553.5001

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BIRDDOG TECHNOLOGY LIMITED, an Australian company; and BIRDDOG AUSTRALIA PTY LTD, an Australian company,<br><br>            Plaintiffs,<br><br>      v.<br><br>2082 TECHNOLOGY, LLC DBA BOLIN TECHNOLOGY, a California limited liability company; HOI "KYLE" LO, an individual; and DOES 1 through 25, inclusive,<br><br>            Defendants. | Case No. 2:23-cv-09416<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT;**<br>**(2) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**(3) CONVERSION;**<br>**(4) VIOLATIONS OF PENAL CODE § 496, *ET SEQ.*;**<br>**(5) MONEY HAD AND RECEIVED;**<br>**(6) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>**(7) VIOLATIONS OF BUSINESS AND PROFESSIONS CODE § 17200.**<br><br>**DEMAND FOR JURY TRIAL** |

914304108.3

1

**COMPLAINT**

1    Plaintiffs BirdDog Technology Limited ("BirdDog Technology") and

2    BirdDog Australia Pty., Ltd. ("BirdDog Australia") (collectively, "BirdDog")

3    complain against Defendants 2082 Technology, LLC dba Bolin Technology

4    ("Bolin"), Mr. Hoi "Kyle" Lo ("Mr. Lo") and DOES 1-25 (collectively,

5    "Defendants") as follows:

6                              **NATURE OF THE ACTION**

7        1.    This case seeks to bring an end to a corporate scheme implicating brazen

8    theft on an international scale.

9        2.    Based in Australia, BirdDog is an internationally-renowned vendor of

10   streaming video technology.  BirdDog is known by clients the world over for its

11   ability to develop and manufacture high quality hardware and software solutions that

12   increase the quality, speed and flexibility of video that can be delivered over existing

13   network infrastructure.  Customers whose businesses and organizations depend on

14   the immediate and reliable distribution of high-quality video content have come to

15   know and trust BirdDog for its expertise in that regard, specifically relying on

16   BirdDog for its ability to timely deliver precision equipment - altogether amounting

17   to economic relationships annually worth many millions of dollars.

18       3.    Enter Bolin.  Bolin is a Southern California-based manufacturer and

19   distributor of video cameras. Some years ago, Bolin and Mr. Lo realized that Bolin

20   needed to expand its operations in order to make more money and compete in the

21   marketplace, and quickly so.  It was around the same time that Bolin, Mr. Lo and

22   DOES 1-25 became aware of BirdDog's runaway success in the video distribution

23   marketplace and sought then to grab a piece for themselves.

24       4.    And it was thus that, working initially and primarily through Mr. Lo,

25   Bolin first approached BirdDog executives at industry trade shows and elsewhere,

26   developing detailed knowledge of BirdDog's operations and making numerous oral

27   and written representations pitching Bolin's capability to fulfill BirdDog's camera

28   manufacturing needs.  Bolin and Mr. Lo specifically told BirdDog that Bolin was an

OEM specialist that had the present intent and capability to manufacture cameras for BirdDog pursuant to BirdDog's precise specifications. Relying on the truth of those representations, BirdDog agreed to engage Bolin and started an economic relationship that would eventually result in Bolin becoming BirdDog's primary supplier of camera technology.

5.     But it became clear in 2023 that the reality was and is that Bolin and Mr. Lo never had the present intent or the capability to manufacture cameras for BirdDog pursuant to those specifications. Nor was Bolin content with becoming BirdDog's primary supplier of camera technology. Instead, or so it has ultimately become clear, Bolin wanted to **become** BirdDog, convince BirdDog to entrust it with its funds and then hold those funds to apply pressure on BirdDog while simultaneously stealing BirdDog's clients and economic relationships for itself.

6.     Seeking to overcome any obstacles to the success of this scheme, Bolin and Mr. Lo first objected to BirdDog's decision to become a public company. Then, Bolin and Mr. Lo unsuccessfully tried to convince BirdDog to agree to being acquired by Bolin. Ultimately, Bolin resorted to brazen and outright theft: in 2023, as Bolin and Mr. Lo feigned insult at imagined slights, Bolin and Mr. Lo reacted to their inability to seize control of BirdDog by placing a "hard sharp stop" on production of **all** BirdDog products while unlawfully holding and refusing to return more than **$3 million** in BirdDog funds paid in order to secure production pursuant to the parties' agreements and Bolin's obligations. Their apparent and unlawful hope was that Bolin's and Mr. Lo's brazen theft of BirdDog funds and refusal to deliver BirdDog cameras would cause BirdDog's global customer base to have second thoughts about following through on their contracts and thus cause them to cease doing business with BirdDog and – hopefully, in their minds – agree to do business with Bolin and Mr. Lo.

