| | |
|---|---|
| 1 | RYAN Q. KEECH (SBN 280306) |
| | Ryan.Keech@klgates.com |
| 2 | GABRIEL M. HUEY (SBN 291608) |
| | Gabriel.Huey@klgates.com |
| 3 | KEVIN G. SULLIVAN (SBN 341596) |
| | Kevin.Sullivan@klgates.com |
| 4 | K&L GATES LLP |
| | 10100 Santa Monica Boulevard, 8th Floor |
| 5 | Los Angeles, California  90067 |
| | Telephone: 310.553.5000 |
| 6 | Fax No.:    310.553.5001 |
| 7 | Attorneys for Plaintiffs |
| | BIRDDOG TECHNOLOGY LIMITED |
| 8 | BIRDDOG AUSTRALIA PTY LTD |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BIRDDOG TECHNOLOGY LIMITED, an Australian company; and BIRDDOG AUSTRALIA PTY LTD, an Australian company, | | Case No.: 2:23-cv-09416-CAS-AGR |
| Plaintiffs, | | **PLAINTIFFS BIRDDOG TECHNOLOGY LIMITED'S AND BIRDDOG AUSTRALIA PTY LTD'S MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF ITS APPLICATIONS FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT** |
| v. | | *[Filed concurrently with (1)Notice of Application and Hearing for Right to Attach Order and Writ of Attachment; (2) Application for Right to Attach Order and Writ of Attachment; (3) Right to Attach Order and Order for Issuance of Writ of Attachment; (4) Writ of Attachment; (5) Declaration of Ryan Q. Keech; (6) Declaration of David Cogan; (7) Declaration of Dan Miall; and (8) Declaration of Barry Calnon]* |
| 2082 TECHNOLOGY, LLC DBA BOLIN TECHNOLOGY, a California limited liability company; HOI "KYLE" LO, an individual; and DOES 1 through 25, inclusive, | | |
| Defendants. | | |
| | | Complaint Filed: November 7, 2023 |
| | | Date:  January 15, 2024 |
| | | Time: 1:30 p.m. |
| | | Judge: Christina A. Snyder |
| | | Courtroom: 8D |

507207191.11

**BIRDDOG'S MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This action involves, among other things, Defendants' repudiation of several contracts and their associated unlawful withholding and expenditure of millions of dollars in funds paid by Plaintiffs. The contract and related claims - together with the risk that Defendants will make their assets unavailable absent relief - present the Court with a straightforward case for pretrial writ relief pursuant to Rule 64 of the Federal Rules of Civil Procedure.

Over the course of several years, Plaintiffs BirdDog Technology Limited and BirdDog Australia Pty Ltd ("BirdDog" or "Plaintiffs") enjoyed a mutually beneficial business relationship with their primary camera manufacturer, Southern California-based Defendant 2082 Technology, LLC dba Bolin Technology ("Bolin") - a California company controlled by Arcadia resident and Defendant Mr. Hoi "Kyle" Lo ("Mr. Lo"). That mutually beneficial relationship came to an abrupt end during the summer of 2023 when Defendants, abruptly, without justification, ***and while holding the undisputed amount of $3,060,883.10 in Plaintiffs' funds***, reacted to their inability to obtain control of Plaintiffs by placing a "hard-sharp stop" repudiation of their production and delivery of Plaintiffs' cameras pursuant to six related contracts—all while refusing multiple requests from Plaintiffs to either (1) reverse the "hard-sharp stop" repudiation and resume production and delivery; or (2) simply return Plaintiffs' funds.

What is worse, part of the reason that Defendants have confirmed their repudiation while refusing to return Plaintiffs' funds has now been revealed: Plaintiffs' funds have been and are currently being spent elsewhere on purposes unrelated to the parties' contractual relationship, including for the development, manufacture and sale of cameras intended to compete with Plaintiffs. Defendants' repudiation of their contracts with Plaintiffs has thus resulted in a situation where Plaintiffs' own money is being utilized to finance and subsidize a nascent competitor. Combined with Defendants' strong  connections to China, a jurisdiction outside of

507207191.11

- 1 -

**BIRDDOG'S MEMORANDUM OF POINTS AND AUTHORITIES**

this Court's reach, the likelihood of dissipation of assets absent immediate relief from this Court is enormous.

