1  RYAN Q. KEECH (SBN 280306)
   Ryan.Keech@klgates.com
2  GABRIEL M. HUEY (SBN 291608)
   Gabriel.Huey@klgates.com
3  KEVIN G. SULLIVAN (SBN 341596)
   Kevin.Sullivan@klgates.com
4  K&L GATES LLP
   10100 Santa Monica Boulevard, 8th Floor
5  Los Angeles, California  90067
   Telephone: 310.553.5000
6  Fax No.:    310.553.5001

7  Attorneys for Plaintiffs

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12 | BIRDDOG TECHNOLOGY | Case no. 2:23-cv-09416 CAS (AGRx)
   | LIMITED, an Australian company; |
13 | and BIRDDOG AUSTRALIA PTY | **PLAINTIFFS BIRDDOG**
   | LTD, an Australian company, | **TECHNOLOGY LIMITED'S AND**
14 | | **BIRDDOG AUSTRALIA PTY LTD'S**
   | Plaintiffs, | **REPLY IN SUPPORT OF THEIR**
15 | | **APPLICATION FOR RIGHT TO**
   | v. | **ATTACH ORDER AND WRIT OF**
16 | | **ATTACHMENT**
   | 2082 TECHNOLOGY, LLC DBA |
17 | BOLIN TECHNOLOGY, a California | *[Filed concurrently with (1) Declaration*
   | limited liability company; BOLIN | *of Dan Miall; (2) Declaration of Kevin*
18 | TECHNOLOGY CO., LTD., a Chinese | *G. Sullivan; (3) Evidentiary Objections;*
   | limited company; HOI "KYLE" LO, an | *and (4) Responses to Defendants'*
19 | individual; JENNIFER LEE, an | *Evidentiary Objections]*
   | individual; and DOES 3 through 25, |
20 | inclusive, | Judge: Honorable Alicia G. Rosenberg
   | | Courtroom: 550
21 | Defendants. | Hearing Date:  January 30, 2024
   | | Hearing Time: 10:00 a.m.
22

23

24

25

26

27

28

507353720.7

**PLAINTIFFS' REPLY ISO WRIT OF ATTACHMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................... 1

II.     PLAINTIFFS ARE ENTITLED TO A WRIT OF ATTACHMENT ............. 4

A.      DEFENDANTS' CONTENTION THAT BOLIN LIMITED IS A
        SEPARATE ENTITY FROM BOLIN LLC IS A THINLY VEILED
        ATTEMPT TO PULL THE WOOL OVER THE COURT'S EYES ............ 4

B.      PLAINTIFFS HAVE ESTABLISHED THE PROBABLE VALIDITY
        OF THEIR CLAIMS ................................................................................ 8

C.      PLAINTIFFS HAVE ESTABLISHED THEY ARE LIKELY TO
        OVERCOME DEFENDANTS' DEFENSES ............................................ 11

D.      DEFENDANTS' REMAINING ARGUMENTS ARE RED
        HERRINGS .............................................................................................. 13

III.    THE DEFAULT UNDERTAKING IS SUFFICIENT .................................. 14

IV.     ALTERNATIVELY, THE COURT SHOULD CONTINUE THE
        HEARING AND PERMIT PLAINTIFFS TO CONDUCT SPECIFIED
        DISCOVERY ........................................................................................... 15

V.      CONCLUSION ........................................................................................ 15

507353720.7

- i -

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albergo v. Immunosyn Corp.*,
  2011 WL 13177540, at *3 (S.D. Cal. Jul. 13, 2011)......................................9, 11

*Am. Student Fin. Grp., Inc. v. Aequitas Cap. Mgmt., Inc.*,
  2014 WL 12772263 (S.D. Cal. June 18, 2014)................................................14

*Benetton USA Corp. v. M3T Corp*,
  2010 WL 4973477 (N.D. Cal. Dec. 1, 2010) ........................................................9

*Bentham v. Bingham Law Group*,
  2013 WL 12186171 (S.D. Cal. Nov. 15, 2013) ................................................12

*Erlich v. Menezes*,
  21 Cal. 4th 543 (1999)........................................................................................12

*Iraq Telecom Ltd. v. IBL Bank S.A.L.*,
  43 F. 4th 263 (2d. Cir. 2022)........................................................................4, 13

*Lincoln Nat'l Life Ins. Co. v. McClendon*,
  230 F. Supp. 3d 1180 (C.D. Cal. 2017)............................................................12

*Maaco Franchising, LLC v. 5296, LLC*,
  No. EDCV162218GWSPX, 2017 WL 10543655 (C.D. Cal. Apr.
  24, 2017)............................................................................................................13

*N. Hollywood Marble Co. v. Super. Ct.*,
  157 Cal. App. 3d 683 (1984)............................................................................14

