1  RYAN Q. KEECH (SBN 280306)
   Ryan.Keech@klgates.com
2  GABRIEL M. HUEY (SBN 291608)
   Gabriel.Huey@klgates.com
3  KEVIN G. SULLIVAN (SBN 341596)
   Kevin.Sullivan@klgates.com
4  K&L GATES LLP
   10100 Santa Monica Boulevard, 8th Floor
5  Los Angeles, California  90067
   Telephone: 310.553.5000
6  Fax No.:    310.553.5001

7  Attorneys for Plaintiffs

8

9                  UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11  BIRDDOG TECHNOLOGY                    Case No. 2:23-cv-09416 CAS (AGRx)
    LIMITED, an Australian company;
12  and BIRDDOG AUSTRALIA PTY,            **PLAINTIFFS BIRDDOG**
    LTD, an Australian company,           **TECHNOLOGY LIMITED'S AND**
13                                         **BIRDDOG AUSTRALIA PTY LTD'S**
                   Plaintiffs,             **OPPOSITION TO DEFENDANT**
14                                         **JENNIFER LEE'S MOTION TO**
            v.                             **DISMISS**
15
    2082 TECHNOLOGY, LLC DBA              *[Filed concurrently with Opposition to*
16  BOLIN TECHNOLOGY, a California        *Defendant's Request for Judicial Notice]*
    limited liability company; BOLIN
17  TECHNOLOGY CO., LTD., a Chinese
    limited company; HOI "KYLE" LO, an    Judge:      Hon. Christina A. Snyder
18  individual; JENNIFER LEE, an          Date:       March 11, 2024
    individual; and DOES 3 through 25,    Time:       10:00 a.m.
19  inclusive,                            Courtroom:  8D
20                 Defendants.
21                                        Complaint Filed:  November 7, 2023
22                                        FAC filed:        January 12, 2024
23

24

25

26

27

28
                                  1

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.      INTRODUCTION ....................................................................................6

II.     FACTUAL BACKGROUND ...................................................................8

III.    JUDICIAL STANDARD ........................................................................10

IV.     ARGUMENT .........................................................................................11

    A.    BirdDog Properly Alleges Ms. Lee Was A Joint Torteasor. ...............11

    B.    BirdDog Pleads Sufficient Facts To State DTSA And CUTSA Claims Against Ms. Lee. ...............................................................................13

    C.    BirdDog Adequately Pleads Its Claims For Conversion, Violations Of Penal Code Section 496, And Money Had And Received. .................17

    D.    BirdDog Adequately Pleads Its Claim For Intentional Interference With Prospective Economic Advantage. ...............................................19

    E.    BirdDog Adequately Pleads Its Claim For Violation Of California Business & Professions Code § 17200, Et Seq...................................21

    F.    BirdDog's Tort And Penal Code Section 496 Claims Are Not Barred By The Economic Loss Rule. ............................................................23

    G.    BirdDog's Claims Are Not Subject To A Heightened Pleading Standard...........................................................................................24

V.      CONCLUSION .....................................................................................24

**PLAINTIFFS' OPPOSITION TO JENNIFER LEE'S MOTION TO DISMISS**

507436988.6

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Hammarberg,*
  103 Cal. App. 2d 872, 879 (1951) ................................................................ 11

*Appel v. Bos. Nat'l Title Agency, LLC,*
  2019 WL 3858888, at *8 (S.D. Cal. Aug. 15, 2019) ...................................... 11

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
  7 Cal. 4th 503, 511 (1994) ............................................................................ 11

*Arthur J. Gallagher & Co. v. Tarantino,*
  498 F. Supp. 3d 1155, 1171 (N.D. Cal. 2020) .............................................. 15

*Associated Builders & Contractors, Inc. v. San Francisco Airports
  Com.,*
  21 Cal.4th 352, 362 (1999) ........................................................................... 21

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 555-56 (2007) ......................................................................... 10

*Bentham v. Bingham Law Group,*
  2013 WL 12186171, at *12 (S.D. Cal. Nov. 15, 2013) .................................. 23

*Bischma v. Home Loan Center, Inc.,*
  198 Cal. App. 4th 230, 252 (2011) ................................................................ 22

*Brown v. Grimes,*
  192 Cal. App. 4th 265, 28 (2011) .................................................................. 17

*Cahill v. Liberty Mut. Ins. Co.,*
  80 F.3d 336, 37-38 (9th Cir. 1996) ................................................................ 10

*Cerra v. Blackstone,*
  172 Cal. App. 3d 604, 609 (1985) ................................................................. 18

*Eclectic Properties East, LLC v. Marcus & Millichap Co.,*
  751 F.3d 990, 996 (9th Cir. 2014) ................................................................. 10

*Edwards v. Arthur Andersen LLP*
  44 Cal. 4th 937, 944 ...................................................................................... 20

3

*Erlich v. Menezes*,
   21 Cal. 4th 543, 552 (1999)............................................................................23

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312, 1327 (Fed. Cir. 2009) ...........................................................24

*GA Telesis, LLC v. Salesforce.com, Inc.*,
   2021 WL 5178803, at *1 (N.D. Cal. Nov. 8, 2021)......................................13

*Hall v. Time Inc.*,
   158 Cal. App. 4th 847, 854 (2008).................................................................22

*Hybrid Financial Ltd. v. Hammitt, Inc.*,
   2023 WL 3150092, at *1 (C.D. Cal. Mar. 6, 2023) ......................................10

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120, 1126 (9th Cir. 2009)..............................................................24

*Klein v. Chevron U.S.A., Inc.*,
   202 Cal. App. 4th 1342, 1383, 137 (2012).....................................................22

*Kwikset Corp. v. Superior Court*,
   51 Cal.4th 310, 322 (2011).............................................................................21

*Lashify, Inc. v. Urb. Dollz LLC*,
   2022 WL 18278638 (C.D. Cal. Dec. 13, 2022) .............................................19

