UMBERG ZIPSER LLP
Dean J. Zipser (SBN 94680)
dzipser@umbergzipser.com
Molly J. Magnuson (SBN 229444)
mmagnuson@umbergzipser.com
1920 Main Street, Suite 750
Irvine, CA 92614
Telephone:  (949) 679-0052
Facsimile:  (949) 679-0461

Attorneys for Defendants
2082 Technology, LLC dba Bolin
Technology, Hoi "Kyle" Lo, and Jennifer Lee

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

BIRDDOG TECHNOLOGY LIMITED, an Australian company; and BIRDDOG AUSTRALIA PTY LTD, an Australian company,

        Plaintiffs,

        *v.*

2082 TECHNOLOGY, LLC DBA BOLIN TECHNOLOGY, a California limited liability company; BOLIN TECHNOLOGY CO., LTD., a Chinese limited company; HOI "KYLE" LO, an individual; JENNIFER LEE, an individual; and DOES 3 through 25, inclusive,

        Defendants.

Case No. 2:23-cv-09416 CAS (AGRx)

**REPLY IN SUPPORT OF DEFENDANT JENNIFER LEE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Hearing Date:  March 11, 2024
Time:        10:00 a.m.
Judge:       Hon. Christina A. Snyder
Courtroom:   8D

*[Response to Plaintiffs' Opposition to Jennifer Lee's Request for Judicial Notice Filed Concurrently Herewith]*

Complaint filed:  November 7, 2023
FAC filed:     January 12, 2024

{267016.4}

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

# **TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT .............................6

II.     ARGUMENT ........................................................................................7

    A.     The FAC Fails to State Any Claim for Relief Against Ms. Lee............7

        1.   Plaintiffs' Argument That the FAC Pleads a "Conspiracy" Is Both Incorrect and Unavailing...........................................................7

        2.   The Third and Fourth Claims for Trade Secret Violations Fail to State a Plausible Claim Against Ms. Lee. ................................10

        3.   The Sixth Claim for Conversion Fails to State a Plausible Claim Against Ms. Lee. .............................................................13

        4.   The Seventh Claim for Violation of Penal Code Section 496 Fails to State a Plausible Claim Against Ms. Lee..........................16

        5.   The Eighth Claim for Money Had and Received Fails to State a Plausible Claim Against Ms. Lee. .................................................17

        6.   The Ninth Claim for Intentional Interference Fails to State a Plausible Claim Against Ms. Lee. .................................................18

        7.   The Tenth Claim for Violation of the UCL Fails to State a Plausible Claim Against Ms. Lee. .................................................19

    B.     Plaintiffs' Sixth Through Tenth Claims for Relief Against Ms. Lee Are Barred by the Economic Loss Rule. .............................................20

III.    CONCLUSION .............................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Ajzenman v. Off. of Comm'r of Baseball*,
  487 F. Supp. 3d 861 (C.D. Cal. 2020)............................................................9, 10

*Amuchie v. JPMorgan Chase Bank N.A.*,
  No. 2:22-CV-07621-AB-JPR, 2023 WL 2559201 (C.D. Cal. Feb. 9,
  2023)....................................................................................................................21

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994)............................................................................................8

*Arthur J. Gallagher & Co. v. Tarantino*,
  No. 20-CV-05505-EMC, 2022 WL 4092673 (N.D. Cal. July 27,
  2022) ...................................................................................................................11

*Arthur J. Gallagher & Co. v. Tarantino*,
  498 F. Supp. 3d 1155, 1171 (N.D. Cal. 2020) ...................................................12

*Baggett v. Hewlett-Packard Co.*,
  No. SACV 07-0667 AG (RNBx), 2009 WL 3178066 (C.D. Cal.
  Sept. 29, 2009)....................................................................................................21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................13

*Broidy Cap. Mgmt. LLC v. Muzin*,
  No. 19-CV-0150 (DLF), 2020 WL 1536350 (D.D.C. Mar. 31,
  2020)....................................................................................................................11

*Brown v. Grimes*,
  192 Cal. App. 4th 265 (2011)..............................................................................18

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011)...............................................................................9

*Davis v. Metro Prods., Inc.*,
  885 F.2d 515 (9th Cir. 1989)...............................................................................15

*Expedited Packages, LLC v. Beavex Inc.*,
   No. CV 15–00721 MMM, 2015 WL 13357436 (C.D. Cal. Sept. 10,
   2015) ......................................................................................................21

*Fishbaugh v. Bulgadarian*,
   No. 2:20-CV-01135-JWH-RAOx, 2021 WL 3598579 (C.D. Cal.
   July 8, 2021) ..........................................................................................11

*Genentech, Inc. v. JHL Biotech, Inc.*,
   No. C 18-06582 WHA, 2019 WL 1045911 (N.D. Cal. Mar. 5,
   2019) ......................................................................................................11

*Lashify, Inc. v. Urb. Dollz LLC*,
   No. CV 22-6148-GW-AFMX, 2022 WL 18278638 (C.D. Cal. Dec.
   13, 2022) ...........................................................................................14, 15

*Linear Technology Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115 (2007) ..........................................................19, 20

*Maksoud v. Hopkins*,
   No. 17-CV-00362-H-WVG, 2018 WL 5920036 (S.D. Cal. Nov. 13,
   2018) ......................................................................................................17

*Masimo Corp. v. Apple Inc.*,
   No. SACV 20-48 JVS (JDEx), 2020 WL 4037213 (C.D. Cal. June
   25, 2020). ...............................................................................................12

