UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

Present: The Honorable     CHRISTINA A. SNYDER

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
Gabriel Huey
Cassidy Young

Attorneys Present for Defendants:
Dean Zipser
Molly Magnuson

**Proceedings:**     DEFENDANTS KYLE LO AND 2082 TECHNOLOGY, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (Dkt. 47, filed on JANUARY 26, 2024)

DEFENDANT JENNIFER LEE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (Dkt. 55, filed on FEBRUARY 9, 2024)

## I.   INTRODUCTION

Presently before the Court are defendants Lo and 2082's motion to dismiss and defendant Lee's motion to dismiss, along with defendants' requests for judicial notice.

On November 7, 2023, plaintiffs BirdDog Technology Limited and BirdDog Australia Pty., Ltd. (collectively, "BirdDog") filed suit against defendants 2082 Technology, LLC dba Bolin Technology ("2082"), Mr. Hoi "Kyle" Lo, and Does 1-25. Dkt. 1.

On December 15, 2023, plaintiffs filed two applications for writs of attachment, one against defendant Lo and one against defendant 2082, which Magistrate Judge Alicia G. Rosenberg denied on February 13, 2024.  Dkts. 24, 25, 60.

On December 22, 2023, defendants Lo and 2082 filed a motion to dismiss the complaint.  Dkt. 27.

On January 12, 2024, plaintiffs filed a first amended complaint (the "FAC"), which mooted defendants' motion to dismiss.  Dkts. 34, 43.  The FAC adds defendants Bolin Technology Co., Ltd. ("Bolin Limited" or "Bolin China," and collectively with defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

2082, the "Bolin defendants") and Jennifer Lee, leaving only Does 3-25, and brings claims for (1) breach of contract – purchase agreements, as against the Bolin defendants; (2) breach of contract – nondisclosure agreement (the "NDA"), by plaintiff BirdDog Australia against the Bolin defendants; (3) violations of the Defend Trade Secrets Act of 2016 (the "DTSA"), 18 U.S.C. § 1832, *et seq.*, as against all defendants; (4) violations of the California Uniform Trade Secrets Act (the "CUTSA"), California Civil Code § 3426.1, as against all defendants; (5) breach of the implied covenant of good faith and fair dealing – purchase agreements, as against the Bolin defendants; (6) conversion, as against all defendants; (7) violations of California Penal Code § 496, *et seq.*, as against all defendants; (8) money had and received, as against all defendants; (9) intentional interference with prospective economic advantage, as against all defendants; and (10) violations of California Business & Professions Code § 17200, *et seq.*, as against all defendants.  Dkt. 34.

On January 26, 2024, defendants Lo and 2082 filed a motion to dismiss the FAC. Dkt. 47.  They attached a request for judicial notice in support of their motion.[1]  Dkt. 47-

---

[1] Defendants Lo and 2082 and defendant Lee request that the Court take judicial notice of three exhibits.  Dkt. 47-2; dkt. 55-2.  The exhibits are: (1) the Articles of Organization for 2082 Technology LLC, which was filed with the California Secretary of State on February 11, 2015, and is publicly available on the California Secretary of State's website; (2) the Company Registration information of Bolin Technology Co., Ltd, which is publicly available on the website of the Administration of Market Regulation of Shenzhen, China, along with a certified translation; and (3) the redacted version of the Declaration of Barry Calnon in Support of Plaintiffs' Application for Right to Attached Order and Writ of Attachment, and exhibits thereto, which plaintiffs filed with this Court on December 15, 2023.  Dkt. 47-2; dkt. 55-2.  In opposition, plaintiffs argue that the Court may take notice only of the existence of these exhibits but not of the truth or factual matters contained in them.  See dkt. 52.  For example, plaintiffs contend that "[i]t is improper for [d]efendants to ask the Court to find in their favor based on disputed facts outside of the pleadings, such as the unity (as [p]laintiffs allege) or lack thereof (as [d]efendants allege) between Bolin LLC, Bolin Limited [or Bolin China], and Kyle Lo." Id. at 3.  In reply, defendants argue that the Court may take notice of facts the parties cannot reasonably dispute, such as "that 2082 is an LLC registered in California with Mr.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|----------|--------------------------|------|----------------|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

2.  On February 5, 2024, plaintiffs filed an opposition to defendants Lo and 2082's motion to dismiss.  Dkt. 51.  That same day, plaintiffs filed an objection to defendant Lo and 2082's request for judicial notice and a request for judicial notice in support of their opposition.[2]  Dkts. 52, 53.

On February 9, 2024, defendant Lee filed a motion to dismiss the FAC.  Dkt. 55.  She attached a request for judicial notice, requesting that the Court take judicial notice of the same documents requested by defendants Lo and 2082.  Dkt. 55-2.

On February 12, 2024, defendants Lo and 2082 filed a reply in support of their motion and a response to plaintiffs' objections to their request for judicial notice.  Dkts. 57, 57-1.

On February 16, 2024, plaintiffs filed an opposition to defendant Lee's motion to dismiss.  Dkt. 61.  That same day, plaintiffs filed an opposition to defendant Lee's request for judicial notice, in which they incorporated their opposition to defendant Lo and 2082's request for judicial notice.  Dkt. 62.

On February 26, 2024, defendant Lee filed a reply in support of her motion.  Dkts. 63, 64.  That same day, she filed a response to plaintiffs' opposition to her request for judicial notice, asserting that she joins in defendant Lo and 2082's response.  Dkt. 65.

---

Lo and Jennifer Lee as its only two members, and Bolin China is a company registered in Shenzhen, China whose shareholders do not include Mr. Lo, Ms. Lee, or 2082." Dkt. 57-1 at 2-3.  They also argue that it is proper for the Court to take notice of a certified translation of a document and documents that have been incorporated by reference in the complaint, such as the contracts at issue.  Id. at 3-4.  The Court finds that it is appropriate to take judicial notice of the existence, but not the veracity, of these exhibits pursuant to Federal Rule of Evidence 201.

[2] Plaintiffs request that the Court take judicial notice of two exhibits.  Dkt. 53.  These include: (1) Statement of Claim by Bolin Technology Co., Ltd filed against BirdDog Technology Limited in the Federal Court of Australia, District of Victoria; and (2) Statement of Claim by Bolin Technology Co., Ltd filed against BirdDog Australia Pty Ltd in the Federal Court of Australia, District of Victoria.  Id.  The Court finds that judicial notice of these exhibits is appropriate pursuant to Federal Rule of Evidence 201.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|----------|--------------------------|------|----------------|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

On March 11, 2024, the Court held a hearing.  Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

At a high level, plaintiffs allege that defendants entered into contracts with plaintiffs to misappropriate plaintiffs' trade secrets and to ultimately take plaintiffs' place in the market.

