RYAN Q. KEECH (SBN 280306)
Ryan.Keech@klgates.com
GABRIEL M. HUEY (SBN 291608)
Gabriel.Huey@klgates.com
CASSIDY T. YOUNG (SBN 342891)
Cassidy.Young@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California  90067
Telephone: 310.552.5000
Fax No.:    310.552.5001

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BIRDDOG TECHNOLOGY LIMITED, an Australian company; and BIRDDOG AUSTRALIA PTY LTD, an Australian company,<br><br>               Plaintiffs,<br><br>     v.<br><br>2082 TECHNOLOGY, LLC DBA BOLIN TECHNOLOGY, a California limited liability company; BOLIN TECHNOLOGY CO., LTD., a Chinese limited company; HOI "KYLE" LO, an individual; JENNIFER LEE, an individual; and DOES 3 through 25, inclusive,<br><br>               Defendants. | Case No. 2:23-cv-09416-CAS-AGRx<br><br>[Assigned to the Honorable Christina A. Snyder]<br><br>**REDACTED VERSION OF SECOND AMENDED COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT - PURCHASE AGREEMENTS;**<br>**(2) BREACH OF CONTRACT - NONDISCLOSURE AGREEMENT;**<br>**(3) VIOLATIONS OF THE DEFEND TRADE SECRETS ACT OF 2016, 18 U.S.C. § 1832 *ET SEQ.***<br>**(4) VIOLATIONS OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT;**<br>**(5) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING - PURCHASE AGREEMENTS;**<br>**(6) CONVERSION;**<br>**(7) VIOLATIONS OF PENAL CODE § 496, *ET SEQ.*;** |

507352943.2

- 1 -
**SECOND AMENDED COMPLAINT**

1

2

3

4

5

6

7

8

9

**(8) MONEY HAD AND RECEIVED;**
**(9) INTENTIONAL**
**INTERFERENCE WITH**
**PROSPECTIVE ECONOMIC**
**ADVANTAGE;**
**(10) VIOLATIONS OF BUSINESS**
**AND PROFESSIONS CODE § 17200;**

**DEMAND FOR JURY TRIAL**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND AMENDED COMPLAINT**

For their Second Amended Complaint in this action, Plaintiffs BirdDog Technology Limited ("BirdDog Technology") and BirdDog Australia Pty Ltd ("BirdDog Australia") (collectively, "BirdDog") complain against Defendants 2082 Technology, LLC dba Bolin Technology ("Bolin LLC"), Bolin Technology Co., Ltd. ("Bolin Limited") (collectively, the "Bolin Defendants"), Mr. Hoi "Kyle" Lo ("Mr. Lo"), Ms. Jennifer Lee ("Ms. Lee") and DOES 3-25 (collectively, "Defendants") as follows:

## <u>NATURE OF THE ACTION</u>

1. This case seeks to bring an end to a corporate scheme implicating brazen theft on an international scale.

2. Based in Australia, BirdDog is an internationally-renowned vendor of streaming video technology. BirdDog is known by clients the world over for its ability to develop and manufacture high quality hardware and software solutions that increase the quality, speed and flexibility of video that can be delivered over existing network infrastructure. Customers whose businesses and organizations depend on the immediate and reliable distribution of high-quality video content have come to know and trust BirdDog for its expertise in that regard, specifically relying on BirdDog for its ability to timely deliver precision equipment - altogether amounting to economic relationships annually worth many millions of dollars.

3. Enter the Bolin Defendants. Each controlled by Chief Executive Officer Mr. Lo and managed by Chief Operating Officer Ms. Lee from their home in Arcadia, California, Bolin Limited is the manufacturing arm of Bolin LLC, together holding themselves out to the public and doing business as "Bolin Technology." Some years ago, the Bolin Defendants, Mr. Lo, and Ms. Lee realized that the Bolin Defendants needed to expand their operations in order to make more money and compete in the marketplace, and quickly so. It was around the same time that the Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 became aware of BirdDog's runaway success in the video distribution marketplace and sought then to grab a piece for themselves.

**SECOND AMENDED COMPLAINT**

4.      And it was thus that, working initially and primarily through Mr. Lo and then also through Ms. Lee, the Bolin Defendants first encountered BirdDog at an industry trade show in Nevada.  Subsequently, while working from their home in Arcadia and the Bolin Defendants' offices in Southern California, Mr. Lo and Ms. Lee approached BirdDog executives and gained their trust, developing detailed knowledge of BirdDog's operations and making numerous oral and written representations about the Bolin Defendants' capability to fulfill BirdDog's camera manufacturing needs.  The Bolin Defendants, Ms. Lee and Mr. Lo repeatedly and specifically represented that Bolin LLC controlled Bolin Limited - the Bolin Defendants' manufacturing arm - and that, together, the Bolin Defendants were an original equipment manufacturer ("OEM") specialist that had the present intent and capability to manufacture cameras for BirdDog pursuant to BirdDog's precise specifications.  Relying on the truth of those representations, BirdDog agreed to engage Bolin LLC and its manufacturing arm Bolin Limited, signed the Bolin Defendants to a comprehensive NDA, and started an economic relationship that would eventually result in BirdDog sharing sensitive confidential information and trade secrets with the Bolin Defendants and the Bolin Defendants becoming BirdDog's primary supplier of camera products.

5.      But in 2023, it became clear that a mere legal and lawful business supplier relationship was not enough for the Bolin Defendants, Mr. Lo or Ms. Lee. Indeed, the reality was and is that neither the Bolin Defendants, nor Mr. Lo, nor Ms. Lee ever had the present intent or the capability to manufacture cameras for BirdDog pursuant to BirdDog's specifications.  Nor were the Bolin Defendants content with becoming BirdDog's primary supplier of camera products.  Instead, or so it has ultimately become clear, the Bolin Defendants employed a deliberate and unlawful strategy of lulling BirdDog into a false sense of security in order to surreptitiously and scandalously procure from BirdDog highly valuable and sensitive trade secrets and confidential information to develop competing products, all the while concealing

their real and true intent: **become** BirdDog.  In other words, the Bolin Defendants devised a plan to convince BirdDog to entrust them with its funds and highly confidential information, hold and brazenly misuse and misappropriate those funds and highly sensitive information to apply pressure on BirdDog, create competing cameras and steal BirdDog's clients and economic relationships for themselves.

6.    Seeking to overcome any corporate control obstacles to the success of this scheme, the Bolin Defendants and Mr. Lo first objected to BirdDog's decision to become a public company.  Then, the Bolin Defendants, Mr. Lo and Ms. Lee unsuccessfully tried to convince BirdDog to agree to being acquired by the Bolin Defendants.  Ultimately, the Bolin Defendants, Mr. Lo and Ms. Lee resorted to brazen and outright theft: in 2023, as Defendants feigned insult at imagined slights, Defendants reacted to their inability to seize control of BirdDog by (1) placing a "hard sharp stop" on production of **all** BirdDog products while unlawfully holding and refusing to return more than **$3 million** in BirdDog funds paid in order to secure production pursuant to the parties' agreements and the Bolin Defendants' obligations; and (2) implementing their plan to unlawfully utilize BirdDog's confidential information and trade secrets in the development and introduction of competing products.  Defendants' apparent and unlawful hope was that their brazen thefts and refusal to deliver BirdDog cameras would damage BirdDog's reputation by causing BirdDog's global customer base to question BirdDog's ability to fulfill their contracts, cease doing business with BirdDog, and – hopefully, in their minds – agree to do business with Defendants.

7.    None of what Defendants have done is proper or lawful.  Because the Bolin Defendants' theft of BirdDog funds and misappropriation of its most highly valuable information continues unabated, this action has been necessitated to restore BirdDog's rights, secure its most sensitive corporate information and secure the immediate repayment of its money.

**SECOND AMENDED COMPLAINT**

**PARTIES**

8.     BirdDog Technology is a corporate, publicly listed entity organized and existing under the laws of Australia with its principal place of business in Australia.

9.     BirdDog Australia is a corporate entity organized and existing under the laws of Australia with its principal place of business in Australia.   BirdDog Technology is the sole corporate parent of BirdDog Australia.

10.     Bolin LLC is a California limited liability company with its principal place of business in Brea, California.   BirdDog is informed and believes, and thereupon alleges, that at all relevant times, Bolin LLC's members were and remain citizens of California and include Mr. Lo and Ms. Lee.  Selling products to the public using the .url www.bolintechnology.com, www.bolin-av.com and through Facebook, Instagram, Pinterest and X, Bolin LLC holds itself out to customers and the public as "Bolin Technology."

11.     Bolin Limited is a company organized under the laws of the People's Republic of China, with its principal places of business in Shenzhen, China and Los Angeles County, California, with an "international headquarters" in Brea, California. Also selling products to the public using the .url www.bolintechnology.com, www.bolin-av.com and through Facebook, Instagram, Pinterest and X, Bolin Limited functions as the manufacturing arm of Bolin LLC and represents itself as a Bolin LLC and "Bolin Technology" company.  Upon the filing of the initial complaint in the action, BirdDog, being ignorant of the nature, extent and scope of Bolin Limited's involvement and complicity in the conduct alleged therein, having designated Bolin Limited in the complaint as DOE 1 and having discovered its involvement and complicity, amended its Complaint by substituting Bolin Limited for the fictitious DOE name DOE 1.

