UMBERG ZIPSER LLP
Dean J. Zipser (SBN 94680)
dzipser@umbergzipser.com
Molly J. Magnuson (SBN 229444)
mmagnuson@umbergzipser.com
1920 Main Street, Suite 750
Irvine, CA 92614
Telephone:  (949) 679-0052
Facsimile:  (949) 679-0461

Attorneys for Defendants
2082 Technology, LLC dba Bolin
Technology, Hoi "Kyle" Lo, and
Jennifer Lee

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIRDDOG TECHNOLOGY LIMITED, an Australian company; and BIRDDOG AUSTRALIA PTY LTD, an Australian company,<br><br>            Plaintiffs,<br><br>      *v.*<br><br>2082 TECHNOLOGY, LLC DBA BOLIN TECHNOLOGY, a California limited liability company; BOLIN TECHNOLOGY CO., LTD., a Chinese limited company; HOI "KYLE" LO, an individual; JENNIFER LEE, an individual; and DOES 3 through 25, inclusive,<br><br>            Defendants. | Case No. 2:23-cv-09416 CAS (AGRx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS 2082 TECHNOLOGY, LLC, KYLE LO, AND JENNIFER LEE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Hearing Date:  June 3, 2024<br>Time:                10:00 a.m.<br>Judge:              Hon. Christina A. Snyder<br>Courtroom:      8D<br><br>Complaint filed:  November 7, 2023<br>FAC filed:          January 12, 2024<br>SAC filed:          April 9, 2024 |

{268676.4}

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ............................5

II.     RELEVANT ALLEGATIONS ........................................................6

III.    ARGUMENT ........................................................................8

    A. Legal Standard on a Motion to Dismiss....................................8

    B. The First Claim for Relief for Breach of Purchase Orders Fails to State a Plausible Claim Against 2082....................................9

    C. The Second Claim for Relief for Breach of the NDA Fails to State a Plausible Claim Against 2082....................................11

    D. The Fifth Claim for Breach of the Implied Covenant Fails to State a Plausible Claim Against 2082....................................12

    E. The Ninth Claim for Intentional Interference Fails to State a Plausible Claim Against the 2082 Defendants. ....................12

    F. Plaintiffs Cannot Save Their Claims Through Alter Ego Allegations. ..............................................................15

IV.     CONCLUSION ...........................................................17

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*All Cities Realty, Inc. v. Hollymax Realty, Inc.*,
5
   No. SA CV 08-195 AHS, 2009 WL 10670615
6
   (C.D. Cal. Oct. 20, 2009) ..................................................................................... 17

*Altman v. PNC Mortg.*,
7
   850 F. Supp. 2d 1057 (E.D. Cal. 2012) ............................................................. 11

8

*Ashcroft v. Iqbal*,
9
   556 U.S. 662 (2009) ....................................................................................... 8, 11

10

*Barnhart v. Points Dev. US Ltd.*,
11
   No. 2:16-cv-02516-CAS(Ex), 2016 WL 3041036
12
   (C.D. Cal. May 25, 2016) ............................................................................. 10, 12

13

*Bassam v. Bank of Am.*,
   No. CV 15-00587 MMM, 2015 WL 4127745
14
   (C.D. Cal. July 8, 2015) ....................................................................................... 10

15

*Campbell v. eBay, Inc.*,
16
   No. 13-CV-2632 YGR, 2014 WL 3950671
17
   (N.D. Cal. Aug. 11, 2014) ................................................................................... 11

18

*Daub v. Eagle Test Sys., Inc.*,
   No. C-05-01055 RMW, 2005 WL 8177537
19
   (N.D. Cal. Oct. 19, 2005) ................................................................................... 12

20

*Double Bogey, L.P. v. Enea*,
21
   794 F.3d 1047 (9th Cir. 2015) ........................................................................... 17

22

*Gerritsen v. Warner Bros. Ent. Inc.*,
23
   116 F. Supp. 3d 1104 (C.D. Cal. 2015) ............................................................ 16

24

*Hennessey's Tavern, Inc. v. Am. Air Filter Co.*,
25
   204 Cal. App. 3d 1351 (1988) ........................................................................... 17

