RYAN Q. KEECH (SBN 280306)
Ryan.Keech@klgates.com
GABRIEL M. HUEY (SBN 291608)
Gabriel.Huey@klgates.com
CASSIDY T. YOUNG (SBN 342891)
Cassidy.Young@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California 90067
Telephone: 310.553.5000
Fax No.: 310.553.5001

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BIRDDOG TECHNOLOGY LIMITED, an Australian company; and BIRDDOG AUSTRALIA PTY, LTD, an Australian company,

Plaintiffs,

v.

2082 TECHNOLOGY, LLC DBA BOLIN TECHNOLOGY, a California limited liability company; BOLIN TECHNOLOGY CO., LTD., a Chinese limited company; HOI "KYLE" LO, an individual; JENNIFER LEE, an individual; and DOES 3 through 25, inclusive,

Defendants.

Case No. 2:23-cv-09416 CAS (AGRx)

[Assigned to the Honorable Christina A. Snyder]

**PLAINTIFFS BIRDDOG TECHNOLOGY LIMITED'S AND BIRDDOG AUSTRALIA PTY LTD'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Date: June 24, 2024
Time: 10:00 a.m.
Courtroom: 8D

Complaint Filed: November 7, 2023
FAC Filed: January 12, 2024
SAC Filed: April 3, 2024

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. RELEVANT FACTUAL ALLEGATIONS .......... 3

A. Mr. Lo and Ms. Lee Seek Out a Business Relationship Between BirdDog and the Bolin Defendants. .......... 3

B. BirdDog and the Bolin Defendants Enter into an NDA and Six Purchase Agreements. .......... 4

C. The Bolin Defendants Repudiate their Obligations Under the Contracts at Issue. .......... 5

D. The Bolin Defendants Intentionally Interfere with BirdDog's Economic Relationships. .......... 5

III. PROCEDURAL BACKGROUND .......... 6

IV. JUDICIAL STANDARD .......... 7

V. ARGUMENT .......... 8

A. BirdDog's SAC Properly Alleges Its First and Second Claims for Relief for Breach of Contract. .......... 8

1. BirdDog cured the deficiencies identified by the Court in its March 11 Order. .......... 8

2. First Claim for Relief – Defendants' arguments are meritless. .......... 8

a. Defendants erroneously contend that the SAC fails to allege the essential terms of the purchase agreements. .......... 8

b. Defendants erroneously argue that the SAC fails to allege that Bolin LLC is a party to the contracts. .......... 10

c. Defendants' argument that the SAC fails to allege that Bolin LLC is a party to the contracts is a red herring and belied by the alter ego allegations in the SAC. .......... 11

**3. Second Claim for Relief – Defendants incorrectly assert that the SAC fails to allege that Bolin Limited is a party to the NDA.** ..... 14

**B. BirdDog Adequately Pleads Its Claim for Intentional Interference with Prospective Economic Advantage.** ..... 16

**1. The SAC cures the deficiencies outlined in the Court's March 11 Order as to BirdDog's Ninth Claim for Relief.** ..... 16

**a. The SAC sufficiently alleges specific economic relationships that were harmed by Defendants' interference.** ..... 16

**b. The SAC sufficiently alleges that Defendants had knowledge of the harm they caused.** ..... 17

**2. Defendants' other arguments are meritless.** ..... 18

**VI. CONCLUSION** ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Agreement Enf't, Inc. v. Pataro*,
2021 WL 8742105 (C.D. Cal. Jul. 27, 2021) .... 10, 14

*Altman v. PNC Mortg.*,
850 F. Supp. 2d 1057 (E.D. Cal. 2012) .... 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .... 7

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) .... 7

*Campbell v. eBay, Inc.*,
2014 WL 3950671 (N.D. Cal. Aug. 11, 2014) .... 14

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*,
479 F.3d 1099 (9th Cir. 2007) .... 19

*Daewoo Elecs. Am., Inc. v. Opta Corp.*,
2013 WL 3877596 (N.D. Cal. July 25, 2013) .... 13

*DocMagic, Inc. v. Ellie Mae, Inc.*,
745 F. Supp. 2d 1119 (N.D. Cal. 2010) .... 16

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .... 7

*Gibson v. De La Salle Inst.*,
66 Cal. App. 2d 609 (1944) .... 9

*Givemepower Corp. v. Pace Compumetrics, Inc.*,
2007 WL 2345027 (S.D. Cal. Aug. 14, 2007) .... 19

*Gordian Med., Inc. v. Percival*,
2020 WL 5921947 (C.D. Cal. Aug. 27, 2020) .... 17, 18

*House of Prayer v. Evangelical Assn. for India*,
113 Cal. App. 4th 48 (2003) .... 9

*Hybrid Financial Ltd. v. Hammitt, Inc.*,
2023 WL 3150092 (C.D. Cal. Mar. 6, 2023) ........ 7

*In re Hydroxycut Mktg. and Sales Practices Litig.*,
810 F. Supp. 2d 1100 (S.D. Cal. 2011) ........ 11

*Laub v. Horbaczewski*,
2019 WL 1744845 (C.D. Cal. Jan. 2, 2019) ........ 10, 14

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ........ 13

*Medawar v. Otis Elevator Co.*,
2022 WL 2703616 (C.D. Cal. July 12, 2022) ........ 9

*Mesler v. Bragg Mgmt. Co.*,
39 Cal. 3d 290 (1985) ........ 11

*Metal Lite, Inc. v. Brady Const. Innovations, Inc.*,
558 F. Supp. 2d 1084 (C.D. Cal. 2007) ........ 19

*Nautilus Ins. Co. v. Day to Day Fashion, Inc.*,
2017 WL 5643206 (C.D. Cal. Nov. 2, 2017) ........ 12