7.     None of what Bolin or Mr. Lo has done is proper or lawful. Because Bolin's, Mr. Lo's and DOES 1-25's theft of BirdDog funds continues unabated, this

1   action has been necessitated to restore BirdDog's rights and obtain the repayment of
2   its money.

3                                    **PARTIES**

4       8.   BirdDog Technology is a corporate, publicly listed entity organized and
5   existing under the laws of Australia with its principal place of business in Australia.

6       9.   BirdDog Australia is a corporate entity organized and existing under the
7   laws of Australia with its principal place of business in Australia.   BirdDog
8   Technology is the parent of BirdDog Australia.

9       10.  Bolin Technology is a California limited liability company with its
10  principal place of business in Brea, California.   BirdDog is informed and believes,
11  and thereupon alleges, that at all relevant times, Bolin Technology's members were
12  and remain citizens of California and include Mr. Lo.

13      11.  Mr. Lo is an individual who at all relevant times resided in the County
14  of Los Angeles, California.   Mr. Lo is the Chief Executive Officer of Bolin
15  Technology.

16      12.  The true names and capacities, whether individual, corporate, associate,
17  or otherwise, of the defendants named herein as DOES 1-25, inclusive, are unknown
18  to BirdDog, who therefore sues those defendants by such fictitious names.   BirdDog
19  is informed and believes, and thereupon alleges, that each of the defendants sued
20  herein as DOES 1-25, inclusive are and were the directors, officers, agents,
21  employees, parents or subsidiaries of Bolin and Mr. Lo, are legally responsible for
22  the events and occurrences herein referred to and proximately caused injuries and
23  damages to BirdDog as herein alleged.   BirdDog will seek to amend its complaint to
24  allege the true names and capacities of such defendants when ascertained.

25      13.  At all relevant times, each of the Defendants was acting as an agent,
26  servant, employee or representative of all other Defendants, and, in so doing the
27  things alleged in this Complaint, was acting within the course and scope of their
28  agency, service, employment, or joint venture.

**JURISDICTION AND VENUE**

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), because there is complete diversity between BirdDog and Defendants and because the amount in controversy between BirdDog and Defendants exceeds the sum of $75,000.

15.     Venue is proper in the Central District of California under 28 U.S.C. § 1391(a) in that one or more defendants reside in this judicial district.  Venue is also proper under 28 U.S.C. §1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to these claims occurred.

**GENERAL ALLEGATIONS**

**A.     BirdDog's Business and Valuable Customer Relationships**

16.     In today's live-streamed world, what was once the province of broadcast television has now become a broadly available, increasingly democratized commodity.  Advances in internet capacity, combined with recent events like the COVID-19 pandemic, have resulted in a veritable explosion of global demand for precision streaming video technology, including pan, tilt and zoom ("PTZ") robotic video cameras that allow an operator to control the camera remotely.

17.     On a worldwide basis, numerous organizations ranging from churches, to political parties, to educational institutions, to sports, to governments and corporations have all come to depend on the availability of streaming video technology in order to support their business and other activities.

18.     BirdDog – a leading Australian technology company – has been well-placed to capitalize on those market forces.  For years, BirdDog has invested time and resources in developing its reputation as a market-leading provider of HD and 4K hardware and software solutions that increase the quality, speed and flexibility of video that can be delivered over existing network infrastructure.  Through its camera portfolio, BirdDog has established itself as one of the primary global leaders in PTZ technology, with customer relationships with global businesses from the broadcast

914304108.3

**COMPLAINT**

industry, to major league sports, to leaders in social media and government bodies amounting to millions of dollars in revenue every year.  Representative examples of BirdDog's industry-leading PTZ cameras are below.

 

19.     Safeguarding the integrity of its products and protecting its intellectual property and customer relationships in the global marketplace require BirdDog to enforce its suppliers' compliance with precise manufacturing requirements, the timeliness, quality and integrity of which are critical to maintaining BirdDog's ability to conduct its business.

**B.     Bolin Gains BirdDog's Trust and Becomes BirdDog's Primary Camera Supplier**

20.     With roots stretching as far back as 2002, Bolin is a California-based manufacturer and distributor of video cameras.  Bolin, too, saw advantages in the growing market for PTZ and other video streaming technology.  But in part because it lacked its own reputation for delivering high-quality product in the marketplace, Bolin devoted much of its business to manufacturing cameras for others.  It was in this context that it initially approached BirdDog to gain BirdDog's trust, secure favored status as BirdDog's primary supplier of camera equipment and thus obtain a share of BirdDog's commercial success.