Through this Application, Plaintiffs seek a right to attach order to safeguard and secure the return of the prepayment funds that Defendants continue to unlawfully withhold. Plaintiffs have satisfied all of the requirements for the requested relief under the California Code of Civil Procedure. Most importantly, Plaintiffs have established the probable validity of the claim upon which this Application is based. The application should be granted.

## II. BACKGROUND

### A. The BirdDog-Bolin Business Relationship

Based in Australia, BirdDog is an internationally-renowned distributor of state-of-the-art streaming video technology. (Declaration of Barry Calnon ("Calnon Dec.") ¶ 2, Ex. A.) BirdDog has established itself as one of the primary global leaders in pan, tilt and zoom ("PTZ") robotic remotely controlled video cameras. (Calnon Dec., ¶ 2, Ex. A.)

Bolin Technology is a Southern California-based manufacturer of video cameras controlled by Mr. Lo, its Chief Executive Officer. (Calnon Dec., ¶ 3.)

Starting in 2018 and working initially and primarily through Mr. Lo, Bolin first approached BirdDog executives at industry trade shows and elsewhere, developing detailed knowledge of BirdDog's operations and making numerous oral and written representations pitching Bolin's capability to fulfill BirdDog's camera manufacturing needs. Bolin and Mr. Lo specifically told BirdDog that Bolin was an original equipment manufacturer specialist that had the present intent and capability to manufacture cameras for BirdDog pursuant to BirdDog's precise specifications. BirdDog agreed to engage Bolin, starting an economic relationship that would eventually result in Bolin becoming BirdDog's primary supplier of camera technology.

### B.   The Six Bolin-BirdDog Agreements for BirdDog Cameras

Initially, Bolin met BirdDog's manufacturing requirements. But beginning in or about 2022, Mr. Lo and Bolin began to work together to parlay BirdDog's trust and confidence into a wrongful scheme to *become* BirdDog - inducing BirdDog to enter into a related series of six transactions that Bolin and Mr. Lo, when BirdDog rebuffed Bolin's advances, would ultimately repudiate:

***The June 2021 Agreement.***  On June 30, 2021, BirdDog and Bolin finalized an enforceable oral and written contract whereby Bolin agreed to promptly produce and timely deliver 400 units of BirdDog's White P400 cameras at price of $1,699 per unit in exchange for BirdDog's prepayment of thirty percent (30%) of the total contract price to be utilized for purposes exclusively related to the timely production and delivery under the agreement (the "June 2021 Agreement"). (Calnon Dec., ¶ 4, Ex. B.) As required by the agreement, and in reliance on Bolin's and Mr. Lo's representations, BirdDog paid Bolin 30% of the total contract price[1] to secure Bolin's timely production and delivery of these cameras. (Calnon Dec., ¶ 4, Ex. B.)

***The September 2021 Agreement.***  On September 23, 2021, BirdDog and Bolin finalized an enforceable oral and written contract whereby Bolin agreed to promptly produce and timely deliver 250 units of BirdDog's A200 second generation cameras at a price of $1,724 per unit; 120 units of BirdDog's A300 second generation cameras at a price of $2,664 per unit; 1,440 units of BirdDog's Black P120 cameras at a price of $687 per unit; 260 units of BirdDog's White P120 cameras at a price of $687 per unit; 720 units of BirdDog's Black P110 cameras at a price of $676 per unit; 270 units of BirdDog's White P110 cameras at a price of $676 per unit; 1,320 units of BirdDog's Black P400 cameras at a price of $1,699 per unit; 780 units of BirdDog's Black P4K cameras at a price of $3,695 per unit; 236 units of BirdDog's White P4K cameras at a price of $3,695 per unit; 1,400 units of BirdDog's PF120 cameras at a