*NuCal Foods, Inc. v. Quality Egg LLC*,
  918 F. Supp. 2d 1023 (E.D. Cal. 2013)............................................................12

*Opera Gallery Trading Ltd. v. Golden Trade Fine Art Inc.*,
  2015 WL 12912362 (C.D. Cal. July 28, 2015) ................................................11

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F. 2d 268 (9th Cir. 1989)............................................................................13

*PSKW, LLC v. 3PEA Int'l, Inc.*,
  2015 WL 12661952 (N.D. Cal. Aug. 7, 2015)..................................................15

507353720.7

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
34 Cal. 4th 979 (2004)...................................................................... 12

*Shopoff & Cavallo LLP v. Hyon*,
167 Cal. App. 4th 1489 (2008)........................................................ 10

*Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*,
2020 WL 109391 (N.D. Cal. Jan. 9, 2020) ...................................... 12

*Telerent Leasing Corp. v. Pine State Plumbing & Heating, Inc.*,
231 F. Supp. 2d 352 (D. Me. 2002)................................................... 11

**Statutes**

CAL. CIV. PROC. CODE § 482.110.............................................................. 13

CAL. CIV. PROC. CODE § 483.010(C)........................................................... 9

CAL. CIV. PROC. CODE § 484.090........................................................ 4, 13

CAL. CIV. PROC. CODE § 489.220.............................................................. 14

CAL. PEN. CODE § 496(C) ........................................................................ 13

PENAL CODE § 496 ........................................................................*passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   **INTRODUCTION**

"***Bolin Technology is a 2082 Technology LLC Company.***"

These are not Plaintiffs' words.  Rather, on September 1, 2023, this is what Defendant Hoi "Kyle" Lo ("Mr. Lo") wrote to BirdDog Chief Financial Officer Barry Calnon and Chief Executive Officer Dan Miall from Mr. Lo's California office, using the same italics and emphasis repeated countless times with Plaintiffs, from his ***lohoi@bolintechnology.com*** email address, copying his wife and Defendants' only other fact witness on this Motion (also at her ***jennifer@bolintechnology.com*** email address), listing his ***(626) area code numbers*** in the San Gabriel Valley, using the ***Bolin Technology*** trademarks, and confirming, in writing, what is at issue in this motion: Defendants' holding of ***$3,060,883.10 in BirdDog prepayment funds***:

> **From:** lohoi@bolintechnology.com <lohoi@bolintechnology.com>
> **Sent:** 01 September 2023 19:05
> **To:** Barry Calnon <barry@bird-dog.tv>
> **Cc:** jennifer <jennifer@bolintechnology.com>; GuoJohn
> <john.guo@bolin-av.com>; Dan Miall <dan@bird-dog.tv>
> **Subject:** Re: Re: BirdDog/Bolin future terms of engagement
>
> Hi Barry,
> Confirm that your number of Prepayment value reconciles to
> the US$3,060,883.10 is correct.
>
> Hoi (Kyle) Lo
>
> **BOLIN**
> TECHNOLOGY | Professional Broadcast, Pro AV and Surveillance Video Products
> Office: 626.333.6288 | Mobile: 626.297.4990
> lohoi@bolintechnology.com | www.bolintechnology.com
>
> ***********************************************************
> ***Bolin Technology is a 2082 Technology LLC company.***
> This email message contains confidential information and attachments
> for the above addressee only. If you are not the intended addressee
> you must not disclose this information and should be deleted. All information
> in this email is protected by law.

507353720.7   Dkt. 25-4 (Calnon Decl.), Ex. H, at 1, 6-8.

1

And what would a visit to ***bolintechnology.com***, the domain used by Mr. Lo in his agreement-related correspondence with BirdDog, similarly reveal?



Declaration of Kevin Sullivan in Support of Reply ("Sullivan Decl.") ¶ 2, Ex. A at 11.

It is only now, four months later, faced with the necessity of opposing Plaintiffs' Motion seeking to secure the return of this very same stolen money, Defendants 2082 Technology LLC dba Bolin Technology ("Bolin LLC") and Mr. Lo sing a markedly different tune. Taking pains to refer to the corporate co-defendant as "2082" (*see* Opp. (Dkt. 33, *passim*)),[1] Defendants ask the Court to ignore these damning facts and rest virtually the entirety of their opposition on the word of ***that very same*** Mr. Lo, who ***now*** claims that the Bolin Technology <u>Company</u> that he referred to countless times is in fact "***not a party***" (Dkt. 33-1 (Lo Decl.), ¶ 6); that this Bolin Technology <u>Company</u> (which they now call "Bolin China") is actually a "***separate China-based company***" (Lo. Decl., ¶ 3), in which he personally "***hold[s] no ownership interest***" (*id.*, ¶ 4); and that, despite his own words, "***all of [his] communications with BirdDog relevant to this Application were made on behalf of Bolin China, not 2082, and were done in the course, scope and authority of [his] employment with Bolin China***." *Id.*, ¶ 13. Based on nothing more than that same testimony, Defendants ask the Court to find that the evidence somehow "***unequivocally demonstrate[s]***" that the accounts to which funds were initially wired belong "***not to***" Bolin LLC (Opp. at 9:17), that they "***did not receive any money***"

---

[1] 2082 is the residential address of Mr. Lo and Ms. Lee in Arcadia. (Miall Decl. ¶ 8.)

from Plaintiffs and that if anybody bears responsibility, it is "***Bolin China, not 2082, as claimed***" (Opp. at 9:11-12).