*Lee v. Hanley*,
   61 Cal. 4th 1225, 1240 (2015)........................................................................17

*Lincoln Nat'l Life Ins. Co. v. McClendon*,
   230 F. Supp. 3d 1180, 1188 (C.D. Cal. 2017)................................................23

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115, 135 (2007).................................................................21

*Minor v. Baldridge*,
   123 Cal. 187, 190 (1898)................................................................................17

*Opera Gallery Trading Ltd. v. Golden Trade Fine Art Inc.*,
   2015 WL 12912362, at *2 (C.D. Cal. July 28, 2015) ....................................18

*Paulus v. Bob Lynch Ford, Inc.*,
   139 Cal. App. 4th 659, 681 (2006).................................................................22

- 4 -

*Physician's Surgery, Inc.,* 2018 WL 1456697 at *9 .................................................. 14

*Physician's Surrogacy, Inc. v. German,*
  2018 WL 638229, (S.D.Cal., 2018) ............................................................. 14, 15

*Rains v. Arnett,*
  189 Cal. App. 2d 337, 334 (1961) ..................................................................... 17

*Reprod. Health Servs. v. Strange,*
  3 F.4th 1240, 1258 (11th Cir. 2021) ................................................................. 10

*Shopoff & Cavallo LLP v. Hyon,*
  167 Cal. App. 4th 1489, 1507 (2008) ............................................................... 18

*Siry Investment, L.P. v. Farkhondehpour,*
  13 Cal. 5th 333, 355 (2022) .............................................................................. 17

*TFT-LCD (Flat Panel) Antitrust Litig.,* 599 F.Supp.2d 1179, 1184
  (N.D. Cal. 2009) ................................................................................................ 10

*Vendavo, Inc. v. Price*
  *f(x) AG*, 2018 WL 1456697, (N.D. Cal. Mar. 23, 2018) ............................. 14, 15

*WeBoost Media S.R.L. v. LookSmart Ltd.,*
  2014 WL 2621465, at *7 (N.D.Cal., 2014) ....................................................... 23

*Wolf Designs, Inc. v. DHR Co.,*
  322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) .................................................. 19

**Statutes**

18 U.S.C. § 1839(6) ................................................................................................ 16

**Court Rules**

Fed. R. Civ. P. 8 ....................................................................................................... 8

Fed. R. Civ. P. 8(a) ................................................................................................ 24

Fed. R. Civ. P. 8(a)(2) ........................................................................................... 10

Fed. R. Civ. P. 9(b) ........................................................................................... 8, 24

**PLAINTIFFS' OPPOSITION TO JENNIFER LEE'S MOTION TO DISMISS**

## I. **INTRODUCTION**

Attempting to avoid accountability for her misdeeds, Defendant Jennifer Lee ("Ms. Lee") endeavors to point the finger at the other defendants—2082 Technology LLC dba Bolin Technology ("Bolin LLC") and its manufacturing arm Bolin Technology Co. Ltd. ("Bolin Limited" together with Bolin LLC, "Bolin Defendants") and Hoi "Kyle" Lo ("Mr. Lo").

The truth of the matter is that Ms. Lee only points the finger at her co-conspirators.  What Ms. Lee attempts to hide from the Court is that she, along with her husband, Mr. Lo, control the Bolin Defendants as their Chief Operating Officer and Chief Executive Officer, respectively. And further, the Defendants[1] together formulated and effectuated a plan to convince Plaintiffs BirdDog Technology Limited and BirdDog Australia Pty Ltd ("Plaintiffs" or "BirdDog") to entrust them with its funds and highly confidential information, hold and brazenly misuse and misappropriate the same to apply pressure on BirdDog, create competing cameras, and steal BirdDog's clients and economic relationships for themselves.

Contrary to her protestations, Ms. Lee was not some innocent party or passive participant.  She was a critical player working with the other defendants from the very inception of their scheme.  This wide-ranging, unlawful and systematic scheme included Defendants' attempts to take control of BirdDog and culminated in (1) their theft of more than $3,000,000 in Plaintiffs' money pursuant to contracts for the supply of cameras (FAC, ¶¶ 4-6; 45-53; 54-67; 68-83); together with (2) their ongoing misappropriation of reams of BirdDog's highly valuable confidential and proprietary information obtained in violation of a comprehensive nondisclosure agreement and the trade secrets laws of the United States (FAC, ¶¶ 4-6, 28-33; 34-38; 40-67; 84-103).

---

[1] "Defendants" refers collectively to Bolin LLC, Bolin Limited, Mr. Lo, and Ms. Lee.

**PLAINTIFFS' OPPOSITION TO JENNIFER LEE'S MOTION TO DISMISS**
507436988.6

BirdDog's pleading shows that Bolin LLC, Bolin Limited, Mr. Lo and Ms. Lee carried out this unlawful scheme by, first, gaining BirdDog's trust. Together, they (i) represented that they had "over 15 years' experience" that BirdDog could use in connection with its developing and evolving camera manufacturing needs (FAC, ¶¶ 35-36, 38), and (ii) executed a comprehensive nondisclosure agreement acknowledging their receipt of the "valuable and proprietary information of BirdDog" and requiring Defendants to "maintain the confidential nature of" and "not use or disclose or reproduce [such information]…for any purpose" without BirdDog's consent. (FAC, ¶¶ 37, 84-88.)

Next, Ms. Lee and Mr. Lo (i) induced BirdDog executives to meet them in Southern California for the purpose of acquiring BirdDog confidential information and trade secrets (under, as it would turn out, false pretenses), and (ii) convinced BirdDog to enter into agreements and pay Ms. Lee, together with Bolin Limited, Bolin LLC, Mr. Lo, over $3,000,000 pursuant to those contracts. (FAC, ¶¶ 40-53, 68-83.) Finally, they pounced: when BirdDog rejected Defendants' hostile takeover overtures (FAC, ¶¶ 54-59), Defendants repudiated each of the agreements, stole BirdDog's money, misappropriated BirdDog's confidential information and trade secrets, and utilized BirdDog's assets to develop, manufacture and ultimately to sell competing cameras. (FAC, ¶¶ 60-67.)