*Motivo Engineering, LLC v. Black Gold Farms*,
   No. 2:22-CV-01447-CAS-JCx, 2022 WL 3013227 (C.D. Cal. June
   27, 2022) ................................................................................................20

*Murphy v. Am. Gen. Life Ins. Co.*,
   74 F. Supp. 3d 1267 (C.D. Cal. 2015) ...................................................8

*Physician's Surrogacy, Inc. v. German*,
   No. 17cv718-MMA (WVG), 2018 WL 638229 (S.D. Cal. Jan. 31,
   2018) ......................................................................................................10

*Race Winning Brands, Inc. v. Gearhart*,
   No. SACV 22-1446-FWS-DFM, 2023 WL 4681539 (C.D. Cal.
   April 21, 2023) .......................................................................................12

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) ........................................................................... 22

*Space Data Corp. v. X*,
    No. 16-cv-03260-BLF, 2017 WL 5013363 (N.D. Cal. Feb. 16,
    2017) ....................................................................................................... 12

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ................................................................... 9

*UMG Recs., Inc. v. Global Eagle Enter., Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) .................................................. 18

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*,
    660 F. Supp. 2d 1163 (C.D. Cal. 2009) .................................................. 22

*Vendavo, Inc. v. Price f(x) AG*,
    No. 17-cv-06930-RS, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ......... 10, 12

*Wolf Designs, Inc. v. DHR Co.*,
    322 F. Supp. 2d 1065 (C.D. Cal. 2004) .................................................. 15

*Wyatt v. Union Mortgage Co.*,
    24 Cal.3d 773 (1979) ................................................................................ 8

## Statutes

Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832, *et seq.* ....................... 7, 11

18 U.S.C. § 1836 ............................................................................................... 11

18 U.S.C. § 1839(6) ........................................................................................... 13

Cal. Civ. Code § 3426.1(b) ................................................................................ 13

Cal. Penal Code § 496 ........................................................................ 16, 17, 20, 21

## Other Authorities

Federal Rule of Civil Procedure 8 ........................................................................ 7

Federal Rule of Civil Procedure 9(b) ..................................................... 7, 9, 15, 16

## I.      <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Plaintiffs' Opposition (the "Opposition" or "Opp.") to Jennifer Lee's Motion to Dismiss (the "Motion") continues a trend already evident from the beginning of this lawsuit.  Faced with Ms. Lee's Motion, Plaintiffs' theory has shifted yet again.  Now, Plaintiffs argue that Ms. Lee is liable as a "co-conspirator" of all Defendants generally.  This new argument – which is not based on any theory actually pleaded in Plaintiffs' First Amended Complaint ("FAC") – cannot save Plaintiffs' otherwise legally insufficient claims.

As explained in the Motion, Plaintiffs' initial Complaint named only 2082 Technology, LLC ("2082") and Hoi "Kyle" Lo as Defendants.  After 2082 and Mr. Lo filed a motion to dismiss and presented the Court with judicially noticeable documents demonstrating that the alleged contracts at issue were entered into with Bolin Technology Co., Ltd. ("Bolin China"), and not 2082, Plaintiffs filed their FAC.  The FAC added Bolin China and Ms. Lee to the case, added newly conceived trade secrets claims, and alleged that 2082, Bolin China, and Mr. Lo are the alter egos of one another.  (Ms. Lee is not alleged to be an alter ego of either 2082 or Bolin China.)  Notably, Plaintiffs made these amendments not based on any new facts that had come to light since the filing of the initial Complaint just two months earlier, but in a thinly veiled attempt to manufacture a basis to maintain claims against 2082, Mr. Lo, and now Ms. Lee.

Now, in the face of Ms. Lee's Motion establishing that there is no basis for any of the claims brought against her – all of which are insufficient to state a claim as a matter of law – Plaintiffs for the first time argue that Ms. Lee was a "co-conspirator" with all Defendants and that they seek to hold her liable on this basis. *See, e.g.,* Opp. at 6:3-8, 7:27-8:1, 8:9-11, 11:3-13:11.  This newly concocted theory is a distraction and fails for a very basic reason: no such "conspiracy" is alleged in the FAC.  Indeed, the word "conspiracy" is only mentioned twice in the FAC and both times it is vague, non-specific, and related solely to Plaintiffs' claim for

misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832, *et seq*.  Not only is conspiracy liability not available under the DTSA as a matter of law, as explained below, but also there are no other allegations in the FAC of a conspiracy involving Defendants – including Ms. Lee – to do any of the acts now being argued by Plaintiffs in their Opposition.  It is noteworthy that Plaintiffs did not raise this argument in their Opposition to 2082's and Mr. Lo's pending motion to dismiss.  The theory is nothing more than an afterthought and is not based on the operative pleading before the Court.  More important, it underscores the utter lack of a viable claim alleged against Ms. Lee.

As further discussed below, Plaintiffs' claims against Ms. Lee fail on several grounds.  First, Plaintiffs fail to allege their claims consistent with Federal Rule of Civil Procedure 8 and, where applicable, with the particularity required by Rule 9(b).  The FAC also fails because Plaintiffs improperly attempt to turn this contract case into a tort action by recasting their breach of contract allegations against Bolin China and 2082 as purported conversion and intentional interference by Ms. Lee.  Plaintiffs' attempt to dispute this in their Opposition ignores relevant authority and their own allegations.