Plaintiffs are "internationally-renowned vendor[s] of streaming video technology" and have developed "economic relationships annually worth many millions of dollars." FAC ¶ 2.  Defendant 2082 is a "California-based manufacturer and distributor of video cameras."  Id. ¶ 34.  Defendant Bolin Limited—or Bolin China—is the manufacturing arm of defendant 2082, and 2082 and Bolin China together do business as "Bolin Technology."  Id.  Defendant Lo is the Chief Executive Officer of the Bolin defendants, and defendant Lee is their Chief Operating Officer.  Id. ¶ 3.

As developers of camera hardware/software, plaintiffs have developed and own several trade secrets.  Id. ¶¶ 24, 26, 28-29.  Some of plaintiffs' technical trade secrets include:

> (1) a proprietary hardware-based application allowing for implementation of high-bandwidth Network Device Interface (NDI) capabilities facilitating networked video systems to identify and communicate with each other and encode, transmit and receive multiple streams of broadcast-quality, low-latency video and audio in real time; (2) a . . . solution allowing for the distribution of broadcast-quality video which is multiple factors more powerful and more flexible than anything commonly available to competitors or to the public and allows implementation across camera and converter devices; (3) a unified control system incorporating a proprietary graphic interface and graphical user interface; (4) a proprietary application programming interface; and (5) cloud enabled remote control and orchestration of BirdDog camera products (the "Technical Trade Secrets").

Id. ¶ 29.  Plaintiffs' other specialized trade secrets relating to their business and operations include:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

(1) product feature sets; (2) customer and industry-specific performance requirements; (3) customer and industry-specific product expectations; (4) customer and industry-specific product fit; (5) customer and industry-specific pricing information; (6) go-to-market strategies and experience; and (7) customer and industry-specific distribution methodologies (the "Economic Trade Secrets") (collectively, the "Technical Trade Secrets" and the "Economic Trade Secrets" are referred to as the "BirdDog Trade Secrets").

Id. ¶ 30.  To protect their trade secrets, plaintiffs take diligent measures, including limiting "the dissemination of information internally and to third parties and on a need-to-know basis, requiring consultation with senior BirdDog executives when contemplating the disclosure of BirdDog information, the use of confidentiality and nondisclosure agreements, hierarchical protection of sensitive information and password-protected access to its electronic information." Id. ¶¶ 31-33.

In or around April 2017, defendant Lo approached plaintiffs' executives at a trade show in Las Vegas on behalf of the Bolin defendants and represented that the Bolin defendants were an original equipment manufacturer ("OEM") supplier with "'over 15 years of experience' delivering 'the latest in high definition imaging, precision engineered controls and performance design' to 'all levels of relationships from OEM/ODM, distribution, reseller, government and commercial accounts,'" and that they "had the present intent and the capability to fulfill BirdDog's precise manufacturing needs." Id. ¶ 35.  Defendants Lo and Lee later made similar representations to plaintiffs' executives. Id. ¶ 36.

On September 4, 2017, Bolin Limited—or Bolin China—signed a Non Disclosure Agreement (the "NDA") on behalf of the Bolin defendants, and binding Lo and Lee as their executives, acknowledging the confidential nature of plaintiffs' trade secrets. Id. ¶ 37.  Thereafter, plaintiffs and the Bolin defendants began a relationship that resulted in the Bolin defendants becoming plaintiffs' principal camera manufacturer. Id. ¶ 38.  To continue to comply with plaintiffs' manufacturing requirements, the Bolin defendants induced plaintiffs to disclose proprietary and confidential information, including the trade secrets, to them, Lo, and Lee, on repeated occasions. Id. ¶ 39.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

Between 2019 and 2022, the Bolin defendants, Lo, and Lee induced plaintiffs' executives on multiple occasions to travel to defendants' headquarters to negotiate agreements, "all the while concealing their desire to use these meetings for the purpose of obtaining access to BirdDog's confidential and proprietary information, including the BirdDog Trade Secrets." Id. ¶ 40. Three times in May 2019 and then in October 2019, plaintiffs' Chief Executive Dan Miall and Lo and Lee, in their individual and official capacities, met to negotiate agreements, and Lo and Lee induced Miall to provide them and the Bolin defendants with some of the trade secrets.[3] Id. ¶¶ 41-42. However, starting in or around 2023, it became clear that defendants sought to take plaintiffs' position in the market. Id. ¶ 44. Leading up to 2023, Lo, Lee, and the Bolin defendants worked together to induce plaintiffs to enter into a series of six related agreements, which defendants did not intend to perform, and lulled plaintiffs "into a false sense of security in the good faith of their communications relating to what had become a faux business relationship so that they could extract, use and misappropriate . . . the BirdDog Trade Secrets in the development and marketing of competing products." Id. ¶ 45. Pursuant to the June 2021 Agreement, Lo and the Bolin defendants represented that they would "produce and timely deliver 400 units of BirdDog's White P400 cameras." Id. ¶ 46. Pursuant to the September 2021 Agreement, they represented that they would:

produce and timely deliver 250 units of BirdDog's A200 second generation cameras; 120 units of BirdDog's A30 second generation cameras; 1,440 units of BirdDog's Black P120 cameras; 260 units of BirdDog's White P120 cameras; 720 units of BirdDog's Black P110 cameras; 270 units of BirdDog's White P110 cameras; 1,320 units of BirdDog's Black P400 cameras; 780 units of BirdDog's Black P4K cameras; 236 units of BirdDog's White P4K cameras; 1,400 units of BirdDog's PF120 cameras; and 2,360 units of BirdDog's PTZKEY cameras.

Id. ¶ 47. Pursuant to the August 2022 Agreement, Lo, Lee, and the Bolin defendants represented that they would "produce and timely deliver 3,000 units of BirdDog's Black P240 cameras; and 1,000 units of BirdDog's White P240 cameras." Id. ¶ 49. Pursuant to the October 2022 Agreement, Lo, Lee, and the Bolin defendants represented that they

---

[3] Miall and the Bolin defendants, Lo, and Lee had similar meetings in February 2022 and November 2022, while negotiating the six agreements at issue. FAC ¶¶ 48, 51.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

would "produce and timely deliver 200 units of BirdDog's White P120 cameras." Id. ¶ 50. Pursuant to the March 2023 Agreement, they represented that they would "produce and timely deliver 750 units of BirdDog's Ocean White U120 cameras; 250 units of BirdDog's White U120 cameras; and 1,000 units of BirdDog's Black X120 cameras." Id. ¶ 52. Finally, pursuant to the May 2023 Agreement, they represented that they would "produce and timely deliver 1,000 units of BirdDog's Black X120 cameras." Id. ¶ 53. For each of the agreements, except for the March 2023 Agreement, plaintiffs paid 30% of the total contract price to secure the timely production and delivery of the cameras by the Bolin defendants; for the March 2023 Agreement, plaintiffs paid 50% of the total contract price. Id. ¶¶ 46-47, 49-50, 52-53. The Bolin defendants did not timely perform their obligations under and ultimately repudiated the six agreements. Id. ¶ 54.