12.     Mr. Lo is an individual who resides, and who at all relevant times resided, in the County of Los Angeles, California.  Mr. Lo is the co-founder and Chief Executive Officer of Bolin LLC and Bolin Limited.  Mr. Lo controls a majority

interest in Bolin LLC and Bolin Limited through which he is primarily responsible for directing the operations of both companies.

13.     Bolin Limited was at all relevant times the alter ego or agent of Bolin LLC and Mr. Lo, because a unity of interest and ownership existed between Bolin Limited, Bolin LLC and Mr. Lo and adherence to the fiction of separate corporate existence would promote injustice under the circumstances.  The Bolin Defendants hold themselves out as a single, unified enterprise, advertised as a manufacturer and distributor of camera products in the United States.  At all relevant times, Bolin Limited existed as mere conduits or shell corporations for the interests and manipulations of Bolin LLC, Mr. Lo and of DOES 3-25.  The Bolin Defendants' collective efforts to manufacture and distribute camera products allow Mr. Lo to achieve his personal scheme of developing and manufacturing high-performance industrial cameras.  The Bolin Defendants, Mr. Lo and DOES 3-25 controlled and dominated their constituent entities and made crucial decisions about the conduct alleged herein.  The Bolin Defendants disregarded the formal distinctions between their constituent entities, treating them as one and the same.  For example, Bolin Limited holds itself out to the public as Bolin Technology, which is a 2082 Technology LLC Company, and Mr. Lo signs legal documents, speaks, makes representations and sends correspondence on behalf of both companies jointly and at the same time.  The Bolin Defendants share business addresses in the County of Los Angeles, California and in Shenzhen, China.  The assets of the Bolin Defendants were and are comingled in their business.  The Bolin Defendants share employees and executives, as well as attorneys.   The Bolin Defendants were and are undercapitalized and are potentially incapable of satisfying a judgment should BirdDog prevail in this action.  And because each of the Bolin Defendants have benefitted from the conduct alleged herein, it would be unjust if either were to escape liability for obligations associated with those benefits.

14.     Ms. Lee is an individual who resides, and who at all relevant times

**SECOND AMENDED COMPLAINT**

resided, in the County of Los Angeles, California.  Ms. Lee is the Chief Operations Officer of Bolin LLC and Bolin Limited.  Upon the filing of the initial complaint in the action, BirdDog, being ignorant of the nature, extent and scope of Ms. Lee's involvement and complicity in the conduct alleged therein, having designated Ms. Lee in the complaint as DOE 2 and having discovered her involvement and complicity, amended its complaint by substituting Ms. Lee for the fictitious Doe name DOE 2.

15.     The true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants named herein as DOES 3-25, inclusive, are unknown to BirdDog, who therefore sues those defendants by such fictitious names.  BirdDog is informed and believes, and thereupon alleges, that each of the defendants sued herein as DOES 3-25, inclusive are and were the directors, officers, agents, employees, parents or subsidiaries of the Bolin Defendants, Mr. Lo, and Ms. Lee are legally responsible for the events and occurrences herein referred to and proximately caused injuries and damages to BirdDog as herein alleged.  BirdDog will seek to amend its complaint to allege the true names and capacities of such defendants when ascertained.

16.     At all relevant times, each of the Defendants was acting as an agent, alter ego, servant, employee, joint tortfeasor or representative of all other Defendants, and, in so doing the things alleged in this Complaint, was acting within the course and scope of their agency, service, employment, or joint venture or joint tortfeasor arrangement.

## JURISDICTION AND VENUE

17.     This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that this action arises under the laws of the United States including the Defend Trade Secrets Act, 18 U.S.C. § 1836 and thus raises questions of federal law.

18.     The Court has supplemental jurisdiction over the state law issues raised

**SECOND AMENDED COMPLAINT**

herein pursuant to 28 U.S.C. § 1367 because these issues are so related to the claims in this action within this Court's original jurisdiction that they form part of the same case or controversy.

19.    This Court has personal jurisdiction over Defendant Bolin LLC because it is a California LLC whose members are citizens and residents of the State of California, with its principal place of business in the Central District of California.

20.    This Court has personal jurisdiction over Defendant Bolin Limited because it is the manufacturing arm of Bolin LLC and is a Bolin LLC company, controlled by Mr. Lo and Ms. Lee; because Bolin Limited is the alter ego of Bolin LLC and of Mr. Lo and is a joint tortfeasor with each and Ms. Lee; because it shares offices and regularly transacts business in the County of Los Angeles and in the Central District of California; and because the claims against Bolin Limited in this action arise out of Bolin Limited's transacting of business in the County of Los Angeles and in the Central District of California.

21.    This Court has personal jurisdiction over Defendant Mr. Lo because, at all relevant times, Mr. Lo was and currently remains a resident of the County of Los Angeles and in the Central District of California and otherwise committed tortious acts in and regularly transacted business in the County of Los Angeles and in the Central District of California.

22.    This Court has personal jurisdiction over Defendant Ms. Lee because, at all relevant times, Ms. Lee was and currently remains a resident of the County of Los Angeles and in the Central District of California and otherwise committed tortious acts in and regularly transacted business in the County of Los Angeles and in the Central District of California.

23.    Venue is proper in the Central District of California under 28 U.S.C. § 1391(a) in that one or more defendants reside in this judicial district.  Venue is also proper under 28 U.S.C. § 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to these claims occurred.

**SECOND AMENDED COMPLAINT**

**GENERAL ALLEGATIONS**

A.   **BirdDog's Business and Valuable Customer Relationships**

24.   In today's live-streamed world, what was once the province of broadcast television has now become a broadly available, increasingly democratized commodity. Advances in internet capacity, combined with recent events like the COVID-19 pandemic, have resulted in a veritable explosion of global demand for precision streaming video technology, including pan, tilt and zoom ("PTZ") robotic video cameras that allow an operator to control the camera remotely.

25.   On a worldwide basis, numerous organizations ranging from churches, to political parties, to educational institutions, to sports, to governments and corporations have all come to depend on the availability of streaming video technology in order to support their business and other activities.

26.   BirdDog – a leading Australian technology company – has been well-placed to capitalize on those market forces. For years, BirdDog has invested time and resources in developing its reputation as a market-leading provider of HD and 4K hardware and software solutions that increase the quality, speed and flexibility of video that can be delivered over existing network infrastructure. Through its camera portfolio, BirdDog has established itself as one of the primary global leaders in PTZ technology, with customer relationships with global businesses from the broadcast industry, to major league sports, to leaders in social media and government bodies amounting to millions of dollars in revenue every year. Representative examples of BirdDog's industry-leading PTZ cameras are below.



---

**SECOND AMENDED COMPLAINT**

27.     Safeguarding the integrity of its products and protecting its intellectual property and customer relationships in the global marketplace require BirdDog to enforce its suppliers' compliance with precise manufacturing requirements, the timeliness, quality and integrity of which are critical to maintaining BirdDog's ability to conduct its business.

**B.       BirdDog's Valuable Confidential Information and Trade Secrets**

28.     BirdDog's status as one of Australia's and the world's foremost purveyors of PTZ and other streaming video technology has in no small part been secured by BirdDog's significant investment in the development of valuable, proprietary, and competitively sensitive technology and business information, all of which is critical to fulfilling BirdDog's business objectives in the global camera marketplace and none of which BirdDog shares with third parties - let alone competitors.

29.     BirdDog's confidential and proprietary information, including its trade secrets, are all highly specialized and extremely valuable.  For example, and over a period spanning years, BirdDog has invested substantial resources, including time, money and effort, in the development of highly technical trade secrets that are core to its business, including, *inter alia*, (1) a proprietary hardware-based application allowing for implementation of high-bandwidth Network Device Interface (NDI) capabilities facilitating networked video systems to identify and communicate with each other and encode, transmit and receive multiple streams of broadcast-quality, low-latency video and audio in real time; (2) a customized and proprietary solution allowing for the distribution of broadcast-quality video which is multiple factors more powerful and more flexible than anything commonly available to competitors or to the public and allows implementation across camera and converter devices; (3) a unified control system incorporating a proprietary graphic interface and graphical user interface; (4) a proprietary application programming interface; and (5) cloud enabled remote control and orchestration of BirdDog camera products (the

**SECOND AMENDED COMPLAINT**

"Technical Trade Secrets").