26

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ............................................................................... 12, 15

27

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

*Mesler v. Bragg Mgmt. Co.*,
39 Cal. 3d 290 (1985)..................................................................................17

*Park v. Morgan Stanley & Co.*,
No. 2:11-CV-9466-ODW, 2012 WL 589653
(C.D. Cal. Feb. 22, 2012) ...........................................................................10

*Ramirez v. GMAC Mortg.*,
No. CV 09-8189 PSG, 2010 WL 148167 (C.D. Cal. Jan. 12, 2010) .................10

*Rochester-Genesee Transp. Auth. v. Cummins Inc.*,
No. 09-CV-6370-MAT, 2010 WL 2998768
(W.D.N.Y. Jul. 28, 2010) ...........................................................................10

*S.E.C. v. Hickey*,
322 F.3d 1123 (9th Cir. 2003)..............................................................16, 17

*Smith v. Simmons*,
638 F. Supp. 2d 1180 (E.D. Cal. 2009) ......................................................17

*Sonora Diamond Corp. v. Super. Ct.*,
83 Cal. App. 4th 523 (2000) .......................................................................16

*Sybersound Recs., Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) .............................................................12, 14

*U.S. v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ........................................................................8

*Vaccarino v. Midland National Life Insurance*,
Co., No. CV 11-05858 CAS MANX, 2011 WL 5593883
(C.D. Cal. Nov. 14, 2011) ...........................................................................10

**Statutes**

Rule 12(b)(6).................................................................................................8

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1   **I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

2          Plaintiffs' Second Amended Complaint ("SAC") does not cure fatal

3   deficiencies the Court identified in its Order dismissing the contract and

4   interference claims in Plaintiffs' First Amended Complaint ("FAC").  (Dkt. 72.)  In

5   its March 11 ruling, the Court determined, among other things, that Plaintiffs had

6   failed to adequately plead the existence of the alleged contracts, noting that

7   Plaintiffs had "not attached any of the contracts to their complaint or pled the

8   relevant contract terms verbatim."  (*Id.* at 11.)  In their SAC, Plaintiffs now attach

9   the written contracts.  Those contracts unambiguously reveal that 2082 Technology,

10  LLC ("2082") is not a party to the contracts.

11         Like the FAC, the SAC alleges the "Bolin Defendants" – referring to 2082

12  and defendant Bolin Technology Co., Ltd. ("Bolin China") – breached purchase

13  orders to manufacture cameras for plaintiffs BirdDog Technology Limited ("Bird

14  Dog Technology") and/or BirdDog Australia Pty Ltd ("BirdDog Australia")

15  (collectively, "Plaintiffs" or "BirdDog"), and a nondisclosure agreement ("NDA")

16  to keep confidential BirdDog's proprietary information.  Those contracts – now

17  attached as exhibits to the SAC – establish on their face that Bolin China, a legally

18  separate Chinese company, was the contracting party, and not 2082.  And because

19  2082 is not a party to the contracts, Plaintiffs' breach of the implied covenant of the

20  contracts claim also fails as to 2082.

21         Similarly, Plaintiffs' intentional interference with prospective economic

22  advantage claim fails as to 2082, Mr. Lo, and Ms. Lee (collectively, the "2082

23  Defendants") for a multitude of reasons, many of which the Court cited in its Order

24  dismissing the FAC.  (Dkt. 72 at 23.)  First, Plaintiffs' "new" allegations –

25  including that BirdDog lost unspecified "revenue opportunities" and its economic

26  relationship with its customers would have otherwise been stronger – are the same

27  type of conclusory allegations that this Court already rejected.  Second, despite

28  alleging millions in damages, Plaintiffs identify only a single anonymous online

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{268676.4}                    5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

comment regarding a cancelled order, which is not attributed to Bolin China's (or 2082's) failure to deliver cameras to BirdDog.  Third, Plaintiffs do not even try to allege that the 2082 Defendants personally knew about these purported relationships, which the Court specifically identified as a basis for dismissing this claim from the FAC.  Fourth, and also like the FAC, the SAC continues to improperly plead facts collectively as to all Defendants, as opposed to separately as to each Defendant as required.  And finally, because the alleged interference is limited to the failure to perform under the purchase orders, Plaintiffs do not allege a separate wrongful act giving rise to an intentional interference claim.