*Oracle Am., Inc. v. CedarCrestone, Inc.*,
2013 WL 3243885 (N.D. Cal. June 26, 2013) ........ 17

*Osprey Partners RSF LLC v. UBS Fin. Servs. Inc.*,
2016 WL 6679682 (N.D. Cal. Nov. 14, 2016) ........ 15

*Otano v. Ocean*,
2013 WL 2370724 (C.D. Cal. May 30, 2013) ........ 10, 14

*Pac. Mar. Freight, Inc. v. Foster*,
2010 WL 3339432 (S.D. Cal. Aug. 24, 2010) ........ 11

*Parker v. Country Oaks Partners, LLC*,
2023 WL 3149330 (C.D. Cal. Mar. 22, 2023) ........ 11, 12

*Reprod. Health Servs. v. Strange*,
22 F.4th 1346 (11th Cir. 2022) ........ 7

*Reprod. Health Servs. v. Strange*,
3 F.4th 1240, 1258 (11th Cir. 2021) ........ 7

*Sonora Diamond Corp. v. Sup. Ct.*,
83 Cal. App. 4th 523 (2000) ........ 13

*Sterling v. Taylor*,
40 Cal. 4th 757 (2007) ........ 8

*Stewart v. Screen Gems-EMI Music, Inc.*,
81 F. Supp. 3d 938 (N.D. Cal. 2015) ........ 13, 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
599 F. Supp. 2d 1179 (N.D. Cal. 2009) ........ 7

*Thrifty Payless, Inc. v. The Americana at Brand, LLC*,
218 Cal. App. 4th 1230 (2013) ........ 15

*Underwood v. Prince*,
2023 WL 2628069 (C.D. Cal. Jan. 26, 2023) ........ 9

**Statutes**

California Civil Code § 1657 ........ 9

**Court Rules**

Fed. R. Civ. P. 8(a)(2) ........ 7

Fed. R. Civ. P. 12(b)(6) ........ 7

Fed. R. Evid. 201 ........ 14

## I. INTRODUCTION

Plaintiffs BirdDog Technology Limited and BirdDog Australia Pty Ltd (collectively, "BirdDog") have filed a Second Amended Complaint ("SAC") that complies with the Court's March 11, 2024 Order. It sufficiently alleges all of its claims for relief. As this Court has already recognized, the SAC sets forth well-pled claims for trade secret misappropriation, conversion, and other torts, all of which involve wrongdoing on the part of Defendants 2082 Technology, LLC dba Bolin Technology ("Bolin LLC"), Hoi "Kyle" Lo, and Jennifer Lee (collectively, "Defendants"). Dkt. 72. Despite Defendants' best efforts to point the finger at co-Defendant Bolin Technology Co., Ltd. ("Bolin Limited") as the only true wrongdoer, this Court has acknowledged that BirdDog has plausibly alleged Defendants' involvement in the scheme to steal BirdDog's money, customers, confidential information, and ultimately, its business. *Id.*

Still, Defendants persist in ignoring relevant pleading standards in a futile attempt to delay the inevitable, asking the Court to contradict the pleadings and lay all of the blame for their breaches of contract and of the duty of good faith and fair dealing at the foot of co-Defendant Bolin Limited (Dkt. 91),[1] and find that Plaintiffs have not pleaded intentional interference with prospective economic advantage. Both efforts fail.

First, with respect to BirdDog's claims against Bolin LLC for breach of contract (Claims 1 and 2) and of the duty of good faith and fair dealing (Claim 5), Defendants argue that because Bolin LLC is not listed on the written portion of the agreements at issue, Bolin LLC was not a party to those agreements. But that turns on issues of fact that are inappropriate for determination on a motion to dismiss. The SAC clearly alleges that Bolin LLC orally agreed to be bound by those contracts through its Chief Executive Officer, Mr. Lo. SAC ¶ 37 (alleging that the NDA was

[1] Bolin Limited has been served with the summons and SAC. Dkt. 92. Its response is due no later than June 6, 2024. Dkt. 96.

signed by Bolin Limited on behalf of both itself and Bolin LLC); ¶¶ 46–50 (alleging that Bolin LLC orally agreed to promptly produce and deliver the products identified in the purchase agreements). These partially oral, partially written agreements were all made in the course of Mr. Lo's dealings with BirdDog on behalf of both Bolin LLC and Bolin Limited. SAC ¶¶ 40–53. Defendants' factual assertions to the contrary cannot overcome BirdDog's well-pled allegations at the pleading stage.

BirdDog's SAC also shows that Bolin LLC is liable for BirdDog's contract claims as an alter ego of Bolin Limited. SAC ¶ 13. The SAC plausibly alleges the factors necessary to show that Bolin Limited and Bolin LLC share a unity of interest, particularly through the joint ownership and management of Mr. Lo, who simultaneously controlled and operated both entities for a single purpose and for his own benefit. *Id.* In addition, the SAC makes clear that it would be inequitable to allow Bolin LLC to escape liability for its role in the breach that occurred and the subsequent harm that BirdDog suffered. SAC ¶ 13. There is no basis on this record for Bolin LLC to escape alter ego liability as a matter of law.

Defendants' claim that the SAC fails to allege the essential terms of the purchase agreements at issue is similarly misguided. The SAC sets forth all oral and written terms of those agreements, and BirdDog complied with the Court's instruction by attaching the written portion of each of these agreements as exhibits to the SAC. Defendants fail to point to a single missing term that is actually essential to these agreements. Thus, Defendants' arguments as to BirdDog's contract claims fail.