21.     In or about 2018, Mr. Lo - working on behalf of Bolin - approached BirdDog executives at a trade show in Las Vegas.  In this and immediately subsequent conversations, BirdDog discussed with and informed Mr. Lo and Bolin about its business, including its developing and evolving camera manufacturing

needs, its customers and the importance of compliance with precise manufacturing and delivery requirements to its business.

22.    In response, Mr. Lo and Bolin underlined, in sum and effect, that Bolin was an OEM supplier that had "over 15 years of experience" delivering "the latest in high definition imaging, precision engineered controls and performance design" to "all levels of relationships from OEM/ODM, distribution, reseller, government and commercial accounts," and that Mr. Lo and Bolin had the present intent and the capability to fulfill BirdDog's precise manufacturing needs.  BirdDog trusted Mr. Lo's and Bolin's representations and, as a result, entered into an agreement with Bolin that would eventually make Bolin BirdDog's principal camera manufacturer.

23.    Initially, Bolin met BirdDog's manufacturing requirements.  But beginning in or about 2023, Mr. Lo, Bolin and DOES 1-25 began to work together to parlay BirdDog's trust and confidence into a wrongful scheme to *become* BirdDog - inducing BirdDog to enter into a related series of six transactions that Bolin had no intention of performing as agreed.  To date, BirdDog has paid millions of dollars to Bolin and Mr. Lo with respect to each of these six related transactions, with Bolin and Mr. Lo refusing to produce and yet holding on to those funds in an effort to obtain control of BirdDog and take over its customer relationships - causing BirdDog to lose even more in missed sales and lost profits.

24.    ***The June 2021 Agreement***.  In or about June 2021, Mr. Lo and Bolin represented to BirdDog that Bolin had the present intent and current manufacturing capability to produce and timely deliver 400 units of BirdDog's White P400 cameras.  BirdDog and Bolin finalized this agreement on June 30, 2021 (the "June 2021 Agreement").  As required by the agreement, and in reliance on Bolin's and Mr. Lo's representations, BirdDog paid Bolin 30% of the total contract price to secure Bolin's timely production and delivery of these cameras.

25.    ***The September 2021 Agreement***.  In or about September 2021, Mr. Lo and Bolin represented to BirdDog that Bolin had the present intent and current

manufacturing capability to produce and timely deliver 250 units of BirdDog's A200 second generation cameras; 120 units of BirdDog's A300 second generation cameras; 1,440 units of BirdDog's Black P120 cameras; 260 units of BirdDog's White P120 cameras; 720 units of BirdDog's Black P110 cameras; 270 units of BirdDog's White P110 cameras; 1,320 units of BirdDog's Black P400 cameras; 780 units of BirdDog's Black P4K cameras; 236 units of BirdDog's White P4K cameras; 1,400 units of BirdDog's PF120 cameras; and 2,360 units of BirdDog's PTZKEY cameras.  BirdDog and Bolin finalized this agreement on September 23, 2021 (the "September 2021 Agreement").  As required by this agreement, and in reliance on Bolin's and Mr. Lo's representations, BirdDog paid Bolin 30% of the total contract price to secure Bolin's timely production and delivery of these cameras.

26.  ***The August 2022 Agreement***.  In or about August 2022, Mr. Lo and Bolin represented to BirdDog that Bolin had the present intent and current manufacturing capability to produce and timely deliver 3,000 units of BirdDog's Black P240 cameras; and 1,000 units of BirdDog's White P240 cameras.  BirdDog and Bolin finalized this agreement on August 5, 2022 (the "August 2022 Agreement").  As required by the agreement, and in reliance on Bolin's and Mr. Lo's representations, BirdDog paid Bolin 30% of the total contract price to secure Bolin's timely production and delivery of these cameras.

27.  ***The October 2022 Agreement***.  In or about October 2022, Mr. Lo and Bolin represented to BirdDog that Bolin had the present intent and current manufacturing capability to produce and timely deliver 200 units of BirdDog's White P120 cameras.  BirdDog and Bolin finalized this agreement on October 21, 2022 (the "October 2022 Agreement").  As required by the agreement, and in reliance on Bolin's and Mr. Lo's representations, BirdDog paid Bolin 30% of the total contract price to secure Bolin's timely production and delivery of these cameras.