---

[1] This amount was paid across three separate remittance transfers from October 19, 2020 to June 18, 2021.

price of $478 per unit; and 2,360 units of BirdDog's PTZKEY cameras at a price of $483 per unit in exchange for BirdDog's prepayment of thirty percent (30%) of the total contract price to be utilized for purposes exclusively related to the timely production and delivery under the agreement (the "September 2021 Agreement"). (Calnon Dec., ¶ 5, Ex. C.)  As required by the agreement, and in reliance on Bolin's and Mr. Lo's representations, BirdDog paid Bolin 30% of the total contract price[2] to secure Bolin's timely production and delivery of these cameras.  (Calnon Dec., ¶ 5, Ex. C.)

**The August 2022 Agreement**.  On August 5, 2022, BirdDog and Bolin finalized an enforceable oral and written contract whereby Bolin agreed to promptly produce and timely deliver 3,000 units of BirdDog's Black P240 cameras at a price of $1,105 per unit; and 1,000 units of BirdDog's White P240 cameras at a price of $1,105 per unit in exchange for BirdDog's prepayment of thirty percent (30%) of the total contract price to be utilized for purposes exclusively related to the timely production and delivery under the agreement (the "August 2022 Agreement"). (Calnon Dec., ¶ 6, Ex. D.)  As required by the agreement, and in reliance on Bolin's and Mr. Lo's representations, BirdDog paid Bolin 30% of the total contract price[3] to secure Bolin's timely production and delivery of these cameras.  (Calnon Dec., ¶ 6, Ex. D.)

**The October 2022 Agreement**.  On October 21, 2022, BirdDog and Bolin finalized an enforceable oral and written contract whereby Bolin agreed to promptly produce and timely deliver 200 units of BirdDog's White P120 cameras at a price of $687 per unit in exchange for BirdDog's prepayment of thirty percent (30%) of the total contract price to be utilized for purposes exclusively related to the timely production and delivery under the agreement (the "October 2022 Agreement").

---

[2] This figure was paid across four separate remittance transfers from October 23, 2021 to May 23, 2022.

[3] This figure was paid across four separate remittance transfers from October 23, 2021 to May 23, 2022.

(Calnon Dec., ¶ 7, Ex. E.) As required by the agreement, and in reliance on Bolin's and Mr. Lo's representations, BirdDog paid Bolin 30% of the total contract price[4] to secure Bolin's timely production and delivery of these cameras. (Calnon Dec., ¶ 7, Ex. E.)

*The March 2023 Agreement.* On March 31, 2023, BirdDog and Bolin finalized an enforceable oral and written contract whereby Bolin agreed to promptly produce and timely deliver 750 units of BirdDog's Ocean White U120 cameras at a price of $371 per unit; 250 units of BirdDog's White U120 cameras at a price of $359 per unit; and 1,000 units of BirdDog's Black X120 cameras at a price of $423 per unit (the "March 2023 Agreement"). (Calnon Dec., ¶ 8, Ex. F.) As required by the agreement, and in reliance on Bolin's and Mr. Lo's representations, on March 31, 2023, BirdDog paid Bolin 50% of the total contract price[5] to secure Bolin's timely production and delivery of these cameras. (Calnon Dec., ¶ 8, Ex. F.)

*The May 2023 Agreement.* On May 17, 2023, BirdDog and Bolin finalized an enforceable oral and written contract whereby Bolin agreed to promptly produce and timely deliver 1,000 units of BirdDog's Black X120 cameras at a price of $423 per unit in exchange for BirdDog's prepayment of thirty percent (30%) of the total contract price to be utilized for purposes exclusively related to the timely production and delivery under the agreement (the "May 2023 Agreement"). (Calnon Dec., ¶ 9, Ex. G.) As required by the agreement, and in reliance on Bolin's and Mr. Lo's representations, on June 2, 2023, BirdDog paid Bolin 30% of the total contract price - or $126,900 - to secure Bolin's timely production and delivery of these cameras. (Calnon Dec., ¶ 9, Ex. G.)