One principal problem for Defendants' newfound narrative is that their only evidence in support of this narrative is Mr. Lo's testimony, and Mr. Lo's own words prove that he is not telling the truth.  Defendants cannot have their cake and eat it too.  Repeatedly claiming now, when litigation over their theft is pending, that Bolin Technology Co., Ltd. ("Bolin Limited") is a separate company that is apparently not a Bolin LLC Company,[2] does nothing more than indicate that Defendants' manufacturing arm *also* bears joint and several liability for some or all of Plaintiffs' claims in this action.  That will be adjudicated in connection with Plaintiffs' First Amended Complaint (Dkt. 34).[3]  It does not magically transform Mr. Lo's and Ms. Lee's respective lies into truth and certainly does not minimize or eliminate Bolin LLC's and Mr. Lo's respective liability for Plaintiffs' claims underlying the present Motion.

For year, Defendants have accurately represented to Plaintiffs, multiple levels of government and the public that Bolin LLC and Bolin Limited are and do business as a single unified entity: "Bolin Technology."  This is demonstrated not only by the declaration of Mr. Miall, but also by agreements signed by Mr. Lo, correspondence between him and Defendants, public registrations filed by Bolin LLC, and Mr. Lo's own statements to the media.  Indeed, after Plaintiffs rebuffed Mr. Lo's takeover overtures, he refused to return Plaintiffs' more than $3 million prepayment and unilaterally repudiated the contracts on behalf of Bolin Technology: "BOLIN is now suspending all existing productions (sic)."  Plaintiffs have met their burden to show that they are more likely than not to prevail on their breach of contract claim against Bolin LLC.

---

[2] Defendants' Opposition refers to Bolin Limited as Bolin China.  Mr. Lo does not deny that he and Ms. Lee control the entity that he calls "Bolin China" through his interest in 2082.
[3] Given Defendants' opposition, Plaintiffs will shortly renew their motion for an attachment against Bolin Limited and against Ms. Lee.

**PLAINTIFFS' REPLY ISO WRIT OF ATTACHMENT**

1    Otherwise, Defendants' Opposition does not, and cannot, refute the legal
2    standard applicable to this motion (Dkt. 25-2 (Mot.), at 8-9), nor that Plaintiffs have
3    otherwise met all of the other requirements[4] to obtain a writ of attachment against
4    Defendants *even if* there are grounds for an attachment against *other newly-named*
5    *Defendants*. *E.g.*, *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 43 F. 4th 263, 274 (2d. Cir.
6    2022) (holding "the district court abused its discretion in reducing the attachment"
7    by "concluding that the greater culpability of one of the wrongdoers was reason to
8    reduce the attachment" because "any defendant could avoid attachment merely by
9    pointing to the existence of joint tortfeasors").

10    For these and other reasons, the Court should decline to countenance
11    Defendants' transparent charade and grant Plaintiffs' Application in its entirety.

12    **II.   PLAINTIFFS ARE ENTITLED TO A WRIT OF ATTACHMENT**

13    **a.   Defendants' Contention That Bolin Limited Is A Separate Entity**
14    **From Bolin LLC Is A Thinly Veiled Attempt To Pull The Wool**
15    **Over The Court's Eyes.**

16    Defendants do not, and cannot, deny that Plaintiffs paid over $3,060,883.10 in
17    funds pursuant to contracts that have now been repudiated, and that Defendants are
18    holding and have failed to return those sums. Instead, Mr. Lo attempts to apportion
19    responsibility, claiming that the receipt of BirdDog money, and "[a]ll of [his]
20    communications with [Plaintiffs]," "were made on behalf of Bolin [Limited], and
21    were done in the course, scope, and authority of [his] employment with Bolin
22    [Limited]." (Lo Decl. ¶ 13.) He further contends that Bolin LLC and Bolin Limited
23    are completely "separate" entities with the latter "based in Shenzhen, China." (Lo
24    Decl. ¶ 13.) From agreements signed by Mr. Lo, to correspondence between him and
25    Defendants, to public registrations filed by Bolin LLC, to his own statements to the
26    media, ample evidence belies Mr. Lo's false contentions.