Ms. Lee's Motion does not address, let alone answer for, her role in the scheme. She attempts to deflect culpability by stating she "was not a party to any alleged contracts with Plaintiffs" (Mot., at 8:2) and that BirdDog's claims against her fail because the "claims in general are all premised on the existence of a contractual relationship with [Bolin LLC] which simply did not exist[.]" (Mot., at 8:4-5.) Ms. Lee appears to be responding to a different complaint altogether. BirdDog never alleged Ms. Lee was a party to the contracts and brings no claims for breach of contract against her. (See FAC.) Instead, BirdDog alleges Ms. Lee conspired with

the other defendants to effectuate their unlawful scheme.  (FAC, ¶¶ 4-6; 10-14; 20; 36-45; 48-53; 54-67; 68-83.)  Ms. Lee ignores these facts and resorts to pointing fingers while falsely claiming that BirdDog's pleading is "devoid of the necessary facts," "consist[s] solely of conclusory allegations," and "fail[s] to allege…claims consistent" with Rules 8 and 9(b).  (Mot., at 8:11-13.)  Ms. Lee then contends that the FAC "improperly attempt[s] to transform a contract case into a tort action[.]" (Mot., at 8:23-25.)

Ms. Lee's factual denials are not susceptible to resolution on a motion to dismiss.  Ms. Lee's invitation to find in her favor on disputed issues of fact, together with her attempt to point the finger at her *co-conspirators* and failure to meaningfully address any of BirdDog's claims, is telling.  The Motion should be denied in its entirety so Ms. Lee can be held accountable for her individual actions and prominent role in Defendants' illicit scheme.

## II.   **FACTUAL BACKGROUND**

Based in Australia, BirdDog is an internationally-renowned vendor of streaming video technology.  (FAC ¶ 2.)  Bolin LLC and Bolin Limited are each controlled by Chief Executive Officer Mr. Lo and managed by Chief Operating Officer Ms. Lee, with Bolin Limited as the manufacturing arm of Bolin LLC.  (FAC ¶ 3.)  Mr. Lo and Ms. Lee control and manage the Bolin Defendants from their home in Arcadia, California as well as their offices in Brea, California.  (FAC ¶ 3, 10.)

Due to Mr. Lo and Ms. Lee's representations, BirdDog agreed to engage Bolin LLC and Bolin Limited, signed them to a comprehensive nondisclosure agreement (the "Nondisclosure Agreement"), and started an economic relationship that would eventually result in BirdDog sharing sensitive confidential information and trade secrets with the Defendants and with the Bolin Defendants becoming BirdDog's primary supplier of camera products.  (FAC ¶¶ 4-5; 40-42; 92-95; and 101.)

**PLAINTIFFS' OPPOSITION TO JENNIFER LEE'S MOTION TO DISMISS**

On numerous occasions between 2019 and 2022 BirdDog Chief Executive Dan Miall ("Mr. Miall") met Mr. Lo and Ms. Lee at, among other locations, their personal residence in Arcadia, California and at the offices of the Bolin Defendants in Brea, California. (FAC ¶ 41-42.)  During these meetings, Mr. Lo together with Ms. Lee conducted negotiations for agreements with and otherwise induced Mr. Miall to provide them and the Bolin Defendants with Plaintiffs' competitively sensitive confidential and proprietary information relating to BirdDog's product portfolio and product development, including Plaintiffs' trade secrets. (FAC ¶ 41-42.)

By 2023, it had become clear that Bolin LLC, Bolin Limited, Mr. Lo and Ms. Lee had devised a plan to convince BirdDog to entrust them with BirdDog's funds and highly confidential information, hold and brazenly misuse and misappropriate those funds and highly sensitive information to apply pressure on BirdDog, create competing cameras and steal BirdDog's clients and economic relationships for themselves. (FAC ¶ 4-6; 40-42; 45-53; 54-67; 68-83.) Defendants took these actions as part of their scheme to become BirdDog by misappropriating BirdDog's confidential and proprietary information to produce and distribute competing camera products.  (FAC ¶ 63.)

Then, in 2023, when BirdDog rejected Defendants' hostile takeover overtures (FAC, ¶¶ 54-59), Defendants repudiated each of their existing agreements, stole BirdDog's money, misappropriated BirdDog's confidential information and trade secrets, and utilized BirdDog's assets to develop, manufacture and ultimately to sell competing cameras.  (FAC, ¶¶ 60-67.)

It was *only* due to BirdDog's good faith trust in Mr. Lo and Ms. Lee's repeated representations that BirdDog paid these funds to Defendants and provided them with its trade secrets.  (FAC, ¶¶ 36, 38, 46-47, 49-50, 52-53.)  Then, when BirdDog simply requested the return of its more than $3,000,000 in funds, the Bolin Defendants, Mr. Lo and Ms. Lee flatly refused. (FAC, ¶¶ 6, 109, 115, and 118.)

**PLAINTIFFS' OPPOSITION TO JENNIFER LEE'S MOTION TO DISMISS**

Due to Mr. Lo and Ms. Lee's conduct, BirdDog has been unable to fulfill orders and ship products and is further being damaged through the Defendants' unlawful possession and use of BirdDog's confidential and proprietary information (illicitly obtained through Mr. Lo and Ms. Lee (FAC ¶¶ 42, 48, 51, 92, and 93)) to compete with BirdDog in the marketplace.  (FAC ¶ 67.)

### III.   JUDICIAL STANDARD

A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under Rule 12(b)(6), dismissal is only appropriate when a party "fail[s] to state a claim upon which relief can be granted."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  In other words, the complaint must only "contain sufficient factual allegations 'to raise a right to relief above the speculative level.'"  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F.Supp.2d 1179, 1184 (N.D. Cal. 2009).