No matter how Plaintiffs attempt to plead and re-plead their claims, those claims are both insufficient and implausible as a matter of law.  Accordingly, Ms. Lee requests that the Court dismiss all of Plaintiffs' claims for relief against her.

## II.    ARGUMENT

### A.    The FAC Fails to State Any Claim for Relief Against Ms. Lee.

#### 1.    Plaintiffs' Argument That the FAC Pleads a "Conspiracy" Is Both Incorrect and Unavailing.

In their Opposition to the Motion, Plaintiffs all but concede that the FAC does not plead individual claims against Ms. Lee, instead arguing that the claims against her should survive because she was allegedly engaged in a "civil conspiracy" with all Defendants.  Opp at 11:3-13:11.  Putting aside that this

argument is based on the fabricated premise that there was an alleged wide-ranging conspiracy to wrong Plaintiffs – despite an acknowledged years-long relationship between Bolin China and BirdDog Australia – it is not even alleged in the FAC. Indeed, the term "conspiracy" appears only twice in the FAC, and those two allegations are limited to Plaintiffs' claim for misappropriation of trade secrets under the DTSA.  *See* FAC ¶¶ 92-93.  As discussed more fully below, conspiracy allegations cannot support a DTSA claim as a matter of law.  Rather, the law requires pleading individual misappropriation by the person against whom the claims are brought.  Plaintiffs do not include any other conspiracy allegations anywhere else in the FAC.  In fact, the conspiracy allegations included as part of Plaintiffs' DTSA claim are expressly *not* incorporated and not relied on as part of Plaintiffs' non-trade secret claims.  *See id.* ¶¶ 104, 108, 112, 117, 121, 127 (incorporating earlier paragraphs in the FAC "except for paragraphs 84-103, inclusive, including the misappropriation of trade secrets . . .").

Because conspiracy is not alleged in the FAC, as would be required to state a claim thereon, this new argument cannot save Plaintiffs' claims against Ms. Lee. The essential elements required to support a conspiracy theory would have to be alleged in the FAC – which they are not.  "The elements of a conspiracy claim are the formation and operation of the conspiracy and damage resulting to [a] plaintiff from an act or acts done in furtherance of the common design." *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1287-88 (C.D. Cal. 2015), quoting *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994).  "A claim of conspiracy requires that 'two or more persons agree to perform a wrongful act.'" *Id.* at 1288 (holding that "the SAC does not sufficiently allege the formation of the conspiracy" where, *inter alia*, "[t]here are no allegations concerning when or where such a conspiracy was conceived" and "[t]here are no allegations concerning who . . . conceived of, entered into or carried out the conspiracy"), quoting *Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 784 (1979).

Plaintiffs' FAC is devoid of the necessary allegations.  Among other things, the FAC does not allege facts as to when the alleged conspiracy was conceived, nor facts suggesting which parties conceived of the alleged conspiracy and entered into this alleged conspiracy.  Plaintiffs also do not allege which of their claims are predicated on an alleged conspiracy involving Ms. Lee (or anyone else) as opposed to any direct liability against Ms. Lee.

Moreover, not only are Plaintiffs required to plead an alleged conspiracy to the extent they intend to pursue this theory against Ms. Lee, but also the facts supporting the alleged conspiracy must be alleged with specificity under Rule 9(b). "Conspiracy claims grounded in fraud must identify 'the who, what, when, where, and how of the misconduct charged'" as required by Rule 9(b).  *Ajzenman v. Off. of Comm'r of Baseball*, 487 F. Supp. 3d 861, 867 (C.D. Cal. 2020), quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).[1]  *See e.g., id.* at 868 ("Plaintiffs fail to sufficiently allege that any conspiracy existed among the Defendants.  Most of the allegations stated above are vague and follow the insufficient 'everyone did everything' type allegations.").  In *Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007), the Ninth Circuit rejected conspiracy allegations as insufficient to survive a motion to dismiss where the complaint "failed to sufficiently detail the roles played by the defendants in the alleged conspiracy to defraud," and where specific conduct was attributed to only some of the defendants with conclusory allegations that the others knew of the misconduct and were "'active participants in the conspiracy' without any stated factual basis."  *Id.* at 765.

Although the FAC conclusorily alleges that Defendants collectively repudiated the alleged contracts, and allegedly stole Plaintiffs' money, all of which allegedly interfered with Plaintiffs' relationship with third parties, the FAC does not

---

[1] Plaintiffs' claims are most certainly grounded in fraud, as explained more fully in the Motion and in Section II.A.3, below.

allege a specific "conspiracy," much less specify with supporting factual allegations Ms. Lee's alleged role as part of this purported "scheme."  These kind of "vague . . . 'everyone did everything' type allegations" are routinely rejected by courts on a motion to dismiss.  *See Ajzenman*, 487 F. Supp. 3d at 868.

> ## 2.  The Third and Fourth Claims for Trade Secret Violations Fail to State a Plausible Claim Against Ms. Lee.

Plaintiffs contend that the allegations in their FAC adequately delineate between the four defendants with respect to Plaintiffs' trade secret claims and argue that Ms. Lee's reliance on *Physician's Surrogacy, Inc. v. German*, No. 17cv718-MMA (WVG), 2018 WL 638229 (S.D. Cal. Jan. 31, 2018) and *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) is misplaced.  Opp. at 14:5-21.  Not so.  As noted in the Motion, and as Plaintiffs themselves acknowledge in their Opposition, Plaintiffs' FAC alleges in only conclusory fashion that "all Defendants" acquired Plaintiffs' "Trade Secrets" by improper means and used and disclosed these allegedly misappropriated trade secrets.  *See, e.g.*, FAC ¶¶ 63, 92, 93, 101.