At a meeting with plaintiffs' executives in Australia on July 12, 2023, Lo, the Bolin defendants, and others falsely communicated that plaintiffs were "failing," and Lo presented the following "options" as solutions: "(1) a merger; (2) a full takeover by the Bolin Defendants of BirdDog's camera business; (3) stopping manufacture of BirdDog's cameras; or (4) vague threats of competition while manufacturing BirdDog's cameras." Id. ¶ 58. At the time of the meeting, the Bolin defendants held $3,060,883.10 of plaintiffs' funds and had not delivered 9,670 cameras. Id. ¶ 59. On July 15, 2023, Lo reiterated plaintiffs' "options" and demanded that he be appointed as plaintiffs' CEO; however, he later advised plaintiffs that "'all options' were 'off the table.'" Id. ¶ 60. In September 2023, Lo admitted that the Bolin defendants "were repudiating their obligations under these transactions and that - apparently until BirdDog acceded to the Bolin [d]efendants' demands and permitted Mr. Lo to take over the company - there would be a 'hard sharp stop' on all BirdDog production." Id. ¶ 61.

In February 2022 and January 2023, Miall identified Bolin products—a converter product and a camera—that appeared to incorporate similar technology to plaintiffs' products, including some of their trade secrets; however, Lo denied any culpability. Id. ¶¶ 64-65. In January 2024, the Bolin defendants started "advertising the imminent sale of cameras" that incorporate and use plaintiffs' trade secrets. Id. ¶ 66.

## III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                'O'

| Case No. | 2:23-cv-09416-CAS (AGRx) | | Date | March 11, 2024 |
|----------|--------------------------|---|------|----------------|
| Title    | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | | |

properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|----------|--------------------------|------|----------------|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

As a general rule, leave to amend a complaint which has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.   DISCUSSION

### A.   Claims for Breach of Contract – Purchase Agreements & NDA

Plaintiffs bring claims for breach of contract against 2082 and Bolin China.  FAC at 23.

Defendant 2082 argues that the breach of contract claims should be dismissed because (1) 2082 was not a party to any of the relevant agreements; and (2) 2082 is not an alter ego of Bolin China.  Dkt. 47-1 at 12.  With regards to the relevant agreements, 2082 argues that plaintiffs fail to specify which plaintiff(s) and which defendant(s) entered into the alleged purchase agreements and the terms (such as the dates for production and delivery) that it allegedly breached.  Id. at 18.  2082 argues that Bolin China was the sole contracting party.[4]  Id.  With regard to the NDA, defendant 2082 asserts that plaintiffs merely make a conclusory allegation that the parties are bound to the NDA and thus do not meet the pleading standards.  Dkt. 47-1 at 19; see Buchanan v. Neighbors Van Lines, No. CV 10-6206-PSG-RCX, 2010 WL 4916644, at *5 (C.D. Cal. Nov. 29, 2010) ("In alleging the existence of the contract, a 'plaintiff may set forth the contract verbatim in the complaint or plead it, as indicated, by exhibit, or plead it according to its legal effect.'") (citation omitted).

Moreover, 2082 asserts that it is a separate entity from and thus not an alter ego of Bolin China.  Dkt. 47-1 at 14.  It contends that it is not a shareholder of Bolin China and

---

[4] Similarly, defendants Lo and 2082 argue that plaintiffs' claims for trade secret misappropriation, conversion, violation of Penal Code § 496, money had and received, intentional interference with prospective economic advantage, and violations of the UCL fail because plaintiffs have not properly alleged the existence of a contractual relationship between plaintiffs and defendants Lo and 2082.  Dkt. 47-1 at 12-13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

that the FAC misapplies the alter ego theory by failing to allege direct claims against Bolin China before alleging a basis for holding 2082 secondarily liable. Id. at 15.

In opposition, plaintiffs contend that they have met the "burden of pleading (1) the existence of each contract; (2) [plaintiffs'] performance or excuse for nonperformance; (3) [2082]'s breach and repudiation; and (4) resulting damages." Dkt. 51 at 12. Plaintiffs argue that 2082 was a party to each of the six contracts and that its contention that it had nothing to do with the contracts is a *factual* argument regarding contract interpretation rather than a *pleading* deficiency. Id. at 13-14. Alternatively, plaintiffs assert that 2082 is the alter ego of Bolin China because they "share a unity of interest and ownership," comingle assets, share addresses and employees, and hold themselves out to the public as each other. Id. at 14-15. Moreover, plaintiffs contend that the inquiry regarding alter ego liability is "inherently fact-specific." Id. at 14.

In reply, defendant 2082 argues that the Court may consider the wire transfer records and purchase orders, which are incorporated by reference in the FAC and reflect that the only parties to the contracts were BirdDog Australia and Bolin China. Dkt. 57 at 8-10. It also asserts that it is improper for plaintiffs to attempt to "survive a motion to dismiss by not allowing the Court to see the contracts at issue." Id. at 9. Further, 2082 argues that plaintiffs have failed to sufficiently allege both elements of alter ego liability, particularly the inequitable result element. Id. at 10-12. According to 2082, plaintiffs' "allegations that Bolin China and 2082 share the same offices, have overlapping officers and employees, and do business under the same name are still insufficient to state a claim for alter ego liability." Id. at 11. Finally, 2082 asserts that plaintiffs notably do not attach the purchase orders or the NDA to the FAC and further request that the Court disregard them. Id. at 14-15.

"California recognizes alter ego liability where two conditions are met: First, where 'there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;' and, second, where 'adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice.'" In re Schwarzkopf, 626 F.3d 1032, 1038 (9th Cir. 2010) (quoting Wood v. Elling Corp., 20 Cal. 3d 353, 364 n.9 (1977)); see also Mesler v. Bragg Mgmt. Co., 39 Cal. 3d 290, 300 (1985). Both factors must be met to establish alter ego liability. Mesler, 39 Cal. 3d at 300. Moreover, "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

supporting both of the necessary elements." Gerritsen v. Warner Bros. Ent. Inc., 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015) (citation omitted).