30.     Equally valuable and specialized are other trade secrets related to BirdDog's business and operations.  Over decades in the industry, BirdDog has developed highly sensitive and extremely specialized and valuable trade secrets that together form the cornerstone of BirdDog's economic relationships, including, *inter alia*, proprietary, specialized and sensitive (1) product feature sets; (2) customer and industry-specific performance requirements; (3) customer and industry-specific product expectations; (4) customer and industry-specific product fit; (5) customer and industry-specific pricing information; (6) go-to-market strategies and experience; and (7) customer and industry-specific distribution methodologies (the "Economic Trade Secrets") (collectively, the "Technical Trade Secrets" and the "Economic Trade Secrets" are referred to as the "BirdDog Trade Secrets").

31.     BirdDog takes seriously the protection of its confidential and proprietary information, including the BirdDog Trade Secrets, precisely because it is so valuable.  BirdDog takes diligent and reasonable steps to protect its confidential and proprietary information, including the BirdDog Trade Secrets, from disclosure or use by third parties.

32.     BirdDog protects its confidential and proprietary information (including the BirdDog Trade Secrets) through measures that include, *inter alia*, limitations on the dissemination of information internally and to third parties and on a need-to-know basis, requiring consultation with senior BirdDog executives when contemplating the disclosure of BirdDog information, the use of confidentiality and nondisclosure agreements, hierarchical protection of sensitive information and password-protected access to its electronic information.

33.     All of the BirdDog Trade Secrets are competitively sensitive and core to BirdDog's business.

**SECOND AMENDED COMPLAINT**

C.  **The Bolin Defendants Gain BirdDog's Trust and Becomes BirdDog's Primary Camera Supplier**

34.  With roots stretching as far back as 2002, Bolin LLC, working together with its manufacturing arm Bolin Limited, is a California-based manufacturer and distributor of video cameras.  The Bolin Defendants, too, saw advantages in the growing market for PTZ and other video streaming technology.  But in part because they lacked their own reputation for delivering high-quality product in the marketplace, the Bolin Defendants devoted much of their business to manufacturing cameras for others.  It was in this context that they initially approached BirdDog to gain BirdDog's trust, secured favored status as BirdDog's primary supplier of camera equipment, and thus obtained a share of BirdDog's commercial success.

35.  In or about April 2017, Mr. Lo—appearing and working on behalf of the Bolin Defendants—approached BirdDog executives at a trade show in Las Vegas.  His message: the Bolin Defendants were an OEM supplier that had "over 15 years of experience" delivering "the latest in high definition imaging, precision engineered controls and performance design" to "all levels of relationships from OEM/ODM, distribution, reseller, government and commercial accounts," and that Mr. Lo and the Bolin Defendants had the present intent and the capability to fulfill BirdDog's precise manufacturing needs.

36.  In subsequent conversations with BirdDog executives, Mr. Lo and Ms. Lee made similar representations to BirdDog executives from their home in Arcadia, California and from the Bolin Defendants' then-existing corporate offices in the City of Industry, California.  Their collective message continued to be that working with the Bolin Defendants would enable BirdDog to use their expertise of high definition imaging, precision engineered controls and performance design to manufacture BirdDog cameras.  For its part, BirdDog discussed with and informed Mr. Lo, Ms. Lee, and the Bolin Defendants about its business, including its developing and evolving camera manufacturing needs, its customers and the importance of

compliance with precise manufacturing and delivery requirements to its business.

37.     Still, BirdDog executives were cautious.  After all, agreeing to work with Mr. Lo, Ms. Lee and the Bolin Defendants to enable the manufacture of BirdDog cameras would result in a significant risk of the disclosure of confidential information and the BirdDog Trade Secrets.  Accordingly, on September 4, 2017, BirdDog obtained a comprehensive Non Disclosure Agreement, signed by Bolin Limited on behalf of the Bolin Defendants and binding both Ms. Lo and Ms. Lee as their executives, acknowledging the "valuable and proprietary information" of BirdDog, including the BirdDog Trade Secrets, and requiring the Bolin Defendants to "maintain the confidential nature of," "not, without the prior consent of BirdDog…disclose," and "not use or disclose or reproduce…for any purpose" other than specifically approved by BirdDog (the "NDA"):

> "Any and all information of a confidential nature which is obtained by [the Bolin Defendants] in relation to BirdDog in connection with this agreement including without limitation any strategies, ideas, concepts, methods, methodologies, processes, systems, know how, trade secrets, intellectual property, budgets, marketing or business plans, projections, diagrams, flow charts, computer software and programs, research data, transaction data, sales information, product information, client lists, technical information, business or financial information, lists and information relating to customers and clients, employee information, financier information or supplier information, or any dealings, transactions, affairs or any other information in any form."

The NDA is attached hereto as **Exhibit A**.

38.     BirdDog trusted the good faith of Mr. Lo's, Ms. Lee's and the Bolin Defendants' representations.  As a result, BirdDog entered into a relationship with the Bolin Defendants that would eventually make the Bolin Defendants BirdDog's principal camera manufacturer.

39.     Initially, the Bolin Defendants met BirdDog's manufacturing

**SECOND AMENDED COMPLAINT**

requirements, maintained the façade of supposed efforts at maintaining a business relationship, and induced BirdDog on repeated occasions to disclose to Mr. Lo, Ms. Lee and the Bolin Defendants sensitive, confidential and proprietary information, including the BirdDog Trade Secrets, intended to facilitate the Bolin Defendants' compliance with those requirements.

**D.   The Bolin Defendants Negotiate Agreements and Surreptitiously Obtain BirdDog's Trade Secrets In California**

40.     On multiple occasions between 2019 and 2022, the Bolin Defendants, Mr. Lo and Ms. Lee induced BirdDog executives to travel to meet them at their headquarters in Southern California for purposes of meeting them and negotiating various agreements with the Bolin Defendants, all the while concealing their desire to use these meetings for the purpose of obtaining access to BirdDog's confidential and proprietary information, including the BirdDog Trade Secrets.  Since the filing of the complaint, Mr. Lo has testified under oath in this action that all communications with BirdDog in California related to the claims at issue in this case, including without limitation his solicitation and receipt of BirdDog funds and information, took place in his role as Chief Executive Officer of Bolin Limited.

41.     On May 9, 12 and 13, 2019, BirdDog Chief Executive Dan Miall ("Mr. Miall") met Mr. Lo and Ms. Lee at their residence in Arcadia, California (on May 9) and at the offices of the Bolin Defendants in Brea California (on May 12 and 13). During these meetings, Mr. Lo, acting in his individual capacity and as Chief Executive Officer of the Bolin Defendants, and Ms. Lee, acting in her individual capacity and as the Chief Operating Officer of the Bolin Defendants, conducted negotiations for agreements with and otherwise induced Mr. Miall to provide them and the Bolin Defendants with BirdDog's competitively sensitive confidential and proprietary information relating to BirdDog's product portfolio and product development, including some BirdDog Trade Secrets.

42.     In October 2019, Mr. Lo and Ms. Lee met Mr. Miall at a restaurant in

Los Angeles, California.  Likewise during this dinner, Mr. Lo, acting as Chief Executive Officer of the Bolin Defendants, and Ms. Lee, acting as the Chief Operating Officer of the Bolin Defendants, conducted negotiations for agreements with and otherwise induced Mr. Miall to provide them and the Bolin Defendants with BirdDog's competitively sensitive confidential and proprietary information relating to BirdDog's product portfolio and product development, including some BirdDog Trade Secrets.

43.     All of this information was disclosed pursuant to what would ultimately prove to be the false assurance of the Bolin Defendants of compliance with the parties' comprehensive nondisclosure agreement.

**E.      The Bolin Defendants, Mr. Lo and Ms. Lee Obtain Millions of Dollars In BirdDog's Money Through Agreements Ultimately Repudiated**

44.     Beginning in or about 2023, it became clear that Mr. Lo, Ms. Lee and the Bolin Defendants began to work together to parlay BirdDog's trust and confidence into a wrongful scheme to ***become*** BirdDog.

45.     Over the immediately preceding years, Mr. Lo, Ms. Lee and the Bolin Defendants worked together from their California base to induce BirdDog to enter into a related series of six transactions that the Bolin Defendants had no intention of performing as agreed, all while lulling BirdDog into a false sense of security in the good faith of their communications relating to what had become a faux business relationship so that they could extract, use and misappropriate confidential and proprietary information and the BirdDog Trade Secrets in the development and marketing of competing products.  To date, BirdDog has paid millions of dollars to Bolin and Mr. Lo with respect to each of these six related transactions, with Bolin and Mr. Lo refusing to produce and yet holding on to those funds in an effort to obtain control of BirdDog and take over its customer relationships - causing BirdDog to lose even more in missed sales and lost profits.

46.     ***The June 2021 Purchase Agreement***.  On June 30, 2021, BirdDog and

- 16 -
**SECOND AMENDED COMPLAINT**

the Bolin Defendants finalized an enforceable oral and written contract whereby the Bolin Defendants agreed to promptly produce and timely deliver 400 units of BirdDog's White P400 cameras at price of ███████████████████ ██████████████████████ of the total contract price to be utilized for purposes exclusively related to the timely production and delivery under the agreement (the "June 2021 Purchase Agreement"). As required by the oral terms of the agreement, and in reliance on the Bolin Defendants' and Mr. Lo's representations, BirdDog paid Bolin ███████████████████████████ to secure the Bolin Defendants' timely production and delivery of these cameras. Attached hereto as **Exhibit B** are true and correct copies of the written portions of the June 2021 Purchase Agreement.