Plaintiffs cannot salvage the deficiencies in their claims against the 2082 Defendants through their alter ego allegations.  The SAC fails to sufficiently allege the two necessary conditions for imposing alter ego liability.  The Court already found that Plaintiffs failed to sufficiently allege an inequitable result, and Plaintiffs do not bolster their alter ego allegations at all in the SAC.  Nor do Plaintiffs allege a sufficient unity of interest between 2082 and Bolin China; nor can they because there is no alleged common legal or equitable ownership.  Moreover, by pleading facts collectively as to the "Bolin Defendants," Plaintiffs fail to make the required showing of primary liability against Bolin China which could support piercing the corporate veil to hold 2082 and/or Mr. Lo secondarily liable as alter ego defendants.

Accordingly, and as further discussed below, the 2082 Defendants request that the Court dismiss Plaintiffs' first, second, fifth, and ninth claims against the 2082 Defendants, this time without leave to amend, as Plaintiffs' third bite at the apple demonstrates that further amendment of these claims would be futile.

## II.    RELEVANT ALLEGATIONS[1]

BirdDog alleges in its SAC, just as in its FAC, that it is "a leading Australian technology company" which, over the course of many years, "has established itself

---

[1] The 2082 Defendants dispute and deny the bulk of the SAC's allegations, but accept them for purposes of this Motion.

{26867674}    6

1  as one of the primary global leaders in PTZ [pan, tilt and zoom] technology . . . ."

2  (SAC ¶ 26.)  Much of BirdDog's alleged success has apparently been the result of

3  its relationship with its camera manufacturing partner, referred to in the SAC as the

4  "Bolin Defendants," which relationship, according to the SAC, dates back to 2017.

5  According to the SAC, this manufacturing relationship was good for several years

6  and resulted in the "Bolin Defendants" becoming BirdDog's "principal camera

7  manufacturer."  (*Id.* ¶ 38.)

8      BirdDog alleges that the parties' business relationship deteriorated in 2023

9  resulting in the alleged breach by the "Bolin Defendants" of six contracts for the

10  manufacture of cameras, pursuant to which BirdDog claims to have paid over $3

11  million in deposit funds.  (*Id.* ¶¶ 46-53.)  Plaintiffs also allege that the "Bolin

12  Defendants" are otherwise liable for conduct arising out of the alleged breaches.

13      The SAC is noteworthy – just like the FAC – for what it does *not* allege.  The

14  SAC does not allege, for example, with which "Bolin Defendant" Plaintiffs

15  contracted and paid.  Nor does the SAC allege which BirdDog entity – whether

16  BirdDog Australia or BirdDog Technology – was a party to these alleged contracts

17  and allegedly paid money pursuant to those contracts.  In fact, the SAC does not

18  differentiate between the "Bolin Defendants" or the two BirdDog plaintiffs in any

19  material respect whatsoever, and omits a host of other essential terms of the

20  contracts.  All this failure follows the Court's Order dismissing Plaintiffs' contract

21  claims for failing to plead the terms of the contracts.  (Dkt. 72 at 11.)

22      What is new in the SAC is that Plaintiffs finally now attach copies of the

23  purchase orders they are suing on.  Plaintiffs' failure to attach them previously is

24  now explained.  In particular, the purchase orders demonstrate on their face that the

25  contracting party was Bolin China, a China-based manufacturer, and not 2082.  The

26  purchase orders also reflect that these contracts were addressed by BirdDog to

27  Bolin China's business address in Shenzhen, China, and, in connection with these

28

{268676.4}

7

1  orders, BirdDog then wired money to a Chinese bank account belonging to Bolin

2  China (not to 2082).

3       In their SAC, Plaintiffs also now attach the NDA.  Plaintiffs allege that the

4  NDA was signed by Bolin China "on behalf of the Bolin Defendants and binding as

5  to both Mr. Lo and Ms. Lee as their executives."  (SAC ¶ 37.)  Plaintiffs purport to

6  quote from the NDA and allege that the agreement covers confidential information

7  obtained by "the Bolin Defendants."  (*Id.*)  The NDA itself contradicts those

8  allegations.  The only parties to the NDA are BirdDog Australia and Bolin China,

9  and it covers only information obtained by the Recipient (Bolin China).