Finally, BirdDog has sufficiently pled its claim for intentional interference with prospective economic advantage. On March 11, 2024, the Court held that BirdDog needed to allege specific economic relationships with which Defendants knowingly interfered. In response to that order, BirdDog did so. SAC ¶¶ 67–71. Defendants' only arguments as to this claim are that BirdDog has failed to allege specific economic relationships that were harmed by Defendants' interference, and

that BirdDog failed to allege Defendants' knowledge of its interference with those relationships. To the contrary, the SAC contains specific examples of economic relationships that were harmed by Defendants' tortious conduct and failure to deliver. These economic relationships fall into two distinct groups of BirdDog customers that Defendants can easily identify through discovery. In addition, the SAC makes clear that Defendants had knowledge of their interference with these relationships given their significant involvement in BirdDog's business and their many discussions with BirdDog about its existing customers, those customers' product requirements, and their pricing information. Thus, Defendants' attempt to identify deficiencies with this claim fails.

In sum, Defendants' motion to dismiss should be denied in its entirety.

## II. RELEVANT FACTUAL ALLEGATIONS[2]

### A. Mr. Lo and Ms. Lee Seek Out a Business Relationship Between BirdDog and the Bolin Defendants.

Based in Australia, BirdDog is an internationally renowned vendor of streaming video technology. SAC ¶ 2. Bolin LLC and Bolin Limited (collectively, the "Bolin Defendants") are each controlled by Chief Executive Officer Mr. Lo and managed by Chief Operating Officer Ms. Lee, with Bolin Limited operating as the manufacturing arm of Bolin LLC. SAC ¶ 3. Mr. Lo and Ms. Lee control and manage the Bolin Defendants from their home in Arcadia, California and from their offices in Brea, California. SAC ¶ 3, 10. The Bolin Defendants hold themselves out to the public as a single, unified enterprise that manufactures and distributes cameras in the United States. SAC ¶ 13. Bolin Limited exists only as a conduit or shell corporation for the interests and manipulations of Bolin LLC and Mr. Lo. *Id.* The Bolin Defendants disregard the formal distinctions between their constituent entities, with

[2] Because the motion to dismiss is limited to the First, Second, Fifth, and Ninth Claims for Relief in the SAC only, this section focuses on the factual allegations pertaining to those claims only and does not address other aspects of the Bolin Defendants' unlawful scheme.

Mr. Lo signing legal documents, making representations, and speaking on behalf of both entities jointly and at the same time. *Id.*

Beginning in April 2017, Mr. Lo and Ms. Lee sought out BirdDog executives to begin a business relationship between the Bolin Defendants and BirdDog. SAC ¶ 35. Mr. Lo represented that the Bolin Defendants had the present intent and capability to fulfill BirdDog's precise manufacturing needs. *Id.* Based on these and similar representations, BirdDog agreed to engage Bolin LLC and Bolin Limited and started an economic relationship that would eventually result in BirdDog sharing sensitive confidential information and trade secrets and in the Bolin Defendants becoming BirdDog's primary supplier of camera products. SAC ¶¶ 4–5; 40–42; 96–99; and 105.

**B. BirdDog and the Bolin Defendants Enter into an NDA and Six Purchase Agreements.**

As part of its efforts to protect its competitively sensitive confidential information, BirdDog signed the Bolin Defendants to a comprehensive nondisclosure agreement (the "NDA"). SAC ¶ 37, Ex. A. At all times during these initial conversations and when signing the NDA, Mr. Lo and Ms. Lee held themselves out to be making representations on behalf of both Bolin Limited and Bolin LLC. SAC ¶¶ 35–39.

On numerous occasions between 2019 and 2022, BirdDog Chief Executive Dan Miall met Mr. Lo and Ms. Lee at, among other locations, their personal residence in Arcadia, California and at the offices of the Bolin Defendants in Brea, California. SAC ¶ 41–42. Beginning in June 2021 through May 2023, BirdDog and the Bolin Defendants entered into six purchase agreements wherein the Bolin Defendants agreed to promptly produce and timely deliver various camera products to BirdDog. SAC ¶¶ 46–53, Exs. B–G. Although the written portions of these purchase agreements list Bolin Limited as the "vendor" (since Bolin Limited is the

manufacturing arm of the Bolin enterprise), Mr. Lo agreed to each of these transactions on behalf of both Bolin Limited and Bolin LLC. *Id.*

### C. The Bolin Defendants Repudiate their Obligations Under the Contracts at Issue.

It soon became clear that Bolin LLC, Bolin Limited, Mr. Lo, and Ms. Lee had devised a plan to convince BirdDog to entrust them with BirdDog's funds and highly confidential information; hold, brazenly misuse, and misappropriate those funds and highly sensitive information to apply pressure on BirdDog; create competing cameras; and steal BirdDog's clients and economic relationships for themselves. SAC ¶ 4–6; 40–42; 45-53; 54–87. Defendants took these actions as part of their scheme to ***become*** BirdDog by misappropriating BirdDog's confidential and proprietary information to produce and distribute competing camera products. SAC ¶ 63. When BirdDog rejected Defendants' hostile takeover overtures (SAC ¶¶ 54–59), Defendants repudiated each of their existing agreements, stole BirdDog's money, misappropriated BirdDog's confidential information and trade secrets, and utilized BirdDog's assets to develop, manufacture, and ultimately to sell competing cameras. SAC ¶¶ 60–67.

It was ***only*** due to BirdDog's good faith trust in Mr. Lo and Ms. Lee's repeated representations that BirdDog paid these funds to Defendants and provided them with its trade secrets. SAC ¶¶ 36, 38, 46–47, 49–50, 52–53. Then, when BirdDog simply requested the return of its more than $3,000,000 in funds, the Bolin Defendants, Mr. Lo, and Ms. Lee flatly refused. SAC ¶¶ 6, 113, 119, and 122.