28.  ***The March 2023 Agreement***.  In or about March 2023, Mr. Lo and Bolin represented to BirdDog that Bolin had the present intent and current

manufacturing capability to produce and timely deliver 750 units of BirdDog's Ocean White U120 cameras; 250 units of BirdDog's White U120 cameras; and 1,000 units of BirdDog's Black X120 cameras.  BirdDog and Bolin finalized this agreement on March 31, 2023 (the "March 2023 Agreement").  As required by the agreement, and in reliance on Bolin's and Mr. Lo's representations, BirdDog paid Bolin 50% of the total contract price to secure Bolin's timely production and delivery of these cameras.

29.   ***The May 2023 Agreement***.  In or about May 2023, Mr. Lo and Bolin represented to BirdDog that Bolin had the present intent and current manufacturing capability to produce and timely deliver 1,000 units of BirdDog's Black X120 cameras.  BirdDog and Bolin finalized this agreement on May 17, 2023 (the "May 2023 Agreement").  As required by the agreement, and in reliance on Bolin's and Mr. Lo's representations, BirdDog paid Bolin 30% of the total contract price to secure Bolin's timely production and delivery of these cameras.

**C.   Frustrated By Their Inability to Obtain Control of BirdDog, Mr. Lo Causes Bolin to Pressure BirdDog By Converting BirdDog Funds and Repudiating Bolin's Obligations**

30.   Despite Bolin's repeated representations, Bolin failed to timely perform its obligations under these six transactions.  Worse, by the summer of 2023, it would become clear that Mr. Lo and Bolin's true and undisclosed intent was to seize control of BirdDog and that, in the process, they never had any intent of complying with their obligations under these related transactions - all of which they would ultimately repudiate.

31.   In or about October 2021, BirdDog advised Bolin of its forthcoming listing as a publicly traded company on the Australian Stock Exchange.  In BirdDog's eyes, this was a standard notification to provide to its principal camera supplier: BirdDog had anticipated that Mr. Lo and Bolin would be pleased with the success of one of their principal customers.  Surprisingly (to BirdDog), this was not the case.  Mr. Lo and Bolin were displeased with this development.  Bolin and Mr. Lo objected when BirdDog's public offering was finalized in December 2021, argued (without

any basis) that they should have been provided notice more than six months before, and expressed their preference that BirdDog "co-list" with Bolin.

32.    Consistent with its obligations, BirdDog declined Bolin's 2021 entreaties, though still had no reason to think that Bolin had any intent of doing anything untoward with these transactions or their deposits.

33.    By the summer of 2023, that all changed: it became increasingly and disturbingly clear that Bolin had decided to employ more aggressive measures to obtain total control of BirdDog.

34.    Specifically, on July 4, 2023, Mr. Lo demanded an immediate meeting in Australia with BirdDog executives.  That meeting took place in Melbourne, Australia on July 12, 2023.  During that meeting, Mr. Lo and Bolin and others communicated to BirdDog - falsely - that BirdDog was "failing," "in trouble" and in "financial distress."  Mr. Lo's and Bolin's "solution" to these problems was a ***hostile Bolin takeover*** - or, put differently, for ***Bolin to become BirdDog***.  To formalize this improper demand, Mr. Lo presented "options" to BirdDog that included (1) a merger; (2) a full takeover by Bolin of BirdDog's camera business; (3) stopping manufacture of BirdDog's cameras; or (4) vague threats of competition while manufacturing BirdDog's cameras.

35.    BirdDog and its executives were stunned: not only did Bolin and its executives have no apparent plan for any of the "options" they presented, but at the moment of the July 12, 2023 meeting, Bolin had not delivered ***9,670*** of the cameras that BirdDog had ordered and for which its customers were waiting and was holding ***$3,060,883.10*** of BirdDog funds.  Still, BirdDog refused Bolin's demands.

36.    The nature and direction of Mr. Lo's and Bolin's scheme to use BirdDog's funds and repudiation of Bolin's obligations to squeeze BirdDog into submitting to Bolin's demands would unfortunately become clearer.  On July 15, 2023, Mr. Lo again met with BirdDog executives in Melbourne.  He reiterated Bolin's "options" for BirdDog - now, additionally, demanding that he would be CEO

- 10 -

**COMPLAINT**

of BirdDog - communicated his dim view of BirdDog's executives (including that he did not like, value or respect BirdDog's chairman) and refused to consider any alternatives, including that BirdDog absorb Bolin.  That same day, Mr. Lo advised BirdDog's chief executive via WeChat that he had 24 hours to agree to Bolin's demands.  When BirdDog did not immediately accede, Mr. Lo advised that "all options" were "off the table."