### C. Frustrated By Its Inability to Gain Control of BirdDog, Bolin Repudiates The Agreements While Holding $3,060,883.10 in BirdDog Funds

Bolin failed to perform its obligations under these six transactions. Worse, by the summer of 2023, it would become clear that Mr. Lo and Bolin's true and

---

[4] This figure was paid in one remittance transfer on October 21, 2022.
[5] This figure was paid in one remittance transfer on March 31, 2023.

undisclosed intent was to seize control of BirdDog and that they never had any intent of complying with their obligations under these related transactions - each of which they would ultimately repudiate.

In or about October 2021, BirdDog advised Bolin of its forthcoming listing as a publicly traded company on the Australian Stock Exchange. (Declaration of Dan Miall ("Miall Dec.") ¶ 2)    In BirdDog's eyes, this was a standard notification to provide to its principal camera supplier: BirdDog had anticipated that Mr. Lo and Bolin would be pleased with the success of one of their principal customers. Surprisingly (to BirdDog), this was not the case.  Mr. Lo and Bolin were displeased by this development.  Bolin and Mr. Lo objected when BirdDog's public offering was finalized in December 2021, argued (without any basis) that they should have been provided notice more than six months before, and demanded that BirdDog "co-list" with Bolin.  (Miall Dec., ¶ 2.)

Consistent with its obligations, BirdDog declined Bolin's 2021 entreaties, though still had no reason to think that Bolin had any intent of doing anything untoward with these transactions or its funds.

By the summer of 2023, that all changed: it became increasingly and disturbingly clear that Bolin had decided to employ more aggressive measures to obtain total control of BirdDog.

Specifically, on July 4, 2023, Mr. Lo demanded an immediate meeting in Australia with BirdDog executives.  That meeting took place in Melbourne, Australia on July 11, 2023.   (Miall Dec., ¶ 3.)  During that meeting, Mr. Lo and Bolin communicated to BirdDog - falsely - that BirdDog was "failing," "in trouble" and in "financial distress."  Mr. Lo's and Bolin's "solution" to these problems was a ***hostile Bolin takeover*** - or, put differently, for ***Bolin to become BirdDog***.  (Calnon Dec., ¶ 13.)  To formalize this improper demand, Mr. Lo presented "options" to BirdDog that included (1) a merger; (2) a full takeover by Bolin of BirdDog's camera business;

(3) stopping manufacture of BirdDog's cameras; or (4) vague threats of competition while manufacturing BirdDog's cameras. (Miall Dec., ¶ 3.)

The nature and direction of Mr. Lo's and Bolin's scheme to use BirdDog's funds and repudiation of Bolin's obligations to squeeze BirdDog into submitting to Bolin's demands would unfortunately become clearer.  On July 15, 2023, Mr. Lo again met with BirdDog executives in Melbourne. (Miall Dec., ¶ 4.)  He reiterated Bolin's "options" for BirdDog - now, additionally, demanding that he would be CEO of BirdDog - communicated his dim view of BirdDog's executives (including that he did not like, value or respect BirdDog's chairman) and refused to consider any alternatives, including that BirdDog absorb Bolin. (Miall Dec., ¶ 4.)  That same day, Mr. Lo advised BirdDog's chief executive via WeChat that he had 24 hours to agree to Bolin's demands. (Miall Dec., ¶ 5.)  When BirdDog did not immediately accede, Mr. Lo advised that "all options" were "off the table." (Miall Dec., ¶ 6.)

BirdDog and its executives were stunned: not only did Bolin and its executives have no apparent plan for any of the "options" they presented, but at the moment of the July 11, 2023 meeting, Bolin had not delivered ***9,670*** of the cameras that BirdDog had ordered and for which its customers were waiting and was holding ***$3,060,883.10*** of funds paid pursuant to each of the six transactions.