27
28

---

[4] Defendants do not dispute that Plaintiffs' attachment is not sought for a purpose other than recovery of their claims and that the amount to be secured by the attachment is greater than zero. Cal. Civ. Proc. Code § 484.090.

i.   <u>Mr. Lo Did Not Act Exclusively On Behalf Of Bolin Limited.</u>

If, as Mr. Lo falsely contends, all of his actions relating to BirdDog were done on behalf of Bolin Limited, documents he signed related to the BirdDog relationship would be on Bolin Limited letterhead and signed by Mr. Lo on behalf of Bolin Limited.  But that is simply not the case.  For example, the Manufacturing Agreement and Warranty Statement that Mr. Lo sent to Mr. Miall acknowledging the then-existing Bolin-BirdDog relationship prominently features the Bolin Technology logo registered to Bolin LLC and was signed by Mr. Lo as "Chief Executive Officer" of "Bolin Technology."  (Reply Miall Decl. ¶ 4, Ex. A.)

As of August 24, 2015, "Bolin Technology" has been owned by Bolin LLC and registered in the County of Los Angeles as Bolin LLC's fictitious business name. (Sullivan Decl. ¶ 3, Ex. B.)  And as of May 31, 2018, "Bolin Technology" has been owned by Bolin LLC and registered in the County of Orange as Bolin LLC's fictitious business name.  (Sullivan Decl. ¶ 4, Ex. C.)  Based on representations to the United States government by Mr. Lo that Bolin LLC *was* Bolin Technology, the Bolin Technology logo is registered as a trademark with the U.S. Patent and Trademark Office and owned by Bolin LLC.  (Sullivan Decl. ¶ 5, Ex. D.)  And when Mr. Lo signed the BirdDog Manufacturing Agreement and Warranty Statement in 2021 as Bolin Technology's CEO - and when he entered into all agreements at issue in this case - he entered into all such agreements on behalf of Bolin LLC.

That is not all.  Assuming *arguendo*, that Bolin LLC is based in California and Bolin Limited is the China-based manufacturing arm, the information that Bolin Technology publishes in the public domain establishes control and domination of this manufacturing arm in California by Bolin LLC:

- Bolin Technology's LinkedIn page shows its "[h]eadquarters" is located in "Brea, California" - the same city as Bolin LLC's principal place of business (Sullivan Decl. ¶ 6, Ex. E);

507353720.7

- • Bolin Technology's website, Facebook page, and LinkedIn page provides the same company address as Bolin LLC's principal place of business: 556 Vanguard Way, Ste A, Brea, California 92821 (Sullivan Decl. ¶¶ 2, 6, 7, Exs. A, E, F); and

- • The phone number for Bolin Technology displayed on its website and Facebook page is the same as Bolin LLC's phone number: 626-333-6288 (Sullivan Decl. ¶¶ 2, 7, Exs. A, F; Reply Miall Decl. ¶ 5, Ex. B.)

And as if that were not enough to conclude that Mr. Lo's declaration is replete with fiction, in email exchanges from June to September 2023 between Mr. Lo and Plaintiffs about the contracts, his signature block makes clear that he was communicating on behalf of "Bolin Technology . . . a 2082 Technology LLC Company"[5] – **not** a separate Bolin Limited entity.  The office phone number in Mr. Lo's signature block match Bolin LLC's, and the 626 area code for Mr. Lo's mobile phone number is for Southern California.  (Reply Miall Decl. ¶ 5, Ex. B.)  Moreover, when Mr. Lo repudiated the contracts on September 6, 2023, his signature block indicates he did so as "CEO, Bolin Technology": "BOLIN is now suspending all existing productions (sic)."  (Reply Miall Decl. ¶ 5, Ex. B.)

    ii.    <u>Bolin LLC And Bolin Limited Are Not Legally Separate Entities.</u>

It is thus simply not true that Bolin LLC and Bolin Limited are, as Mr. Lo claims, "separate" entities, with Bolin LLC bearing no responsibility for its actions vis-à-vis Plaintiffs and its theft of their money.  As early as 2016, public articles quoting Mr. Lo and identifying him as a co-founder of Bolin make no such distinction between Bolin LLC and Bolin Limited, truthfully portraying Bolin LLC and Bolin Limited as a single unified Bolin enterprise:

- • "If you haven't heard of BOLIN Technology, you soon will";

- • Bolin was "[f]ounded in China by Kyle Lo . . . more than 15 years ago";

---

[5] 2082 Technology LLC dba Bolin Technology is referred to herein as Bolin LLC.

507393720.7

- 6 -

**PLAINTIFFS' REPLY ISO WRIT OF ATTACHMENT**

- "BOLIN opened its U.S. Office in City of Industry, Calif., to bring its manufacturing to global market";

- "With its manufacturing plant in Shenzhen, China, BOLIN's California location is the only office outside of China"; and

- "***Operating globally from California***, BOLIN is working with clients in Egypt, India and government-owned railway in Israel."