As BirdDog has previously pointed out, "question[s] of fact [are] inappropriate for resolution on a motion to dismiss."  *Hybrid Financial Ltd. v. Hammitt, Inc.*, 2023 WL 3150092, at *1 (C.D. Cal. Mar. 6, 2023) (*quoting Greenwich Ins. Co. v. Rodgers*, 729 F. Supp. 2d 1158, 1164 (C.D. Cal. 2010)).  The court must, rather, accept all allegations of material fact as "true and construed in the light most favorable to the nonmoving party."  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 37-38 (9th Cir. 1996); *accord Reprod. Health Servs. v. Strange*, 3 F.4th 1240, 1258 (11th Cir. 2021) (court must "accept as true the allegations in the pleadings of the non-moving party and draw all reasonable inferences in that party's favor"), *rev'd on other grounds*, 22 F.4th 1346 (11th Cir. 2022).  A court should "'assume the [] veracity' of 'well pleaded factual allegations' and 'determine whether they plausibly give rise to an entitlement of relief.'" *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citations omitted)).

**PLAINTIFFS' OPPOSITION TO JENNIFER LEE'S MOTION TO DISMISS**

## IV.   ARGUMENT

### A. BirdDog Properly Alleges Ms. Lee Was A Joint Torteasor.

Ms. Lee's denial of any involvement is unavailing and contradicts the FAC. The pleading shows the nature of her involvement, both directly and as a co-conspirator. Even if a particular defendant was not the perpetrator of a particular tort, that defendant can be held liable if she was a conspirator. "By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994). "[T]he major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.'" *Id.* (quoting *Doctors' Co. v. Superior Ct.*, 49 Cal. 3d 39, 44 (1989)). In order for parties to be constituted as joint tortfeasors, the following elements must exist: "(1) [a] concert of action; (2) [a] unity of purpose or design; (3) [t] wo or more defendants working separately but to a common purpose and each acting with the knowledge and consent of the others." *Alexander v. Hammarberg*, 103 Cal. App. 2d 872, 879 (1951); *see also Appel v. Bos. Nat'l Title Agency, LLC*, 2019 WL 3858888, at *8 (S.D. Cal. Aug. 15, 2019) (finding plaintiffs adequately alleged the two defendants were joint tortfeasors where defendants refused to return plaintiff's escrow funds).

While BirdDog's breach of contract claims are only against the Bolin Defendants, Ms. Lee, together with Mr. Lo and the Bolin Defendants, conspired to effectuate various wrongs against BirdDog. Ms. Lee attempts to avoid accountability for her misdeeds by pointing the finger at the other defendants (her coconspirators) while ignoring her pivotal role in their scheme. Ms. Lee, both in her individual capacity and through her control of the Bolin Defendants effectuated a wide-ranging, unlawful and systematic scheme to take control of BirdDog. Because of Mr. Lo and

- 11 -

Ms. Lee's representations, BirdDog agreed to engage Bolin LLC and Bolin Limited, signed them to the Nondisclosure Agreement, and started an economic relationship that would eventually result in BirdDog sharing sensitive confidential information and trade secrets with the Defendants and with the Bolin Defendants becoming BirdDog's primary supplier of camera products. (FAC, ¶¶ 4; 40-42; 92-95; and 101.)

This scheme resulted in (1) Defendants' theft of more than $3,000,000 in Plaintiffs' money pursuant to six contracts for the supply of cameras (FAC, ¶¶ 4-6; 45-53; 54-67; 68-83); together with (2) Defendants' ongoing misappropriation of reams of Plaintiffs' highly valuable confidential and proprietary information obtained in violation of a comprehensive nondisclosure agreement and the trade secrets laws of the United States (FAC, ¶¶ 4-6, 28-33; 34-38; 40-67; 84-103).

To effectuate this scheme, Ms. Lee and the other defendants induced (i) BirdDog executives to meet them in Southern California (including at Mr. Lo and Ms. Lee's personal residence for dinner) for the purpose of acquiring BirdDog confidential information and trade secrets (under, as it would turn out, false pretenses), and (ii) BirdDog to enter into six agreements and pay Ms. Lee, together with Bolin Limited, Bolin LLC, and Mr. Lo, over $3,000,000 pursuant to those contracts (FAC, ¶¶ 40-53, 68-83). Finally, when BirdDog rejected Defendants' hostile takeover overtures (FAC, ¶¶ 54-59), Defendants repudiated each of the agreements, stole BirdDog's money, misappropriated BirdDog's confidential information and trade secrets, and utilized BirdDog's assets to develop, manufacture and ultimately to sell competing cameras. (FAC, ¶¶ 60-67.)

In fact, it was *only* due to BirdDog's good faith trust of Mr. Lo and Ms. Lee's repeated representations that BirdDog paid these funds to Defendants and provided them with its trade secrets. (FAC, ¶¶ 36, 38, 46-47, 49-50, 52-53.) Then, when BirdDog simply requested the return of its more than $3,000,000 in funds, the Bolin Defendants, Mr. Lo and Ms. Lee flatly refused. (FAC, ¶¶ 6, 109, 115, and 118.) And

- 12 -

now, due to Mr. Lo and Ms. Lee's conduct, BirdDog has been unable to fulfill orders and ship products and is further being damaged through the Defendants' unlawful possession and use of BirdDog's confidential and proprietary information (illicitly obtained through Mr. Lo and Ms. Lee (FAC ¶¶ 42, 48, 51, 92, and 93)) to compete with BirdDog in the marketplace.  (FAC ¶ 67.) In short, it would appear Mr. Lo and Ms. Lee's unlawful scheme is paying off.