Plaintiffs also now point to additional allegations, but these allegations similarly and ambiguously group the Defendants together, and similarly fail to identify what trade secrets were allegedly misappropriated, referring only vaguely to the fact that Mr. Miall met with Ms. Lee and Mr. Lo and that he gave them and the "Bolin Defendants" "sensitive confidential and proprietary information . . . including some BirdDog Trade Secrets."  *See* Opp. at 14:25-15:4, citing FAC ¶¶ 42, 48, 51.  Plaintiffs are required to support their claim against Ms. Lee with allegations that she personally misappropriated specific trade secrets.  *See Vendavo*, 2018 WL 1456697, at *4.  They fail to do so.[2]

---

[2] Plaintiffs' trade secret claims are based, at least in part, on an alleged non-disclosure agreement ("NDA").  *See* Opp. at 8 (arguing the parties signed an NDA and started an economic relationship based on Mr. Lo and Ms. Lee's alleged representations); *see also* FAC ¶ 37 (alleging the existence of an NDA which binds Ms. Lee and the other Defendants).  It is notable that Plaintiffs do not attach to the

Plaintiffs attempt to salvage their trade secrets claims by arguing, for the first time in response to the Motion, that they are not required to differentiate between the various Defendants, including Ms. Lee, because the FAC alleges a "conspiracy" between all Defendants to misappropriate trade secrets.  *See* Opp. at 13:15-16, 14:5-7.  This argument can be rejected out of hand.  It is well established that the DTSA does not allow a private civil cause of action for conspiracy to misappropriate trade secrets.  *See Arthur J. Gallagher & Co. v. Tarantino*, No. 20-CV-05505-EMC, 2022 WL 4092673, at *18 (N.D. Cal. July 27, 2022) (granting motion to dismiss conspiracy to misappropriate trade secrets under DTSA because "conspiracy liability is not expressly provided for in Section 1832" and "while Section 1836 allows for a private cause of action, courts have uniformly found that stand-alone conspiracy claims are unavailable under this section"); *Genentech, Inc. v. JHL Biotech, Inc.*, No. C 18-06582 WHA, 2019 WL 1045911, at *12 (N.D. Cal. Mar. 5, 2019) ("Genentech cites no authority suggesting that Section 1836(b) of the DTSA provides for a stand-alone private action for conspiracy to misappropriate trade secrets"); *Fishbaugh v. Bulgadarian*, No. 2:20-CV-01135-JWH-RAOx, 2021 WL 3598579, at *4 (C.D. Cal. July 8, 2021) ("Fishbaugh argues that conspiracy liability is not available under the DTSA. [citation omitted].  The Court agrees with Fishbaugh on this point.").  *See also Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-CV-0150 (DLF), 2020 WL 1536350, at *13 (D.D.C. Mar. 31, 2020), aff'd, 12 F.4th 789 (D.C. Cir. 2021) ("To the extent that the Complaint alleges secondary liability as well [under the DTSA], that theory of liability is unavailable for a civil action . . . The Court will not permit defendants to advance this theory going forward, and they must prove that each defendant individually misappropriated at least one trade secret.").

Thus, to the extent Plaintiffs are relying on their "conspiracy" allegations for

FAC a copy of the alleged NDA for the Court to review.  Plaintiffs also do not allege that the NDA is governed by California law or any other laws of the United States.

1  liability against Ms. Lee to misappropriate trade secrets under the DTSA, this claim

2  fails.  Plaintiffs must allege that each Defendant individually misappropriated and

3  used Plaintiffs' alleged trade secrets.  They do not do so.

4         In her Motion, Ms. Lee also established that Plaintiffs fail in the FAC to

5  sufficiently identify their trade secrets.  In response, Plaintiffs argue that they do not

6  need to "spell out the details" of their alleged trade secrets and contend that their

7  allegations have put Ms. Lee "on notice of what the theft is about."  Opp. at 15:8-

8  12, citing *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1171

9  (N.D. Cal. 2020).  They have not.  It is "Plaintiff's burden to describe the subject

10 matter of [its] trade secret(s) with sufficient particularity to separate [them] from

11 matters of general knowledge in the trade or of special persons who are skilled in

12 the trade."  *Race Winning Brands, Inc. v. Gearhart*, No. SACV 22-1446-FWS-

13 DFM, 2023 WL 4681539, at *4 (C.D. Cal. April 21, 2023) (internal citation

14 omitted).  As Ms. Lee noted in her Motion, Plaintiffs "may not simply rely upon

15 'catchall' phrases or identify categories of trade secrets Plaintiffs intend to pursue at

16 trial."  *Vendavo*, 2018 WL 1456697, at *4 (internal citations omitted); *see also*

17 *Masimo Corp. v. Apple Inc.*, No. SACV 20-48 JVS (JDEx), 2020 WL 4037213, at

18 *4 (C.D. Cal. June 25, 2020).

19        Plaintiffs' alleged "Technical Trade Secrets" allegations consist of broad

20 categories that fail to meaningfully define the trade secrets at issue and fail to

21 separate the various items from matters of general knowledge in the trade.