The Court finds that, as a threshold matter, plaintiffs have failed to adequately plead the existence of the six underlying contracts and the NDA. A plaintiff that "rel[ies] on a written contract . . . must attach the written contract or plead its terms verbatim" in the complaint. Altman v. PNC Mortg., 850 F. Supp. 2d 1057, 1079 (E.D. Cal. 2012). Here, plaintiffs allege that the parties entered into six "written contract[s]" spanning from June 2021 to May 2023 but have not attached any of the contracts to their complaint or pled the relevant contract terms verbatim.[5] Accordingly, the Court **GRANTS** defendants' motions to dismiss the breach of contract claims, regarding both the purchase agreements and the NDA, with leave to amend.

**B.    Claims for Violations of the DTSA and the CUTSA**

To state a claim for trade secret misappropriation under the DTSA and the CUTSA, "a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the

---

[5] Plaintiffs allege that these contracts are all between "BirdDog, on the one hand, and the Bolin [d]efendants, on the other hand." FAC ¶¶ 70-74. Plaintiffs have elsewhere alleged that "each of the [d]efendants was acting as an . . . alter ego . . . of all other [d]efendants" and that "Bolin [China] was at all relevant times the alter ego . . . of [2082] and [] Lo." Id. ¶¶ 13, 16. To the extent plaintiffs are asserting an alter ego liability theory in this action, it appears that they have failed to plead facts showing that principles of equity weigh in favor of holding 2082 liable for Bolin China's contractual obligations. While plaintiffs argue that "[t]he Bolin [d]efendants were and are undercapitalized and are *potentially incapable* of satisfying a judgment should [plaintiffs] prevail in this action," id. ¶ 13 (emphasis added), there are no allegations that assets were transferred from one corporate entity to the other in bad faith. See Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1117 (C.D. Cal. 2003) ("California courts generally require some evidence of bad faith conduct on the part of defendants before concluding that an inequitable result justifies an alter ego finding."). Moreover, plaintiffs neither explain the basis for their belief that the Bolin defendants are "undercapitalized" nor specify whether only one of the Bolin defendants is undercapitalized or both.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

plaintiff." <u>Alta Devices, Inc. v. LG Elecs., Inc.</u>, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018).

Defendants Lo and 2082 and defendant Lee first argue that the Court should dismiss plaintiffs' trade secret claims because plaintiffs do not allege which defendant "committed which alleged act of misappropriation." Dkt. 47-1 at 20; dkt. 55-1 at 11-12. They argue that plaintiffs do not sufficiently identify the trade secrets that each defendant allegedly misappropriated and instead provide insufficient and overly broad categories. Dkt. 47-1 at 20-21; dkt. 55-1 at 12-14. They further argue that plaintiffs' most specific allegations of misappropriation—that defendants' products "incorporate[ed] similar technology"—are speculative and do not explain what and how technology was allegedly disclosed and misappropriated. Dkt. 47-1 at 21-22; dkt. 55-1 at 14.

In opposition, plaintiffs contend that they sufficiently allege the elements of trade secret misappropriation. Dkt. 51 at 17; dkt. 61 at 13. While defendants argue that plaintiffs do not distinguish between the defendants for purposes of the DTSA and CUTSA claims, plaintiffs assert that they have described each defendant in relation to these claims and alleged alter ego and joint tortfeasor liability. Dkt. 51 at 17-18; dkt. 61 at 14. Further, plaintiffs argue that they surpassed the standard for disclosure regarding their Technical and Economic Trade Secrets. Dkt. 51 at 18; dkt. 61 at 15; <u>see also</u> <u>Arthur J. Gallagher & Co. v. Tarantino</u>, 498 F. Supp. 3d 1155, 1171 (N.D. Cal. 2020). According to plaintiffs, defendants admit that plaintiffs' CEO twice observed that defendants' products incorporated plaintiffs' trade secrets, and whether or not the products did in fact incorporate the trade secrets is "a paradigmatic disputed issue of fact." Dkt. 51 at 19; dkt. 61 at 16. Thus, plaintiffs argue that they have alleged misappropriation by describing defendants' "conspiracy to improperly acquire, use and disclose [p]laintiffs' trade secrets." Dkt. 51 at 19; dkt. 61 at 16.

In reply, defendants 2082, Lo, and Lee again argue that plaintiffs neither allege how defendants each specifically misappropriated the trade secrets nor provide defendants with notice of what constitutes the trade secrets. Dkt. 57 at 16-17; dkt. 63 at 10, 12. Defendant Lee further argues that she cannot be liable based on conspiracy liability because "[i]t is well established that the DTSA does not allow a private civil cause of action for conspiracy to misappropriate trade secrets." Dkt. 63 at 11-12; <u>see also</u> <u>Arthur J. Gallagher & Co. v. Tarantino</u>, No. 20-CV-05505-EMC, 2022 WL 4092673, at *18 (N.D. Cal. July 27, 2022).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | | Date | March 11, 2024 |
|---|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | | |

The Court finds that plaintiffs have adequately pled their trade secret claims.[6] First, plaintiffs allege their trade secrets with "sufficient particularity to separate [them] from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." Vendavo, Inc. v. Price f(x) AG, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citation omitted). Although defendants argue that plaintiffs merely provide broad categories of trade secrets, plaintiffs separate their trade secrets into two categories, "Technical" and "Economic," before providing further details regarding the trade secrets within each category. Thus, the Court finds that plaintiffs have sufficiently described their trade secrets for purposes of their DTSA and CUTSA claims. See TMX Funding, Inc. v. Impero Techs., Inc., No. C 10-00202 JF-PVT, 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010) (finding descriptions, such as "b. Its business methods and marketing plans, such as prospective customer and sales methods for attracting and retaining customers; c. Its product information, including, but not limited to, cost, pricing, margin data and other financial information; d. Customer lists[,]" among others, to be "sufficient to permit [d]efendants at least to ascertain the boundaries within which the secrets lie").