47.   ***The September 2021 Purchase Agreement***.   On September 23, 2021, BirdDog and the Bolin Defendants finalized an oral and written contract whereby the Bolin Defendants agreed to promptly produce and timely deliver 250 units of BirdDog's A200 second generation cameras at a price of ██████████ 120 units of BirdDog's A300 second generation cameras at a price of ██████████ 1,440 units of BirdDog's Black P120 cameras at a price of ██████████; 260 units of BirdDog's White P120 cameras at a price of ██████████; 720 units of BirdDog's Black P110 cameras at a price of ██████████; 270 units of BirdDog's White P110 cameras at a price of ██████████ 1,320 units of BirdDog's Black P400 cameras at a price of ██████████ 780 units of BirdDog's Black P4K cameras at a price of ██████████ 236 units of BirdDog's White P4K cameras at a price of $3,695 per ██ 1,400 units of BirdDog's PF120 cameras at a price of ██████████ and 2,360 units of BirdDog's PTZKEY cameras at a price of ██████████ in exchange for BirdDog's ████████████████████████ to be utilized for purposes exclusively related to the timely production and delivery under the agreement (the "September 2021 Purchase Agreement"). As required by the oral terms of the agreement, and in reliance on the Bolin Defendants' and Mr. Lo's

representations, BirdDog paid the Bolin Defendants ███████████████ ████████████ to secure the Bolin Defendants' timely production and delivery of these cameras. Attached hereto as **Exhibit C** are true and correct copies of the written portions of the September 2021 Purchase Agreement.

48.     In the midst of finalizing these agreements, the Bolin Defendants, Mr. Lo and Ms. Lee continued to use their California headquarters for contract negotiation with BirdDog and to surreptitiously obtain still more BirdDog Trade Secrets and confidential information. On February 25, 2022, Mr. Lo and Ms. Lee invited Mr. Miall for dinner to their house in Arcadia, California, followed by a February 26, 2022 meeting with Mr. Lo and Ms. Lee at the Bolin Defendants' Brea, California office.  This dinner and meeting also included comprehensive discussions about BirdDog product plans and the Bolin Defendants' manufacturing capabilities, including the June 2021 Purchase Agreement and the September 2021 Purchase Agreement, as well as negotiations for what would become the August 2022 Purchase Agreement and the October 2022 Purchase Agreement.  At the time, Mr. Lo, acting as Chief Executive Officer of the Bolin Defendants, and Ms. Lee, acting as the Chief Operating Officer of the Bolin Defendants, conducted negotiations for agreements with and otherwise induced Mr. Miall to provide them and the Bolin Defendants with BirdDog's competitively sensitive confidential and proprietary information relating to BirdDog's product portfolio and product development, including some BirdDog Trade Secrets.

49.     ***The August 2022 Purchase Agreement***.  On August 5, 2022, BirdDog and the Bolin Defendants finalized an enforceable oral and written contract whereby the Bolin Defendants agreed to promptly produce and timely deliver 3,000 units of BirdDog's Black P240 cameras at a price of ███████████ and 1,000 units of BirdDog's White P240 cameras at a price of ████████████ in exchange for BirdDog's ████████████████████████████ to be utilized for purposes exclusively related to the timely production and delivery under the

- 18 -
**SECOND AMENDED COMPLAINT**

agreement (the "August 2022 Purchase Agreement"). As required by the oral terms of the agreement, and in reliance on the Bolin Defendants' and Mr. Lo's representations, BirdDog paid the Bolin Defendants ██████████████ ████████—to secure the Bolin Defendants' timely production and delivery of these cameras. Attached hereto as **Exhibit D** are true and correct copies of the written portions of the August 2022 Purchase Agreement.

50.     ***The October 2022 Purchase Agreement***.     On October 21, 2022, BirdDog and the Bolin Defendants finalized an enforceable oral and written contract whereby the Bolin Defendants agreed to promptly produce and timely deliver 200 units of BirdDog's White P120 cameras at a price of ████████ in exchange for BirdDog's ██████████████████ to be utilized for purposes exclusively related to the timely production and delivery under the agreement (the "October 2022 Purchase Agreement"). As required by the oral terms of the agreement, and in reliance on the Bolin Defendants' and Mr. Lo's representations, BirdDog paid the Bolin Defendants ████████████ ████████ to secure the Bolin Defendants' timely production and delivery of these cameras. Attached hereto as **Exhibit E** are true and correct copies of the written portions of the October 2022 Purchase Agreement.

51.     The Bolin Defendants', Mr. Lo, and Ms. Lee's efforts to utilize their California headquarters to conduct negotiations and improperly obtain access to BirdDog Trade Secrets and confidential information continued unabated.   On November 12, 2022, Mr. Lo and Ms. Lee invited Mr. Miall for lunch at Meizhou Dongpo restaurant in Arcadia, followed by a meeting with Mr. Lo and Ms. Lee at the Bolin Defendants' Brea, California office.  This lunch and meeting also included comprehensive discussions about BirdDog's product plans and the Bolin Defendants' manufacturing capabilities, including the June 2021 Purchase Agreement and the September 2021 Purchase Agreement, August 2022 and October 2022 Purchase Agreements, as well as negotiations for what would become the March 2023

Purchase Agreement and May 2023 Purchase Agreement.  At the time, Mr. Lo, acting as Chief Executive Officer of the Bolin Defendants, and Ms. Lee, acting as the Chief Operating Officer of the Bolin Defendants, conducted negotiations for agreements with and otherwise induced Mr. Miall to provide them and the Bolin Defendants with BirdDog's competitively sensitive confidential and proprietary information relating to BirdDog's product portfolio and product development, including some BirdDog Trade Secrets.

52. ***The March 2023 Purchase Agreement***.  On March 31, 2023, BirdDog and the Bolin Defendants finalized an enforceable oral and written contract whereby the Bolin Defendants agreed to promptly produce and timely deliver 750 units of BirdDog's Ocean White U120 cameras at a price of ███████████ 250 units of BirdDog's White U120 cameras at a price of ██████████ and 1,000 units of BirdDog's Black X120 cameras at a price of ██████████ (the "March 2023 Purchase Agreement").  As required by the oral terms of the agreement, and in reliance on the Bolin Defendants' and Mr. Lo's representations, on March 31, 2023, BirdDog paid the Bolin Defendants ███████████████████████████ to secure the Bolin Defendants' timely production and delivery of these cameras. Attached hereto as **Exhibit F** are true and correct copies of the written portions of the March 2023 Purchase Agreement.

53. ***The May 2023 Purchase Agreement***.  On May 17, 2023, BirdDog and the Bolin Defendants finalized an enforceable oral and written contract whereby the Bolin Defendants agreed to promptly produce and timely deliver 1,000 units of BirdDog's Black X120 cameras at a price of ██████████ in exchange for BirdDog's ████████████████████████████████ to be utilized for purposes exclusively related to the timely production and delivery under the agreement (the "May 2023 Purchase Agreement").  As required by the oral terms of this agreement, and in reliance on the Bolin Defendants' and Mr. Lo's representations, on June 2, 2023, BirdDog paid the Bolin Defendants ██████████

**SECOND AMENDED COMPLAINT**

1    ███████████████████ to secure the Bolin Defendants' timely production and

2    delivery of these cameras. Attached hereto as **Exhibit G** are true and correct copies

3    of the written portions of the May 2023 Purchase Agreement.

4        **F.**    **Frustrated By Their Inability to Obtain Control of BirdDog, Mr. Lo Causes the Bolin Defendants to Pressure BirdDog By Converting BirdDog Funds and Repudiating Their Obligations, While Misappropriating BirdDog's Confidential Information and Trade Secrets For Competing Products**

7        54.    Despite the Bolin Defendants' repeated representations, they failed to

8    timely perform their obligations under these six transactions. Worse, by the summer

9    of 2023, it would become clear that Mr. Lo and the Bolin Defendants' true and

10   undisclosed intent was to seize control of BirdDog and that, in the process of

11   pumping BirdDog for confidential information, market know-how and trade secrets,

12   they never had any intent of complying with their obligations under these related

13   transactions - all of which they would ultimately repudiate.

14       55.    In or about October 2021, BirdDog advised the Bolin Defendants of its

15   forthcoming listing as a publicly traded company on the Australian Stock Exchange.

16   In BirdDog's eyes, this was a standard notification to provide to its principal camera

17   supplier: BirdDog had anticipated that Mr. Lo and the Bolin Defendants would be

18   pleased with the success of one of their principal customers. Surprisingly (to

19   BirdDog), this was not the case. Mr. Lo and the Bolin Defendants were displeased

20   by this development. The Bolin Defendants and Mr. Lo objected when BirdDog's

21   public offering was finalized in December 2021, argued (without any basis) that they

22   should have been provided notice more than six months before, and expressed their

23   preference that BirdDog "co-list" with the Bolin Defendants.