10  **III.  <u>ARGUMENT</u>**

11       **A.    Legal Standard on a Motion to Dismiss.**

12       "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must

13  contain sufficient factual matter, accepted as true, to state a claim to relief that is

14  plausible on its face.  A claim has facial plausibility when the plaintiff pleads

15  factual content that allows the court to draw the reasonable inference that the

16  defendant is liable for the misconduct alleged. . . . Where a complaint pleads facts

17  that are merely consistent with a defendant's liability, it stops short of the line

18  between possibility and plausibility of entitlement to relief."  *Ashcroft v. Iqbal*, 556

19  U.S. 662, 678 (2009) (internal citations omitted).  Moreover, "[a]lthough for the

20  purposes of a motion to dismiss [the Court] must take all of the factual allegations

21  in the complaint as true, [the Court is] not bound to accept as true a legal conclusion

22  couched as a factual allegation."  *Id.*  While generally only the allegations in a

23  complaint are considered when deciding a motion to dismiss, "[a] court may,

24  however, consider certain materials – documents attached to the complaint,

25  documents incorporated by reference in the complaint, or matters of judicial notice

26  – without converting the motion to dismiss into a motion for summary judgment."

27  *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

28

{268676.4}

8

**B.     The First Claim for Relief for Breach of Purchase Orders Fails to State a Plausible Claim Against 2082.**

Plaintiffs' initial Complaint alleged wrongful conduct and sought recovery from 2082 and Mr. Lo based on the alleged contracts between BirdDog and Bolin China.  Following the filing of 2082's and Mr. Lo's motion to dismiss this Complaint, Plaintiffs filed a FAC, adding Bolin China (and Ms. Lee), and premising their claims entirely on an alleged relationship between BirdDog and the purported "Bolin Defendants," which Plaintiffs defined collectively to include 2082 and Bolin China, without any differentiation.  In their SAC, Plaintiffs do the same, attempting to allege contract claims against 2082 – but now including the actual purchase orders which make clear the contracts were with Bolin China.

Plaintiffs now claim that they entered alleged contracts with the "Bolin Defendants" for the purchase of cameras allegedly manufactured by the "Bolin Defendants" and that BirdDog made payments to the "Bolin Defendants" of deposits for these orders.  (*See* SAC ¶¶ 73-86.)  Just as in the Initial Complaint and the FAC, the SAC references six individual contracts that were allegedly breached by the "Bolin Defendants," although BirdDog now attaches to the SAC the purchase orders in response to the Court's Order.  (*Id*.)  The underlying purchase orders make clear what 2082 has been arguing since the inception of this case: the contracting party was not 2082 or the "Bolin Defendants" collectively, but instead was Bolin China.  (SAC Exs. B-G.)  The SAC also expressly pleads that Bolin China is a distinct legal entity from 2082.  (SAC ¶ 10.)  Because Plaintiffs' allegations regarding the terms of the contracts – including, importantly, the identity of the party with which it contracted – are contradicted by the actual contract documents themselves, Plaintiffs' allegations can and should be disregarded.

Accordingly, the first claim for relief for breach of contract fails to state a claim because Plaintiffs cannot properly allege that 2082 was a party to the

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{268676.4}                                                  9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

contracts at issue.  *See* SAC ¶¶ 73-87; *see also Barnhart v. Points Dev. US Ltd.*, No. 2:16-cv-02516-CAS(Ex), 2016 WL 3041036, at *3 (C.D. Cal. May 25, 2016) ("[A] plaintiff cannot maintain a breach of contract claim against an entity who is not a party to the contract.").