### D. The Bolin Defendants Intentionally Interfere with BirdDog's Economic Relationships.

Due to Mr. Lo and Ms. Lee's conduct, BirdDog has been unable to fulfill orders and ship products and is further being damaged through Defendants' unlawful possession and use of BirdDog's confidential and proprietary information to compete with BirdDog in the marketplace. SAC ¶¶ 67, 71. This has caused specific,

identifiable disruption to BirdDog's valuable customer relationships: for instance, after the Bolin Defendants repudiated the six agreements and failed to deliver the products as promised thereunder, BirdDog had back orders for the X120 camera with a total value of approximately $734,359.15 that it was unable to fulfill. SAC ¶ 68. Additionally, BirdDog has calculated that it has suffered a loss totaling over $1.25 million in revenue opportunities in Europe, the Middle East, and Africa for the quarter ending on March 31, 2024 caused by the Bolin Defendants' failure to produce and timely deliver BirdDog cameras. SAC ¶ 69. Unsurprisingly, BirdDog customers have publicly expressed disappointment in BirdDog's failure to fulfill its orders after the Bolin Defendants' actions. SAC ¶ 70. Some have also expressed a clear intent to buy products from the Bolin Defendants rather than from BirdDog moving forward. *Id.*

## III. PROCEDURAL BACKGROUND

On March 11, 2024, the Court issued an Order in part granting and in part denying Defendants' Motions to Dismiss Plaintiffs' FAC with leave to amend. Dkt. 72. While largely denying Defendants' Motion, the Court narrowly granted portions of it on the following limited grounds: in relation to BirdDog's breach of contract claims, the Court held that BirdDog had failed to plead "the existence of the six underlying contracts and the NDA," requiring BirdDog to either attach the written portions of those agreements or plead the terms verbatim. *Id.* at 13. In relation to BirdDog's intentional interference with prospective economic advantage claim, the Court held that Plaintiff had failed to plead specific economic relationships that were harmed, or that Defendants had knowledge of that harm. *Id.* at 23.

Through Bolin Limited—Bolin LLC's manufacturing arm and the other Bolin entity led by Mr. Lo as its CEO—Defendants interfered with the Court's jurisdiction by filing a duplicative lawsuit in Australia and conscripting the Australian court to issue orders impeding BirdDog from filing its SAC. Dkt. 54-5 (Bolin Limited's duplicative action), 54-6 (Bolin Limited's statement of claim), 73-2 (Bolin Limited's

request for anti-suit injunction enjoining BirdDog from filing a motion for anti-suit injunction in this Court), 72-3 (Order requiring BirdDog to file its SAC by March 25, 2024), 73-8 (Australian Court order restraining BirdDog from filing the SAC before 5:00 p.m. on April 9, 2024).

Despite Defendants' sanctionable conduct and attempt to thwart BirdDog, BirdDog filed its SAC with the Court's permission on April 3, 2024, comprehensively addressing the few defects identified in the Court's Order. Dkt. 76, 77.

## IV. JUDICIAL STANDARD

A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), dismissal is only appropriate when a party "fail[s] to state a claim upon which relief can be granted." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). In other words, the complaint must only "contain sufficient factual allegations 'to raise a right to relief above the speculative level.'" *In re TFT-LCD (Flat Panel) Antitrust Litig*., 599 F. Supp. 2d 1179, 1184 (N.D. Cal. 2009).

As BirdDog has previously pointed out, "question[s] of fact [are] inappropriate for resolution on a motion to dismiss." *Hybrid Financial Ltd. v. Hammitt, Inc.*, 2023 WL 3150092, at *1 (C.D. Cal. Mar. 6, 2023) (*quoting Greenwich Ins. Co. v. Rodgers*, 729 F. Supp. 2d 1158, 1164 (C.D. Cal. 2010)). The court must, rather, accept all allegations of material fact as "true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337–38 (9th Cir. 1996); *accord Reprod. Health Servs. v. Strange*, 3 F.4th 1240, 1258 (11th Cir. 2021) (court must "accept as true the allegations in the pleadings of the non-moving party and draw all reasonable inferences in that party's favor"), *rev'd on other grounds*, 22 F.4th 1346 (11th Cir. 2022). A court should "'assume the [] veracity' of 'well pleaded factual allegations' and 'determine whether they plausibly give rise to an entitlement of relief.'" *Eclectic Properties East, LLC v. Marcus & Millichap Co.*,

751 F.3d 990, 996 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citations omitted)).

## V. ARGUMENT

### A. BirdDog's SAC Properly Alleges Its First and Second Claims for Relief for Breach of Contract.

#### 1. BirdDog cured the deficiencies identified by the Court in its March 11 Order.

In its Order on Defendants' motion to dismiss BirdDog's FAC, the Court concluded that BirdDog needed to either attach the written portion of the contracts at issue or plead the contract terms verbatim in order to adequately state its claims for breach of contract. Dkt. 72 at 11. BirdDog opted for the former, attaching each of the six underlying purchase agreements, as well as the NDA, as exhibits to its SAC. Dkt. 84-1 at Ex. A (NDA), 84-1 at Exs. B–G (six purchase agreements underlying contracts with the Bolin Defendants). Thus, BirdDog has addressed the pleading deficiencies identified in the Court's prior Order, and BirdDog's breach of contract claims should be permitted to proceed.