37.    In September 2023, BirdDog tried one more time to ensure Bolin's compliance with its obligations - asking again for delivery of the products that it had ordered in accordance with the terms of the six transactions or for a refund of the outstanding prepayments.  Bolin refused, with Mr. Lo admitting that Bolin was repudiating its obligations under these transactions and that - apparently until BirdDog acceded to Bolin's demands and permitted him to take over the company - there would be a "hard sharp stop" on all BirdDog production.

38.    Mr. Lo's "hard sharp stop" has not been reversed.  To the contrary: Bolin has repudiated its obligations under the parties' arrangement by confirming now that it will not produce or deliver a *single* additional camera for BirdDog according to the terms of the parties' existing arrangements, and that it will *also* refuse to return *any* of BirdDog's money.

39.    Bolin's scheme, which is interfering significantly with BirdDog's relationships with its customers, is thus coming to a head: BirdDog has been unable to fulfill orders and ship products because of Bolin's actions - which, BirdDog is informed and believes, has caused some of its customers to purchase the products of its competitors.  Bolin's and Mr. Lo's improper and unlawful actions have not only cost lost revenue and profit but have forced BirdDog to scramble to seek performance elsewhere and incur additional costs in doing so.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT
### (Against Defendant Bolin)

40.     BirdDog incorporates and realleges the above paragraphs of this Complaint as if fully set forth herein.

41.     The June 2021 Agreement is an enforceable oral and written contract between BirdDog, on the one hand, and Bolin, on the other hand, whereby Bolin agreed to promptly produce and timely deliver 400 units of BirdDog's White P400 cameras in exchange for BirdDog's prepayment of thirty percent (30%) of the total contract price to be utilized for purposes exclusively related to the timely production and delivery under the agreement.

42.     The September 2021 Agreement is an enforceable oral and written contract between BirdDog, on the one hand, and Bolin, on the other hand, whereby Bolin agreed to promptly produce and timely deliver 250 units of BirdDog's A200 second generation cameras; 120 units of BirdDog's A300 second generation cameras; 1,440 units of BirdDog's Black P120 cameras; 260 units of BirdDog's White P120 cameras; 720 units of BirdDog's Black P110 cameras; 270 units of BirdDog's White P110 cameras; 1,320 units of BirdDog's Black P400 cameras; 780 units of BirdDog's Black P4K cameras; 236 units of BirdDog's White P4K cameras; 1,400 units of BirdDog's PF120 cameras; and 2,360 units of BirdDog's PTZKEY cameras in exchange for BirdDog's prepayment of thirty percent (30%) of the total contract price to be utilized for purposes exclusively related to the timely production and delivery under the agreement.

43.     The August 2022 Agreement is an enforceable oral and written contract between BirdDog, on the one hand, and Bolin, on the other hand, whereby Bolin agreed to promptly produce and timely deliver 3,000 units of BirdDog's Black P240 cameras; and 1,000 units of BirdDog's White P240 cameras in exchange for BirdDog's prepayment of thirty percent (30%) of the total contract price to be utilized for purposes exclusively related to the timely production and delivery under the agreement.

44.    The October 2022 Agreement is an enforceable oral and written contract between BirdDog, on the one hand, and Bolin, on the other hand, whereby Bolin agreed to promptly produce and timely deliver 200 units of BirdDog's White P120 cameras in exchange for BirdDog's prepayment of thirty percent (30%) of the total contract price to be utilized for purposes exclusively related to the timely production and delivery under the agreement.

45.    The March 2023 Agreement is an enforceable oral and written contract between BirdDog, on the one hand, and Bolin, on the other hand, whereby Bolin agreed to promptly produce and timely deliver 750 units of BirdDog's Ocean White U120 cameras; 250 units of BirdDog's White U120 cameras; and 1,000 units of BirdDog's Black X120 cameras in exchange for BirdDog's prepayment of fifty percent (50%) of the total contract price to be utilized for purposes exclusively related to the timely production and delivery under the agreement.

46.    The May 2023 Agreement is an enforceable oral and written contract between BirdDog, on the one hand, and Bolin, on the other hand, whereby Bolin agreed to promptly produce and timely deliver 1,000 units of BirdDog's Black X120 cameras in exchange for BirdDog's prepayment of thirty percent (30%) of the total contract price to be utilized for purposes exclusively related to the timely production and delivery under the agreement.