Through August and September 2023, BirdDog tried multiple additional times to ensure Bolin's compliance with its obligations - asking again for delivery of the products that it had ordered in accordance with the terms of the six transactions or for a refund of the outstanding prepayments. (Calnon Dec., ¶ 10.)  Bolin refused, with Mr. Lo admitting that Bolin was repudiating its obligations under these transactions and that - apparently until BirdDog acceded to Bolin's demands and permitted him to take over the company -  there would be a "hard sharp stop" repudiation of all BirdDog production. (Calnon Dec., ¶ 10. Ex. H.)

### D. The "Hard Sharp Stop" Repudiations Have Not Been Reversed; BirdDog's Funds Finance Bolin Competition

In October and November 2023, Bolin's "hard sharp stop" repudiations have not been reversed. (Calnon Dec., ¶ 11.) Nor has Bolin returned any of the $3,060,883.10 in Plaintiffs' funds - money that Bolin has advised is unavailable to BirdDog. (Calnon Dec., ¶ 11; Declaration of Ryan Keech ("Keech Dec.") ¶ 2, Ex. A.)

Bolin's representations that the money is unavailable to BirdDog and is being used for purposes other than to secure the timely production and delivery of BirdDog cameras is especially concerning given the extensive ties of Bolin and Mr. Lo with China - including control of factories and accounts within mainland China and outside the jurisdiction of this court. Failing to obtain writ relief raises the possibility that whatever assets Mr. Lo and Bolin have within the jurisdiction of this Court will be transferred to China prior to judgment. (Declaration of David Cogan ("Cogan Dec.") ¶ 8.)

### III.  LEGAL STANDARD

In federal court, Plaintiffs are entitled to seize property to secure satisfaction of a potential judgment in accordance with the procedures of the state where the district court is located. *Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co.*, 112 F. Supp. 2d 1178, 1181 (C.D. Cal. 2000); *SMTC Corp. v. APT Elecs.*, No. SACV2300672JVSDFMX, 2023 WL 6373847, at *1 (C.D. Cal. Aug. 17, 2023) (explaining that "under Federal Rule of Civil Procedure 64, '[e]very remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment.' Fed. R. Civ. P. 64(a)"); FED. R. CIV. P. 64(b) (authorizing writ of attachment).

California law provides that the Court "shall issue a right to attach order" if:
(1) the claim upon which the attachment is based is one upon which an attachment may be issued;
(2) the plaintiff has established the probable validity of the claim upon which the attachment is based;

(3) the attachment is not sought for a purpose other than recovery on the claim upon which the request for attachment is based; and

(4) the amount to be secured by the attachment is greater than zero.

CAL. CIV. PROC. CODE § 484.090.

In order to show the probable validity of its claims, a plaintiff need only show that it is "more likely than not" that it will obtain a judgment against the defendants on the claim. *Pos-A-Traction, Inc.*, 112 F. Supp. 2d at 1182. Evidence in support of the writ and demonstrating satisfaction of the procedural requirements may be made by declaration. CAL. CIV. PROC. CODE § 484.030.

## IV. PLAINTIFFS ARE ENTITLED TO A WRIT OF ATTACHMENT

### a. An Attachment May Be Issued If BirdDog Prevails On Their Claims

BirdDog, which seeks to attach Bolin's and Mr. Lo's assets in the undisputed amount of money that is unlawfully being withheld by Bolin and Mr. Lo, has satisfied the first element showing its entitlement to an attachment in this action. This case is indisputably "an action on a claim or claims for money, each of which is based upon a contract, express or implied; (2) where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than $500 exclusive of costs, interest, and attorneys' fees; and (3) where the claims are unsecured or are secured by personal property, but not by real property." CAL. CIV. PROC. CODE § 483.010(a)-(b); *see also LA Jewelry Prod., Inc. v. Royal Grp. LLC*, No. CV 23-0488 DSF (KSX), 2023 WL 5207490, at *4 (C.D. Cal. July 7, 2023).