(Reply Miall Decl. ¶ 6, Ex. C.) (emphasis added).  Indeed, from 2016 to 2023, Mr. Lo represented to Mr. Miall at least twenty-two (22) times that he was the CEO of a unified Bolin enterprise wherein Bolin Limited was the manufacturing arm of Bolin LLC.  (Reply Miall Decl. ¶ 2.)  He made the same representations during numerous phone and video calls with Mr. Miall.  (Reply Miall Decl. ¶ 3.)

Assuming *arguendo* that Mr. Lo was in fact at all times acting on behalf of Bolin Limited (and not Bolin LLC, which for reasons explained above is demonstrably untrue), the Manufacturing Agreement and Warranty Statement and correspondence with Mr. Miall would show that Mr. Lo engaged Plaintiffs as Bolin Limited's CEO.  (*See* Reply Miall Decl. ¶¶ 4, 5, Ex. A, B.)  The truth is that he was acting on both entities' behalf: in the declaration signed by Mr. Lo under penalty of perjury, he admits that he is "the Chief Executive Officer" of Bolin LLC (Lo Decl. ¶1).  In other words, if the Court believes Mr. Lo, then Mr. Lo must be the CEO of both Bolin Limited and Bolin LLC, and that status alone would extinguish the notion Bolin LLC and Bolin Limited are completely "separate" entities.  Rather, at all relevant times, Mr. Lo represented to Plaintiffs that Bolin LLC and Bolin Limited are a single unified Bolin enterprise that was the counterparty to the oral and written contracts at issue.

In short, Mr. Lo is telling self-serving falsehoods when he claims that he exclusively communicated and entered into contracts with Plaintiffs on behalf of Bolin Limited.  The truth is that Plaintiffs negotiated with Mr. Lo in his capacity as

Bolin LLC's CEO and Bolin Limited's "employee"[6] and contracted with both Bolin LLC and Bolin Limited, which held themselves out and act as a single unified Bolin enterprise.

   **b.   Plaintiffs Have Established The Probable Validity Of Their Claims.**

   **i.   Defendants Have Not Shown That Plaintiffs' Breach Of Contract Claim Against Bolin LLC Is Unlikely To Succeed.**

Defendants do not challenge the legal standard applicable to Plaintiffs' motion or the elements of Plaintiffs' substantive claims.  Instead, they contend that Plaintiffs' breach of contract claim against Bolin LLC fails because (1) Bolin LLC is not a party to the contracts (Opp. at 15:6-26), and (2) Plaintiffs did not "set forth the basic terms of the contracts" or provide evidence that Bolin LLC breached them (Opp. at 15:27-16:20).  Their contentions are meritless.

As explained above, Bolin LLC **is** a party to the contracts.  Defendants' characterization of the six purchase orders as the contracts is misleading.  (Opp. at 15:12-15.)  Neither the parties nor the terms of the contracts are contained **exclusively** within the four corners of the written purchase orders.  Rather, the six repudiated contracts are "**oral and written** contract[s]" (App., at 3:7-8, 3:16-17, 4:9-10, 4:20-21, 5:5-6, and 5:14-15 [emphasis added].)  They are comprised not only of terms and conditions within the purchase orders themselves, but oral agreements by Mr. Lo that he was the CEO of a unified Bolin enterprise with which Plaintiffs were contracting as well as the Manufacturing Agreement and Warranty Statement signed by him as CEO of Bolin Technology.  (Reply Miall Decl. ¶4, Ex. A.)  But for these representations, Plaintiffs would not have contracted with Bolin Limited independent of Bolin LLC. (Reply Miall Decl. ¶7.)

---

[6] Mr. Lo downplays his role at Bolin Limited in his declaration as merely an "employee."  As explained in the following section, however, if the Court accepts Mr. Lo's contention that he contracted on behalf of Bolin Limited (and not Bolin LLC), then he did so as Bolin Limited's CEO (and not a low-level employee as implied by his declaration).

**PLAINTIFFS' REPLY ISO WRIT OF ATTACHMENT**

Despite Defendants' contention, Plaintiffs' evidence satisfies the remaining elements of a breach of contract claim against Bolin LLC.  Under the contracts, Plaintiffs fully performed by paying the $3,060,883.10 in contractual prepayments. Bolin LLC repudiated and materially breached those contracts.  Plaintiffs suffered damages in an amount exceeding the $3,060,883.10 in funds paid over because Bolin LLC and Bolin Limited have not provided the agreed upon cameras and keyboards ("equipment") or refunded the prepayment.  Bolin LLC's breach was a substantial factor in causing Plaintiffs' harm.  (App., at 11:18 - 12:2.)  BirdDog is entitled to the "immediate return of all consideration" and a writ of attachment from Bolin LLC securing same pending judgment. *Albergo v. Immunosyn Corp.*, 2011 WL 13177540, at *3 (S.D. Cal. Jul. 13, 2011) (granting writ of attachment on a showing of probable validity where Defendants "never returned the funds paid" under rescinded contracts).[7]

ii.    **Defendants Have Not Shown That Plaintiffs' Claims Against Mr. Lo Are Unlikely To Succeed.**

1.    ***Mr. Lo Need Not Be An Express Party To Written Contracts For Plaintiffs To Prevail***.