Not only does Ms. Lee have liability individually for her role in Defendants' scheme but because Ms. Lee endeavored with the other defendants in (1) a concert of action; under (2) a unity of purpose or design; while (3) working to a common purpose and each acting with the knowledge and consent of the others, BirdDog sufficiently alleges that Ms. Lee is a joint tortfeasor of the other defendants.

## B. **BirdDog Pleads Sufficient Facts To State DTSA And CUTSA Claims Against Ms. Lee.**

Ms. Lee glosses over BirdDog's trade secret claims, stating BirdDog "fails to tie them specifically to Ms. Lee[.]"  (Mot., at 13:9-10.)  BirdDog not only ties its trade secret claims directly to Ms. Lee individually and in her role as a coconspirator but BirdDog adequately alleges (1) the existence and ownership of its trade secrets (including the Technical Trade Secrets and Economic Trade Secrets); (2) misappropriation of its trade secrets; and (3) damage caused by Defendants' misappropriation.  (FAC, ¶¶ 27-33; 89-103); *see GA Telesis, LLC v. Salesforce.com, Inc.*, 2021 WL 5178803, at *1 (N.D. Cal. Nov. 8, 2021) (elements of DTSA and CUTSA claims).  No doubt aware of this, Ms. Lee then confines her arguments to claims that contradict the pleadings, claiming that BirdDog failed to (1) delineate between any of the Defendants such that it is unclear which individual or entity committed which alleged act of misappropriation (Mot. at 11:28-12:2); (2) identify the trade secrets that Ms. Lee misappropriated as the trade secret was not disclosed with a sufficient degree of particularity (12:14-17); and (3) allege that Ms. Lee

PLAINTIFFS' OPPOSITION TO JENNIFER LEE'S MOTION TO DISMISS

misappropriated any of BirdDog's trade secrets. (Mot. at 13:4-5.)  None of this is accurate.

### i. Ms. Lee's Defendant Delineation Argument Contradicts The Pleadings.

As BirdDog's trade secret claims are against all Defendants, and Ms. Lee conspired with the other defendants in their scheme to misappropriate these trade secrets, the FAC discusses each defendant and their role in this scheme. However, seemingly without shame, Ms. Lee asserts that BirdDog fails to delineate between the Defendants in its FAC as it pertains to BirdDog's trade secrets claims. (Mot. at 11:27-12:2.)  As supposed support for this proposition, Ms. Lee cites to *Physician's Surrogacy, Inc. v. German*, 2018 WL 638229, (S.D. Cal. Jan. 31, 2018), and *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, (N.D. Cal. Mar. 23, 2018).  In *Physician's Surgery, Inc.*, the court was unable "to draw a reasonable inference about which individual Defendant [was] liable for which acts[]" because the plaintiffs failed to identify when the conduct occurred and used "legal conclusions couched as a factual allegation[:]" "Defendants, and each of them, are willfully and improperly using [the alleged trade secrets] and intend to disclose and use [the alleged trade secrets]" 2018 WL 1456697 at *9.  In *Vendavo*, the court granted a motion to dismiss a trade secrets claim because the complaint failed to distinguish between defendants who were a German Corporation and a Delaware Corporation. *Vendavo, Inc.*, 2018 WL 1456697 at *4.

However, BirdDog's FAC is distinguishable.  Ms. Lee's actions (along with those of her co-conspirators) are described in the FAC in detail.  Unlike the cases cited by Ms. Lee, BirdDog describes each defendant in relation to the DTSA and CUTSA claims throughout the FAC.  In addition to extensive allegations that Bolin LLC, Bolin Limited, Mr. Lo and Ms. Lee were and are joint tortfeasors (FAC, ¶¶ 16, 20, 34-39, 40-43, 44-67), BirdDog explicitly alleges that Ms. Lee participated in an

**PLAINTIFFS' OPPOSITION TO JENNIFER LEE'S MOTION TO DISMISS**

unlawful scheme to induce BirdDog to provide them with and improperly acquire, use, and disclose trade secrets not only at the Bolin Defendants' California headquarters but also at Ms. Lee's personal residence. (FAC ¶¶ 42, 48, 51, 92, and 93.) *Vendavo* and *Physician's Surrogacy, Inc.* are inapposite.

### ii.  BirdDog Sufficiently Identified Its Trade Secrets.

Ms. Lee's belief that BirdDog must provide every detail of every trade secret it alleges (and thus destroy its trade secrets) in order to survive a motion to dismiss (Mot. at 11:27-13:24) is contrary to law.  BirdDog need not "spell out the details of the trade secret" in its pleading.  *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1171 (N.D. Cal. 2020).  Rather, BirdDog need only claim "something beyond general knowledge" sufficient to "put the defendant on notice of what the theft is about."  *Id.* (sufficient for plaintiff to allege misappropriation of "current Gallagher client lists, which include information on the value of the clients' claims over the years, client contacts, internal notes regarding particular clients' expectations and preferences; (2) internal Gallagher documents and strategies regarding client policy structuring, client premium reports, and extensive budget and other financial information regarding Gallagher's business; and (3) client retention and renewal strategies and information, among other confidential and/or trade secret information.").  The standard of disclosure is far below what BirdDog did here with respect to the Technical and Economic Trade Secrets alleged in the FAC.  (FAC ¶¶ 29, 30.)  For example, BirdDog provides the following description for one of its Technical Trade Secrets:

- a proprietary hardware-based application allowing for implementation of high-bandwidth Network Device Interface (NDI) capabilities facilitating networked video systems to identify and communicate with each other and encode, transmit and receive multiple streams of broadcast-quality, low-latency video and audio in real time[.]"  (FAC ¶ 29.)

**PLAINTIFFS' OPPOSITION TO JENNIFER LEE'S MOTION TO DISMISS**

Knowing such a description surpasses the pleading requirement, Ms. Lee fails to directly address any of BirdDog's detailed descriptions and instead simply states that the "FAC provides an overbroad list" of trade secrets that are "non-specific." (Mot. at 13:25-27.) Simply put, Ms. Lee's argument that BirdDog's trade secrets are insufficiently identified is contrary to the pleadings and to law.  The trade secrets are properly identified.