22 Plaintiffs' alleged "Economic Trade Secrets," which Plaintiffs do not even address

23 in their Opposition, are even less specific.  As the listed categories provide no

24 indication of what constitutes Plaintiffs' trade secrets, they cannot support a claim.

25 *See Race Winning Brands*, 2023 WL 4681539, at *5; *see also Space Data Corp. v.*

26 *X*, No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017);

27 *Vendavo*, 2018 WL 1456697, at *3-4.

28        Moreover, and contrary to Plaintiffs' attempt to argue otherwise, the FAC

fails to allege that Ms. Lee personally misappropriated any of BirdDog's alleged trade secrets, as they must.  *See* 18 U.S.C. § 1839(6); Cal. Civ. Code § 3426.1(b). As discussed in the Motion, the FAC fails to satisfy this element because it does not tie any specific "trade secret" to a specific misappropriation by Ms. Lee, and there are no factual allegations regarding how any alleged trade secret provided to Ms. Lee was disclosed or used by her personally.  Ms. Lee specifically noted in her Motion certain allegations in the FAC, demonstrated that the allegations were entirely speculative, and that Plaintiffs had failed to allege any facts explaining Plaintiffs' belief that its trade secrets were misappropriated or even what trade secrets were misappropriated.  Motion at 14, discussing FAC ¶¶ 64, 65.  Ms. Lee understands that her Motion is not to dispute the facts at this juncture.  Rather, she has demonstrated a pleading failure.  The FAC's conclusory allegations of misappropriation fail to "raise a right to relief above the speculative level" and the claims are, therefore, properly dismissed.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### 3. The Sixth Claim for Conversion Fails to State a Plausible Claim Against Ms. Lee.

Plaintiffs' claim for conversion arises solely from a partial payment for six contracts which the "Bolin Defendants" allegedly refused to refund following a contract dispute.  In their Opposition, Plaintiffs do not dispute that the FAC does not allege who owned the funds at issue (BirdDog Australia or BirdDog Technology).  Nor do Plaintiffs dispute that it was Bolin China who allegedly received the funds.[3]  Instead, Plaintiffs argue that there is a factual question of

---

[3] Plaintiffs continue to obfuscate their failure to identify the actions attributable to specific entities and individuals by asserting that they adequately plead a claim for conversion because "Ms. Lee does not challenge that more than $3,000,000 in BirdDog funds were paid."  Opp. at 17:24-25.  That is entirely beside the point. Notably, and to the point, Plaintiffs do not state which party received the funds.  Of course, as evidenced by the very contracts and payment information on which Plaintiffs' claims rely, it was only Bolin China that received the funds, not 2082, Mr. Lo, or Ms. Lee.  This further demonstrates Plaintiffs' failure to adequately state a claim against Ms. Lee.

"what entity owns or controls the bank account where the funds were transmitted and whether and to what extent Ms. Lee and the other defendants exercise joint dominion and control over those funds or aided the entities that did."  Opp. at 18:5-8 (emphasis omitted).  However, to the extent Plaintiffs have a good-faith basis for believing that Ms. Lee owned the bank account in question or has control over the funds (which Ms. Lee believes Plaintiffs do not and cannot), Plaintiffs must plead the relevant facts to support such an allegation, instead of mere legal conclusions.  The FAC fails to do so and, on this basis alone, Plaintiffs' conversion claim should be dismissed.

Plaintiffs also argue that their conversion claim is somehow sufficient as to Ms. Lee because the FAC includes "joint tortfeasor allegation[s]."  Opp. at 18:3-4.  Although not entirely clear, this is presumably a reference to Plaintiffs' new "conspiracy" theory – an argument made in their Opposition but not actually alleged in the FAC.  To the extent Plaintiffs now contend that Ms. Lee Ms. Lee engaged in a conspiracy to convert BirdDog Australia's contractual payments to Bolin China, the FAC does not include any allegations to support such a claim.

Nor would Plaintiffs' "joint tortfeasor" or "conspiracy" allegations state a plausible claim, even were such a theory alleged.  On the one hand, Plaintiffs claim Ms. Lee is liable as a "primary participant" based on her alleged "individual wrongful acts," which, according to Plaintiffs, "are set forth in exacting detail" in the FAC.  Opp. at 19:9-11.  On the other hand, however, Plaintiffs argue that they do not need to specify Ms. Lee's individual wrongful acts because Ms. Lee's liability stems from being a vaguely alleged "joint tortfeasor" with some other Defendant(s) with primary liability.  Plaintiffs cannot have it both ways.  The inherent contradiction and inconsistency of this argument demonstrates the hollowness of Plaintiffs' conversion claim (and, indeed, all of their claims) against Ms. Lee personally.

Plaintiffs also contend that Ms. Lee's reliance on *Lashify, Inc. v. Urb. Dollz*

*LLC*, No. CV 22-6148-GW-AFMX, 2022 WL 18278638 (C.D. Cal. Dec. 13, 2022), is "misplaced" because they have alleged "individual" actions she took apart from her role as an alleged officer of 2082 and falsely alleged officer of Bolin China. Opp. at 19:1-15, citing FAC ¶¶ 109, 115, 118.  In fact, the FAC does not contain any such factual allegations – as opposed to conclusory allegations – as to Ms. Lee's alleged individual involvement in the purported conversion, as the Paragraphs cited in Plaintiffs' Opposition make clear.  According to Plaintiffs, her liability, if any, is predicated on the alleged theft of payments made to Bolin China, which she allegedly had access to given her alleged role with 2082 and/or Bolin China.  The allegations against her mirror those against the entity Defendants and, as such, are insufficient to state a claim against her.  *See Lashify*, 2022 WL 18278638, at *8 (dismissing claims against individually named officers where "the FAC does not include facts related to [their] individual wrongful acts, as opposed to the acts of Urban Doll."); *Wolf Designs, Inc. v. DHR Co*., 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) ("[c]ases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, . . . or the 'central figure' in the challenged corporate activity."), quoting *Davis v. Metro Prods., Inc*., 885 F.2d 515, 524 (9th Cir. 1989).