Second, plaintiffs allege that Bolin China signed a "comprehensive" NDA and that plaintiffs thereafter met with defendants on several occasions in California, both at the Bolin defendants' headquarters and at Lo and Lee's home. During these meetings, it appears that the parties negotiated agreements and that defendants "induced" plaintiffs to share proprietary information, including the trade secrets. Then, plaintiffs allege that on two occasions, Miall, plaintiffs' Chief Executive, identified "Bolin-branded" products that "appeared to incorporate similar technology" to plaintiff's products, including some of their trade secrets. FAC ¶¶ 64-65. Further, plaintiffs state that the Bolin defendants are advertising cameras using plaintiffs' trade secrets. Id. ¶ 66. Because plaintiffs have

---

[6] However, the Court also agrees with defendants that they may not be held liable for violations of the DTSA or the CUTSA based on their participation in a conspiracy. See Arthur J. Gallagher & Co., 2022 WL 4092673, at *16-*18 (finding that the CUTSA preempts conspiracy claims and that "the weight of authority tips against the viability of conspiracy claims based on misappropriation of trade secrets under the DTSA") (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

explained how defendants allegedly obtained plaintiffs' trade secrets, the Court finds that plaintiffs' allegations of "similarities" between the products are sufficient to plead misappropriation by defendants. See Alta Devices, Inc., 343 F. Supp. 3d at 883 (finding that "allegations of similarities [are] sufficient when accompanied by allegations of exactly how defendants improperly obtained the alleged trade secrets").

Finally, plaintiffs allege that they have been harmed by the misappropriation of the trade secrets because they have lost profits and must directly compete with the Bolin defendants in the marketplace. Thus, plaintiffs have adequately pled their DTSA and CUTSA claims. Accordingly, the Court **DENIES** defendants' motions to dismiss plaintiffs' trade secret claims.

**C.    Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing – Purchase Agreements**

Because plaintiffs' breach of contract claim fails, defendants Lo and 2082 argue that plaintiffs' claim for breach of the implied covenant of good faith and fair dealing likewise fails. Dkt. 47-1 at 22. They contend that plaintiffs' breach of the implied covenant claim additionally fails because it merely duplicates plaintiffs' breach of contract claims. Id. at 22-23. Finally, they argue that plaintiffs have not alleged the required special relationship between the parties or met the Rule 9(b) pleading standard to recover in tort. Id. at 23.

In opposition, plaintiffs assert that 2082 sought to control them and their customer relationships. Dkt. 51 at 20. Thus, they argue that 2082 not only breached the purchase agreements but also the implied covenant of good faith and fair dealing by frustrating plaintiffs' "rights to the benefits of the contract[s]." Id. at 20-21; see also Racine & Laramie, Ltd. v. Dep't of Parks & Recreation, 11 Cal. App. 4th 1026, 1027 (1992).

The Court does not find this claim to be duplicative of the breach of contract claims. Accordingly, the Court **DENIES** defendants' motion to dismiss plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.[7]

---

[7] The Court agrees with defendants that if plaintiffs' breach of contract claims ultimately fail, the breach of the implied covenant claim will also fail. However, the Court is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

### D.   Economic Loss Rule

Pursuant to the economic loss rule, "[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." Expedited Packages, LLC v. Beavex Inc., No. CV-15-00721-MMM-AGRX, 2015 WL 13357436, at *2 (C.D. Cal. Sept. 10, 2015) (citation omitted). "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 988 (2004).

Defendants Lo and 2082 and defendant Lee argue that the economic loss rule bars plaintiffs' claims for conversion, violations of Penal Code § 496, money had and received, intentional interference, and violations of California Business and Professions Code § 17200—or Unfair Competition Law ("UCL") claim. Dkt. 47-1 at 15-16; dkt. 55-1 at 22-23. Defendants argue that defendants' alleged breaches of the contracts form the basis for plaintiffs' tort claims, as evidenced by the fact that plaintiffs seek in damages the same $3,060,883.10 amount that they allegedly paid pursuant to the contracts. Dkt. 47-1 at 17; dkt. 55-1 at 24. Further, defendant Lee contends that "[a]s the tort claims against [her] are duplicative of the claims against 2082 and Bolin China and are mere extensions of the contract claims against 2082 and Bolin China, they should be barred to the same extent they would be barred as against 2082 and Bolin China," even though plaintiffs do not assert a breach of contract claim against her individually. Dkt. 55-1 at 24-25.

In opposition, plaintiffs argue that the economic loss rule does not bar these claims. Dkt. 51 at 16; dkt. 61 at 23; see also Bentham v. Bingham L. Grp., No. 13-CV-1424-MMA-WVG, 2013 WL 12186171, at *12 (S.D. Cal. Nov. 15, 2013) ("[T]he Robinson court specifically acknowledged that where fraud or conversion accompanies a breach of contract, the economic loss rule does not bar the tort claim."). They further argue that the

---

granting plaintiffs leave to amend their breach of contract claims. Thus, at this juncture, the Court declines to dismiss plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

economic loss rule does not apply to either Lo or Lee because plaintiffs do not assert breach of contract claims against them.[8]  Dkt. 51 at 16-17; dkt. 61 at 23-24.

In reply, defendants assert that several courts, including this one, have found that the economic loss rule may bar a conversion claim where, as here, the claim arises from the contracts at issue.  Dkt. 57 at 12-13; dkt. 63 at 20-21; see also Motivo Eng'g, LLC v. Black Gold Farms, No. 2:22-CV-01447-CAS-JCX, 2022 WL 3013227, at *4 (C.D. Cal. June 27, 2022) ("[D]efendant's counterclaim for conversion is barred by the economic loss rule.").[9]  Defendant Lee argues that plaintiffs' interference claims similarly share the same factual allegations as plaintiffs' breach of contract and conversion claims.  Dkt. 63 at 21.  Similarly, defendants argue that the economic loss rule bars plaintiffs' claims for violations of Penal Code § 496 and for money had a received because they "are simply a recasting" of plaintiffs' conversion claim.  Dkt. 57 at 13; dkt. 63 at 21-22.  Further, defendants assert that "[p]laintiffs do not cite to any authority for any exception to the economic loss rule for claims based on purported statutory violations or actions based on an implied contract."  Dkt. 57 at 13; dkt. 63 at 21.  While plaintiffs argue that the economic loss rule cannot apply to defendants Lo and Lee because plaintiffs do not bring breach of contract claims against them, defendants argue that plaintiffs cannot argue both that Lo and Lee are liable for the corporate defendants' actions and that they are separate from the corporate defendants for purposes of the economic loss rule.  Dkt. 57 at 14; dkt. 63 at 22.  Finally, defendants Lo and Lee argue that plaintiffs' tort claims against them

---

[8] Plaintiffs also disagree that their claims are grounded in fraud and thus must meet the heightened pleading standard of Rule 9(b).  Dkt. 51 at 26; dkt. 61 at 24.  In the event Rule 9(b) applies, plaintiffs contend they have satisfied this pleading standard by alleging the "who, what, when, where and how" of defendants' scheme.  Dkt. 51 at 26; dkt. 61 at 24. In reply, defendants argue that plaintiffs "offer no argument or explanation how their allegations are not founded on 'a unified fraudulent course of conduct.'"  Dkt. 63 at 15; dkt. 57 at 19-20.  The Court does not find that Rule 9(b) applies.
[9] Motivo is distinguishable from this case.  In Motivo, defendant Black Gold Farms' counterclaim for conversion was merely an attempt to restate its contract claim.  By contrast, plaintiffs' conversion claim in this action is independent from their breach of contract claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

are "mere extensions of the contract claims against 2082 and Bolin China" and are thus also barred by the economic loss rule. Dkt. 57 at 14; dkt. 63 at 22.