24       56.    Consistent with its obligations, BirdDog declined the Bolin Defendants'

25   2021 entreaties, though still had no reason to think that the Bolin Defendants had any

26   intent of doing anything untoward with these transactions or its deposits.

27       57.    By the summer of 2023, that all changed: it became increasingly and

28   disturbingly clear that the Bolin Defendants had decided to employ more aggressive

measures to obtain total control of BirdDog.

58. Specifically, on July 4, 2023, Mr. Lo demanded an immediate meeting in Australia with BirdDog executives. That meeting took place in Melbourne, Australia on July 12, 2023. During that meeting, Mr. Lo, the Bolin Defendants and others communicated to BirdDog - falsely - that BirdDog was "failing," "in trouble" and in "financial distress." Mr. Lo's and the Bolin Defendants' "solution" to these problems was a ***hostile Bolin takeover*** - or, put differently, for the ***Bolin Defendants to become BirdDog***. To formalize this improper demand, Mr. Lo presented "options" to BirdDog that included (1) a merger; (2) a full takeover by the Bolin Defendants of BirdDog's camera business; (3) stopping manufacture of BirdDog's cameras; or (4) vague threats of competition while manufacturing BirdDog's cameras.

59. BirdDog and its executives were stunned: not only did the Bolin Defendants and their executives have no apparent plan for any of the "options" they presented, but at the moment of the July 12, 2023 meeting, the Bolin Defendants had not delivered ***9,670*** of the cameras that BirdDog had ordered pursuant to the transactions listed above and for which its customers were waiting and the Bolin Defendants were holding ***$3,060,883.10*** of BirdDog's funds. Still, BirdDog refused the Bolin Defendants' demands.

60. The nature and direction of Mr. Lo's and the Bolin Defendants' scheme to use BirdDog's funds and repudiation of the Bolin Defendants' obligations to squeeze BirdDog into submitting to the Bolin Defendants' demands would unfortunately become clearer. On July 15, 2023, Mr. Lo again met with BirdDog executives in Melbourne. He reiterated the Bolin Defendants' "options" for BirdDog - now, additionally, demanding that he would be CEO of BirdDog - communicated his dim view of BirdDog's executives (including that he did not like, value or respect BirdDog's chairman) and refused to consider any alternatives, including that BirdDog absorb the Bolin Defendants. That same day, Mr. Lo advised BirdDog's chief executive via WeChat that he had 24 hours to agree to the Bolin Defendants'

demands.  When BirdDog did not immediately accede, Mr. Lo advised that "all options" were "off the table."

61.    In September 2023, BirdDog tried one more time to ensure the Bolin Defendants' compliance with their obligations - asking again for delivery of the products that it had ordered in accordance with the terms of the six transactions or for a refund of the outstanding prepayments.  The Bolin Defendants refused, with Mr. Lo admitting that the Bolin Defendants were repudiating their obligations under these transactions and that - apparently until BirdDog acceded to the Bolin Defendants' demands and permitted Mr. Lo to take over the company - there would be a "hard sharp stop" on all BirdDog production.

62.    Mr. Lo's "hard sharp stop" has not been reversed.  To the contrary: the Bolin Defendants repeatedly confirmed that they have repudiated their obligations under the parties' arrangement by confirming now that they will not produce or deliver a ***single*** additional camera for BirdDog according to the terms of the parties' existing arrangements, and that they will ***also*** refuse to return ***any*** of BirdDog's money.  This repudiation and other plainly unlawful conduct by the Bolin Defendants were most recently confirmed by the Bolin Defendants on January 24, 2024, when a senior executive of the Bolin Defendants who reports to Mr. Lo confirmed to BirdDog that the Bolin Defendants "***consider each of the Contracts to be avoided***," that the relationship between Bolin and BirdDog was "***avoided and terminated***," and that Defendants' "***obligations…[were] discharged***" – even as the Bolin Defendants, Mr. Lo and Ms. Lee ***continued to hold BirdDog's money and unlawfully misappropriate BirdDog's confidential information and trade secrets***.

63.    It is thus that Mr. Lo, Ms. Lee's and the Bolin Defendants' unlawful plan has come to fruition.  Perhaps worse, it has also become clear that the Bolin Defendants, Mr. Lo and Ms. Lee are formalizing their scheme to become BirdDog by misappropriating BirdDog's confidential and proprietary information to produce and distribute competing camera products.

64.     During the February 26, 2022 meeting at the Bolin Defendants' Brea, California office, Mr. Miall identified a Bolin-branded converter product that appeared to incorporate similar technology and form-factor to existing BirdDog Products, including some of the BirdDog Technical Trade Secrets.  When asked about the converter device by Mr. Miall, Mr. Lo denied that the camera was a Bolin converter device incorporating this technology and asserted that Mr. Miall had made a mistake and incorrect assumption and misinterpretation.  These statements were lies.

65.     In January 2023, the Bolin Defendants *again* delivered to BirdDog a Bolin-branded camera incorporating similar technology to BirdDog proprietary technology, including some of the BirdDog Technical Trade Secrets.  Again, when asked about this camera, Mr. Lo denied any culpability: claiming that the associated technology evident in the camera "was totally a mistake made by an irrelevant outside-engineer."  This, too, was a lie.

66.     And in January 2024, during the pendency of this lawsuit and in advance of an industry trade show scheduled for Barcelona, the Bolin Defendants have begun to add staging pages to their website advertising the imminent sale of cameras, using BirdDog Economic Trade Secrets, that unlawfully incorporate BirdDog Technical Trade Secrets.

67.     The Bolin Defendants' unlawful scheme, which is interfering significantly with BirdDog's relationships with its customers, is thus coming to a head: BirdDog has been unable to fulfill orders and ship products because of the Bolin Defendants' actions.

68.     For example, after the Bolin Defendants repudiated the six agreements and failed to deliver the products as promised thereunder, BirdDog had back orders for the X120 camera in November 2023 with a total value of approximately $734,359.15 that it was unable to fulfill.

69.     Additionally, BirdDog has calculated that it has suffered a loss totaling

over $1.25 million in revenue opportunities in Europe, the Middle East, and Africa for the current quarter ending on March 31, 2024 caused by Bolin Defendants failure to produce and timely deliver BirdDog cameras.

70.     Several BirdDog customers have taken to the internet to discuss their disappointment after the BirdDog cameras they ordered never arrived.[1]  Of course, these customers' disappointment was a direct result of the Bolin Defendants' failure to perform on their contractual obligations.  Ultimately, many BirdDog customers who were awaiting BirdDog's new products have lost trust in BirdDog's products altogether.  For example:





71.     Moreover, BirdDog faces the prospect of being damaged through the Bolin Defendants' unlawful possession and use of BirdDog's confidential and proprietary information to compete with BirdDog in the marketplace.  The Bolin Defendants', Mr. Lo's, and Ms. Lee's improper and unlawful actions have not only cost lost revenue and profit but have forced BirdDog to scramble to seek performance elsewhere and incur additional costs in doing so.

---

[1] https://www.reddit.com/r/VIDEOENGINEERING/comments/16jd4s6/birddog_p2 00_disappointment/.

**SECOND AMENDED COMPLAINT**

**FIRST CLAIM FOR RELIEF**

**BREACH OF CONTRACT - PURCHASE AGREEMENTS**

**(Against the Bolin Defendants)**

72.   BirdDog incorporates and realleges the above paragraphs of this Complaint as if fully set forth herein.

73.   The June 2021 Purchase Agreement is an enforceable oral and written contract between BirdDog, on the one hand, and the Bolin Defendants, on the other hand, whereby the Bolin Defendants agreed to promptly produce and timely deliver 400 units of BirdDog's White P400 cameras at price of ████████████ ████████████████████████████████████████████ to be utilized for purposes exclusively related to the timely production and delivery under the agreement. As required by the oral terms of this agreement, and in reliance on the Bolin Defendants' and Mr. Lo's representations, BirdDog paid Bolin ████████ ██████████████████ to secure the Bolin Defendants' timely production and delivery of these cameras.  The written terms of the June 2021 Purchase Agreement are attached hereto as Exhibit B.