Moreover, even assuming 2082 was a proper party to this claim – which it is not – Plaintiffs still have not sufficiently pled this claim for relief against 2082. "To plead the existence of a contract, a plaintiff must quote the terms of the purported contract, attach it to the complaint, or clearly allege the substance of the relevant terms." *See Bassam v. Bank of Am.*, No. CV 15-00587 MMM (FFMx), 2015 WL 4127745, at *4 (C.D. Cal. July 8, 2015), citing *Ramirez v. GMAC Mortg.*, No. CV 09-8189 PSG (FFMx), 2010 WL 148167, at *2 (C.D. Cal. Jan. 12, 2010). "Plaintiff's complaint must contain, in non-conclusory language, the specific terms of the parties' contract." *Park v. Morgan Stanley & Co.*, No. 2:11-CV-9466-ODW, 2012 WL 589653, at *3 (C.D. Cal. Feb. 22, 2012), quoting *Rochester-Genesee Transp. Auth. v. Cummins Inc.*, No. 09-CV-6370-MAT, 2010 WL 2998768 (W.D.N.Y. Jul. 28, 2010).

In *Vaccarino v. Midland National Life Insurance*, Co., No. CV 11-05858 CAS MANX, 2011 WL 5593883 (C.D. Cal. Nov. 14, 2011), for example, this Court dismissed a breach of contract claim where the complaint failed to "identify [the] contract's essential terms, which documents or oral statements outside the four corners of the contract were part of the agreement, or which terms of the contract were breached." *Id.* at *7.  That is the case here.

Indeed, rather than curing the FAC's deficiencies, the SAC makes the breach of contract claims less plausible.  The SAC, like the prior iterations, alleges a series of six "oral and written contracts." (SAC ¶¶ 73-78.)  The "written terms," according to Plaintiffs, are reflected in the attached purchase order documents. *Id.* The SAC nowhere alleges the specific oral terms of these agreements.  Instead, the SAC alleges as a mere legal conclusion that the "Bolin Defendants" failed "to

timely produce" units and failed "to meet promised delivery dates" (SAC ¶¶ 80-85), but does not specify what production and delivery dates were ever agreed to be met. Similarly, the SAC also conclusorily alleges that 2082 or Bolin China, or somehow both, "fail[ed] to provide units of acceptable and/or merchantable quality" (*id.*), but does not allege in what way the goods were supposedly not acceptable and not of merchantable quality, or even what the alleged contracts provided for in that regard.

Accordingly, the allegations do not reach the level of plausibility required to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678. Thus, the first claim for relief against 2082 for breach of contract should be dismissed.

**C.    The Second Claim for Relief for Breach of the NDA Fails to State a Plausible Claim Against 2082.**

Plaintiffs attach the NDA as Exhibit A to the SAC, and then proceed to misquote it to attempt to give the false impression that 2082 was a contracting party. Though Plaintiffs acknowledge, as they must, that the NDA was signed by Bolin China and not 2082, Plaintiffs nevertheless allege that the NDA was executed "on behalf of the Bolin Defendants" to keep certain BirdDog information as confidential, and that the "Bolin Defendants" breached the NDA. (SAC ¶¶ 37, 89-92.) Nowhere does the NDA – which solely names Bolin China as the other contracting party – purport to bind the 2082 Defendants. Notwithstanding the language of the agreement, Plaintiffs continue to insert "the Bolin Defendants" into the terms of the NDA they quote in the SAC. (SAC ¶ 37.)

There is a reason that plaintiffs are required to either "attach the written contract or plead its terms verbatim" in the complaint. Dkt. 72 at 11, quoting *Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1079 (E.D. Cal. 2012). Plaintiffs cannot artfully plead around the binding terms of the contract in order to survive a motion to dismiss. *See Campbell v. eBay, Inc.*, No. 13-CV-2632 YGR, 2014 WL 3950671, at *2 (N.D. Cal. Aug. 11, 2014) (dismissing claim without leave to amend where "[i]n order to state a claim for breach of contract, Plaintiff would have to

11

1  plead around" provisions in the agreement); *Daub v. Eagle Test Sys., Inc.*, No. C-

2  05-01055 RMW, 2005 WL 8177537, at *2 (N.D. Cal. Oct. 19, 2005) ("[Plaintiff]

3  cannot plead around the fact that the contract is not ambiguous.").