#### 2. First Claim for Relief – Defendants' arguments are meritless.

##### a. Defendants erroneously contend that the SAC fails to allege the essential terms of the purchase agreements.

Defendants argue that BirdDog's First Claim for Relief fails because certain "essential terms" are missing from the allegations. Not so. The SAC clearly alleges: (1) the parties to the contracts; (2) a description of the products that were the subject of the agreement; (3) product quantity; (4) price; and (5) payment date. SAC ¶¶ 46–53. These are the only terms that were essential to the agreement between the parties. The only two terms that Defendants argue are missing from the contracts are not essential terms of the purchase agreements. *See Sterling v. Taylor*, 40 Cal. 4th 757, 766 (2007) ("What is essential depends on the agreement and its context and also on the subsequent conduct of the parties.").

First, Defendants argue that BirdDog's claim is somehow fatally defective for failing to specify a delivery date, but California law is clear that delivery date is not an essential term that must be included for a contract to be enforceable. California Civil Code section 1657 provides that where "no time is specified for the performance of an act required to be performed, a reasonable time is allowed." Accordingly, courts have repeatedly held that contracts do not fail for indefiniteness where a specific date on which performance is to occur is absent from the agreement. *See, e.g.*, *Underwood v. Prince*, 2023 WL 2628069, at *4 (C.D. Cal. Jan. 26, 2023) (finding breach of contract claim to be sufficiently pled where contract did not state time by which defendant was to deliver five new songs to plaintiff, but plaintiff alleged timeline of events establishing that defendant failed to perform within reasonable period); *Medawar v. Otis Elevator Co.*, 2022 WL 2703616, at *8–9 (C.D. Cal. July 12, 2022) (denying motion for summary judgment, concluding that reasonable jury could find that defendant failed to perform in reasonable time even though contract did not state time for performance); *House of Prayer v. Evangelical Assn. for India*, 113 Cal. App. 4th 48, 54 (2003) (holding contract did not fail for indefiniteness by failing to specify time for payment).

Second, Defendants argue that BirdDog's allegations about Defendants' breach are somehow rendered unclear by BirdDog's allegation that no "units of acceptable and/or merchantable quality" were produced by Defendants. To the contrary, BirdDog alleges in detail the extent to which Defendants failed to perform their obligations under the six purchase agreements. *See, e.g.*, SAC ¶ 59 (alleging that the Bolin Defendants failed to deliver 9,670 of the cameras that BirdDog had ordered, which had a total value of $3,060,883.10). Surely Defendants are not confused about what was wrong with the "quality" of the goods when ***no goods were delivered at all***. Moreover, to the extent Defendants argue that the contracts were defective for failing to specify the expected quality of goods, that is not an essential term that must be stated in the contract. *Gibson v. De La Salle Inst.*, 66 Cal. App. 2d

609, 626–27 (1944) (holding that quality of goods only "has any place or importance" in a contract where "quality becomes a determining factor in identifying the subject matter" of the agreement).

In sum, the SAC sufficiently alleges the essential terms of the six purchase agreements that are the subject of BirdDog's First Claim for Relief.

**b. Defendants erroneously argue that the SAC fails to allege that Bolin LLC is a party to the contracts.**

Notably, the Court's March 11 Order did ***not*** conclude that BirdDog had failed to sufficiently allege that Bolin LLC was a party to the subject agreements. Nevertheless, Defendants insist that BirdDog's First Claim for Relief is insufficient because the purchase agreements do not expressly name Bolin LLC. Dkt. 91-1 at 9:18–26. In other words, Defendants argue that because Bolin LLC is not listed as the "vendor" in the purchase agreements, Bolin LLC is not ***in fact*** a party to those agreements. As BirdDog has previously pointed out, however, and as Defendants again fail to address, BirdDog has alleged that Bolin LLC ***orally*** agreed to be bound by these agreements and performed multiple acts and engaged in multiple communications that showed its intent to be bound by these agreements. SAC ¶¶ 46–50 (alleging that Bolin LLC orally agreed to promptly produce and deliver the products identified in the purchase agreements).

Bolin LLC's contrary assertion that it did not agree to be bound by the agreements at issue is a dispute of fact that cannot be resolved at the motion to dismiss stage. *Laub v. Horbaczewski*, 2019 WL 1744845, at *7 (C.D. Cal. Jan. 2, 2019) (accepting as true allegations that defendant orally accepted contract for purposes of motion to dismiss); *Otano v. Ocean*, 2013 WL 2370724, at *3 (C.D. Cal. May 30, 2013) (where plaintiff alleged an oral agreement between itself and defendant, question of whether agreement actually extended to defendant "concern[ed] the underlying merits and substance of Plaintiff's breach of contract claim" and was therefore "inappropriate . . . to address at the motion to dismiss stage"); *Agreement*

*Enf't, Inc. v. Pataro,* 2021 WL 8742105, at *6 (C.D. Cal. Jul. 27, 2021) (denying motion to dismiss where contract was "reasonably susceptible" to plaintiff's interpretation). Thus, BirdDog's factual allegation that Bolin LLC orally agreed to be bound by these contracts is sufficient to survive Defendants' motion to dismiss.

**c. Defendants' argument that the SAC fails to allege that Bolin LLC is a party to the contracts is a red herring and belied by the alter ego allegations in the SAC.**

Even if BirdDog had failed to sufficiently allege that Bolin LLC was a party to the contracts at issue—it has not—then Bolin LLC would still be liable as an alter ego of Bolin Limited. "At the motion to dismiss stage, the pleading requirements for alleging an alter ego theory are 'not strict.'" *Parker v. Country Oaks Partners, LLC*, 2023 WL 3149330, at *3 (C.D. Cal. Mar. 22, 2023) (quoting *Unichappell Music, Inc. v. Modrock Prod., LLC*, 2015 WL 546059, at *4 (C.D. Cal. Feb. 10, 2015)). Under California law, there are two general requirements to establish alter ego liability: "unity of interest and ownership" and "that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985); *In re Hydroxycut Mktg. and Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1121 (S.D. Cal. 2011).