47.    BirdDog has fully performed all conditions, covenants and promises required to be performed on its part in accordance with the June 2021 Agreement, the September 2021 Agreement, the August 2022 Agreement, the October 2022 Agreement, the March 2023 Agreement and the May 2023 Agreement, including through the payment of all required prepayments and otherwise, except to the extent that its performance was waived, excused or prevented by Bolin.

48.    Bolin materially breached the June 2021 Agreement by, *inter alia*, failing to timely produce and deliver 48 units, failing to meet promised delivery dates,

causing unnecessary and unreasonable delay in producing and delivering units, and failing to provide units of acceptable and/or merchantable quality.

49.     Bolin materially breached the September 2021 Agreement by, *inter alia*, failing to timely produce and deliver 37 A200 second generation cameras; 120 A300 second generation cameras; 318 Black P120 cameras; 203 Black P110 cameras; 127 White P110 cameras; 580 Black P400 cameras; 723 Black P4K cameras; 206 White P4K cameras; 1,090 PF120 cameras; and 1,504 PTZKEY cameras, failing to meet promised delivery dates, causing unnecessary and unreasonable delay in producing and delivering units, and failing to provide units of acceptable and/or merchantable quality.

50.     Bolin materially breached the August 2022 Agreement by, *inter alia*, failing to timely produce and deliver 1,234 Black P240 cameras and 469 White P240 cameras, failing to meet promised delivery dates, causing unnecessary and unreasonable delay in producing and delivering units, and failing to provide units of acceptable and/or merchantable quality.

51.     Bolin materially breached the October 2022 Agreement by, *inter alia*, failing to timely produce and deliver 27 White P120 cameras, failing to meet promised delivery dates, causing unnecessary and unreasonable delay in producing and delivering units, and failing to provide units of acceptable and/or merchantable quality.

52.     Bolin materially breached the March 2023 Agreement by, *inter alia*, failing to timely produce and deliver 745 Ocean White U120 cameras, 250 White U120 cameras, and 989 X120 cameras, failing to meet promised delivery dates, causing unnecessary and unreasonable delay in producing and delivering units, and failing to provide units of acceptable and/or merchantable quality.

53.     Bolin materially breached the May 2023 Agreement by, *inter alia*, failing to timely produce and deliver 1,000 X120 cameras, failing to meet promised delivery dates, causing unnecessary and unreasonable delay in producing and

- 14 -
**COMPLAINT**

delivering units, and failing to provide units of acceptable and/or merchantable quality.

54. Bolin has repudiated its remaining obligations under the June 2021 Agreement, the September 2021 Agreement, the August 2022 Agreement, the October 2022 Agreement, the March 2023 Agreement and the May 2023 Agreement, and has refused to return to BirdDog any of the remaining $3,060,883.10 it is now unlawfully withholding.

55. As an actual and proximate result of the foregoing breaches of contract, BirdDog has suffered, and will continue to suffer, damages, including direct, consequential, and incidental losses and lost profits, in an amount to be proved at trial in excess of $3,060,883.10.

## SECOND CLAIM FOR RELIEF

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Defendant Bolin)

56. BirdDog incorporates and realleges the above paragraphs of this Complaint as if fully set forth herein.

57. The June 2021 Agreement, the September 2021 Agreement, the August 2022 Agreement, the October 2022 Agreement, the March 2023 Agreement and the May 2023 Agreement each contain an implied covenant of good faith and fair dealing which provides that the parties would deal with each other in good faith and would not engage in conduct or exercise discretion in a way that would deprive the other party of the benefits of each of the agreements.

58. Bolin breached the implied covenants of good faith and fair dealing by, *inter alia*, withholding performance and holding BirdDog's funds in order to force acquiescence to Bolin obtaining control of BirdDog, by knowingly and intentionally frustrating and unlawfully interfering with BirdDog's right to receive benefits under these agreements, repudiating their obligations under these agreements, refusing to

return to BirdDog any of the consideration paid, using the consideration paid for purposes other than those associated with production and delivery under the agreements, asserting unreasonable demands inconsistent with the terms of the agreements to BirdDog's detriment, and by knowingly, intentionally and in bad faith inducing BirdDog to agree to pay millions of dollars to Bolin when Bolin never intended to provide what BirdDog was entitled to receive in exchange.

59.     As an actual and proximate result of the foregoing breaches of contract, BirdDog has suffered, and will continue to suffer, damages, including direct, consequential, and incidental losses and lost profits, in an amount to be proved at trial in excess of $3,060,883.10.