***BirdDog's Contract-Based Claims***. BirdDog's first claim for relief against Bolin is one for breach of contract. Compl., ¶¶ 40-55. "It is a well-recognized rule of law in [California] that an attachment will lie upon a cause of action for damages for a breach of contract where the damages are ascertainable by reference to the contract and the basis of the computation of damages appears to be reasonable and definite." *CIT Grp./Equip. Fin., Inc. v. Super DVD, Inc*., 115 Cal. App. 4th 537, 540 (2004) (citation omitted). This is satisfied here: BirdDog asserts against Bolin a

507207191.11

- 9 -

claim for breach of contract with an undisputed amount of damages in the amount of the prepayment funds currently, unlawfully being withheld. Compl., ¶¶ 40-55

While BirdDog's claims for breach of contract are alone sufficient to show that it its claims for relief support an attachment, its other claims are no less supportive. For instance, BirdDog asserts claims for relief against Bolin and Mr. Lo for conversion (Compl. ¶¶ 60-63); money had and received, as to both Defendants (Compl. ¶¶ 69-72); and violations of California Penal Code Section 496, as to both Defendants (Compl. ¶¶ 64-68). Each supports the attachment that BirdDog seeks. "Under California law, [the] common count[] for money had and received . . . [is an] implied-in-law or quasi-contract claim[] that can support issuance of a writ of attachment." *ET Publ'g Int'l Inc. v. Pac. Periodicals LLC*, No. CV103108DSFAJWX, 2010 WL 11570434, at *3 (C.D. Cal. Oct. 13, 2010) (citing *Hill v. Superior Court*, 16 Cal. 2d 527, 530-531 (1940)). Further, "implied contract" includes restitutionary obligations—e.g., where defendant acquired plaintiff's property through fraud, conversion or mistake and refuses to return it (*Klein v. Benaron*, 247 Cal. App. 2d 607, 609 (1967)), as well as the obligations imposed by Section 496 of the Penal Code. *See* CAL. CIV. PROC. CODE § 483.010(a); *Goldstein v. Barak Constr.*, 164 Cal. App. 4th 845, 854 (2008) (claim to recover payments made to unlicensed contractor is "fundamentally contractual in nature"); *Santa Clara Waste Water Co. v. Allied World Nat'l Assurance Co.*, 18 Cal. App. 5th 881, 885 (2017) (unjust enrichment and rescission claims sufficient for attachment). And all of BirdDog's claims against Mr. Lo arise out of his conduct of the Bolin business, an activity he conducts "for the purpose of livelihood or profit on a continuing basis." *Benetton USA Corp.*, No. C 10-03843 JCS, 2010 WL 4973477, at *4. (Calnon Dec. ¶¶ 3, 4-11.)

**The Total Amount Subject To Attachment is More than $500 and is Unsecured.** It is also beyond dispute that the amount of BirdDog's claim - $3,060,883.10 in prepayment funds - is fixed, readily ascertainable and exceeds

$500. This figure is fixed and ascertainable because it represents the undisputed amount of money paid by Plaintiffs to Defendants for the delivery of cameras under the agreements that Defendants have now repudiated. (Calnon Dec. ¶¶ 4-11, Exs. B-H.) And it is further beyond dispute that none of BirdDog's claims are secured by real or personal property. (Calnon Dec. ¶12.)

Accordingly, BirdDog has satisfied the first requirement of Section 485.220(a) in that its claims are claims upon which an attachment may be issued.

### b. BirdDog Has Established The Probable Validity Of Their Claims

For purposes of a writ of attachment, BirdDog need only establish that their "claim[s] ha[ve] 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." Cal. Civ. Proc. Code. § 481.190. They have satisfied that showing here.