Defendants' argument that Mr. Lo "is not a party to any contract with Plaintiffs" (Opp. at 13:1-2) is legally irrelevant.  Plaintiffs do not assert a breach of contract claim against Mr. Lo.  The predicate claims that form the basis for Defendants' writ of attachment against Mr. Lo are claims for (1) conversion; (2) money had and received; and (3) violation of Penal Code section 496.

In California, a court may order a writ of attachment against "a natural person" if the attachment is based on "a claim which arises out of the conduct by the defendant of a trade, business, or profession."  CAL. CIV. PROC. CODE § 483.010(c).  Here,

---

[7] Defendants' claim that Bolin Limited, before repudiating, produced unspecified cameras pursuant to certain contracts (Opp., at 10:22-24) is both unsupported by competent and admissible evidence and is otherwise unavailing.  If a limited number of non-defective cameras were indeed produced, they belong to BirdDog and are as subject to attachment as the rest of BirdDog's stolen money.

Plaintiffs' claims for conversion, money had and received, and violation of Penal Code section 496 all arise out of Mr. Lo's statements and conduct as the CEO of Bolin LLC (as well as Bolin Limited).  (Reply Miall Decl. ¶¶ 2-4, Ex. A.)  Thus, there is no question that he engaged in those activities "for the purpose of livelihood or profit on a continuing basis."  *Benetton USA Corp. v. M3T Corp*, 2010 WL 4973477, at *4 (N.D. Cal. Dec. 1, 2010) ("Commercial claims against an individual must stem from the individual's trade, business or profession, which has been held to mean 'for the purpose of livelihood or profit on a continuing basis.'").

> iii.    Defendants May Be Held Liable Even If They (As Opposed To Bolin Limited) Did Not Directly Accept Plaintiffs' Prepayment.

Defendants' argument that Plaintiffs' conversion, money had and received, and Penal Code section 496 claims fail as a matter of law because they did not actually receive the prepayment is a red herring.  (Opp. at 17:6-18:8.)

Putting aside the glaring absence of admissible evidence rebutting Mr. Lo's and Bolin LLC's admitted control over the funds initially paid to the Bolin Defendants' account (Calnon Decl. Ex. H at 1, 6-8) neither a conversion nor Penal Code section 496 claim require Defendants to have personally taken Plaintiffs' prepayment to hold them liable.  To establish a claim for conversion, "[i]t is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership of the property . . . ."  *Shopoff & Cavallo LLP v. Hyon*, 167 Cal. App. 4th 1489, 1507 (2008).  Likewise, any "person . . . who conceals . . . withholds, or aids in concealing . . . or withholding any property from the owner, knowing the property to be so stolen or obtained" may be held liable for a Penal Code section 496 claim.  Cal. Penal Code § 496.

Here, Defendants concede that Bolin Limited received Plaintiffs' prepayment. (Opp. at 12:10-12; Lo Decl. ¶ 7 ["all of the payments made by BirdDog Australia pursuant to these purchase orders were wired directly into Bolin China's bank account"].)  For the reasons explained above, Bolin LLC and Bolin Limited conduct

business as the same enterprise: Bolin Technology.  And Mr. Lo is the CEO of both Bolin LLC and Bolin Limited.  As the highest ranking officer of Bolin Limited, Mr. Lo has more than sufficient control over its production and assets, including Plaintiffs' equipment and prepayment.  Indeed, Mr. Lo demonstrated his degree of control and involvement in aiding in concealing and withholding the prepayment when he refused to return it or fulfill the contracts despite Plaintiffs' repeated requests.  (Calnon Decl. ¶ 10 [Mr. Lo refused to return the prepayment], Ex. H [emails from Mr. Lo to Plaintiffs confirming receipt of the prepayment amount and informing them Bolin is "suspending all existing production"].)  *See, e.g.*, *Opera Gallery Trading Ltd. v. Golden Trade Fine Art Inc.*, 2015 WL 12912362, at *2 (C.D. Cal. July 28, 2015) (granting summary judgment on conversion claim in favor of plaintiffs who "ha[d] the right to possess their respective $400,000 paid to [defendant] because they never received the paintings" and defendant admitted to "appropriating the funds and . . . [that] it has no intention of returning them"); *Telerent Leasing Corp. v. Pine State Plumbing & Heating, Inc.*, 231 F. Supp. 2d 352, 359 (D. Me. 2002) (ordering "an attachment in the amount of $580,941 be placed jointly and severally upon the assets and property of Defendants Pine State and Marcissco [the CEO of Pine State] to secure satisfaction of any judgment ultimately to be entered" where "Plaintiff claims damages in the amount of $580,941"); *accord also Albergo*, 2011 Wl 13177540, at *3 (granting writ of attachment against controlling individual who directed money to be paid into company account).