### iii.   BirdDog Sufficiently Alleges Misappropriation.

Lastly, Ms. Lee contends that BirdDog fails to allege misappropriation.  (Mot. at 13:4-5.) This contention borders on frivolous: mere paragraphs later, Defendants admit that on two separate occasions, BirdDog's CEO identified Plaintiffs' trade secrets incorporated in Bolin Defendants' products, a clear misappropriation.  (FAC ¶¶ 64, 65; and Mot. at 14:4-9.)  It is irrelevant that Ms. Lee denies this information constituted trade secrets or that the products incorporated BirdDog's trade secrets: that is a paradigmatic disputed issue of fact.  Moreover, Ms. Lee knows well, her acquisition of BirdDog's trade secrets was improper: BirdDog describes Mr. Lo and Ms. Lee (acting on behalf of the Bolin Defendants) surreptitiously inducing BirdDog's CEO to provide them with trade secrets (FAC ¶¶ 42, 48, and 51) as part of a scheme to take over BirdDog, as well as Bolin LLC, Bolin Limited, Mr. Lo and Ms. Lee operating together in furtherance of a conspiracy to improperly acquire, use and disclose Plaintiffs' trade secrets.  (FAC ¶¶ 92, and 93); 18 U.S.C. § 1839(6) ("the term 'improper means' includes . . . misrepresentation, breach or inducement of a breach of a duty to maintain secrecy"); *see* Cal. Civ. Code § 3426.1(a) ("'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy . . . .")  Misappropriation has been properly alleged along with Ms. Lee's critical role in this portion of Defendants' scheme.

/ / /

/ / /

- 16 -

### C. **BirdDog Adequately Pleads Its Claims For Conversion, Violations Of Penal Code Section 496, And Money Had And Received.**

Likewise, BirdDog adequately pleads its claims for conversion, violations of Penal Code section 496, and money had and received against Ms. Lee.  With respect its claim for conversion, BirdDog has shown its "ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015) (elements of conversion claim); *see* FAC ¶¶ 14, 16, 20, 44-57, 108-111.  With respect to its claim for violations of Penal Code section 496, BirdDog has similarly shown that Ms. Lee (1) obtained and aided in obtaining by theft property belonging to BirdDog; (2) concealed or withheld such property and/or aided in concealing or withholding such property from BirdDog, which they knew was obtained by theft at the time they received, withheld, concealed, or aided in concealing or withholding the property; and (3) the violations caused actual loss, damage, and harm.  *Siry Investment, L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 355 (2022); *see* FAC ¶¶ 14, 16, 20, 44-57, 112-116.  And with respect to its claim for money had and received, BirdDog adequately pleads that Ms. Lee has "in [her] possession money which in equity and good conscience [she] ought to pay over to [BirdDog]."  *Rains v. Arnett*, 189 Cal. App. 2d 337, 334 (1961); *Minor v. Baldridge*, 123 Cal. 187, 190 (1898) (money had and received can be used to recovery money obtained by false pretenses); *see* FAC, ¶¶ 13, 14, 20, 44-57, 117-120.  A representative example of such a claim is where, as here, there has been a "total failure of consideration or repudiation."  *Brown v. Grimes*, 192 Cal. App. 4th 265, 28 (2011).

Ms. Lee does not challenge that more than $3,000,000 in BirdDog funds were paid.  Instead, she argues that she should be let off the hook because she did not actually receive the funds.  (Mot. at 15:18-20, and 16:10-13 [because "BirdDog contracted with and made these payments to Bolin [Limited] . . . [i]t is implausible

that [all of these parties] converted the same funds and that all of these parties simultaneously possess those same funds and/or have jointly used them."]).  But this is not what BirdDog pleads.  Her denial not only contradicts BirdDog's joint tortfeasor allegation but rests on determination of a factual question that cannot be adjudicated on a motion to dismiss - **what entity** owns or controls the bank account where the funds were transmitted and **whether and to what extent** Ms. Lee and the other defendants exercise joint dominion and control over those funds or aided the entities that did.  Asking, as she does, the Court to make that determination on a motion to dismiss is plainly inappropriate.

Even if that were not the case, neither a conversion nor Penal Code section 496 claim require Ms. Lee to have personally taken money to hold her liable.  To establish a claim for conversion, "[i]t is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership of the property . . . ." *Shopoff & Cavallo LLP v. Hyon*, 167 Cal. App. 4th 1489, 1507 (2008). Likewise, any "person . . . who conceals . . . withholds, or aids in concealing . . . or withholding any property from the owner, knowing the property to be so stolen or obtained" may be held liable for a Penal Code section 496 claim. Cal. Penal Code § 496.  Ms. Lee concedes that Plaintiffs' funds were received. (Mot. at 15:18-20.)  This is more than enough to state these claims at the pleading stage.  *See, e.g., Opera Gallery Trading Ltd. v. Golden Trade Fine Art Inc*., 2015 WL 12912362, at *2 (C.D. Cal. July 28, 2015) (granting summary judgment on conversion claim in favor of plaintiffs who "ha[d] the right to possess their respective $400,000 paid to [defendant] because they never received the paintings" and defendant admitted to "appropriating the funds and . . . [that] it has no intention of returning them"); *Cerra v. Blackstone*, 172 Cal. App. 3d 604, 609 (1985) (the "[u]njustified refusal to turn over possession on demand constitutes conversion even where possession by the withholder was originally obtained lawfully").