Finally, and as explained in the Motion, as the allegations of conversion sound in fraud, Plaintiffs also fail to meet the stricter requirement of specificity under Rule 9(b).  Plaintiffs argue they do not need to plead this claim or their other claims with specificity under Rule 9(b) because their claims do not rely "entirely on a unified fraudulent course of conduct."  Opp. at 24:13-14.  Yet, Plaintiffs offer no argument or explanation how their allegations are not founded on "a unified fraudulent course of conduct."  For example, the FAC expressly alleges that Defendants "devised a plan to convince BirdDog to entrust them with its funds and highly confidential information, hold and brazenly misuse and misappropriate those

funds and highly sensitive information to apply pressure on BirdDog, create competing cameras and steal BirdDog's clients and economic relationships for themselves," and that Defendants employed "a deliberate and unlawful strategy . . . all the while concealing their real and true intent."  FAC ¶ 5.  *See also id.* ¶ 54 ("they never had any intent of complying with their obligations under these related transactions"), *id.* ¶ 106 (alleging Defendants "knowingly, intentionally and in bad faith induc[ed] BirdDog to agree to pay millions of dollars to Bolin when Bolin never intended to provide what BirdDog was entitled to receive in exchange.").  Plaintiffs even suggest in their Opposition that the conduct complained of constitutes theft by "false pretenses."  Opp. at 17:19-20.  Thus, there can be no dispute that Plaintiffs' allegations sound in fraud and are subject to Rule 9(b).

Plaintiffs cannot meet that standard.  The FAC fails to plead key facts within Plaintiffs' knowledge, such as which BirdDog entity was involved or paid the partial payment, which individual or entity made the allegedly fraudulent representations to induce Plaintiffs to enter into contracts, which individual or entity was a party to the contracts, which individual or entity received Plaintiffs' partial payment under the contracts, or which individual or entity is obligated to perform under the contract.  Accordingly, Plaintiffs' allegations are insufficient.

Moreover, because this claim necessarily depends on a threshold breach of contract, which Plaintiffs fail to properly plead against 2082 (*see* Dkt. 47-1), the FAC fails to allege facts that show that the alleged retention of the payments by any party was wrongful.  For all of these reasons, this claim does not meet the necessary pleading requirements – much less the heightened requirements of Rule 9(b) – nor can it as to Ms. Lee.

### 4.    The Seventh Claim for Violation of Penal Code Section 496 Fails to State a Plausible Claim Against Ms. Lee.

Like their conversion claim, Plaintiffs fail to allege facts sufficient to state a claim for violation of Penal Code Section 496.  For example, Plaintiffs do not

allege which entity induced which BirdDog entity to enter into the six contracts by false pretenses (though the contracts themselves make clear that it could only allegedly be Bolin China), or which entity received or had possession of the funds (though the purchase orders make clear that it could only be Bolin China).  To the extent Plaintiffs now contend Ms. Lee "aid[ed] in concealing . . . or withholding any property from the owner, knowing the property to be so stolen or obtained" (Opp. at 18:15-17), this theory is not actually alleged in the FAC.  *See* FAC ¶¶ 112-116.

As with their conversion claim, Plaintiffs also argue that Ms. Lee can be liable under Section 496 to the extent she controls or has dominion over the funds paid by BirdDog Australia to Bolin China.  Opp. at 18:3-18.  The FAC, however, does not allege any facts supporting these theories.  Plaintiffs must allege facts that plausibly support this legal conclusion, instead of alleging – or, worse yet, arguing in their Opposition without ever alleging in their Complaint – the bare legal conclusion itself.  Unsupported, conclusory allegations are rampant in Plaintiffs' FAC, and they are insufficient to state a claim, particularly against an individual like Ms. Lee who is being accused of a serious Penal Code violation.

### 5.    The Eighth Claim for Money Had and Received Fails to State a Plausible Claim Against Ms. Lee.

Plaintiffs do not and cannot dispute that a necessary element for a money had and received claim is that the "defendant received money."  *Maksoud v. Hopkins*, No. 17-CV-00362-H-WVG, 2018 WL 5920036, at *8 (S.D. Cal. Nov. 13, 2018).  In their Opposition, Plaintiffs fail to identify any alleged facts that demonstrate that Ms. Lee received Plaintiffs' money or had control over Plaintiffs' money.  To the contrary, Plaintiffs essentially acknowledge that they fail to allege these essential facts, arguing that they are "factual question[s] that cannot be adjudicated on a motion to dismiss."  Opp. at 18:3-5.  That these supporting facts are allegedly unknown to Plaintiffs demonstrates that Plaintiffs have absolutely no basis to assert

this claim against Ms. Lee in the first place.