The Court finds that plaintiffs' claims for conversion, violations of California Penal Code § 496, money had and received, intentional interference with prospective economic advantage, and violations of California Business & Professions Code § 17200, *et seq.*, are not barred by the economic loss rule. Plaintiffs allege that defendants induced plaintiffs to enter into agreements with the intention of misappropriating plaintiffs' trade secrets and ultimately acquiring plaintiffs' company and customers. Thus, plaintiffs do not seek to recover under these claims "for the breach of duties that merely restate contractual obligations." Expedited Packages, LLC v. Beavex Inc., No. CV-15-00721-MMM-AGRX, 2015 WL 13357436, at *2 (C.D. Cal. Sept. 10, 2015) (citation omitted). Accordingly, the Court declines to dismiss plaintiffs' sixth through tenth claims for relief based on the economic loss rule, and addresses each of these claims below.

**E.      Claim for Conversion**

Under California law, the elements of conversion are "(1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages." Joe Hand Promotions. Inc. v. Roseville Lodge No. 1293, 161 F. Supp. 3d 910, 916 (E.D. Cal. 2016) (citing Tyrone Pac. Intern., Inc. v. MV Eurychili, 658 F.2d 664, 666 (9th Cir. 1981)).

Defendants Lo and 2082 argue that plaintiffs must plead a claim for conversion with specificity pursuant to Rule 9(b) because such a claim is grounded in fraud; here, plaintiffs allegedly do not specify whose funds were converted by whom. Dkt. 47-1 at 24. Defendants Lo, 2082, and Lee contend that "[t]he funds were undisputedly sent only to Bolin China" and that "it is implausible that all of these parties jointly converted the same funds and that all of these parties simultaneously possess those same funds and/or have jointly used them." Id.; dkt. 55-1 at 16. Further, they argue that plaintiffs cannot demonstrate that the alleged retention of the funds was "wrongful" when plaintiffs have failed to plead the threshold breach of contract claims. Dkt. 47-1 at 24; dkt. 55-1 at 17. Defendant Lee, who is not an owner of Bolin China, argues that plaintiffs cannot state a claim for conversion against her because she never received the funds at issue and there

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

are no allegations that she individually took action to convert the deposit payments.[10]
Dkt. 55-1 at 15-16.  Thus, she argues that plaintiffs cannot state a claim for conversion
against individual defendants by merely alleging "that they . . . paid money to Bolin
China under the purchase orders and that money has not been returned."  Id. at 16.
Because "[h]er actions are not in any way alleged to be separate and distinct from the
allegations against 2082 and Bolin China," defendant Lee argues that she cannot be held
individually liable for conversion.  Id. at 17.

In opposition, plaintiffs argue that they have adequately alleged the elements of
conversion as to defendants Lo, 2082, and Lee.  Dkt. 51 at 21.  According to plaintiffs,
defendants' argument that they did not receive the funds at issue contradicts plaintiffs'
alter ego and joint tortfeasor allegations and concerns factual questions, such as "*what
entity* owns or controls the bank account where the funds were transmitted and *whether
and to what extent* [defendants] exercise joint dominion and control over those funds or
aided the entities that did."  Dkt. 51 at 22; dkt. 61 at 18.  Moreover, plaintiffs contend that
a claim for conversion does not "require [d]efendants to have personally taken money to
hold them liable," and it is sufficient that plaintiffs' "funds were received."  Dkt. 51 at

---

[10] Defendant Lee asserts that while she "is a member of 2082, she is neither an owner nor
an employee of Bolin China and was not a party to any of the contracts at issue in the
FAC," and as such, "[t]here is no basis for [her] to be in this action."  Dkt. 55-1 at 7.  In
opposition, plaintiffs argue that defendant Lee is liable both individually and as a joint
tortfeasor/coconspirator of the other defendants for endeavoring in "(1) a concert of
action; under (2) a unity of purpose or design; while (3) working to a common purpose
and each acting with the knowledge and consent of the others."  Dkt. 61 at 13.  According
to plaintiffs, "it was *only* due to [their] good faith trust of Mr. Lo and Ms. Lee's repeated
representations that [they] paid these funds to [d]efendants and provided them with [their]
trade secrets."  Id. at 12 (emphasis in original).  In reply, Lee asserts that plaintiffs argue
"for the first time" in their opposition that Lee was a coconspirator, yet the FAC contains
no allegations, except regarding the DTSA under which conspiracy liability is not
available, of a conspiracy between the defendants.  Dkt. 63 at 6-8.  Lee argues that
plaintiffs do not allege facts regarding who conceived of the conspiracy and when, who
entered into the conspiracy, and which claims are based on the conspiracy, and thus do
not adequately plead the alleged conspiracy and particularly not with the specificity
required by Rule 9(b).  Id. at 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

22; dkt. 61 at 18.  Finally, plaintiffs assert that they bring their claims against defendant Lee in her individual capacity based on her "individual wrongful acts," rather than in her capacity as an officer.  Dkt. 61 at 19.

In reply, defendants Lo, 2082, and Lee assert that plaintiffs do not dispute that Bolin China received the funds at issue, but "to the extent [plaintiffs have a] good faith basis for believing that [2082, Lo, or Lee] owned the bank account in question or has control over the funds (which [they do not]), [they] must plead the relevant facts to support such an allegation, instead of mere legal conclusions."  Dkt. 57 at 18-19; dkt. 63 at 13-14.  Further, they contend that plaintiffs do not plead "key facts within [their] knowledge" regarding the defendants' involvement.  Dkt. 57 at 20; dkt. 63 at 16.  In addition, Lee argues that plaintiffs do not allege a conversion conspiracy and further cannot argue both that Lee is liable because of her "individual wrongful acts" and that plaintiffs do not have to specify her "individual wrongful acts" because she is liable as a "joint tortfeasor."  Dkt. 63 at 14.  Moreover, she argues that plaintiffs base her liability "on the alleged theft of payments made to Bolin China, which she allegedly had access to given her alleged role with 2082 and/or Bolin China."  Id. at 15.