74.   The September 2021 Purchase Agreement is an enforceable oral and written contract between BirdDog, on the one hand, and the Bolin Defendants, on the other hand, whereby the Bolin Defendants agreed to promptly produce and timely deliver 250 units of BirdDog's A200 second generation cameras at a price of ████ ████ 120 units of BirdDog's A300 second generation cameras at a price of ████ ████ 1,440 units of BirdDog's Black P120 cameras at a price of ████████ 260 units of BirdDog's White P120 cameras at a price of ██████████; 720 units of BirdDog's Black P110 cameras at a price of ██████████ 270 units of BirdDog's White P110 cameras at a price of ██████████ 1,320 units of BirdDog's Black P400 cameras at a price of ██████████ 780 units of BirdDog's Black P4K cameras at a price of ██████████; 236 units of BirdDog's White P4K cameras at a price of ██████████ 1,400 units of BirdDog's PF120 cameras at a price of ████████

**SECOND AMENDED COMPLAINT**

1   and 2,360 units of BirdDog's PTZKEY cameras at a price of ████████████ in

2   exchange for BirdDog's ████████████████████████████████████████████

3   to be utilized for purposes exclusively related to the timely production and delivery

4   under the agreement. As required by the oral terms of this agreement, and in reliance

5   on the Bolin Defendants' and Mr. Lo's representations, BirdDog paid the Bolin

6   Defendants ████████████████████████████████████ secure the Bolin

7   Defendants' timely production and delivery of these cameras.  The written terms of

8   the September 2021 Purchase Agreement are attached hereto as Exhibit C.

9        75.    The August 2022 Purchase Agreement is an enforceable oral and written

10  contract between BirdDog, on the one hand, and the Bolin Defendants, on the other

11  hand, whereby the Bolin Defendants agreed to promptly produce and timely deliver

12  3,000 units of BirdDog's Black P240 cameras at a price of ████████████ and 1,000

13  units of BirdDog's White P240 cameras at a price of ██████████████ in exchange for

14  BirdDog's ██████████████████████████████████████ to be utilized

15  for purposes exclusively related to the timely production and delivery under the

16  agreement. As required by the oral terms of this agreement, and in reliance on the

17  Bolin Defendants' and Mr. Lo's representations, BirdDog paid the Bolin Defendants

18  ████████████████████████████████—to secure the Bolin Defendants'

19  timely production and delivery of these cameras.  The written terms of the August

20  2022 Purchase Agreement are attached hereto as Exhibit D.

21       76.    The October 2022 Purchase Agreement is an enforceable oral and

22  written contract between BirdDog, on the one hand, and the Bolin Defendants, on the

23  other hand, whereby the Bolin Defendants agreed to promptly produce and timely

24  deliver 200 units of BirdDog's White P120 cameras at a price of ████████████ in

25  exchange for BirdDog's ██████████████████████████████████████████

26  to be utilized for purposes exclusively related to the timely production and delivery

27  under the agreement. As required by the oral terms of this agreement, and in reliance

28  on the Bolin Defendants' and Mr. Lo's representations, BirdDog paid the Bolin

**SECOND AMENDED COMPLAINT**

1   ████████████████████████████████████████████ secure the Bolin

2   Defendants' timely production and delivery of these cameras.  The written terms of

3   the October 2022 Purchase Agreement are attached hereto as Exhibit E.

4          77.    The March 2023 Purchase Agreement is an enforceable oral and written

5   contract between BirdDog, on the one hand, and the Bolin Defendants, on the other

6   hand, whereby the Bolin Defendants agreed to promptly produce and timely deliver

7   750 units of BirdDog's Ocean White U120 cameras at a price of ████████; 250

8   units of BirdDog's White U120 cameras at a price of ████████; and 1,000 units

9   of BirdDog's Black X120 cameras at a price of ██████ As required by the oral

10   terms of this agreement, and in reliance on the Bolin Defendants' and Mr. Lo's

11   representations, on March 31, 2023, BirdDog paid the Bolin Defendants ████████

12   ████████████████████ to secure the Bolin Defendants' timely

13   production and delivery of these cameras.  The written terms of the March 2023

14   Purchase Agreement are attached hereto as Exhibit F.

15          78.    The May 2023 Purchase Agreement is an enforceable oral and written

16   contract between BirdDog, on the one hand, and the Bolin Defendants, on the other

17   hand, whereby the Bolin Defendants agreed to promptly produce and timely deliver

18   1,000 units of BirdDog's Black X120 cameras at a price of ████████ in exchange

19   for BirdDog's ████████████████████████ to be

20   utilized for purposes exclusively related to the timely production and delivery under

21   the agreement. As required by the oral terms of this agreement, and in reliance on the

22   Bolin Defendants' and Mr. Lo's representations, on June 2, 2023, BirdDog paid the

23   Bolin Defendants ████████████████████ to secure the Bolin

24   Defendants' timely production and delivery of these cameras.  The written terms of

25   the May 2023 Purchase Agreement are attached hereto as Exhibit G.

26          79.    BirdDog has fully performed all conditions, covenants and promises

27   required to be performed on its part in accordance with the June 2021 Purchase

28   Agreement, the September 2021 Purchase Agreement, the August 2022 Purchase

**SECOND AMENDED COMPLAINT**

Agreement, the October 2022 Purchase Agreement, the March 2023 Purchase Agreement and the May 2023 Purchase Agreement, including through the payment of all required prepayments and otherwise, except to the extent that its performance was waived, excused or prevented by the Bolin Defendants.

80.   The Bolin Defendants materially breached the June 2021 Purchase Agreement by, *inter alia*, failing to timely produce and deliver 48 White P400 cameras failing to meet promised delivery dates, causing unnecessary and unreasonable delay in producing and delivering units, and failing to provide units of acceptable and/or merchantable quality.

81.   The Bolin Defendants materially breached the September 2021 Purchase Agreement by, *inter alia*, failing to timely produce and deliver 37 A200 second generation cameras; 120 A300 second generation cameras; 318 Black P120 cameras; 203 Black P110 cameras; 127 White P110 cameras; 580 Black P400 cameras; 723 Black P4K cameras; 206 White P4K cameras; 1,090 PF120 cameras; and 1,504 PTZKEY cameras, failing to meet promised delivery dates, causing unnecessary and unreasonable delay in producing and delivering units, and failing to provide units of acceptable and/or merchantable quality.

82.   The Bolin Defendants materially breached the August 2022 Purchase Agreement by, *inter alia*, failing to timely produce and deliver 1,234 Black P240 cameras and 469 White P240 cameras, failing to meet promised delivery dates, causing unnecessary and unreasonable delay in producing and delivering units, and failing to provide units of acceptable and/or merchantable quality.

83.   The Bolin Defendants materially breached the October 2022 Purchase Agreement by, *inter alia*, failing to timely produce and deliver 27 White P120 cameras, failing to meet promised delivery dates, causing unnecessary and unreasonable delay in producing and delivering units, and failing to provide units of acceptable and/or merchantable quality.

84.   The Bolin Defendants materially breached the March 2023 Purchase

**SECOND AMENDED COMPLAINT**

Agreement by, *inter alia*, failing to timely produce and deliver 745 Ocean White U120 cameras, 250 White U120 cameras, and 989 X120 cameras, failing to meet promised delivery dates, causing unnecessary and unreasonable delay in producing and delivering units, and failing to provide units of acceptable and/or merchantable quality.

85.     The Bolin Defendants materially breached the May 2023 Purchase Agreement by, *inter alia*, failing to timely produce and deliver 1,000 X120 cameras, failing to meet promised delivery dates, causing unnecessary and unreasonable delay in producing and delivering units, and failing to provide units of acceptable and/or merchantable quality.

86.     The Bolin Defendants have repudiated their remaining obligations under the June 2021 Purchase Agreement, the September 2021 Purchase Agreement, the August 2022 Purchase Agreement, the October 2022 Purchase Agreement, the March 2023 Purchase Agreement and the May 2023 Purchase Agreement, and have refused to return to BirdDog any of the remaining $3,060,883.10 they are now unlawfully withholding.

87.     As an actual and proximate result of the foregoing breaches of contract, BirdDog has suffered, and will continue to suffer, damages, including direct, consequential, and incidental losses and lost profits, in an amount to be proved at trial in excess of $3,060,883.10.

## SECOND CLAIM FOR RELIEF

## BREACH OF CONTRACT - NONDISCLOSURE AGREEMENT

### (By Plaintiff BirdDog Australia Against the Bolin Defendants)

88.     BirdDog incorporates and realleges the above paragraphs of this Complaint as if fully set forth herein.

89.     The NDA is an enforceable written contract between and among BirdDog Australia, on the one hand, and Bolin Limited on behalf of itself and Bolin LLC, on the other hand, whereby the Bolin Defendants agreed to keep confidential

**SECOND AMENDED COMPLAINT**

the "valuable and proprietary information" of BirdDog, including the BirdDog Trade Secrets, and requiring the Bolin Defendants to "maintain the confidential nature of," "not, without the prior consent of BirdDog…disclose any of," and "not use or disclose or reproduce…for any purpose" any of the BirdDog Trade Secrets other than as specifically approved by BirdDog.  The NDA is attached hereto as Exhibit A.

90.    BirdDog Australia has fully performed all conditions, covenants and promises required to be performed on its part in accordance with the NDA, except to the extent that its performance was waived, excused or prevented by the Bolin Defendants.