4       Because it is now absolutely clear that 2082 is not a party to the NDA, this

5  claim must be dismissed as to 2082.  *See Barnhart v. Points Dev. US Ltd.*, 2016

6  WL 3041036, at *3.

7       **D.**    **The Fifth Claim for Breach of the Implied Covenant Fails to State**

8             **a Plausible Claim Against 2082.**

9       The SAC alleges that the "Bolin Defendants" – again, improperly treating

10  Bolin China and 2082 as if they were one and the same – breached the implied

11  covenant of the contracts.  SAC ¶ 110.  As discussed above, the SAC does not

12  allege facts as to the identity of the contracting parties, the promised production and

13  delivery dates, the alleged breach and by which party, or the specific alleged issues

14  with the quality of the products, among other facts.  As the Court noted in its Order

15  regarding the FAC, "if plaintiffs' breach of contract claims ultimately fail, the

16  breach of the implied covenant claim will also fail."  (Dkt. 72 at 14, n. 7.)

17       Therefore, as the fifth claim for relief arises from these allegations, it should

18  likewise be dismissed against 2082.

19       **E.**    **The Ninth Claim for Intentional Interference Fails to State a**

20             **Plausible Claim Against the 2082 Defendants.**

21       As the Ninth Circuit has noted: "In California, the elements of the tort of

22  intentional interference with prospective economic advantage are: '(1) an economic

23  relationship between the plaintiff and some third party, with the probability of

24  future economic benefit to the plaintiff; (2) the defendant's knowledge of the

25  relationship; (3) intentional [wrongful] acts on the part of the defendant designed to

26  disrupt the relationship; (4) actual disruption of the relationship; and (5) economic

27  harm to the plaintiff proximately caused by the acts of the defendant.'"  *Sybersound*

28  *Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008), quoting *Korea*

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

1    *Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1153 (2003).

2           In its Order previously dismissing this claim, the Court noted that "[i]t

3    appears . . . that plaintiffs have failed to plead, beyond mere conclusory allegations,

4    that their economic relationships have been harmed." (Dkt. 72 at 23.)  The

5    allegation that Plaintiffs have "been unable to fulfill orders and ship products

6    because of the Bolin Defendants' actions – which . . . has caused some of its

7    customers to purchase the products from its competitors" was held by the Court as

8    insufficient to state a claim.  *Id*. (quoting FAC ¶ 67).  The Court went on to state

9    that "[m]oreover, without more specificity regarding these relationships, it is not

10   clear whether defendants knew of the particular economic relationships that were

11   actually disrupted." (*Id.*)

12          The SAC is devoid of any meaningful facts regarding this claim that were not

13   already rejected by the Court as insufficient in the FAC.  Indeed, the specific claim

14   for relief includes nearly identical allegations as the previous iteration, adding only

15   a very general statement that Plaintiffs' "economic relationships with its customers

16   . . . would have been less costly and more profitable for BirdDog" but for the

17   alleged inability to fulfill orders.  (SAC ¶ 129.)  Elsewhere in the SAC, Plaintiffs

18   (1) vaguely allege they have lost "revenue opportunities . . . caused by Bolin

19   Defendants failure to produce and timely deliver BirdDog cameras" (*id.* ¶ 69), and

20   (2) include two anonymous posts from the internet in which individuals expressed

21   concern about the breakdown of the relationship between BirdDog and Bolin

22   China, and only one of which references a cancelled order for a BirdDog camera

23   but does not actually tie the cancellation to any specific issue, including to a

24   purported delivery from Bolin China that never arrived (*id.* ¶ 70).  The limited

25   additional allegations cannot save this claim.

26          First, Plaintiffs' claim for relief for intentional interference with prospective

27   economic advantage fails as to the 2082 Defendants because the only alleged act of

28   interference was the failure to perform under the six contracts.  *See* SAC ¶ 128

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{268676.4}                                          13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

(alleging interference based on the "intentional withholding and interference with performance under" the purchase orders).  The 2082 Defendants were not parties to and had no obligation to do anything under these contracts.  As a matter of law, therefore, Plaintiffs cannot state an interference claim against the 2082 Defendants based on the alleged withholding of performance under these contracts.