BirdDog has sufficiently alleged that a unity of interest exists between Bolin Limited and Bolin LLC. "Factors that can be used to support the first element, unity of interest, include commingling of funds, failure to maintain minutes or adequate corporate records, identification of the equitable owners with the domination and control of the two entities, the use of the same office or business locations, the identical equitable ownership of the two entities, the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual, and the failure to adequately capitalize a corporation." *Pac. Mar. Freight, Inc. v. Foster*, 2010 WL 3339432, at *7 (S.D. Cal. Aug. 24, 2010). "Because 'the most damning evidence of the "unity of interest and identity" is often in the hands of the

corporation and its principals and can be found nowhere else,' it is sufficient for a plaintiff to plead only 'two or three' of the factors showing unity of interest or identity to withstand a motion to dismiss." *Parker*, 2023 WL 3149330, at *3.

Here, BirdDog has alleged that Bolin Limited and Bolin LLC "hold themselves out as a single, unified enterprise, advertised as a manufacturer and distributor of camera products in the United States." SAC ¶ 13. BirdDog further alleges that Bolin Limited "existed as mere conduits or shell corporations for the interests and manipulations of Bolin LLC" and that these entities "disregarded the formal distinctions between their constituent entities, treating them as one and the same." *Id.* BirdDog alleges that Mr. Lo was the owner of both entities and controlled both totally and simultaneously by signing legal documents, speaking, making representations, and sending correspondence on behalf of both entities at the same time. *Id.* BirdDog alleges that these entities share employees, executives, and an office location in Brea, California. SAC ¶¶ 10–11, 13. Finally, BirdDog alleges that Bolin Limited and Bolin LLC commingled their business and their funds and are undercapitalized and incapable of satisfying a judgment should BirdDog prevail. SAC ¶ 13. In sum, the SAC makes clear that Bolin LLC and Bolin Limited were two arms of the same camera production entity that Mr. Lo used and controlled at his own whim and to suit his own needs.

BirdDog has therefore alleged at least six of the factors relevant to the unity of interest analysis—use of Bolin Limited as an instrumentality for Bolin LLC, joint control of the entities by Mr. Lo, shared business locations, disregard of corporate formalities, commingling of funds, and undercapitalization. Courts have found the unity of interest factor to be sufficiently alleged based on far more sparse allegations. *See, e.g.*, *Parker*, 2023 WL 3149330, at *3 (holding plaintiff met the "lenient" alter ego pleading standard by alleging that defendants commingled and diverted funds for non-corporate uses, shared offices and business locations, and used one another as a "mere instrumentality" for a single business venture); *Nautilus Ins. Co. v. Day to Day*

*Fashion, Inc.*, 2017 WL 5643206, at *2 (C.D. Cal. Nov. 2, 2017) (holding plaintiff sufficiently pled unity of interest by alleging that defendant "failed to adhere to corporate formalities," was a mere shell and instrumentality for its controlling business partners, were "undercapitalized and lacked assets," and were controlled by the same individuals); *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 962 (N.D. Cal. 2015) (holding unity of interest sufficiently pled where plaintiff alleged that defendants all used same "EMI" name, foreign affiliates were wholly owned and/or controlled subsidiaries of defendants, and funds were passed between entities); *Daewoo Elecs. Am., Inc. v. Opta Corp.*, 2013 WL 3877596, at *2 (N.D. Cal. July 25, 2013) (concluding plaintiff's allegations that defendant "was a mere instrumentality" and "directed and controlled [an affiliated entity's] dealings" were sufficient to allege a unity of interest).

In addition, BirdDog has pleaded facts sufficient to show that Defendants should not and cannot be permitted to benefit from their manipulation of the corporate structure as a shield for their misconduct. "To establish inequity in the absence of alter ego liability, a plaintiff must plead facts sufficient to demonstrate that 'conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form.'" *Sonora Diamond Corp. v. Sup. Ct.,* 83 Cal. App. 4th 523, 539 (2000). Defendants' conduct here rises to the level of bad faith. Despite holding themselves out to the public and in their business dealings with BirdDog as a single entity, Bolin LLC now attempts to escape liability for its actions by pointing the finger at Bolin Limited. Meanwhile, as BirdDog has previously explained, Bolin Limited has opted for a more literal escape—by evading service of the complaint in this action for months and initiating a frivolous and duplicative action against BirdDog in Australia, wherein it convinced the Australian court to restrain BirdDog from "taking any further step" against Bolin Limited in this action. *See* Dkt. 73, 88.[3]

[3] These facts are all subject to judicial notice as public records contained either on this Court's docket or in the public record for the Australian Action. *Lee v. City of Los Angeles*, 250 F.3d 668,

Defendants' antics are all aimed at preventing BirdDog from recovering for its well-pled claims, and it would be inequitable for Bolin LLC to escape liability despite its clear involvement in the allegations of the complaint and Bolin Limited's subsequent mischief. *Stewart*, 81 F. Supp. 3d at 963 ("[I]f Screen Gems–EMI and the foreign sub-publishers are actually part of a single enterprise such that the sub-publisher's revenue is Screen Gems–EMI's revenue, the practice is significantly and unfairly reducing the amount of royalties to which Plaintiff is entitled under the Agreement and is unjustly enriching Defendants.").