## **THIRD CLAIM FOR RELIEF**

## **CONVERSION**

### **(Against All Defendants)**

60.     BirdDog incorporates and realleges the above paragraphs of this Complaint as if fully set forth herein.

61.     By the conduct alleged herein, Bolin, Mr. Lo and DOES 1-25 wrongfully misappropriated and unlawfully diverted a specific sum of BirdDog's funds capable of identification in the amount of $3,060,883.10 for their own personal use and in breach of their obligations to BirdDog.  BirdDog did not consent to Bolin's, Mr. Lo's and DOES 1-25's improper misappropriation, diversion, use or retention of its funds.

62.     As an actual and proximate result of Bolin's, Mr. Lo's and DOES 1-25's conversion, BirdDog has suffered damages in the amount of $3,060,883.10, together with interest thereon.

63.     The aforementioned conduct was despicable, wanton, oppressive, and malicious, and was performed with willful and conscious disregard of BirdDog's rights and with the intent to deprive BirdDog of those rights.  Accordingly, BirdDog

914304108.3

**COMPLAINT**

is entitled to an award of punitive and exemplary damages in an amount to be proved at trial.

### FOURTH CLAIM FOR RELIEF

### VIOLATIONS OF CAL. PENAL CODE § 496, *ET SEQ*

### (Against All Defendants)

64.    BirdDog incorporates and realleges the above paragraphs of this Complaint as if fully set forth herein.

65.    California Penal Code Section 496(a) provides, "Every person…who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing that the property to be stolen or obtained, shall be punished by imprisonment..." CAL. PENAL CODE § 496.  It also provides that "[a] principal in the actual theft of the property may be convicted pursuant to this section." *Id.*

66.    California Penal Code Section 496(c) provides that "[a]ny person who has been injured by a violation of subdivision (a)…may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." *Id.*

67.    Bolin, Mr. Lo and DOES 1-25 knowingly and intentionally received, concealed or withheld stolen property from BirdDog or aided in receiving, concealing or withholding stolen property, and otherwise unlawfully maintained ownership and dominion over BirdDog's property by theft, including by stealing and continuing to withhold $3,060,883.10 in BirdDog funds.

68.    As a proximate result of the foregoing, BirdDog has been damaged in an amount to be proved at trial that is not less than $3,060,883.10 and BirdDog is entitled to recover three times that amount, plus its reasonable attorney's fees.

### FIFTH CLAIM FOR RELIEF

### MONEY HAD AND RECEIVED

### (Against All Defendants)

914304108.3

- 17 -
**COMPLAINT**

69.     BirdDog incorporates and realleges the above paragraphs of this Complaint as if fully set forth herein.

70.     As set forth herein, BirdDog paid specific and identifiable sums to Bolin, Mr. Lo and DOES 1-25 under the mistaken belief that Bolin, Mr. Lo and DOES 1-25 had the present intent and current capability to comply or cause compliance with the June 2021 Agreement, the September 2021 Agreement, the August 2022 Agreement, the October 2022 Agreement, the March 2023 Agreement and the May 2023 Agreement.  There have been material breaches and failures of consideration under the June 2021 Agreement, the September 2021 Agreement, the August 2022 Agreement, the October 2022 Agreement, the March 2023 Agreement and the May 2023 Agreement, but Bolin, Mr. Lo and DOES 1-25 have refused to return any of these sums to BirdDog.  As a result, Bolin, Mr. Lo and DOES 1-25 have become indebted to BirdDog for the amounts improperly withheld, together with interest thereon.

71.     There being no justification and it being inequitable to allow Bolin, Mr. Lo and DOES 1-25 to retain and be enriched by these sums, restitution should be made and the sums paid by BirdDog should be immediately disgorged by Bolin, Mr. Lo and DOES 1-25 and paid to BirdDog.

72.     As an actual and proximate result of Bolin's, Mr. Lo's and DOES 1-25's conduct, BirdDog has suffered damages in the amount of $3,060,883.10, together with interest thereon.

## SIXTH CLAIM FOR RELIEF
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Against All Defendants)

73.     BirdDog incorporates and realleges the above paragraphs of this Complaint as if fully set forth herein.

74. BirdDog's economic relationships with its customers provide for significant prospective economic benefits for BirdDog amounting to millions of dollars annually.

75. Bolin, Mr. Lo and DOES 1-25 knew of BirdDog's economic relationships with its customers and that those economic relationships provide for significant prospective economic benefits for BirdDog amounting to millions of dollars annually.