#### i. Breach of Contract

By establishing the terms of the relevant contracts, proving the payments that it has made, and establishing Bolin's repudiation of each of the relevant contracts, BirdDog has, *first*, established the probable validity of its claim for breach of contract against Bolin. *See Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014) (setting forth elements of breach of contract under California law). BirdDog has established that it and Bolin entered into each of the six agreements (Calnon Dec. ¶¶ 4-11, Exs. B-H.); that BirdDog fully performed all relevant obligations under the Agreements by paying to Bolin the specified amount under the Agreements (Calnon Dec. ¶¶ 4-11, Exs. B-H.); that Bolin materially breached the Agreements by, *inter alia*, failing to timely produce and deliver the equipment, failing to meet promised delivery dates, causing unnecessary and unreasonable delay in producing and delivering units, and failing to provide units of acceptable and/or merchantable quality (Calnon Dec., ¶ 10, Ex. H); that BirdDog suffered damages in an amount exceeding $3,060,883.10 because they paid that amount to Bolin in prepayment funds but Bolin has since refused to provide the agreed upon equipment or refund the prepayment funds

(Calnon Dec., ¶ 11; Keech Dec. ¶ 2, Ex. A.); and that Bolin's breach was a substantial factor in causing Plaintiffs' harm. This satisfies the first factor of the analysis.

### ii. Other Claims

BirdDog has also, ***second***, established the probable validity of its other claims in this action. As to conversion (*Regent Alliance Ltd. v. Rabizadeh*, 231 Cal.App.4th 1177, 1181 (2014) (setting forth elements of conversion claim)) and money had and received (*Title Ins. Co. v. State Bd. of Equalization*, 4 Cal. 4th 715, 731(1992) (elements of claim for money had and received)), BirdDog has shown that after the repudiation of these agreements, Defendants have unlawfully withheld funds that it was paid over by BirdDog for its (Defendants) use and benefit. (Calnon Dec., ¶¶ 10-11, Ex. H; Keech Dec. ¶ 2, Ex. A.) "Unjustified refusal to turn over possession on demand constitutes conversion [,]" which is exactly what Bolin and Mr. Lo have done here. *Cerra v. Blackstone*, 172 Cal.App.3d 604, 609 (1985). Equally valid is BirdDog's resulting claim for money had and received: a paradigmatic example of such a claim is where, as there, there has been a "total failure of consideration or repudiation." *Brown v. Grimes*, 192 Cal. App. 4th 265, 28 (2011). And because Bolin's conduct also constitutes theft of BirdDog's property - the prepayment funds - BirdDog has also shown the validity of this claim. *See Switzer v. Wood*, 35 Cal. App. 5th 116, 126 (2019) (violation of Section 496 when a party, *inter alia*, steals, takes, carries, leads, drives away or feloniously appropriates property which has been entrusted to him or her). This, too, shows that BirdDog has established the probable validity of its claims.

### c. The Attachment Is Not Sought For A Purpose Other Than Recovery On The Claim Upon Which BirdDog's Request For Attachment Is Based

BirdDog's request for attachment is not made for an improper purpose. BirdDog seeks the attachment to secure its probable recovery on their contract-based claims, including, their breach of contract claim against Bolin and their conversion,

money had and received, and California Penal Code Section 496 claims against both Defendants. BirdDog has legitimate concerns about Bolin dissipating assets during the pendency of this action, including by transferring assets to jurisdictions outside the reach of this Court and by spending BirdDog's money for purposes other than the fulfill their obligations under the contracts. BirdDog's request for attachment is intended to prevent those things from happening.

### d. The Amount To Be Secured By The Attachment Is Greater Than Zero

The amount to be secured by Plaintiffs' writ of attachment is $3,060,883.10, which is greater than zero. (Calnon Dec. ¶ 11.) Accordingly, Plaintiffs have satisfied the fourth and final requirement of Section 485.220(a).

## V. CONCLUSION

For the foregoing reasons, BirdDog respectfully requests that the motion be granted in its entirety and that attachments issue in accordance with the terms requested therein.

**K&L GATES LLP**

Dated: December 15, 2023

By: /s/ Ryan Q. Keech
Ryan Q. Keech
Gabriel M. Huey
Kevin G. Sullivan

*Attorneys for Plaintiffs*

507207191.11

- 13 -

**BIRDDOG'S MEMORANDUM OF POINTS AND AUTHORITIES**