It is for those same reasons that Bolin LLC and Mr. Lo also received the prepayment even though Plaintiffs sent it to a Bolin Limited bank account. Ultimately, Defendants had the requisite control over Plaintiffs' prepayment to be held liable for a claim of conversion and aided in concealing and withholding the prepayment.

    **c.**   **<u>Plaintiffs Have Established They Are Likely To Overcome Defendants' Defenses.</u>**

i.     **Plaintiffs' Tort Claims Are Not Barred By The Economic Loss Rule**.

Defendants argue that Plaintiffs' claims for conversion, money had and received, and violation of Penal Code section 496 are "barred by California's economic loss rule." (Opp. at 18:19-19:18.) Not true. Their summary of the economic loss rule is misleading, and their argument that it bars Plaintiffs' conversion, money had and received, and Penal Code section 496 claims is meritless.

*First*, tort claims are permitted in contract cases where "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999). The California Supreme Court expressly acknowledged that where "conversion accompanies a breach of contract, the economic loss rule does not bar the tort claim." *Bentham v. Bingham Law Group*, 2013 WL 12186171, at *12 (S.D. Cal. Nov. 15, 2013) (citing *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004)). For the reasons explained in Plaintiffs' Motion and above, there is sufficient evidence to support a claim for conversion against Defendants.

*Second*, the economic loss rule does not apply to Plaintiffs' Penal Code section 496 and money had and received claims. "Quite simply, the economic loss rule 'prevents the law of contract and the **law of tort** from dissolving into one another.'" *Robinson Helicopter Co., Inc.*, 34 Cal. 4th at 988 (emphasis added). Under the economic loss rule, "purely economic losses are not recoverable in **tort**." *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. 2013) (emphasis added). In other words, the economic loss rule does not bar non-tort claims. A Penal Code section 496 claim is not a tort claim. It is a statutory one. And a money had and received claim is "an action on an implied contract" – not a tort. *Lincoln Nat'l Life Ins. Co. v. McClendon*, 230 F. Supp. 3d 1180, 1188 (C.D. Cal. 2017).

*Third*, Mr. Lo cannot avail himself to the economic loss rule. "[T]he economic loss rule prohibits the Court from awarding tort damages for contractual harms." *Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*, 2020 WL 109391, at \*4 (N.D. Cal. Jan. 9, 2020). Plaintiffs did not assert a breach of contract claim against Mr. Lo. (Dkts. 1 [Complaint], 34 [First Amended Complaint].) Indeed, Defendants repeatedly argue in their Opposition that Mr. Lo was not a party to the contracts. (*See, e.g.*, Opp. at 7:17-20 and 12:28-29:2.) Therefore, Plaintiffs do not seek to recover tort damages for a breach of contract claim against Mr. Lo. As such, the economic loss rule does not apply to him.

### d. Defendants' Remaining Arguments Are Red Herrings.

Defendants also argue that Plaintiffs' Motion should be denied because (1) Plaintiffs' contention that Defendants are transferring their assets to China is "speculative" (Opp. at 19:19-20:20), (2) Plaintiffs' request for "$3.5 million each from both Mr. Lo and 2082" is "non-sensical" (Opp. at 20:21-21:4), (3) the operative contracts do not contain a claim for attorneys' fees and Plaintiffs' request for $420,000 in attorneys' fees and costs are unsupported by any evidence (Opp. at 21:5-9.). None of these arguments have merit.

*First*, Plaintiffs need not demonstrate that there is a high likelihood that Defendants' assets will dissipate to obtain an attachment. *See* Cal. Civ. Proc. Code Sec. 484.090. *Second*, if Defendants are found jointly and severally liable for the $3.5 million, Plaintiffs are entitled "to collect the entirety of the [judgment] from [one defendant] alone." *See, e.g.*, *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 43 F. 4th 263, 275-76 (2nd. Cir. 2022); *Maaco Franchising, LLC v. 5296, LLC*, No. EDCV162218GWSPX, 2017 WL 10543655, at \*11 (C.D. Cal. Apr. 24, 2017) (granting applications for right to attach orders for the property of the three defendants each separately in the full amount requested by plaintiff). *Third*, Defendants did not cite any authority for their contention that the amount of attorneys' fees and costs requested needs to be supported by admissible evidence.