**PLAINTIFFS' OPPOSITION TO JENNIFER LEE'S MOTION TO DISMISS**

Ms. Lee's reliance on *Lashify, Inc. v. Urb. Dollz LLC*, 2022 WL 18278638, at *8 (C.D. Cal. Dec. 13, 2022) and *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) are misplaced.  Ms. Lee cites *Lashify, Inc.* for the proposition that BirdDog's tort claims against her are inappropriate because BirdDog has not set forth "individual wrongful acts to support a claim of individual liability." (Mot., at 17:4-5.)  Next, Ms. Lee cites to *Wolf Designs, Inc.* for the proposition that she cannot be held liable as a corporate officer unless she was a primary participant in the wrongdoing. (Mot., at 17:10-15.)  Again, Ms. Lee willfully ignores the detailed 38-page, 131-paragraph FAC. As discussed above in Section A, Ms. Lee was a "primary participant" in the alleged wrongdoing and her individual wrongful acts are set forth in exacting detail (e.g., Ms. Lee and Mr. Lo convinced BirdDog to enter into agreements and pay Ms. Lee, together with Bolin Limited, Bolin LLC, Mr. Lo, over $3,000,000 pursuant to those contracts (FAC, ¶¶ 40-53, 68-83) and when BirdDog simply requested the return of its more than $3,000,000 in funds, the Bolin Defendants, Mr. Lo and Ms. Lee flatly refused (FAC, ¶¶ 6, 109, 115, and 118)).

Further, BirdDog brings its claims against Ms. Lee in her individual capacity, not as an officer of Bolin Defendants.  As such, Ms. Lee's reliance on *Lashify*, *Inc.* and *Wolf Designs, Inc.* is misguided.

### D. <u>BirdDog Adequately Pleads Its Claim For Intentional Interference With Prospective Economic Advantage.</u>

Ms. Lee's argument that the FAC "make[s] no effort" to plead (1) "facts separately as to each Defendant, " (2)  "other essential facts including . . . any specific economic relationships with third parties" such as "the identity of these purported third parties, why the relationship with these parties contained a probability of future economic benefits, how Ms. Lee personally knew about these purported relationships, and how the alleged failure to deliver cameras disrupted these

507436988.6

relationships[],'" (3) "how Ms. Lee specifically and separately interfered," and (4) "how Plaintiffs were allegedly damaged as a result . . . ." (Mot. at 20:15-25.)

This, too, flies in the face of the pleading and Ms. Lee ignores her central role in the Defendants' brazen scheme. BirdDog adequately pleads all elements of this claim, including (1) economic relationships between BirdDog and third parties with the probability of future economic benefits to BirdDog (*e.g.*, FAC, ¶¶ 24-26, 28, 122); (2) Ms. Lee's knowledge of those relationships (*e.g.*, FAC ¶¶ 36, 40, 55, 64-67, 123); (3) intentional and independently wrongful acts designed to disrupt those relationships (*e.g.*, FAC ¶¶ 40-53, 124); and (4) actual disruption and economic harm proximately caused by the intentional and independently wrongful acts. (FAC, ¶¶ 40-67, 125). That is all that is required, and is what BirdDog has done. *See Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 944 (stating elements). Defendants acted in concert with one another where Bolin Limited and Bolin LLC, each "controlled by Chief Executive Officer Mr. Lo and managed by Chief Operating Officer Ms. Lee." (FAC ¶ 3.) They effectuated their scheme in concert, first attempting to acquire BirdDog, then ultimately "placing a 'hard sharp stop' on production of all BirdDog products while unlawfully holding and refusing to return more than $3,000,000 in BirdDog funds." (FAC ¶ 6.) "Defendants' apparent and unlawful hope was that their brazen thefts and refusal to deliver BirdDog cameras would damage BirdDog's reputation by causing BirdDog's global customer base to question BirdDog's ability to fulfill their contracts, cease doing business with BirdDog, and – hopefully, in their minds – agree to do business with Defendants." (FAC ¶ 6.) Ms. Lee and the other defendants implemented this plan in part "in an effort to obtain control of BirdDog and take over its customer relationships - causing BirdDog to lose even more in missed sales and lost profits." (FAC ¶ 45.) Such customer relationships amount to millions of dollars annually. (FAC ¶ 122.)

BirdDog thus properly alleges this claim against Ms. Lee.

- 20 -

**E. <u>BirdDog Adequately Pleads Its Claim For Violation Of California Business & Professions Code § 17200, Et Seq.</u>**

Ms. Lee also seeks dismissal of BirdDog's UCL claim, arguing only that the "claim is based on the alleged violation of Penal Code Section 496 and alleged misrepresentations regarding the contracts, both of which necessarily depend on the existence of a contractual relationship between Ms. Lee and Plaintiffs," (Mot., at 21:13-16) and "'[w]here a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks." (Mot., at 22:4-6.)

These, too, contradict the pleading and the law.  To bring a claim under California Business and Professions Code section 17200, a party must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322 (2011).  Injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) 'actual or imminent, not "conjectural" or "hypothetical[.]'" *Id*. at 322-23; citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also, Associated Builders & Contractors, Inc. v. San Francisco Airports Com*., 21 Cal.4th 352, 362 (1999).

Here, BirdDog adequately pleads all necessary factors.  ***First***, BirdDog clearly pleads economic injury-in-fact.  Among other things, the FAC alleges that as a result of their joint scheme, Defendants, including Ms. Lee, are withholding $3,060,883.10 in Plaintiffs' funds.  (S*ee e.g*., FAC, ¶¶ 6, 109, 115, and 118.); *Kwikset Corp*., 51 Cal. 4th at 323 (finding "be[ing] deprived of money or property to which [plaintiff] has a cognizable claim" is an economic injury under the UCL); *Hall v. Time Inc*., 158 Cal. App. 4th 847, 854 (2008), as modified (Jan. 28, 2008) (same).