Plaintiffs' reliance on *Brown v. Grimes*, 192 Cal. App. 4th 265 (2011), only highlights how misplaced this claim is with respect to Ms. Lee individually. In that case, the Court stated that a money had and received claim "will only lie where there has been a total breach – *i.e.*, total failure of consideration or repudiation of the contract." *Id*. at 281. Ms. Lee, of course, was not a party to any contract with Plaintiffs and is not alleged to have personally breached any such contract. Thus, the alleged repudiation of a contract by Bolin China or by any other entity cannot form the basis for a claim against Ms. Lee personally.

Plaintiffs fail to state a claim of money had and received against Ms. Lee with facial plausibility, much less with the requisite specificity.

### 6.      The Ninth Claim for Intentional Interference Fails to State a Plausible Claim Against Ms. Lee.

Plaintiffs' Opposition fails to identify any factual allegations that show "(1) a specific economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages proximately caused by the defendant's acts." *UMG Recs., Inc. v. Global Eagle Enter., Inc*., 117 F. Supp. 3d 1092, 1116 (C.D. Cal. 2015). The allegations Plaintiffs identify merely show that BirdDog generally has customers and generally conducts business. FAC ¶¶ 24-26, 28, 122. They do not identify any specific economic relationship with any specific customers involving the cameras order pursuant to the six alleged contracts, much less how BirdDog had a probability of future economic benefit from those relationships. Similarly, although the FAC alleges that BirdDog may have had general discussions about its customers with Ms. Lee (*id*. ¶¶ 36, 40, 123),[4] it does not allege facts which would

---

[4] Plaintiffs also identify paragraphs 55, and 64-67 of the FAC as allegations that

1   show that Ms. Lee had knowledge of the specific relationships that were allegedly
2   disrupted as required. The FAC alleges that Bolin China entered into contracts with
3   BirdDog (*id.* ¶¶ 40-67, 124), but not how Ms. Lee herself disrupted any specific
4   economic relationships.

5      Plaintiffs do not plead any facts specifically as to Ms. Lee or, indeed, as to
6   any Defendant. The entire crux of Plaintiffs' interference claims against Ms. Lee is
7   that she is interchangeable with Bolin China, 2082, and Mr. Lo, and that they all
8   acted "in concert" as part of an alleged "brazen scheme" to breach Bolin China's
9   contracts with BirdDog Australia, and, therefore, the acts of all Defendants can and
10  should be imputed to her personally. This is not supported by the law or by the
11  facts alleged. As discussed above, the FAC does not allege any conspiracy on the
12  part of Ms. Lee and others to have Bolin China breach its alleged contracts with
13  BirdDog Australia. At a minimum, Plaintiffs must allege that Ms. Lee personally
14  did something to interfere with Plaintiffs' prospective economic relationships to
15  justify a claim against her personally. They do not and they cannot. Plaintiffs
16  cannot dispute that their FAC suffers from the defects identified in Ms. Lee's
17  Motion.

18     Thus, Plaintiffs' claim for intentional interference with prospective economic
19  advantage against Ms. Lee fails.

20          **7.    The Tenth Claim for Violation of the UCL Fails to State a**
21                  **Plausible Claim Against Ms. Lee.**

22     In their Opposition, Plaintiffs make no effort to distinguish *Linear*
23  *Technology Corp. v. Applied Materials, Inc*., 152 Cal. App. 4th 115 (2007), which
24  held that "a corporate plaintiff may not rely on the UCL" to bring an action "based
25  on contracts not involving either the public in general or individual consumers who
26  are parties to the contract." *Id.* at 135. Instead, Plaintiffs merely assert that

27

28  supposedly show Ms. Lee had knowledge of specific economic relationships, but
these paragraphs contain no relevant facts as opposed to conclusory allegations.

1  "BirdDog *is* a customer of Defendants."  Opp. at 22:6-7 (emphasis in original).

2  This is a non sequitur.  *Linear Technology* does not permit a corporate plaintiff to

3  bring a UCL action based on a breach of contract merely by styling itself as a

4  "customer."  As explained in *Linear Technology*, the UCL was enacted to protect

5  "powerless, unwary consumers," as opposed to "sophisticated corporate

6  customers." *Linear Tech*., 152 Cal. App. 4th at 135.  Indeed, the *Linear*

7  *Technology* court affirmed the dismissal of a UCL claim by "corporate customers,"

8  like Plaintiffs here, which alleged misrepresentations in connection with purchase

9  orders.  *Id.  Linear Technology* is directly analogous and, because Plaintiffs are

10  basing their UCL claim on the six purchase orders, this claim should be dismissed.

11       Plaintiffs also argue that their UCL claim should survive dismissal because it

12  is based on an alleged violation of Penal Code Section 496 by Ms. Lee and others.

13  But, as explained above, Plaintiffs' Penal Code Section 496 claim is nothing more

14  than an improper repackaging of their breach of contract claim.  Plaintiffs cannot

15  evade the rule established in *Linear Technology* through improper pleading.

16  Further, as explained above, Plaintiffs fail to state a claim against Ms. Lee for

17  violation of Penal Code Section 496 and, therefore, this derivative UCL claim

18  should be dismissed for the same reasons.