The Court finds that plaintiffs have adequately alleged their conversion claim at the pleading stage.  Plaintiffs have pled (1) their ownership of the funds at the time of the conversion; (2) defendants' conversion of the funds by a wrongful act; and (3) damages.  Throughout the FAC, plaintiffs describe how Lo, Lee, and 2082, together induced plaintiffs to enter into agreements with them with the goal of keeping the funds for their own use, taking over plaintiffs' company and customers, and competing against plaintiffs in the marketplace.  Thus, plaintiffs have sufficiently alleged facts giving rise to their conversion claim against all defendants.  See Opera Gallery Trading Ltd. v. Golden Trade Fine Art Inc., No. 2:15-CV-00569-SVW-RZ, 2015 WL 12912362, at *2 (C.D. Cal. July 28, 2015) ("The defendant need not take the property physically, for any 'assumption of control or ownership over the property, or ... applic[ation] [of] the property to his own use' will suffice.") (citation omitted).  Accordingly, the Court **DENIES** defendants' motions to dismiss plaintiffs' conversion claim.

**F.      Claim for Violations of Cal. Penal Code § 496, *et seq.***

California Penal Code § 496(c) permits a party to bring an action if it was injured by another party who violated § 496(a) by "buy[ing] or receiv[ing] any property that has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|----------|--------------------------|------|----------------|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained[.]"

Because plaintiffs' claim for violations of California Penal Code § 496(a) "necessarily relies on a claim of theft by false pretenses" and thus sounds in fraud, defendants Lo and 2082 and defendant Lee argue that plaintiffs fail to plead it with the specificity required by Rule 9(b). Dkt. 47-1 at 25; dkt. 55-1 at 18. Lee further argues that there are no individual allegations against her separate from the other defendants, which she alleges is impermissible pursuant to both Rule 8 and Rule 9(b). Dkt. 55-1 at 18. Finally, she asserts that plaintiffs do not allege that she received the money at issue or that she "made any representations to [p]laintiffs knowingly or with an intent to deceive BirdDog to pay this money, nor that there was any intent to steal it." Id.

In opposition, plaintiffs argue they have shown that defendants Lo, 2082, and Lee:

(1) obtained and aided in obtaining by theft property belonging to BirdDog; (2) concealed or withheld such property and/or aided in concealing or withholding such property from BirdDog, which they knew was obtained by theft at the time they received, withheld, concealed, or aided in concealing or withholding the property; and (3) the violations caused actual loss, damage, and harm.

Dkt. 61 at 17; see also dkt. 51 at 21. They further argue that a claim for violations of California Penal Code § 496(a) does not "require [d]efendants to have personally taken money to hold them liable," but requires only that plaintiffs' "funds were received." Dkt. 51 at 22; dkt. 61 at 18.

In reply, defendants Lo, 2082, and Lee argue that plaintiffs must allege facts to support the legal conclusion that they "aid[ed] in concealing . . . or withholding any property from the owner, knowing the property to be so stolen or obtained," to bring a viable Penal Code § 496 claim against them. Dkt. 57 at 20; dkt. 63 at 16-17. While plaintiffs argue that Lee could be liable "to the extent she controls or has dominion over the funds paid by BirdDog Australia to Bolin China," Lee contends that the FAC lacks any facts to support this "bare legal conclusion." Dkt. 63 at 17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

For similar reasons as explained above regarding plaintiffs' claim for conversion, the Court finds that plaintiffs have adequately pled their claim for violations of California Penal Code § 496(a).  Plaintiffs have adequately alleged that defendants withheld or aided in withholding plaintiffs' stolen funds.  Accordingly, the Court **DENIES** defendants' motions to dismiss plaintiffs' claim for violations of California Penal Code § 496(a).

### G.    Claim for Money Had and Received

The elements of a claim for money had and received are: "(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment."  Shen v. Gotham Corp. Grp., Inc., No. CV-14-07870S-JOA, 2015 WL 4517146, at *8 (C.D. Cal. July 21, 2015).

Defendants Lo and 2082 and defendant Lee argue that plaintiffs' claim for money had and received fails because it relies upon plaintiffs' failed breach of contract claims. Dkt. 47-1 at 25; dkt. 55-1 at 19.  Defendants Lo and 2082 also contend that plaintiffs fail to plead this claim with the required specificity.  Dkt. 47-1 at 25.  According to defendant Lee, plaintiffs' claim additionally fails because plaintiffs continue to make general allegations as to all defendants rather than allege that Lee individually received the money at issue and refused to return it.  Dkt. 55-1 at 19.

In opposition, plaintiffs argue that they adequately pled that defendants 2082, Lo, and Lee have "in [their] possession money which in equity and good conscience [they] ought to pay over to [plaintiffs]," and that there has been a repudiation of the contracts. Dkt. 51 at 21-22; see also dkt. 61 at 17 (both citing Rains v. Arnett, 189 Cal. App. 2d 337, 344 (1961)).

In reply, defendants Lo, 2082, and Lee argue that plaintiffs cannot establish an element of their claim for money had and received because they do not specifically demonstrate that defendants Lo, 2082, and Lee received the money at issue.  Dkt. 57 at 20-21; dkt. 63 17.  Further, defendant Lee argues that she cannot be held liable for money had and received based on the alleged repudiation of the contracts, to which she was not a party.  Dkt. 63 at 18.

Like plaintiffs' claims for conversion and violations of California Penal Code § 496(a), the Court finds that plaintiffs have adequately alleged their claim for money had

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

and received at the pleading stage.  Plaintiffs have pled in the FAC that defendants received plaintiffs' funds, "which in equity and good conscience should be paid over" to plaintiffs.  See Essex Partners Ltd. v. Merch. Cash & Cap., No. CV-11-03366-CAS-MRW, 2011 WL 13123326, at *7 (C.D. Cal. Aug. 1, 2011).  Accordingly, the Court **DENIES** defendants' motions to dismiss plaintiffs' claim for money had and received.

**H.     Claim for Intentional Interference with Prospective Economic Advantage**

To bring a claim for intentional interference with prospective economic advantage in California, a plaintiff must prove:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional [wrongful] acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

Sybersound Recs., Inc. v. UAV Corp., 517 F.3d 1137, 1151 (9th Cir. 2008) (citation omitted).