91.    The Bolin Defendants materially breached the NDA by, *inter alia*, improperly using and disclosing BirdDog's strategies, ideas, concepts, methods, methodologies, processes, systems, know how, trade secrets, intellectual property, budgets, marketing or business plans, projections, diagrams, flow charts, computer software and programs, research data, transaction data, sales information, product information, client lists, technical information, business or financial information, lists and information relating to customers and clients, employee information, financier information or supplier information, or any dealings, transactions, affairs or any other information in any form, including the BirdDog Trade Secrets, without BirdDog's authorization or consent.

92.    As an actual and proximate result of the foregoing breaches of the NDA, BirdDog has suffered, and will continue to suffer, damages, including direct, consequential, and incidental losses and lost profits, in an amount to be proved at trial in excess of this Court's jurisdictional minimum.

## **THIRD CLAIM FOR RELIEF**

## **VIOLATIONS OF THE DEFEND TRADE SECRETS ACT OF 2016, 18**

## **U.S.C. § 1832, *ET SEQ***

### **(Against All Defendants)**

93.    BirdDog incorporates and realleges the above paragraphs of this

**SECOND AMENDED COMPLAINT**

Complaint as if fully set forth herein.

94.     BirdDog incurred significant costs to develop trade secrets with independent economic value unique to the development, manufacture and sale of BirdDog cameras and its business and which derive such independent economic value from these trade secrets not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from disclosure or use of the same.  These include, *inter alia*, the BirdDog Trade Secrets, which include the Technical Trade Secrets and the Economic Trade Secrets.  The BirdDog Trade Secrets are vital to maintaining its business and competitive advantage in the marketplace.

95.     At all relevant times, BirdDog has taken reasonable efforts under the circumstances to maintain the confidentiality of the BirdDog Trade Secrets, such as through the use of nondisclosure and confidentiality agreements obliging employees and consultants with access to the BirdDog Trade Secrets to not to use or disclose the BirdDog Trade Secrets or information relating to the BirdDog Trade Secrets, password protection and other means to maintain the secrecy of the BirdDog Trade Secrets, and otherwise maintained adequate security to protect BirdDog files, computers, documents and other records that stored information relating to the BirdDog Trade Secrets.

96.     The Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 improperly, without authorization and in furtherance of a conspiracy between and among themselves, acquired the BirdDog Trade Secrets from BirdDog by improper means and without authorization, *inter alia*, by inducing BirdDog to disclose the BirdDog Trade Secrets during a period that they misrepresented their intention to do business with BirdDog as an OEM manufacturer.

97.     The Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 improperly, without authorization and in furtherance of a conspiracy between and among themselves, used and disclosed the BirdDog Trade Secrets, *inter alia*, by disclosing

the BirdDog Trade Secrets to persons without authorization, by using the BirdDog Trade Secrets in unfairly competing with BirdDog, by developing, manufacturing, and marketing cameras incorporating the BirdDog Trade Secrets and by otherwise utilizing the BirdDog Trade Secrets in the scope and course of their business.

98.     The BirdDog Trade Secrets involve interstate and foreign commerce and relate to products that are intended for use and sale in interstate and foreign commerce.

99.     The Bolin Defendants', Mr. Lo's and Ms. Lee's improper acquisition, use and disclosure of the BirdDog Trade Secrets has caused harm to BirdDog, including direct, consequential, and incidental losses and lost profits, in an amount to be determined at trial.

100.   BirdDog has no adequate remedy at law to rectify the Bolin Defendants', Mr. Lo's and Ms. Lee's misappropriation.  The Bolin Defendants are in direct competition with BirdDog and so BirdDog has suffered and will continue to suffer imminent and irreparable harm as a result of such misappropriation unless and until the Bolin Defendants, Mr. Lo and Ms. Lee are temporarily and permanently restrained.

101.   The aforementioned conduct was despicable, wanton, oppressive, and malicious, and was performed with willful and conscious disregard of BirdDog's rights and with the intent to deprive BirdDog of those rights.  Accordingly, BirdDog is entitled to an award of punitive and exemplary damages in an amount to be proved at trial.

**FOURTH CLAIM FOR RELIEF**

**VIOLATIONS OF CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426.1**

**(Against All Defendants)**

102.   BirdDog incorporates and realleges the above paragraphs of this Complaint as if fully set forth herein.

- 33 -

**SECOND AMENDED COMPLAINT**

103.   As set forth in paragraph 94, above, which is incorporated by reference as if fully set forth herein, BirdDog incurred significant costs to develop the BirdDog Trade Secrets, which are trade secrets with independent economic value unique to the development, manufacture and sale of BirdDog cameras and its business and which derive such independent economic value from these trade secrets not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from disclosure or use of the same.

104.   As set forth in paragraph 95, above, which is incorporated by reference as if fully set forth herein, BirdDog made reasonable efforts under the circumstances to maintain the confidentiality of the BirdDog Trade Secrets.

105.   As set forth in paragraph 96 and 97, above, which are incorporated by reference as if fully set forth herein, the Bolin Defendants, Mr. Lo and Ms. Lee have illegally obtained the BirdDog Trade Secrets and have otherwise used and disclosed the BirdDog Trade Secrets without BirdDog's consent and without regard to BirdDog's rights, and without compensation, permission, or licenses for the benefit of themselves or others.

106.   BirdDog has no adequate remedy at law to rectify the Bolin Defendants', Mr. Lo's and Ms. Lee's misappropriation.  The Bolin Defendants are in direct competition with BirdDog and so BirdDog has suffered and will continue to suffer imminent and irreparable harm as a result of such misappropriation unless and until the Bolin Defendants, Mr. Lo and Ms. Lee are temporarily and permanently restrained.

107.   The aforementioned conduct was despicable, wanton, oppressive, and malicious, and was performed with willful and conscious disregard of BirdDog's rights and with the intent to deprive BirdDog of those rights.  Accordingly, BirdDog is entitled to an award of punitive and exemplary damages in an amount to be proved at trial.

**SECOND AMENDED COMPLAINT**

# FIFTH CLAIM FOR RELIEF

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING - PURCHASE AGREEMENTS

### (Against the Bolin Defendants)

108.   Except for paragraphs 88-107, inclusive, including the misappropriation of trade secrets and confidential information therein alleged, BirdDog incorporates and realleges the above paragraphs of this Complaint as if fully set forth herein.

109.   The June 2021 Purchase Agreement, the September 2021 Purchase Agreement, the August 2022 Purchase Agreement, the October 2022 Purchase Agreement, the March 2023 Purchase Agreement and the May 2023 Purchase Agreement each contain an implied covenant of good faith and fair dealing which provides that the parties would deal with each other in good faith and would not engage in conduct or exercise discretion in a way that would deprive the other party of the benefits of each of the agreements.

110.   The Bolin Defendants breached the implied covenants of good faith and fair dealing by, *inter alia*, withholding performance and holding BirdDog's funds in order to force acquiescence to Bolin obtaining control of BirdDog, by knowingly and intentionally frustrating and unlawfully interfering with BirdDog's right to receive benefits under these agreements, repudiating their obligations under these agreements, refusing to return to BirdDog any of the consideration paid, using the consideration paid for purposes other than those associated with production and delivery under the agreements, asserting unreasonable demands inconsistent with the terms of the agreements to BirdDog's detriment, and by knowingly, intentionally and in bad faith inducing BirdDog to agree to pay millions of dollars to Bolin when Bolin never intended to provide what BirdDog was entitled to receive in exchange.

111.   As an actual and proximate result of the foregoing breaches of contract, BirdDog has suffered, and will continue to suffer, damages, including direct, consequential, and incidental losses and lost profits, in an amount to be proved at trial

**SECOND AMENDED COMPLAINT**

in excess of $3,060,883.10.

## SIXTH CLAIM FOR RELIEF

## CONVERSION

### (Against All Defendants)

112.   Except for paragraphs 88-107, inclusive, including the misappropriation of trade secrets and confidential information therein alleged, BirdDog incorporates and realleges the above paragraphs of this Complaint as if fully set forth herein.

113.   By the conduct alleged herein, the Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 wrongfully misappropriated and unlawfully diverted a specific sum of BirdDog's funds capable of identification in the amount of $3,060,883.10 for their own personal use and in breach of their obligations to BirdDog.  BirdDog did not consent to the Bolin Defendants', Mr. Lo's, Ms. Lee's and DOES 3-25's improper misappropriation, diversion, use or retention of its funds.

114.   As an actual and proximate result of the Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25's conversion, BirdDog has suffered damages in the amount of $3,060,883.10, together with interest thereon.

115.   The aforementioned conduct was despicable, wanton, oppressive, and malicious, and was performed with willful and conscious disregard of BirdDog's rights and with the intent to deprive BirdDog of those rights.  Accordingly, BirdDog is entitled to an award of punitive and exemplary damages in an amount to be proved at trial.

## SEVENTH CLAIM FOR RELIEF

## VIOLATIONS OF CAL. PENAL CODE § 496, *ET SEQ*

### (Against All Defendants)

116.   Except for paragraphs 88-107, inclusive, including the misappropriation of trade secrets and confidential information therein alleged, BirdDog incorporates and realleges the above paragraphs of this Complaint as if fully set forth herein.

117.   California Penal Code Section 496(a) provides, "Every person…who

**SECOND AMENDED COMPLAINT**

conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing that the property to be stolen or obtained, shall be punished by imprisonment..." CAL. PENAL CODE § 496. It also provides that "[a] principal in the actual theft of the property may be convicted pursuant to this section." *Id.*

118.   California Penal Code Section 496(c) provides that "[a]ny person who has been injured by a violation of subdivision (a)…may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." *Id.*

119.   The Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 knowingly and intentionally received, concealed or withheld stolen property from BirdDog or aided in receiving, concealing or withholding stolen property, and otherwise unlawfully maintained ownership and dominion over BirdDog's property by theft, including by stealing and continuing to withhold $3,060,883.10 in BirdDog funds.

120.   As a proximate result of the foregoing, BirdDog has been damaged in an amount to be proved at trial that is not less than $3,060,883.10 and BirdDog is entitled to recover three times that amount, plus its reasonable attorney's fees.

**EIGHTH CLAIM FOR RELIEF**

**MONEY HAD AND RECEIVED**

**(Against All Defendants)**

121.   Except for paragraphs 88-107, inclusive, including the misappropriation of trade secrets and confidential information therein alleged, BirdDog incorporates and realleges the above paragraphs of this Complaint as if fully set forth herein.

122.   As set forth herein, BirdDog paid specific and identifiable sums to the Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 under the mistaken belief that the Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 had the present intent and current capability to comply or cause compliance with the June 2021 Purchase Agreement, the September 2021 Purchase Agreement, the August 2022 Purchase Agreement, the October 2022 Purchase Agreement, the March 2023 Purchase

Agreement and the May 2023 Purchase Agreement.  There have been material breaches and failures of consideration under the June 2021 Purchase Agreement, the September 2021 Purchase Agreement, the August 2022 Purchase Agreement, the October 2022 Purchase Agreement, the March 2023 Purchase Agreement and the May 2023 Purchase Agreement, but the Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 have refused to return any of these sums to BirdDog.  As a result, the Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 have become indebted to BirdDog for the amounts improperly withheld, together with interest thereon.

123.   There being no justification and it being inequitable to allow the Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 to retain and be enriched by these sums, restitution should be made and the sums paid by BirdDog should be immediately disgorged by the Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 and paid to BirdDog.

124.   As an actual and proximate result of the Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25's conduct, BirdDog has suffered damages in the amount of $3,060,883.10, together with interest thereon.

## NINTH CLAIM FOR RELIEF

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### (Against All Defendants)

125.   Except for paragraphs 88-107, inclusive, including the misappropriation of trade secrets and confidential information therein alleged, BirdDog incorporates and realleges the above paragraphs of this Complaint as if fully set forth herein.

126.   BirdDog's economic relationships with its customers provide for significant prospective economic benefits for BirdDog amounting to millions of dollars annually.

127.   The Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 knew of BirdDog's economic relationships with its customers and that those economic

relationships provide for significant prospective economic benefits for BirdDog amounting to millions of dollars annually.

128.   The Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 committed intentional and independently wrongful acts that were designed, and which they knew, were substantially likely to result in a disruption of BirdDog's business and to interfere with BirdDog's economic relationships with its customers.  These actions included, *inter alia*, the Bolin Defendants', Mr. Lo's, Ms. Lee's and DOES 3-25's intentional withholding and interference with performance under the June 2021 Purchase Agreement, the September 2021 Purchase Agreement, the August 2022 Purchase Agreement, the October 2022 Purchase Agreement, the March 2023 Purchase Agreement and the May 2023 Purchase Agreement, misrepresentations regarding their ability and intention to provide performance under those agreements and camera supply to BirdDog, using nonperformance under those agreements and receipt and withholding of stolen funds in violation of law.

129.   But for the conduct of the Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25, BirdDog's economic relationships with its customers, including customers whose orders BirdDog was unable to fulfill and customers who purchased products of BirdDog's competitors, including competing products of Bolin Defendants, would have been less costly and more profitable for BirdDog in such a way as to result in additional economic benefits to BirdDog.

130.   The aforementioned conduct was despicable, wanton, oppressive and malicious and was performed with willful and conscious disregard of BirdDog's rights and with the intent to deprive BirdDog of those rights.  Accordingly, BirdDog is entitled to an award of punitive and exemplary damages in an amount to be proved at trial.

**SECOND AMENDED COMPLAINT**

# TENTH CLAIM FOR RELIEF

## VIOLATIONS OF BUS. & PROF. CODE § 17200, *ET SEQ*

### (Against All Defendants)

131.   Except for paragraphs 88-107, inclusive, including the misappropriation of trade secrets and confidential information therein alleged, BirdDog incorporates and realleges the above paragraphs of this Complaint as if fully set forth herein.

132.   The acts of the Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 as herein alleged constitute unlawful, unfair and deceptive business practices in violation of California Business & Professions Code § 17200, *et seq*., including without limitation because they violate federal and state statutes prohibiting deceptive and fraudulent activity, because they violate Cal. Penal Code § 496, and because they involve the use of misrepresentations in order to induce BirdDog to pay money to which the Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 are not entitled.

133.   The unlawful, unfair and deceptive business practices of the Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 as herein alleged constitute unfair competition and are an ongoing and continuing threat to BirdDog's business.  As a direct and proximate result of these acts, the Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 have been unjustly enriched, and in the future will continue to be unjustly enriched by, among other things, their use of BirdDog's funds for improper purposes, inducing BirdDog to pay money and enter into what the Bolin Defendants, Mr. Lo, Ms. Lee and DOES 3-25 considered to be bogus agreements, knowingly withholding and intentionally failing to deliver products under agreements, and repudiating legal obligations without returning consideration paid.

134.   BirdDog has been damaged in its money and property by the Bolin Defendants', Mr. Lo', Ms. Lee' and DOES 3-25's unlawful, unfair and deceptive conduct as alleged herein, and will continue to be damaged by their conduct until it is enjoined.  BirdDog has been irreparably injured by such unlawful, unfair and

**SECOND AMENDED COMPLAINT**

deceptive conduct.

135.   The Court should find that Defendants' actions violate California Business & Professions Code § 17200, *et seq*. and order such restitution, disgorgement and injunctive relief permitted by law, including without limitation a preliminary injunction and permanent injunction.

## **PRAYER FOR RELIEF**

WHEREFORE, BirdDog prays for judgment against Defendants as follows:

A.   That BirdDog recover damages, including direct, consequential, and incidental losses and lost profits, in an amount to be proved at trial in excess of $3,060,883.10;

B.   That Defendants be ordered to provide full restitution to BirdDog;

C.   On its Seventh Claim for Relief, that BirdDog be awarded three times the amount of actual damages;

D.   That Defendants be ordered to pay BirdDog's reasonable attorney's fees and costs of suit incurred herein;

E.   That Defendants be ordered to pay BirdDog pre- and post-judgment interest on all damages, monetary or otherwise;

F.   That Defendants be ordered to pay BirdDog punitive and exemplary damages in an amount according to proof in an amount sufficient to deter each Defendant from engaging in similar conduct against BirdDog or others and to deter Defendants, and each of them, from engaging in similar malicious, offensive and bad faith conduct in the future;

G.   That BirdDog be awarded an amount equal to Defendants' unjust enrichment to the extent that such unjust enrichment is not reflected in the award of damages, and that a constructive trust in favor of BirdDog be imposed over Defendants' ill-gotten gains and profits;

H.   That the Bolin Defendants, Mr. Lo, Ms. Lee, DOES 3-25 and all persons in active concert or participation with them, be enjoined and restrained from further

**SECOND AMENDED COMPLAINT**

wrongful conduct, including without limitation from possessing, disclosing or using the BirdDog Trade Secrets in any manner whatsoever;

I. That any products in the possession, custody or control of the Bolin Defendants, Mr. Lo or Ms. Lee that incorporate the BirdDog Trade Secrets be impounded, as well as all molds, software, hardware and matrices by which the BirdDog Trade Secrets may be used or otherwise misappropriated;

J. That the Bolin Defendants, Mr. Lo and Ms. Lee be ordered to return to BirdDog all tangible items, documents, designs, software, hardware, diagrams, notes, sketches or any other memorialization incorporating the BirdDog Trade Secrets, as well as all BirdDog property converted by the Bolin Defendants, Mr. Lo and Ms. Lee;

K. For such other equitable relief as is requested above and as may be appropriate under the circumstances, including without limitation a writ of attachment, seizure and permanent injunctive relief; and

L. That the Court award BirdDog such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMANDED

BirdDog demands a trial by jury on all issues so triable.

**K&L GATES LLP**

Dated:  April 3, 2024   By: _____

         Ryan Q. Keech
         Gabriel M. Huey
         Cassidy T. Young

         *Attorneys for Plaintiffs*

**SECOND AMENDED COMPLAINT**