Second, there still are no allegations in the SAC beyond vague contentions that Plaintiffs have been unable to fulfill orders and ship products because of Defendants' actions, which has caused some of its customers to purchase the products from its competitors – allegations which this Court has already rejected as insufficient.  (Dkt. 72 at 23.)  *See Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d at 1151 (dismissing claim where "[i]n its complaint, Sybersound merely states in a conclusory manner that it 'has been harmed because its ongoing business and economic relationships with Customers have been disrupted'" but did "not allege, for example, that it lost a contract nor that a negotiation with a Customer failed.").  As noted above, there is only a single suggestion in the SAC that one anonymous poster cancelled one order, but there is no allegation as to why this order was, in fact, cancelled.  Particularly given Plaintiffs' allegation that they have supposedly lost millions in revenue as a result of the alleged interference, the absence of any facts and specifics renders their claim even more implausible.

Third, the SAC includes no additional facts to address the Court's Order that, "without more specificity regarding these relationships, it is not clear whether defendants knew of the particular economic relationships that were actually disrupted."  (Dkt. 72 at 23.)  Plaintiffs do not allege that the 2082 Defendants personally knew about these purported relationships, or how the alleged failure to deliver cameras disrupted these relationships.

Fourth, like the FAC, the SAC continues to improperly plead facts collectively as to all Defendants, as opposed to separately as to each Defendant as required.  Thus, it is unclear from the SAC what 2082, Mr. Lo, or Ms. Lee each

1    individually did to allegedly interfere.

2         Finally, as discussed, the alleged conduct amounting to interference is limited

3    to the failure to perform under the purchase orders.  (SAC ¶ 128.)  Even if that

4    conduct is somehow actionable against 2082 as a breach of contract claim – which

5    it should not be, as explained above – it cannot also support an interference claim

6    against the 2082 Defendants because it was the result of alleged business dealings

7    between Bolin China and Plaintiffs, not as a result of any unlawful act.  "The tort of

8    intentional interference with prospective economic advantage is not intended to

9    punish individuals or commercial entities for their choice of commercial

10   relationships or their pursuit of commercial objectives, unless their interference

11   amounts to independently actionable conduct. . . . We conclude, therefore, that an

12   act is independently wrongful if it is unlawful, that is, if it is proscribed by some

13   constitutional, statutory, regulatory, common law, or other determinable legal

14   standard."  *Korea Supply*, 29 Cal. 4th at 1158-59.

15        For all of these reasons, the SAC continues to fail to plead a claim for

16   interference with prospective economic advantage against the 2082 Defendants and

17   should be dismissed.

18        **F.    Plaintiffs Cannot Save Their Claims Through Alter Ego**

19        **Allegations.**

20        Plaintiffs attempt to plead their way around the foregoing defects by alleging

21   in the SAC that Bolin China is the alter ego of 2082 and Mr. Lo and, even further,

22   that Bolin China and 2082 are actually one and the same – *i.e.,* a "single, unified

23   enterprise."  (SAC ¶ 13.)  Plaintiffs' conclusory and false allegations do not save

24   their claims against the 2082 Defendants, nor do they change the fact that 2082 was

25   not itself a party to any of the alleged contracts at issue and never received the

26   money at issue from BirdDog.

27        Before the alter ego doctrine can even be invoked, "two elements must be

28   alleged: 'First, there must be such a unity of interest and ownership between the

corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist.  Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone.'" *Gerritsen v. Warner Bros. Ent. Inc*., 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015), quoting *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 526 (2000). "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the necessary elements."  *Gerritsen*, 116 F. Supp. 3d at 1136.

As this Court has already held, Plaintiffs do not sufficiently allege an inequitable result.  In its Order on the motion to dismiss the FAC, the Court stated that "[t]o the extent plaintiffs are asserting an alter ego liability theory in this action, it appears that they have failed to plead facts showing that principles of equity weigh in favor of holding 2082 liable for Bolin China's contractual obligations." (Dkt. 72 at 11, n.5.)  As the Court explained, "[w]hile Plaintiffs argue that '[t]he Bolin [d]efendants were and are undercapitalized and are *potentially incapable* of satisfying a judgment should [plaintiffs] prevail in this action,' [citation omitted]," there are no allegations that assets were transferred from one corporate entity to the other in bad faith."  (*Id.*)  "Moreover," the Court explained, "plaintiffs neither explain the basis for their belief that the Bolin defendants are 'undercapitalized' nor specify whether only one of the Bolin defendants is undercapitalized or both."  (*Id.*) In the SAC, Plaintiffs simply repeat their alter ego allegations verbatim, making no attempt to cure the deficiencies already identified by the Court.  (SAC ¶ 13.)

Plaintiffs also cannot plead the necessary unity of interest and ownership.  To the contrary, as Plaintiffs' allegations demonstrate, 2082 and Bolin China are separate legal entities.  That two companies may have an acknowledged close business relationship does not make them alter egos.  This alone is fatal to Plaintiffs' alter ego theory given that common legal or equitable "[o]wnership is a prerequisite to alter ego liability, and not a mere 'factor' or 'guideline.'"  *S.E.C. v.*

1   *Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003).

2          Once these false allegations are set aside, all BirdDog can plead are non-

3   specific, general allegations that the 2082 Defendants are the alter egos of Bolin

4   China.  General allegations of alter ego, however, are insufficient to state a claim.

5          Moreover, the SAC fundamentally misapplies alter ego.  A claim against a

6   defendant based on an alter ego theory is "'not itself a claim for substantive relief'"

7   but rather is "derivative of the substantive cause of action against the corporate

8   defendant." *Smith v. Simmons*, 638 F. Supp. 2d 1180, 1190 n.14 (E.D. Cal. 2009),

9   *aff'd*, 409 F. App'x 88 (9th Cir. 2010), quoting *Hennessey's Tavern, Inc. v. Am. Air*

10  *Filter Co.*, 204 Cal. App. 3d 1351, 1359 (1988).  Stated another way, alter ego

11  liability "does not . . . come into operation prior to wrongdoing," it "merely acts as

12  a procedural mechanism by which an individual [or entity] can be held jointly liable

13  for the wrongdoing of his or her corporate alter ego." *Double Bogey, L.P. v. Enea*,

14  794 F.3d 1047, 1051-52 (9th Cir. 2015), citing *Mesler v. Bragg Mgmt. Co.*, 39 Cal.

15  3d 290, 301 (1985).

16         Thus, in order to maintain claims against 2082 and/or Mr. Lo under an alter

17  ego theory, Plaintiffs must first sufficiently allege direct causes of action against

18  Bolin China, and then allege the basis for holding the 2082 Defendants secondarily

19  liable as its alter egos.  *See, e.g., All Cities Realty, Inc. v. Hollymax Realty, Inc.*, No.

20  SA CV 08-195 AHS (MLGx), 2009 WL 10670615, at *6 (C.D. Cal. Oct. 20, 2009)

21  (dismissing alter ego claims for failure to allege a "cognizable substantive claim"

22  against corporate defendants in the first instance).  The SAC fails to do so, ignoring

23  the critical distinction between all Defendants, and lumping them together contrary

24  to pleading requirements.

25  **IV.   CONCLUSION**

26         For all of the reasons set forth herein, the 2082 Defendants request that the

27  Court dismiss the first, second, fifth, and ninth claims in the SAC for relief against

28  them, without leave to amend as it now clear after several attempts that amendment

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{26867 6.4}                                    17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  would be futile.

2

3  Dated:  April 30, 2024          UMBERG ZIPSER LLP

4

5                                  *s/ Molly J. Magnuson*
                                   Molly J. Magnuson
6                                  Attorneys for Defendants 2082
                                   Technology, LLC dba Bolin
7                                  Technology, Hoi "Kyle" Lo, and
                                   Jennifer Lee

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

1   **CERTIFICATE OF COMPLIANCE**

2       The undersigned, counsel of record for the 2082 Defendants, certifies that

3   this brief contains 4,387 words, which complies with the word limit of L.R. 11-6.1.

4

5   Dated:  April 30, 2024        UMBERG ZIPSER LLP

6

7                   *s/ Molly J. Magnuson*
                Molly J. Magnuson

8                   Attorneys for Defendants 2082
Technology, LLC dba Bolin

9                   Technology, Hoi "Kyle" Lo, and
Jennifer Lee

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{268676.4}                1