**3. Second Claim for Relief – Defendants incorrectly assert that the SAC fails to allege that Bolin Limited is a party to the NDA.**

Defendants' only argument in relation to the NDA is that BirdDog has failed to plead that Bolin LLC is a party to that agreement. Again, Bolin LLC points to the fact that Bolin LLC is not explicitly listed under "Parties" in the written agreement. And yet again, Defendants ignore BirdDog's clear allegations that Bolin LLC orally agreed to be bound by this agreement and obtained confidential and trade secret information pursuant to that agreement, evidencing an intent to be bound. SAC ¶ 37 (alleging that the NDA was signed by Bolin Limited on behalf of both itself and Bolin LLC). This is a factual assertion that must be accepted as true at this stage. *Laub v. Horbaczewski*, 2019 WL 1744845, at *7 (C.D. Cal. Jan. 2, 2019); *Otano v. Ocean*, 2013 WL 2370724, at *3 (C.D. Cal. May 30, 2013); *Agreement Enf't, Inc. v. Pataro,* 2021 WL 8742105, at *6 (C.D. Cal. Jul. 27, 2021).

The cases cited by Defendants for the proposition that all parties must be explicitly listed in a written agreement are distinguishable. Each of those cases involved a written contract where all terms were contained within the four corners of

---

688-89 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)) ("[O]n a motion to dismiss, . . . under Fed.R.Evid. 201, a court may take judicial notice of 'matters of public record.'").

the document, and the plaintiff was attempting to introduce terms in direct conflict with those in the written contract. *See, e.g.*, *Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1079 (E.D. Cal. 2012) (holding that written contract insufficiently pled where contract terms were not alleged verbatim); *Campbell v. eBay, Inc.*, 2014 WL 3950671, at *2 (N.D. Cal. Aug. 11, 2014) (dismissing breach of contract claim where plaintiff's allegations directly contradicted express terms in written contract). Here, on the other hand, BirdDog alleges a contract that is partially oral, partially in writing, and Bolin LLC's oral acceptance of the NDA is alleged in paragraph 37 of the SAC. This is sufficient to allege the terms of a partially oral contract. *See, e.g.*, *Osprey Partners RSF LLC v. UBS Fin. Servs. Inc.*, 2016 WL 6679682 (N.D. Cal. Nov. 14, 2016) (acknowledging oral terms applicable to certain defendants existed outside of written agreement, even where entirety of agreement was contained in writing as to other defendants).

Alternatively, even if BirdDog's allegation of Bolin LLC's oral agreement were not accepted as true, Bolin LLC is liable under an alter ego theory for the reasons stated above. In sum, Defendants' argument that the SAC fails to allege that Bolin LLC is a party to the NDA is meritless. BirdDog sufficiently alleges that Bolin LLC breached its obligations under the six oral and written contracts, as well as under the NDA, both as a party to those agreement and, alternatively, as Bolin Limited's alter ego. Defendants' motion must be denied as to BirdDog's First and Second Claims for Relief.[4]

---

[4] For the same reasons, BirdDog's Fifth Claim for Relief for breach of the implied covenant of good faith and fair dealing is also sufficiently pled. While breach of a specific provision of a contract is not necessary to state a claim for breach of the implied covenant, a sufficiently alleged breach of contract claim will also support a breach of implied covenant claim. *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1244 (2013) ("The covenant also requires each party to do everything the contract presupposes the party will do to accomplish the agreement's purposes."). Accordingly, Defendants' motion fails as to BirdDog's Fifth Claim for Relief.

### B. BirdDog Adequately Pleads Its Claim for Intentional Interference with Prospective Economic Advantage.

#### 1. The SAC cures the deficiencies outlined in the Court's March 11 Order as to BirdDog's Ninth Claim for Relief.

##### a. The SAC sufficiently alleges specific economic relationships that were harmed by Defendants' interference.

In the Court's March 11 Order, the Court directed BirdDog to allege the economic relationships that were harmed with more specificity. That is what BirdDog did. It added specific examples of economic relationships with customers that were harmed, which illustrated that the harm to BirdDog caused by Defendants' actions was well known to the public and to Defendants themselves.

In particular, the SAC explains that BirdDog was unable to fulfill approximately $734,359.15 worth of backorders and has lost over $1.25 million in revenue opportunities in Europe, the Middle East, and Africa as a direct result of the Bolin Defendants' failure to deliver the cameras promised under the agreements. SAC ¶¶ 67–68. Further, BirdDog included specific examples of customers who lost trust in BirdDog products as a result of the Bolin Defendants' failure to perform, with one customer explicitly stating that he cancelled his BirdDog order and bought a similar product from the Bolin Defendants instead. SAC ¶ 70 ("Makes me glad ***I cancelled my order for birddog X120 and went with the Bolin 220***.") (emphasis added).

These illustrative examples of specific business relationships that were harmed by the Bolin Defendants' actions are sufficient to plead a claim for intentional interference with prospective economic advantage. In order to sufficiently state this claim, BirdDog need only "identify at least one specific, ongoing business relationship that was disrupted" by Defendants such that the group of economic relationships at issue is identifiable from the pleading. *DocMagic, Inc. v. Ellie Mae,*

*Inc.*, 745 F. Supp. 2d 1119, 1154 (N.D. Cal. 2010). Here, the SAC sufficiently identifies the economic relationships that were harmed as two distinct groups: (1) the pre-existing customers whose orders BirdDog was unable to fulfill as a result of the Bolin Defendants' failure to deliver, and (2) the customers who had previously ordered BirdDog products and began instead ordering Bolin products after the Bolin Defendants' failure to deliver. These are two easily definable groups whose identities can be learned by Defendants through discovery. *Oracle Am., Inc. v. CedarCrestone, Inc.*, 2013 WL 3243885, at *3–4 (N.D. Cal. June 26, 2013) (upholding allegations of a "specific group" of plaintiff's former customers that became defendant's customers as sufficient to state intentional interference claim because allegations involved "a limited group of customers whose identities should be in [defendant's] possession or could be obtained through discovery").

**b. The SAC sufficiently alleges that Defendants had knowledge of the harm they caused.**

The SAC also alleges that Defendants had knowledge of these specific economic relationships that were disrupted. In particular, Defendants cannot claim to lack knowledge of their disruption of BirdDog's economic relationships where the SAC alleges that BirdDog customers began buying Bolin products instead. SAC ¶ 70; *see Gordian Med., Inc. v. Percival*, 2020 WL 5921947, at *5–6 (C.D. Cal. Aug. 27, 2020) (holding that plaintiff adequately alleged defendant's knowledge of plaintiff's economic relationships with customers where customers transferred business from plaintiff to defendant).

In addition, the SAC alleges that the Bolin Defendants had knowledge of BirdDog's existing business relationships and the orders that BirdDog needed fulfilled. Indeed, the Bolin Defendants intentionally extracted this information from BirdDog as part of its calculated effort to take over BirdDog's business. The SAC alleges that BirdDog shared detailed information with the Bolin Defendants about BirdDog's "business, including its developing and evolving camera manufacturing

needs, [and] ***its customers***." SAC ¶ 36 (emphasis added). The Bolin Defendants induced BirdDog to share this information "in an effort to obtain control of BirdDog and take over its customer relationships." SAC ¶ 45. Similarly, Defendants induced BirdDog to disclose trade secret information related to specific customers' needs, requirements, and pricing information. SAC ¶¶ 30, 41, 42. In sum, the SAC alleges not only that Defendants were aware of BirdDog's existing economic relationships that were harmed, but that Defendants actively and repeatedly elicited this information from BirdDog as part of its scheme to usurp this business from BirdDog. Accordingly, BirdDog has sufficiently pled the knowledge element of this claim. *Gordian*, 2020 WL 5921947, at *2, 6 (plaintiff sufficiently pled knowledge requirement where defendant intentionally defrauded plaintiff "to gain access to [p]laintiff's facilities and customers).

**2. Defendants' other arguments are meritless.**

Defendants make five other throwaway arguments as to why BirdDog fails to state a claim for intentional interference, all of which are meritless.

First, Defendants argue that they cannot be liable because the only interference alleged is the failure to perform under contracts to which Bolin LLC was not a party. Mot. at 13:26–14:5. But as explained above, the SAC sufficiently alleges that Bolin LLC was a party to these agreements, and the failure to perform thereunder was done at the direction of Mr. Lo and Ms. Lee.

Defendants' second and third arguments—that the SAC fails to allege specific economic relationships and Defendants' knowledge (Mot. at 14:6–25)—fail for the reasons already stated in Section V.B.1. Defendants have alleged specific economic relationships that were harmed, and Defendants had knowledge of this interference given Bolin's deep involvement in BirdDog's business and its knowledge of BirdDog's customer relationships. SAC ¶¶ 30, 36, 41, 42, 45, 67–70.

Defendants' fourth argument is that the SAC fails to allege facts identifying each defendant's distinct involvement in the interference with BirdDog's economic

relationships. This argument fails for the same reason it failed in Defendants' initial motion. That is, the SAC alleges in detail that Mr. Lo and Ms. Lee acted in concert and jointly decided to unlawfully repudiate the Bolin Defendants' contractual obligations. *See, e.g.*, SAC ¶ 45 (explaining that "Mr. Lo, Ms. Lee and the Bolin Defendants worked together" to negotiate the six purchase agreements with BirdDog in an effort to eventually take over BirdDog's customer relationships), ¶¶ 6, 54–63 (explaining that Mr. Lo and Ms. Lee jointly participated in the decision to repudiate the purchase agreements).

Finally, Defendants argue that BirdDog's intentional interference claim fails because it is based solely on Defendants' failure to perform their obligations under the NDA and the six purchase agreements. Dkt. 91-1 at 15:2–14. To the contrary, Defendants' interference involves not only a mere breach of contract but an intentional effort to deceive BirdDog and wrongfully usurp BirdDog's customer information and business. Because Defendants' interfering conduct involved fraud, conversion of BirdDog's funds, unfair competition, and other tortious misconduct that this Court has already recognized to be well-pled, Defendants' argument fails. *See, e.g.*, *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007) (upholding plaintiff's intentional interference claim where plaintiff also stated a UCL claim); *Givemepower Corp. v. Pace Compumetrics, Inc.*, 2007 WL 2345027, at *9 (S.D. Cal. Aug. 14, 2007) (same); *Metal Lite, Inc. v. Brady Const. Innovations, Inc.*, 558 F. Supp. 2d 1084, 1094 (C.D. Cal. 2007) (finding intentional interference claim to be sufficiently pled where it was based not only on defendant's breach of contract but also plaintiff's well-pled claims for false advertising, trade libel, and unfair competition).

BirdDog has sufficiently pled each element of its intentional interference claim. Defendants' motion must therefore be denied as to BirdDog's Ninth Claim for Relief.

## VI. CONCLUSION

For the foregoing reasons, BirdDog respectfully requests that the Court deny Defendants' motion in its entirety. Alternatively, to the extent the Court finds that any of the claims are not sufficiently pled, BirdDog respectfully requests leave to amend.

Respectfully submitted,

**K&L GATES LLP**

Dated: June 3, 2024

By: */s/ Cassidy T. Young*
Ryan Q. Keech
Gabriel M. Huey
Cassidy T. Young

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,411 words, which complies with the word limit of L.R. 11-6.1.

**K&L GATES LLP**

Dated: June 3, 2024

By: */s/ Cassidy T. Young*
Ryan Q. Keech
Gabriel M. Huey
Cassidy T. Young

*Attorneys for Plaintiffs*