76. Bolin, Mr. Lo and DOES 1-25 committed intentional and independently wrongful acts that were designed, and which they knew, were substantially likely to result in a disruption of BirdDog's business and to interfere with BirdDog's economic relationships with its customers. These actions included, *inter alia*, Bolin's, Mr. Lo's and DOES 1-25's intentional withholding and interference with performance under the June 2021 Agreement, the September 2021 Agreement, the August 2022 Agreement, the October 2022 Agreement, the March 2023 Agreement and the May 2023 Agreement, misrepresentations regarding their ability and intention to provide performance under those agreements and camera supply to BirdDog, using nonperformance under those agreements and receipt and withholding of stolen funds in violation of law.

77. But for the conduct of Bolin, Mr. Lo and DOES 1-25, BirdDog's economic relationships with its customers would have resulted in additional economic benefits to BirdDog.

78. The aforementioned conduct was despicable, wanton, oppressive and malicious and was performed with willful and conscious disregard of BirdDog's rights and with the intent to deprive BirdDog of those rights. Accordingly, BirdDog is entitled to an award of punitive and exemplary damages in an amount to be proved at trial.

## SEVENTH CLAIM FOR RELIEF

## VIOLATIONS OF BUS. & PROF. CODE § 17200, *ET SEQ*

**(Against All Defendants)**

79.     BirdDog incorporates and realleges the above paragraphs of this Complaint as if fully set forth herein.

80.     The acts of Bolin, Mr. Lo and DOES 1-25 as herein alleged constitute unlawful, unfair and deceptive business practices in violation of California Business & Professions Code § 17200, *et seq*., including without limitation because they violate federal and state statutes prohibiting deceptive and fraudulent activity, because they violate Cal. Penal Code § 496, and because they involve the use of misrepresentations in order to induce BirdDog to pay money to which Bolin, Mr. Lo and DOES 1-25 are not entitled.

81.     The unlawful, unfair and deceptive business practices of Bolin, Mr. Lo and DOES 1-25 as herein alleged constitute unfair competition and are an ongoing and continuing threat to BirdDog's business.  As a direct and proximate result of these acts, Bolin, Mr. Lo and DOES 1-25 have been unjustly enriched, and in the future will continue to be unjustly enriched by, among other things, their use of BirdDog's funds for improper purposes, inducing BirdDog to pay money and enter into what Bolin, Mr. Lo and DOES 1-25 considered to be bogus agreements, knowingly withholding and intentionally failing to deliver products under agreements, and repudiating legal obligations without returning consideration paid.

82.     BirdDog has been damaged in its money and property by Bolin's, Mr. Lo's and DOES 1-25's unlawful, unfair and deceptive conduct as alleged herein, and will continue to be damaged by their conduct until it is enjoined.  BirdDog has been irreparably injured by such unlawful, unfair and deceptive conduct.

83.     The Court should find that Defendants' actions violate California Business & Professions Code § 17200, *et seq*. and order such restitution, disgorgement and injunctive relief permitted by law, including without limitation a preliminary injunction and permanent injunction.

914304108.3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **PRAYER FOR RELIEF**

WHEREFORE, BirdDog prays for judgment against Defendants as follows:

A.    That BirdDog recover damages, including direct, consequential, and incidental losses and lost profits, in an amount to be proved at trial in excess of $3,060,883.10;

B.    That Defendants be ordered to provide full restitution to BirdDog;

C.    On its Fourth Claim for Relief, that BirdDog be awarded three times the amount of actual damages;

D.    That Defendants be ordered to pay BirdDog's reasonable attorney's fees and costs of suit incurred herein;

E.    That Defendants be ordered to pay BirdDog pre- and post-judgment interest on all damages, monetary or otherwise;

F.    That Defendants be ordered to pay BirdDog punitive and exemplary damages in an amount according to proof in an amount sufficient to deter each Defendant from engaging in similar conduct against BirdDog or others and to deter Defendants, and each of them, from engaging in similar malicious, offensive and bad faith conduct in the future;

G.    That BirdDog be awarded an amount equal to Defendants' unjust enrichment to the extent that such unjust enrichment is not reflected in the award of damages, and that a constructive trust in favor of BirdDog be imposed over Defendants' ill-gotten gains and profits;

H.    For such equitable relief as is requested above, including without limitation a writ of attachment, seizure and permanent injunctive relief; and

I.    That the Court award BirdDog such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

BirdDog demands a trial by jury on all issues so triable.

1

2                               **K&L GATES LLP**

3 Dated:  November 7, 2023      By:

4                                       Ryan Q. Keech

5                                       Gabriel M. Huey

6                                       Kevin G. Sullivan

7                                       *Attorneys for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28