507353720.7

The relevant statute does not require Plaintiffs to submit evidence as it is within the discretion of the Court to estimate reasonable costs and attorneys' fees. CAL. CIV. PROC. CODE § 482.110. Regardless, Plaintiffs are entitled to attorneys' fees and costs upon prevailing on their Penal Code section 496 claim and the amount requested is less than 14% ($420,000 / $3,060,883.10) of the prepayment. CAL. PENAL CODE § 496(c) (authorizing award of "costs of suit" and "reasonable attorney's fees"); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F. 2d 268, 272 (9th Cir. 1989) (explaining the 25% attorneys' fees benchmark is widely accepted in the Ninth Circuit for purposes of calculating the amount in controversy for removal purposes).

## III.   THE DEFAULT UNDERTAKING IS SUFFICIENT

Defendants contend that the default $10,000 undertaking is insufficient for two (2) reasons: (1) Plaintiffs have not established the probable validity of any claim, and (2) the amount of "Plaintiffs' requested attachment would be financially ruinous" to Defendants. (Opp. at 22:6-10.) Their contentions are without merit.

As explained above, Plaintiffs have demonstrated a high probability of prevailing, and Defendants continue to withhold more than $3 million in Plaintiffs' funds. As such, the default undertaking in the amount of $10,000 is appropriate.

Defendants' argument that the amount of the "requested attachment would be financially ruinous" is not relevant to determining the appropriate amount of the undertaking. In *N. Hollywood Marble Co. v. Super. Ct.*, the defendant made the same argument: defendant claimed that "if all tools and materials were attached the defendant would have to cease business" and have a "devastating effect . . . upon defendant's inventory, materials, and tools . . . ." 157 Cal. App. 3d 683, 687 (1984). In that case, the court held that the defendant's argument was "not a legitimate basis to increase the understanding for the purpose of protecting against 'wrongful attachment.'" *Id.* at 692-693.

The undertaking should be "the amount [the court] determines to be the probable recovery for wrongful attachment if it is ultimately determined that the

attachment is wrongful." CAL. CIV. PROC. CODE § 489.220.  Unlike the cases in their Opposition, Defendants do not provide any idea, let alone a concrete figure, of what their "probable recovery for wrongful attachment" would be.[8] *See Am. Student Fin. Grp., Inc. v. Aequitas Cap. Mgmt., Inc*., 2014 WL 12772263, at *4 (S.D. Cal. June 18, 2014) (ordering undertaking of $240,000 [roughly 10% of the attachment] after defendants objected and demonstrated "that [they] 'could use the $2.4 million to generate returns of 10 to 25% or more per year, resulting in losses in many cases of more than $600,000 in a year'").  Thus, the Court should overrule Defendants' objection and order the default undertaking.

## IV.   ALTERNATIVELY, THE COURT SHOULD CONTINUE THE HEARING AND PERMIT PLAINTIFFS TO CONDUCT SPECIFIED DISCOVERY

As described above and herein, Plaintiffs have more than satisfied the standard for granting a writ of attachment.  But should the Court find there to be evidentiary questions warranting further examination, Plaintiffs respectfully request the Court allow them to conduct expedited discovery, including document requests and depositions, on the contentions made by Defendants. *PSKW, LLC v. 3PEA Int'l, Inc*., 2015 WL 12661952, at *3 (N.D. Cal. Aug. 7, 2015) (granting leave to serve expedited discovery on defendant in relation to plaintiff's writ of attachment).

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the motion be granted in its entirety and that attachments issue in accordance with the terms requested therein.

/ / /

/ / /

---

[8] Defendants' request to provide further briefing on this issue should be denied. (Opp. at 22:10, fn 12.)  As the Parties stipulated to continue Defendants' deadline to file their Opposition, they have had more than sufficient time to assess and explain their probable loss if the attachment is subsequently deemed wrongful.

**PLAINTIFFS' REPLY ISO WRIT OF ATTACHMENT**

1

2                                      **K&L GATES LLP**

3      Dated:  January 16, 2024         By: _____

4                                            Ryan Q. Keech
                                             Gabriel M. Huey
5                                            Kevin G. Sullivan

6
                                             *Attorneys for Plaintiffs*
7

8

9

10              **CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1**

11          The undersigned, counsel of record for Plaintiffs certifies that this brief

12     contains 5,059 words, which complies with the word limit of L.R. 11-6.1.

13

14

15

16                                     **K&L GATES LLP**

17
       Dated:  January 16, 2024         By: _____
18                                           Ryan Q. Keech

19
                                             *Attorneys for Plaintiffs*
20

21

22

23

24

25

26

27

28
       507353720.7
                                       - 16 -
                            **PLAINTIFFS' REPLY ISO WRIT OF ATTACHMENT**