**PLAINTIFFS' OPPOSITION TO JENNIFER LEE'S MOTION TO DISMISS**
507436988.6

***Second***, BirdDog's economic injury was the result of Defendants' unlawful, unfair, or fraudulent business practices. Ms. Lee misstates the circumstances surrounding BirdDog's UCL claim, stating that caselaw has "recognized that a 'dispute between commercial parties over their economic relationship' does not give rise to a UCL claim." (Mot. 27:12-14); *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007). But BirdDog ***is*** a customer of Defendants, who are doing business from their headquarters in California. *See Bischma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 252 (2011) (elements of UCL claim). California law simply does not exempt business interactions from the scope of UCL liability: the same standard of conduct applies. "[V]irtually any law or regulation—federal or state, statutory or common law—can serve as [a] predicate for a [Business and Professions Code section] 17200 'unlawful' violation." *Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659, 681 (2006). BirdDog's claims against Ms. Lee are appropriate as they are the result of, *inter alia*, Ms. Lee's violations of Penal Code section 496. Claims based on the "unlawful" prong of the UCL "borrow" violations of other laws and make those unlawful practices separately actionable through the UCL. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383, 137 (2012), as modified on denial of reh'g (Feb. 24, 2012).

To the extent Ms. Lee argues the UCL claim fails because it "necessarily depend[s] on the existence of a contractual relationship between Ms. Lee and Plaintiffs" (Mot., at 21:12-16), that is simply not correct. Plaintiffs do not allege breach of contract claims against Ms. Lee (*see* FAC), and regardless, as discussed above, Ms. Lee's wrongful and unlawful acts are independent of Plaintiffs' contract claims against the Bolin Defendants. BirdDog sufficiently pleads its UCL claim against Ms. Lee.

/ / /

/ / /

- 22 -

**PLAINTIFFS' OPPOSITION TO JENNIFER LEE'S MOTION TO DISMISS**

### F. **BirdDog's Tort And Penal Code Section 496 Claims Are Not Barred By The Economic Loss Rule.**

Ms. Lee also argues that BirdDog's claims for conversion, money had and received, violation of Penal Code section 496, intentional interference with prospective economic advantage, and UCL violations, are "barred by the economic loss rule." (Mot., at 22:24-25:14.)  Not true.  Her summary of the economic loss rule is misleading, and her argument that it bars those claims is meritless.

*First*, tort claims are permitted in contract cases where "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999).  Where "conversion accompanies a breach of contract, the economic loss rule does not bar the tort claim." *Bentham v. Bingham Law Group*, 2013 WL 12186171, at *12 (S.D. Cal. Nov. 15, 2013) (citing *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004)).  And where intentional interference with prospective economic relations is sufficiently pleaded independent of a breach of contract claim, "[t]hey avoid being barred by [] the economic loss doctrine." *WeBoost Media S.R.L. v. LookSmart Ltd.*, 2014 WL 2621465, at *7 (N.D.Cal., 2014)

*Second*, the economic loss rule does not apply to Plaintiffs' Penal Code section 496 and money had and received claims. "Quite simply, the economic loss rule 'prevents the law of contract and the law of tort from dissolving into one another.'" *Robinson Helicopter Co., Inc.*, 34 Cal. 4th at 988.  Penal Code section 496 and Business and Professions Code section 17200 are not tort claims. They are statutory ones. And a money had and received claim is "an action on an implied contract" – not a tort.  *Lincoln Nat'l Life Ins. Co. v. McClendon*, 230 F. Supp. 3d 1180, 1188 (C.D. Cal. 2017).

And ***third***, as Ms. Lee points out (Mot. at 24:24-25:10), she cannot avail herself of the economic loss rule. Plaintiffs did not assert a breach of contract claim against

- 23 -

her.  (See FAC.)  Because Plaintiffs do not seek to recover tort damages for a breach of contract claim against Ms. Lee, the economic loss rule does not apply to her.

### G. **BirdDog's Claims Are Not Subject To A Heightened Pleading Standard.**

Finally, knowing that BirdDog sufficiently pleads its claims to satisfy the ordinary pleadings standards of Rule 8(a), Ms. Lee argues, or rather simply states in conclusory fashion, that the heightened pleading standard applies to the claims.

Not so.  The mere fact that Ms. Lee's scheme to take control of BirdDog along with the other defendants by stealing its money and using its trade secrets, as improper and unlawful as it is, does not trigger heightened pleadings standards to satisfy requirements for claims that are "grounded" or "sound" in fraud.  Although Rule 9(b)'s heightened pleading standard may be required for allegations "grounded in fraud," a given allegation is not grounded in fraud unless it relies "entirely on a unified fraudulent course of conduct."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105-1106 (9th Cir. 2003)).  And even were that not the case, paragraph upon paragraph of BirdDog's FAC more than satisfies the heightened pleading requirement, showing the "who, what, when, where and how" of Ms. Lee's scheme.  Regardless, it is well-established that Rule 9(b) does not require dismissal when "essential information lies uniquely within another party's control," as is the case here with regard to the particulars of Ms. Lee's demands at this time.  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).

### V.   **CONCLUSION**

For the foregoing reasons, BirdDog respectfully requests that the Court deny Ms. Lee's Motion in its entirety.  Alternatively, to the extent the Court finds any of the claims are not sufficiently pleaded, BirdDog respectfully requests leave to amend.

/ / /

**PLAINTIFFS' OPPOSITION TO JENNIFER LEE'S MOTION TO DISMISS**

507436988.6

Respectfully submitted,

**K&L GATES LLP**

Dated:  February 16, 2024

By:   */s/ Ryan Q. Keech*
       Ryan Q. Keech
       Gabriel M. Huey
       Kevin G. Sullivan

       *Attorneys for Plaintiffs*

**PLAINTIFFS' OPPOSITION TO JENNIFER LEE'S MOTION TO DISMISS**
507436988.6

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,197 words, which complies with the word limit of L.R. 11-6.1.

**K&L GATES LLP**

Dated:  February 16, 2024     By:   */s/ Ryan Q. Keech*
                                     Ryan Q. Keech
                                     Gabriel M. Huey
                                     Kevin G. Sullivan

                                     *Attorneys for Plaintiffs*

26

507436988.6