19       **B.**    **Plaintiffs' Sixth Through Tenth Claims for Relief Against Ms. Lee**

20            **Are Barred by the Economic Loss Rule.**

21       In the Motion, Ms. Lee demonstrated that Plaintiffs' numerous extra-

22  contractual claims should be dismissed from this commercial contract dispute.  In

23  response, Plaintiffs first argue that an exception to the economic loss rule applies to

24  their conversion claim.  Opp. at 23:8-17.  Plaintiffs are wrong and the caselaw on

25  which they rely does not support this assertion.  Notably, Plaintiffs do not even

26  address the on-point caselaw cited in the Motion.  For example, in *Motivo*

27  *Engineering, LLC v. Black Gold Farms,* No. 2:22-CV-01447-CAS-JCx, 2022 WL

28  3013227 (C.D. Cal. June 27, 2022), this Court dismissed a conversion counterclaim

under the economic loss rule where the defendant's ownership interest in the converted property arose solely from the agreement at issue in the case. *Id*. at *4. Many other courts have similarly barred conversion claims under the economic loss rule. *See. e.g., Amuchie v. JPMorgan Chase Bank N.A.,* No. 2:22-CV-07621-AB-JPR, 2023 WL 2559201, at *4 (C.D. Cal. Feb. 9, 2023); *Expedited Packages, LLC v. Beavex Inc*., No. CV 15–00721 MMM (AGRx), 2015 WL 13357436, at *4 (C.D. Cal. Sept. 10, 2015) ("[A] conversion claim seeking the $800,000 plaintiffs are allegedly owed under the contract would arise entirely from the contract itself, and be barred by the economic loss rule."); *Baggett v. Hewlett-Packard Co*., No. SACV 07-0667 AG (RNBx), 2009 WL 3178066, at *3 (C.D. Cal. Sept. 29, 2009) (holding that because plaintiff's relationship with defendant "arises solely out of their contract and commercial transaction," "the economic loss rule applies to bar Plaintiff's tort claims for conversion and trespass to chattels.").

Although Plaintiffs suggest their conversion and interference claims are "independent" of their contract claim and, therefore, not barred, they make no effort to support this contention. They cannot. Plaintiffs simply cannot dispute that the factual allegations underlying their breach of contract, conversion, and interference claims are identical. Therefore, Plaintiffs' claims are barred by the economic loss rule.

Plaintiffs also argue that the economic loss rule does not apply to their Penal Code and money had and received claims because these are not tort claims. Opp. at 23:18-25. Once again, Plaintiffs are wrong, and their argument has no basis in law.

To begin with, the cases Plaintiffs cite in support of this argument say nothing about the application of the economic loss rule to Section 496 or to a money had and received claim. Plaintiffs do not cite to any authority for any exception to the economic loss rule for claims based on purported statutory violations or actions based on an implied contract. Plaintiffs' Penal Code and money had and received claims are nothing more than a recasting of their claim for

conversion and, as such, they are subject to the economic loss rule.  *See* FAC ¶¶ 109-110, 115, 118-119, 128-129.  The damages sought for these claims are the same damages sought in connection with Plaintiffs' breach of contract claim, the alleged $3,060,883.10 paid pursuant to the contracts.  *See id*.  To allow these claims to proceed, whether styled as a tort or a statutory violation, would allow Plaintiffs to improperly turn this commercial breach of contract case into something else contrary to California law.  *See, e.g., United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp*., 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009) (noting economic loss rule "is particularly strong when a party alleges 'commercial activities that negligently or inadvertently [went] awry'"), quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 991, n.7 (2004).

Plaintiffs also contend that their claims against Ms. Lee individually are not barred by the economic loss rule because they have not brought a breach of contract claim against her personally.  Opp. at 23:26-24:2.  This contention is disingenuous given the FAC's allegations of Ms. Lee's supposed "management" of 2082 and Bolin China, along with a vague "joint tortfeasor" allegation that, at all relevant times, Ms. Lee "was acting as an agent, alter ego, servant, employee, joint tortfeasor or representative of all other Defendants," including 2082 and Bolin China.  *See* FAC ¶ 16.  On the one hand, Plaintiffs claim Ms. Lee has control and domination over the corporate Defendants and should somehow be individually liable for the corporate Defendants' alleged actions and, on the other hand, they argue their claims are not barred because she is separate from the corporate Defendants.  Plaintiffs' reasoning is circular and illogical.  As explained in the Motion, because the tort claims against Ms. Lee are duplicative of the claims against 2082 and Bolin China, and are mere extensions of the contract claims against 2082 and Bolin China, they should be barred to the same extent they would be barred as against 2082 and Bolin China.

Accordingly, the economic loss rule bars Plaintiffs' sixth through tenth

claims for relief against Ms. Lee.

## III.  **CONCLUSION**

For all of the reasons set forth herein, and for the reasons set forth in her Motion, Ms. Lee requests that the Court dismiss all of the claims for relief in the FAC against her for failure to state a claim.


Dated:  February 26, 2024                    UMBERG ZIPSER LLP


                                             _s/ Molly J. Magnuson_
                                             Molly J. Magnuson
                                             Attorneys for Defendants 2082
                                             Technology, LLC dba Bolin
                                             Technology, Hoi "Kyle" Lo, and
                                             Jennifer Lee

**<u>CERTIFICATE OF COMPLIANCE</u>**

The undersigned, counsel of record for Moving Defendants, certifies that this brief contains 5,927 words, which complies with the word limit of L.R. 11-6.1.

Dated:  February 26, 2024          UMBERG ZIPSER LLP

<u>s/ Molly J. Magnuson</u>
Molly J. Magnuson
Attorneys for Defendants 2082
Technology, LLC dba Bolin
Technology, Hoi "Kyle" Lo, and
Jennifer Lee