According to defendants Lo and 2082 and defendant Lee, plaintiffs do not allege essential facts for their claim for intentional interference with prospective economic advantage, such as:

> any specific economic relationships with third parties, the identity of these purported third parties, why the relationship with these parties contained a probability of future economic benefits, how each of the [d]efendants each knew about these purported relationships, how the alleged failure to deliver cameras disrupted these relationships, how [d]efendants each specifically and separately interfered, and how BirdDog was allegedly damaged as a result.

Dkt. 47-1 at 26; dkt. 55-1 at 20.  Because defendant Lee "was not a party to and had no obligation to do anything under [the six] contracts," she argues that she cannot be held liable for plaintiffs' claim for intentional interference, which is based solely on the failure to perform pursuant to the contracts.  Dkt. 55-1 at 20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

 In opposition, plaintiffs assert that they have pled all elements of this claim by alleging their economic relationships with third parties, defendants' knowledge of those relationships, and intentional wrongful acts—such as "placing a 'hard sharp stop' on production of all [plaintiffs'] products while unlawfully holding and refusing to return more than $3,000,000 in [plaintiffs'] funds"—that were intended to and that actually did disrupt those economic relationships. Dkt. 51 at 23; dkt. 61 at 20; <u>see also</u> FAC ¶ 6. Plaintiffs contend that they have lost profits as a result of defendants' plan to damage plaintiffs' reputation and take over plaintiffs' customers. Dkt. 51 at 24; dkt. 61 at 20.

 In reply, defendants Lo, 2082, and Lee argue that plaintiffs' allegations "merely show that [they] generally ha[ve] customers and generally conduct[] business . . . , but do not identify any specific economic relationship with any specific customers involving the cameras involved in the six alleged contracts, much less how [they] had a probability of future economic benefit from those relationships[]" or whether defendants knew of those allegedly disrupted relationships. Dkt. 57 at 21; dkt. 63 at 18-19. Finally, Lee argues that plaintiffs' claim against her fails because plaintiffs do not allege that she personally interfered with plaintiffs' relationships and instead improperly impute the acts of other defendants to her because the defendants allegedly "all acted 'in concert.'" Dkt. 63 at 19.

 It appears to the Court that plaintiffs have failed to plead, beyond mere conclusory allegations, that their economic relationships have been harmed. According to plaintiffs, "BirdDog has been unable to fulfill orders and ship products because of the Bolin Defendants' actions - which, BirdDog is informed and believes, has caused some of its customers to purchase the products of its competitors." FAC ¶ 67. This is insufficient for purposes of pleading intentional interference. <u>See</u> <u>Sybersound Recs., Inc.</u>, 517 F.3d at 1151 ("In its complaint, [plaintiff] merely states in a conclusory manner that it 'has been harmed because its ongoing business and economic relationships with Customers have been disrupted.' [Plaintiff] does not allege, for example, that it lost a contract nor that a negotiation with a Customer failed."). Moreover, without more specificity regarding these relationships, it is not clear whether defendants knew of the particular economic relationships that were actually disrupted. Accordingly, the Court **GRANTS** defendants' motions to dismiss plaintiffs' claim for intentional interference with prospective economic advantage, with leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

### I.      Claim for Violations of Cal. Bus. & Prof. Code § 17200, *et seq.*

Under the UCL, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1." Cal. Bus. & Prof. Code § 17200.

Defendants Lo and 2082 and defendant Lee first argue that plaintiffs fail to plead their claim for violations of the UCL, which relies upon alleged fraudulent conduct, with specificity as required by Rule 9(b). Dkt. 47-1 at 26-27; dkt. 55-1 at 21. Further, they argue that "[a] sophisticated corporate party like BirdDog is not the sort of entity that is entitled to invoke the UCL to remedy a business-to-business contractual dispute." Dkt. 47-1 at 27; dkt. 55-1 at 22; see also Nnydens Int'l, Inc. v. Textron Aviation, Inc., No. CV 18-9455-DMG-SKX, 2020 WL 7414732, at *8 (C.D. Cal. June 11, 2020) ("In California, 'where a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks.'") (quoting Linear Tech. Corp. v. Applied Materials, Inc., 152 Cal. App. 4th 115, 135 (2007)). Defendant Lee further argues that she cannot be held liable for violations of the UCL because plaintiffs cannot allege the requisite contractual relationship between them. Dkt. 55-1 at 21.

In opposition, plaintiffs argue that they have adequately alleged that they suffered an economic injury because of defendants' fraudulent or unlawful business practices. Dkt. 51 at 25; dkt. 61 at 21-22. According to plaintiffs, their claims are based on defendants' violations of Penal Code § 496, and "[c]laims based on the 'unlawful' prong of the UCL 'borrow' violations of other laws and make those unlawful practices separately actionable through the UCL." Dkt. 51 at 26; dkt. 61 at 22 (both citing Klein v. Chevron U.S.A., Inc., 202 Cal. App. 4th 1342, 1383 (2012)). Finally, plaintiffs argue that their claims against defendant Lee for her wrongful acts are independent from their breach of contract claims against other defendants; thus, their UCL claim does not depend on an underlying contractual relationship. Dkt. 61 at 22.

In reply, defendants Lo, 2082, and Lee argue that the court in Linear Technology distinguished "sophisticated corporate customers" that could not invoke the UCL from general consumers whom the UCL was designed to protect. Dkt. 57 at 22; dkt. 63 at 20. Finally, they argue that because plaintiffs' Penal Code § 496 claim fails and is further "an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-09416-CAS (AGRx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | BIRDDOG TECHNOLOGY LIMITED ET AL V. 2082 TECHNOLOGY, LLC ET AL | | |

improper repackaging of their breach of contract claim[s]," it cannot save plaintiffs' UCL claim from dismissal.  Dkt. 57 at 22; dkt. 63 at 20.

It appears that plaintiffs bring their UCL claim under the fraudulent and unlawful prongs of the UCL.  The Court finds that plaintiffs have adequately pled their UCL claim in the FAC.  Accordingly, the Court **DENIES** defendants' motion to dismiss plaintiffs' UCL claim.

## V.  CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendants' motions to dismiss plaintiffs' claims for breach of contract and intentional interference with prospective economic advantage, with leave to amend.  The Court **DENIES** defendants' motions to dismiss plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, violations of the DTSA and the CUTSA, conversion, violations of California Penal Code § 496, money had and received, and violations of Business and Professions Code § 17200.  The Court grants plaintiffs leave to file an amended complaint by March 25, 2024.  Defendants are directed to respond to the second amended complaint by April 15, 2024.

IT IS SO ORDERED.

|  | 00 | : | 25 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |