UMBERG ZIPSER LLP
Dean J. Zipser (SBN 94680)
dzipser@umbergzipser.com
Molly J. Magnuson (SBN 229444)
mmagnuson@umbergzipser.com
1920 Main Street, Suite 750
Irvine, CA 92614
Telephone: (949) 679-0052
Facsimile: (949) 679-0461

Attorneys for Defendants
2082 Technology, LLC dba Bolin Technology, Hoi "Kyle" Lo, and Jennifer Lee

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BIRDDOG TECHNOLOGY LIMITED, an Australian company; and BIRDDOG AUSTRALIA PTY LTD, an Australian company,

Plaintiffs,

*v.*

2082 TECHNOLOGY, LLC DBA BOLIN TECHNOLOGY, a California limited liability company; BOLIN TECHNOLOGY CO., LTD., a Chinese limited company; HOI "KYLE" LO, an individual; JENNIFER LEE, an individual; and DOES 3 through 25, inclusive,

Defendants.

Case No. 2:23-cv-09416 CAS (AGRx)

**REPLY IN SUPPORT OF DEFENDANTS 2082 TECHNOLOGY, LLC, KYLE LO, AND JENNIFER LEE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Hearing Date: June 24, 2024
Time: 10:00 a.m.
Judge: Hon. Christina A. Snyder
Courtroom: 8D

Complaint filed: November 7, 2023
FAC filed: January 12, 2024
SAC filed: April 9, 2024

# TABLE OF CONTENTS


I. INTRODUCTION AND SUMMARY OF ARGUMENT .............................. 6

II. ARGUMENT .............................................................................. 9

A. The First Claim for Relief for Breach of the Purchase Orders Fails to State a Plausible Claim Against 2082. ............................................ 9

1. The Purchase Orders Make Clear 2082 Was Not a Party to the Contracts, and the SAC Does Not Allege an Oral Agreement that 2082 Would Be Bound by the Contracts. .............. 9

2. Even Assuming 2082 Were a Party to the Purchase Orders, the Alleged Oral Contract Terms Are Not Pled as to 2082. .......... 12

B. The Second Claim for Relief for Breach of the NDA Fails Because 2082 Was Not a Party to this Contract. ................................ 14

C. Plaintiffs Do Not Dispute That the Fifth Claim for Breach of the Implied Covenant Fails if Their Contract Claims Fail. ................. 17

D. Plaintiffs Fail to Show How They Adequately Plead Intentional Interference with Prospective Economic Advantage Against the 2082 Defendants. ........................................................................ 18

E. Plaintiffs' Alter Ego Allegations Are Deficient and Cannot Support Their Breach of Contract Claims Against the 2082 Defendants. .......................................................................... 19

III. CONCLUSION ........................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*All Cities Realty, Inc. v. Hollymax Realty, Inc.*,
No. SA CV 08-195 AHS, 2009 WL 10670615
(C.D. Cal. Oct. 20, 2009) ........ 22

*Altman v. PNC Mortg.*,
850 F. Supp. 2d 1057 (E.D. Cal. 2012) ........ 9

*Barnhart v. Points Dev. US Ltd.*,
No. 2:16-cv-02516-CAS(Ex), 2016 WL 3041036
(C.D. Cal. May 25, 2016) ........ 17

*Campbell v. eBay, Inc.*,
No. 13-CV-2632 YGR, 2014 WL 3950671
(N.D. Cal. Aug. 11, 2014) ........ 9

*Daub v. Eagle Test Sys., Inc.*,
No. C-05-01055 RMW, 2005 WL 8177537
(N.D. Cal. Oct. 19, 2005) ........ 9

*DocMagic, Inc. v. Ellie Mae, Inc.*,
745 F. Supp. 2d 1119 (N.D. Cal. 2010) ........ 18

*Double Bogey, L.P. v. Enea*,
794 F.3d 1047 (9th Cir. 2015) ........ 22

*Gerritsen v. Warner Bros. Ent. Inc.*,
116 F. Supp. 3d 1104 (C.D. Cal. 2015) ........ 20, 21

*Gordian Med., Inc. v. Percival*,
No. SACV 19-2244 JVS(ADSx), 2020 WL 5921947
(C.D. Cal. Aug. 27, 2020) ........ 19

*Hennessey's Tavern, Inc. v. Am. Air Filter Co.*,
204 Cal. App. 3d 1351 (1988) ........ 17

*Kemper v. California State Univ., Sacramento*,
No. 2:17-cv-0895 GEB AC PS, 2017 WL 3226846
(E.D. Cal. July 31, 2017) ........ 11

*Laub v. Horbaczewski*,
No. LA CV17-06210 JAK (KS), 2019 WL 1744845
(C.D. Cal. Jan. 2, 2019) .......... 12

*Lazy Y Ranch Ltd. v. Behrens*,
546 F.3d 580 (9th Cir. 2008) .......... 10

*Medawar v. Otis Elevator Co.*,
No. 2:20-cv-05155-MEMF (Ex), 2022 WL 2703616
(C.D. Cal. July 12, 2022) .......... 13

*Nautilus Ins. Co. v. Day to Day Fashion, Inc.*,
No. CV 17-01649 AFM, 2017 WL 5643206
(C.D. Cal. Nov. 2, 2017) .......... 21

*NuCal Foods, Inc. v. Quality Egg LLC*,
887 F. Supp. 2d 977 (E.D. Cal. 2012) .......... 20

*Osprey Partners RSF LLC v. UBS Financial Services Inc.*,
No. C 16-04894 WHA, 2016 WL 6679682
(N.D. Cal. Nov. 14, 2016) .......... 15, 16

*Otano v. Ocean*,
CV 13-01605 RSWL (JJCx), 2013 WL 2370724
(C.D. Cal. May 30, 2013) .......... 12

*Pac. Bay Recovery, Inc. v. California Physicians' Servs., Inc.*,
12 Cal. App. 5th 200 (2017) .......... 11

*Pac. Mar. Freight, Inc. v. Foster*,
No. 10-CV-0578-BTM-BLM, 2010 WL 3339432
(S.D. Cal. Aug. 24, 2010) .......... 21

*Parker v. Country Oaks Partners, LLC*,
No. SACV 23-00195-CJC, 2023 WL 3149330
(C.D. Cal. Mar. 22, 2023) .......... 21

*Prime Surgical Affiliates Inc. v. Aetna Health California, Inc.*,
No. 8:23-cv-01198-JVS-JDE, 2024 WL 1824993
(C.D. Cal. Mar. 4, 2024) .......... 11

*S.E.C. v. Hickey*,
322 F.3d 1123 (9th Cir. 2003) .......... 20

*Sandoval v. Ali*,
34 F. Supp. 3d 1031 (N.D. Cal. 2014)....................20

*Smith v. Simmons*,
638 F. Supp. 2d 1180 (E.D. Cal. 2009)....................17

*Stevenson Real Est. Servs., Inc. v. CB Richard Ellis Real Est. Servs., Inc.*, 138 Cal. App. 4th 1215 (2006)....................19

*Stewart v. Screen Gems-EMI Music, Inc.*,
81 F. Supp. 3d 938 (N.D. Cal. 2015)....................20, 21

*Swipe & Bite, Inc. v. Chow*,
147 F. Supp. 3d 924 (N.D. Cal. 2015)....................18

*U.S. v. Ritchie*,
342 F.3d 903 (9th Cir. 2003)....................10, 14

*Underwood v. Prince*,
No. CV 22-1884-DMG, 2023 WL 2628069
(C.D. Cal. Jan. 26, 2023)....................13

*Uyeshiro v. Irongate Azrep BW LLC*,
No. CIV. 13-00043 ACK-BM, 2014 WL 1233109
(D. Haw. Mar. 24, 2014)....................10

*Vaccarino v. Midland Nat'l Life Ins.*,
Co., No. CV-11-05858 CAS (MANx), 2011 WL 5593883 (C.D. Cal. Nov. 14, 2011)....................12

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Rather than provide support for the claims and allegations in the Second Amended Complaint (the "SAC"), the Opposition filed by Plaintiffs BirdDog Technology Limited ("Bird Dog Technology") and BirdDog Australia Pty Ltd ("BirdDog Australia") (collectively, "Plaintiffs" or "BirdDog") asks the Court to go beyond the pleadings, the documents attached to the SAC, and the law. Plaintiffs' attempt to keep certain claims alive against the 2082 Defendants – collectively, 2082 Technology, LLC ("2082"), Kyle Lo, and Jennifer Lee – is without basis.

As discussed further below, Plaintiffs' Opposition underscores that the SAC fails to cure the fatal deficiencies the Court identified in its Order dismissing the contract and interference claims in Plaintiffs' First Amended Complaint (the "FAC"). The SAC, in fact, only magnifies those deficiencies, as Plaintiffs now attach the purchase order contracts and the non-disclosure agreement ("NDA") upon which their contract claims are based. These documents unequivocally demonstrate 2082 is not a party to the contracts.

In the face of the contract documents themselves and the 2082 Defendants' Motion to Dismiss (the "Motion") further establishing there is no basis for Plaintiffs' contract claims, Plaintiffs argue the Court should not even consider the contracts and that the action should now proceed merely because they have attached the agreements. On the contrary, the Court can and should consider the contract documents – particularly because they are fatal to Plaintiffs' contract claims against 2082.

Plaintiffs' argument reflects their utter disregard for their pleading obligations. Inasmuch as Plaintiffs' claims are premised on written agreements, the Court properly ordered that the contract documents must be attached or pled verbatim. Contrary to Plaintiffs' argument, the Court did not determine that this alone satisfies Plaintiffs' duty to plead cognizable contract claims against the 2082 Defendants. Rather, Plaintiffs must be able to plead cognizable and plausible

claims in light of those documents. Plaintiffs' Opposition proves that they cannot.

In attempting to support the sufficiency of their allegations, Plaintiffs also continue to shift theories and arguments – a trend they began at the inception of this lawsuit and have continued ever since. With respect to the purchase orders, for example, Plaintiffs for the first time now argue they had an oral agreement with 2082 to the effect that 2082 would "be bound" by the contracts. This allegation is not included in the SAC, nor are any other allegations included that might support such a theory – such as when this agreement was reached and what 2082's obligations would be under the purchase orders, particularly given that, as Plaintiffs acknowledge, 2082 is not a camera manufacturer like Defendant Bolin Technology Co., Ltd. ("Bolin China"). And, even if Plaintiffs had alleged that 2082 was a party to the purchase orders based on a purported oral agreement – which, again, they have not – the SAC is devoid of critical allegations to support a contract with 2082 and does not allege any facts suggesting there was a "meeting of the minds" on an oral agreement between 2082 and Plaintiffs as to the purchase orders – all as required by fundamental contract law.

Similarly, Plaintiffs argue for the first time that their claim for breach of the NDA is based on an agreement that is "partially oral, partially in writing" binding 2082 to the NDA. On its face, the NDA is only with Bolin China; 2082 is nowhere referenced in – much less a party to – the agreement. As to Plaintiffs' new argument, the SAC does not allege that the NDA was partially oral and partially written. Rather, the SAC alleges that the NDA was only a "written contract," and the attached written contract shows that it was solely between Plaintiffs and Bolin China. Indeed, there is no allegation in the SAC of any oral contract regarding the NDA whatsoever, and no facts to suggest as much. It is also a basic matter of contract law that a party cannot simply bind another to a contract – there must be a separate meeting of the minds as to each party – which the SAC does not allege. Plaintiffs' Opposition and their new arguments do not substitute for the relevant

pleading before the Court and its attachments, which are the only thing under examination on this Motion.

As further discussed in the Motion and below, Plaintiffs' intentional interference with prospective economic advantage claim and alter ego claims also fail. Plaintiffs' SAC did not cure the pleading deficiencies identified by the Court in its Order dismissing in part the FAC. Like its predecessor, the SAC fails to allege specific economic relationships that were disrupted and fails to allege that the 2082 Defendants knew of the purported particular economic relationships actually disrupted – both of which are necessary to state a claim. Similarly, Plaintiffs' alter ego allegations remain deficient. Indeed, despite the Court already determining Plaintiffs failed to sufficiently allege an inequitable result, Plaintiffs do not bolster their alter ego allegations at all in the SAC. Nor do Plaintiffs allege a sufficient unity of interest between 2082 and Bolin China.

As this Court is aware, there is a separate related action pending between Plaintiffs and Bolin China in Australia – the appropriate forum for this dispute involving Australian plaintiffs and Bolin China, a Chinese company. (Bolin China, in fact, recently filed a motion to dismiss this case on the ground of forum non conveniens, and that motion is scheduled to be heard by this Court on July 8, 2024.)[1]

As to the 2082 Defendants, no matter how Plaintiffs attempt to plead and re-plead their first, second, fifth, and ninth claims, those claims are insufficient and implausible as a matter of law. Accordingly, the 2082 Defendants request the Court dismiss these claims, this time without leave to amend as amendment would be futile, as evidenced by Plaintiffs' three opportunities to plead and as further evidenced by the documents now attached to the SAC.

---

[1] Plaintiffs' continued efforts to try and tie 2082 to the purchase orders and the NDA appear to be designed in an effort to create more of a nexus with a U.S. forum.

# II. ARGUMENT

## A. The First Claim for Relief for Breach of the Purchase Orders Fails to State a Plausible Claim Against 2082.

### 1. The Purchase Orders Make Clear 2082 Was Not a Party to the Contracts, and the SAC Does Not Allege an Oral Agreement that 2082 Would Be Bound by the Contracts.

As part of its prior Order, the Court dismissed Plaintiffs' claim for breach of the purchase orders as alleged in the FAC on the ground that Plaintiffs had "failed to adequately plead the existence of the six underlying contracts and the NDA." (Dkt. 72 at 11.) The Court noted that, although the FAC alleged the existence of "six 'written contracts' . . . [Plaintiffs] have not attached any of the contracts to their complaint or pled the relevant contract terms verbatim," as required by law to state a claim. (*Id.*, quoting *Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1079 (E.D. Cal. 2012).) The fundamental pleading requirement that a contract must be attached to a complaint or its terms pleaded verbatim reflects the policy that a plaintiff should not be able to artfully plead around the binding terms of the contract in order to survive a motion to dismiss. *See, e.g., Campbell v. eBay, Inc.*, No. 13-CV-2632 YGR, 2014 WL 3950671, at *2 (N.D. Cal. Aug. 11, 2014) (dismissing claim without leave to amend where "[i]n order to state a claim for breach of contract, Plaintiff would have to plead around" provisions in the agreement); *Daub v. Eagle Test Sys., Inc.*, No. C-05-01055 RMW, 2005 WL 8177537, at *2 (N.D. Cal. Oct. 19, 2005) ("[Plaintiff] cannot plead around the fact that the contract is not ambiguous.").

It is now clear from the SAC and the Opposition that this is precisely what Plaintiffs had hoped to do in the first two iterations of their Complaint. Now that the purchase orders have been attached as part of the SAC, Plaintiffs can no longer do so. The documents before the Court clearly show, on their face, that the purchase order contracts were solely between BirdDog Australia and Bolin China.

(Dkt. 76-2, SAC Exs. B-G.) 2082 was not a party and cannot, therefore, be held liable for any alleged breach. Because the SAC's allegations regarding the parties to the contract are contradicted by the actual contract documents themselves, these allegations can and should be disregarded. *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008); *Uyeshiro v. Irongate Azrep BW LLC*, No. CIV. 13-00043 ACK-BM, 2014 WL 1233109, at *4 (D. Haw. Mar. 24, 2014).

Given the purchase orders themselves are unequivocal as to the contracting party – solely Bolin China, and not 2082 – Plaintiffs suggest the Court should not even consider them. Plaintiffs contend that simply by attaching the purchase orders they "ha[ve] addressed the pleading deficiencies identified in the Court's prior order" and this claim should, therefore, "be permitted to proceed." (Dkt. 97 ("Opp.") at 8:14-16.) Plaintiffs misconstrue the basis for the Court's Order and the law. Simply attaching the alleged written contracts does not automatically satisfy Plaintiffs' pleading burden and translate to stating a cognizable claim – particularly when the written documents contradict the allegations. It cannot be disputed that the Court can consider the attached purchase orders in connection with this Motion. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment.").

In a further effort to convince the Court to disregard the contract documents, Plaintiffs argue in their Opposition that this claim against 2082 is, in fact, not based on the written agreements attached, but, rather, is based on 2082's purported "oral[] agree[ment] to be bound by these agreements." (Opp. at 10:15-16.) The fundamental problem with this theory (apart from being untrue) is that the SAC nowhere alleges that Plaintiffs and 2082 entered into a separate oral contract, pursuant to which 2082 would "be bound by these agreements." Because these facts are nowhere pled, they cannot as a matter of law support a contract claim

against 2082. (*See* SAC ¶¶ 46-53, 73-87 (reflecting absence of allegations of oral agreement for 2082 to be bound).)

Moreover, not only does the SAC not allege what Plaintiffs now argue, it is also devoid of key facts which might support such a claim, such as when 2082 purportedly agreed to be bound by the purchase orders and what 2082's obligations would be under the purchase orders as part of this purported agreement. Basic pleading requirements mandate that a plaintiff must provide "specific facts" regarding the alleged communications supporting an oral contract sufficient for the court "to infer mutual consent in which the parties all agreed upon the same thing in the same sense" – *i.e.*, that there was a "meeting of the minds." *Prime Surgical Affiliates Inc. v. Aetna Health California, Inc.*, No. 8:23-cv-01198-JVS-JDE, 2024 WL 1824993, at *10 (C.D. Cal. Mar. 4, 2024) (dismissing oral contract claim where "alleged communications lack the specific facts required for [the Court] to determine there was any meeting of the minds," stating "[i]n other words, the SAC fails to allege facts to infer mutual consent in which 'the parties all agree[d] upon the same thing in the same sense.'"), citing *Pac. Bay Recovery, Inc. v. California Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 216 (2017); *see also Kemper v. California State Univ., Sacramento*, No. 2:17-cv-0895 GEB AC PS, 2017 WL 3226846, at *2 (E.D. Cal. July 31, 2017) (rejecting claim for breach of oral contract where complaint failed to "set forth the nature of the purported contract, what duties the contact imposes on the parties, the date the contract was entered into, or any other relevant terms."). Absent such allegations, Plaintiffs' claim fails on this basis as well.

In another effort to circumvent their pleading burden, Plaintiffs argue in their Opposition that whether 2082 agreed to be bound to the purchase orders is an issue of fact that cannot be resolved on a motion to dismiss, citing various cases which nowhere stand for such a proposition. (Opp. at 10:20-11:4.) These cases not only are distinguishable, but also, they undermine the point Plaintiffs are apparently

trying to make. In *Laub v. Horbaczewski*, No. LA CV17-06210 JAK (KS), 2019 WL 1744845 (C.D. Cal. Jan. 2, 2019), for example, the court held that the allegations in a complaint were sufficient to state a claim for breach of a written contract, where oral acceptance of the contract was specifically alleged. *Id.* at *7. *See also Otano v. Ocean*, No. CV 13-01605 RSWL (JJCx), 2013 WL 2370724, at *1 (C.D. Cal. May 30, 2013) (specifically alleging terms of oral agreement between the parties). Here, in contrast, the SAC completely fails to include any allegations, let alone specific ones, indicating 2082's agreement to be bound by the purchase orders.

Because Plaintiffs cannot properly allege that 2082 was a party to the contracts at issue, the first claim for relief for breach of contract against 2082 – whether written or oral – fails to state a claim.

**2. Even Assuming 2082 Were a Party to the Purchase Orders, the Alleged Oral Contract Terms Are Not Pled as to 2082.**

Even apart from the fatal defect of 2082 not being a party to the purchase orders, this claim also fails because – assuming for purposes of argument that 2082 were a party – the SAC fails to allege the specific oral terms of these agreements. Indeed, although Plaintiffs allege each of the contracts was "oral and written" (SAC ¶¶ 73-78), Plaintiffs do not allege a single oral term in the SAC pertaining to 2082. Plaintiffs do not allege, for example, when or by whom 2082 itself (as opposed to Bolin China) agreed to produce cameras for Plaintiffs, nor what consideration 2082 specifically would get in return, nor how 2082 would do so given that it is not a manufacturer, as Plaintiffs acknowledge. (Opp. at 4:26-5:1.) For this additional reason, this claim fails with respect to 2082. *See, e.g., Vaccarino v. Midland Nat'l Life Ins.*, Co., No. CV-11-05858 CAS (MANx), 2011 WL 5593883, at *7 (C.D. Cal. Nov. 14, 2011) (dismissing breach of contract claim where complaint failed to "identify [the] contract's essential terms, which documents or oral statements outside the four corners of the contract were part of the agreement, or which terms

of the contract were breached.”).

Moreover, and as demonstrated in the Motion, the SAC alleges as a mere legal conclusion that the “Bolin Defendants” failed “to timely produce” units and failed “to meet promised delivery dates” (SAC ¶¶ 80-85), but does not specify what production and delivery dates were ever agreed to be met. In their Opposition, Plaintiffs counter that all “essential terms” have been pled and that the allegedly promised delivery dates were “not essential.” (Opp. at 8:20-26.) In support, Plaintiffs cite several cases for the proposition that, under California law, “delivery date is not an essential term that must be included for a contract to be enforceable.” *Id*. at 9:1-17. What Plaintiffs’ argument fails to recognize, however, is that this rule applies where no delivery date has been specified. *See, e.g., Underwood v. Prince*, No. CV 22-1884-DMG (ASx), 2023 WL 2628069, at *4 (C.D. Cal. Jan. 26, 2023) (implying a reasonable time for performance where contract did not specify one); *Medawar v. Otis Elevator Co*., No. 2:20-cv-05155-MEMF (Ex), 2022 WL 2703616, at *8 (C.D. Cal. July 12, 2022) (reasonable time for performance held to be a question of fact where the contract contained “no performance deadline”).

That is not the case here. The SAC explicitly alleges the “Bolin Defendants” in fact agreed to “promptly produce and timely deliver” the cameras. (SAC ¶¶ 73-78.) Thus, according to the SAC, this was a term that was expressly made part of the contracts, there then being no need for a court to imply a “reasonable time” for performance. Here, the SAC fails to allege any facts to support this legal conclusion, including who on behalf of the “Bolin Defendants” entered into such an agreement to bind 2082 and what, if any, specific agreements were made as to timing – *i.e.*, what would constitute a timely delivery. Given the alleged express agreement on these terms, Plaintiffs ought to be able to allege these facts (and many others) with at least some level of specificity. They do not.

As also discussed in the Motion, the SAC also conclusorily alleges the “Bolin Defendants” “fail[ed] to provide units of acceptable and/or merchantable

quality," but fails to allege in what way the goods were not acceptable and not of merchantable quality. (*Id.* ¶¶ 79-85.) In their Opposition, Plaintiffs argue this allegation is essentially irrelevant because "no goods were delivered at all." (Opp. at 9:24-26.) But, as with many of the issues highlighted herein, this is not what is pled in the SAC. Plaintiffs cannot re-write their SAC by way of their Opposition.

Because the allegations in the SAC do not reach the level of plausibility required to survive a motion to dismiss, the first claim for relief against 2082 for breach of contract should be dismissed.

**B. The Second Claim for Relief for Breach of the NDA Fails Because 2082 Was Not a Party to this Contract.**

Like the purchase orders, the NDA similarly makes clear on its face that it is a contract solely between Plaintiffs and Bolin China, not with 2082. (SAC Ex. A.) The NDA specifically identifies the parties *only* as BirdDog and Bolin China and the signatories include *only* BirdDog and Bolin China. (*Id.*) The NDA also notably includes a provision that the "agreement may not be varied except in writing as signed by the parties." (*Id*. Par. 9.2.) Plaintiffs do not and cannot dispute these facts. Instead, and as with the purchase orders, Plaintiffs ask the Court not to consider the NDA attached to the SAC, and argue that merely by attaching the contract they "ha[ve] addressed the pleading deficiencies identified in the Court's prior order" and this claim should, therefore, "be permitted to proceed." (Opp. at 8:14-16.) Again, Plaintiffs are wrong. The Court can and should on this Motion consider the terms of the contract Plaintiffs attach to the SAC. *Ritchie*, 342 F.3d at 908. The attached NDA invalidates Plaintiffs' claims for breach by 2082.

In a further effort to avoid the inevitable conclusion of the express terms of this written agreement – *i.e.,* that 2082 is not a party and, therefore, cannot be liable for any alleged breach thereof – Plaintiffs continue to misrepresent the language of the NDA by purporting to quote the contract as expressly including 2082 when it clearly does not (SAC ¶ 37), and make arguments in their Opposition untethered to

any allegations actually pled in the SAC. More specifically, Plaintiffs argue in the Opposition that their claim is based not just on the NDA but is, rather, a contract "that is partially oral, partially in writing," and that the purported oral agreement binds 2082 to the NDA. (Opp. at 15:7.) In support, Plaintiffs falsely argue that they allege this purported oral agreement in the SAC and falsely claim that the SAC includes "clear allegations that Bolin LLC [2082] orally agreed to be bound by this agreement." (*Id*. at 14:15-16.)

Plaintiffs' argument is wrong – and misleading – on many levels. For one, the SAC does not allege the breach of an NDA that was "partially oral, partially in writing." To the contrary, the SAC alleges only that "[t]he NDA is an enforceable written contract." (SAC ¶ 89.)[2]

Nor does the SAC include allegations, let alone "clear" ones, that 2082 "orally agreed to be bound by [the NDA]." Indeed, paragraph 37 of the SAC, the sole allegation upon which Plaintiffs rely in support of their newly devised theory, says nothing about oral terms outside the four corners of the written NDA. It alleges only that Bolin China signed the NDA "on behalf of the Bolin Defendants [including 2082] and binding both M[r.] Lo and Ms. Lee as their executives . . . ." (*Id.* ¶ 37.) Plaintiffs nowhere allege in this paragraph or otherwise that 2082 itself "orally agreed to be bound" to the NDA notwithstanding its exclusion from the written agreement.

Moreover, as a basic matter of contract law, a party cannot simply bind another party to a contract. There must be a separate meeting of the minds and consideration as to each party, as the case law cited by Plaintiffs in their Opposition demonstrates. Specifically, in support of this new theory – which, again, is not pled in the SAC – Plaintiffs cite *Osprey Partners RSF LLC v. UBS Financial Services Inc.*, No. C 16-04894 WHA, 2016 WL 6679682 (N.D. Cal. Nov. 14, 2016) for the

[2] This stands in stark contrast with Plaintiffs' claim for breach of the purchase orders, discussed above, in which the SAC explicitly alleges that each of the agreements at issue was an "oral and written contract." (*Id*. ¶¶ 73-78.)

proposition that oral terms of a contract can apply to certain parties even where the written terms are applicable only to other parties. (Opp. at 15:9-13.) *Osprey*, however, supports 2082's position, rather than that of Plaintiffs. In *Osprey,* on a motion to compel arbitration, the court considered whether three of the plaintiffs, who were not parties to a written agreement between UBS and the fourth plaintiff, could nonetheless be compelled to arbitrate pursuant to the arbitration provision in the written agreement. Notably, unlike here, the plaintiffs in the case expressly alleged in their complaint that they had a "partially written, partially oral and partially implied" contract with UBS. The moving defendant UBS argued, based on this allegation and significant evidence of exchanges regarding the contracts with the three non-signatory parties, the non-signatories should be forced to arbitrate pursuant to the written contract. The court rejected this argument, reasoning that the agreement at issue "by its express terms, does not mention" the other three parties and there was no evidence in the record that the three non-signatory parties agreed to the written contract. *Id*. at *3. As the court explained, as a matter of contract law, there must be a "meeting of the minds" between each of the parties and, in this case, there was no evidence the written contract "contrary to its express terms" was intended to extend to the non-signatory parties. *Id.* at *4.

In holding that a non-signatory cannot be bound by a written contract where there are insufficient allegations suggesting the party agreed to the terms of such contract, *Osprey* thus completely undermines Plaintiffs' argument that 2082 is bound by the NDA notwithstanding its express terms. As discussed, the SAC nowhere alleges that the NDA is a partially written, partially oral agreement. And nowhere does the SAC allege, or even suggest, that there was a meeting of the minds as to whether 2082 agreed to be bound "contrary to [the] express terms" of the NDA, which only included Bolin China.

In another attempt to disavow the language of the agreement, Plaintiffs argue that 2082 is nonetheless liable for breach of the NDA under an alter ego theory.

(Opp. at 15:14-16.) As argued in the Motion and below (*see* Section II.E), the allegations in the SAC do not support an alter ego claim. And, moreover, this argument – and the SAC in general – fundamentally misapplies alter ego in its attempt to hold 2082 liable under a direct theory of liability. A claim against a defendant based on an alter ego theory is "'not itself a claim for substantive relief'" but rather is "derivative of the substantive cause of action against the corporate defendant." *Smith v. Simmons*, 638 F. Supp. 2d 1180, 1190 n.14 (E.D. Cal. 2009), *aff'd*, 409 F. App'x 88 (9th Cir. 2010), quoting *Hennessey's Tavern, Inc. v. Am. Air Filter Co.*, 204 Cal. App. 3d 1351, 1359 (1988). Even if Plaintiffs could allege alter ego sufficiently to get past the pleading stage, that does not itself mean the SAC sufficiently alleges a direct claim for breach of the NDA against 2082. (*See also* Section II.E.) This distinction is important: it is the difference between 2082 defending a direct contract claim or 2082 defending merely an alter ego claim.

Because it is now absolutely clear from the NDA itself that 2082 is not a party to the NDA, and because the SAC contains no allegations supporting a purported oral agreement to be bound, this claim must be dismissed as to 2082. *See Barnhart v. Points Dev. US Ltd.*, No. 2:16cv02516-CAS (Ex), 2016 WL 3041036, at *3 (C.D. Cal. May 25, 2016).

### C. Plaintiffs Do Not Dispute That the Fifth Claim for Breach of the Implied Covenant Fails if Their Contract Claims Fail.

With respect to Plaintiffs' implied covenant claim, Plaintiffs do not in their Opposition dispute what this Court has already held, namely, that "if plaintiffs' breach of contract claims ultimately fail, the breach of the implied covenant claim will also fail." (Dkt. 72 at 14, n.7; Opp. at 15, n.4.) Because, for the reasons set forth in the Motion and further herein, Plaintiffs' breach of contract claims fail against 2082, so too should this claim be dismissed.

**D. Plaintiffs Fail to Show How They Adequately Plead Intentional Interference with Prospective Economic Advantage Against the 2082 Defendants.**

Plaintiffs' ninth claim for relief for intentional interference provides no greater specificity than the FAC regarding the particular customer relationships that were purportedly disrupted. The Court appropriately found that Plaintiffs' "conclusory" allegation that "'BirdDog has been unable to fulfill orders and ship products because of the Bolin Defendants' actions' . . . is insufficient for purposes of pleading intentional interference." (Dkt. 72 at 23, quoting FAC ¶ 67.) That Plaintiffs now allege the monetary value of those backorders and lost "revenue opportunities" does not specify the affected customer relationships, and Plaintiffs' failure to identify even a single customer that has been impacted renders their claims even more implausible. (*See* SAC ¶¶ 68-69.) The only "specific examples" cited in the Opposition are screenshots of two anonymous comments from the internet, only one of which actually references a cancelled order for a BirdDog camera. (Opp. at 16:17-22, citing SAC ¶ 70.) To argue that an anonymous online comment identifies a specific economic relationship with a third party strains credulity.

In addition to failing to identify any specific economic relationships, Plaintiffs also do not and cannot allege that the 2082 Defendants "knew of the particular economic relationships that were actually disrupted," as required and as noted in the Court's Order. (*See* Dkt. 72 at 23.) To survive a motion to dismiss, Plaintiffs "must, for at least one actual relationship, plead facts sufficient to satisfy all of the elements of an [intentional interference with prospective economic advantage] claim." *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1144 (N.D. Cal. 2010). *See also Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015) (dismissing intentional interference claims where plaintiff "fails to allege facts showing that [defendant] had knowledge of these economic

relationships between [plaintiff] and third parties"). The Opposition, like the SAC, fails to identify any facts showing the 2082 Defendants knew of Plaintiffs' economic relationship with the anonymous online commenter (nor did Plaintiffs, evidently). Vague allegations that the 2082 Defendants were "informed" about BirdDog's "customers" do not satisfy Plaintiffs' pleading requirements.[3] (SAC ¶¶ 36, 70.)

The Opposition also fails to tie the cancelled backorders or lost "revenue opportunities" to any independently wrongful act by the 2082 Defendants. "[A] plaintiff must plead and prove that the conduct alleged to constitute the interference was independently wrongful, *i.e.*, unlawful for reasons other than that it interfered with a prospective economic advantage." *Stevenson Real Est. Servs., Inc. v. CB Richard Ellis Real Est. Servs., Inc.*, 138 Cal. App. 4th 1215, 1224 (2006). Here, the alleged conduct amounting to interference is limited to the failure to perform under the purchase orders (SAC ¶ 128), which – even were this actionable against 2082 – is not in itself independently wrongful and cannot support an interference claim.

For these and the reasons set forth in the Motion, Plaintiffs' claim for interference with prospective economic advantage against the 2082 Defendants should be dismissed.

### E. Plaintiffs' Alter Ego Allegations Are Deficient and Cannot Support Their Breach of Contract Claims Against the 2082 Defendants.

Rather than curing the fatal pleading deficiencies the Court identified in dismissing the FAC (Dkt. 72 at 10-11), Plaintiffs argue in the Opposition that the

[3] The only case Plaintiffs cite in support of their position is inapposite as it contains far more detailed facts than those at issue here. *See Gordian Med., Inc. v. Percival*, No. SACV 19-2244 JVS(ADSx), 2020 WL 5921947, *5-6. (C.D. Cal. Aug. 27, 2020) (holding plaintiff adequately alleged defendants' knowledge of its economic relationships with 33 listed care facilities where defendants allegedly hacked plaintiff's computer systems to illegally access the customer information and made misrepresentations to those facilities so they would transfer their business to the defendants' company).

Court should accept their cursory and false recitation of factors as establishing alter ego liability. But, as the Court noted in its prior Order, "'[c]onclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the necessary elements.'" (*Id*., quoting *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015)). "This stringent pleading requirement reflects the principle that disregarding the corporate entity is recognized as an extreme remedy, and courts will pierce the corporate veil only in exceptional circumstances." *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 993 (E.D. Cal. 2012) (internal quotations omitted).

Plaintiffs again fail to allege specific facts showing a unity of interest and ownership such that "the separate personalities" of Bolin China and 2082 "do not in reality exist." *Gerritsen*, 116 F. Supp. 3d at 1136. Even if Plaintiffs could allege common ownership, which they cannot plausibly do,[4] the SAC's allegations that Bolin China and 2082 share the same offices, have overlapping officers and employees, and do business under the same name are still insufficient to state a claim for alter ego liability. *See, e.g., Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 956 (N.D. Cal. 2015) ("[E]quitable ownership, use of the same offices and employees . . . and identical officers and directors . . . even when considered together, are not sufficient to support a finding of unity of interest among these entities."); *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (allegations "corporate Defendants are underfunded, are not stand alone corporations, have common management and pay practices, share labor and materials, . . . and operate a common marketing system . . . are too conclusory to survive a motion to dismiss").

The other factors listed in the SAC, all of which were in the FAC – that Bolin

[4] Plaintiffs do not deny – indeed, the SAC specifically alleges – that 2082 is a California LLC and Bolin China is a separate Chinese company (SAC ¶¶ 10-11), and Plaintiffs do not allege that 2082 and Bolin China have any overlapping shareholders. On these facts alone, Plaintiffs' alter ego allegations fail. *See S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003).

China is a mere conduit or shell company of 2082, that Bolin China and 2082 disregarded their corporate formalities and commingled funds, and that Bolin China and 2082 were undercapitalized – remain mere boilerplate and unsupported by any specific facts and, therefore, weigh against finding a unity of interest at the pleadings stage. *Compare* SAC ¶ 13 *with Gerritsen*, 116 F. Supp. 3d at 1142 (allegation that defendant was undercapitalized while failing to "plead facts plausibly suggesting this is so" is the "type of conclusory allegation, unsupported by facts," that "does not demonstrate that there was a 'unity of interest.'"), and *Stewart*, 81 F. Supp. 3d at 955 (allegation that defendant was mere shell or conduit for the other and disregarded corporate formalities "weighs against an alter ego determination" "[b]ecause there is no particular evidence in support of this factor"). While Plaintiffs contend that others have survived the pleadings stage "based on far more sparse allegations" (Opp. at 12:23-24), the very cases on which Plaintiffs rely include far more specific allegations than those at issue here.[5] Indeed, if a plaintiff need only recite from a list of factors, then every alter ego allegation would survive a motion to dismiss.

Moreover, as set forth in the Motion, the Court already has held that Plaintiffs did not sufficiently plead an inequitable result. (Dkt. 72 at 11, n.5.) Instead of trying to defend their bare-bones allegations, Plaintiffs argue that Bolin China evaded service and caused an Australian court to "restrain BirdDog from 'taking any further step' against Bolin [China] in this action." (Opp. at 13:22-26.)

---

[5] *See* Opp. at 12-13, citing *Parker v. Country Oaks Partners, LLC*, No. SACV 23-00195-CJC (KESx), 2023 WL 3149330, at *3 (C.D. Cal. Mar. 22, 2023) (alleging defendant paid management company "large sums (in 2020, $680,600) for services they provide worth far less 'for the sole purpose of unjustly enriching the owners'"); *Pac. Mar. Freight, Inc. v. Foster*, No. 10-CV-0578-BTM-BLM, 2010 WL 3339432, at *7 (S.D. Cal. Aug. 24, 2010) (alleging individual was sole owner of eponymous entity and accepted payments on its behalf); *Stewart*, 81 F. Supp. 3d at 961-62 (alleging commingling of funds by arbitrarily allocating fees for sub-publishing between and among the publisher and affiliated sub-publishers); *Nautilus Ins. Co. v. Day to Day Fashion, Inc.*, No. CV 17-01649 AFM, 2017 WL 5643206, at *2 (C.D. Cal. Nov. 2, 2017) (alleging sole owner and business partners created shell company to conceal loss history on insurance application).

Notably, neither accusation has anything to do with 2082. Even if these facts were alleged in the SAC, which they are not, they are now moot – Bolin China has been served (Dkt. 92), and Plaintiffs are proceeding on their claims against Bolin China in this action.[6] Indeed, Bolin China has separately filed a motion to dismiss on the ground of forum non conveniens – scheduled for hearing on July 8, 2024. Additionally, the Australian litigation is irrelevant to whether 2082 used Bolin China to perpetrate the alleged wrongful conduct on Plaintiffs.

Finally, even if Plaintiffs could plausibly allege alter ego liability (which they have shown they cannot do), it still would not save their breach of contract claims against 2082. Alter ego liability is a "procedural mechanism" whereby the court holds a defendant "jointly liable for the wrongdoing of his or her corporate alter ego" only after primary liability has been established against the alter ego. *Double Bogey, L.P. v. Enea*, 794 F.3d 1047, 1051-52 (9th Cir. 2015). It cannot support a substantive claim against the alter ego defendant. *See All Cities Realty, Inc. v. Hollymax Realty, Inc.*, No. SA CV 08-195 AHS (MLGx), 2009 WL 10670615, at *6 (C.D. Cal. Oct. 20, 2009) (dismissing alter ego claims for failure to allege a "cognizable substantive claim" against corporate defendants in the first instance).

## III. <u>CONCLUSION</u>

For all of the reasons set forth herein and more fully in the Motion, the 2082 Defendants request the Court dismiss the SAC's first, second, fifth, and ninth claims for relief without leave to amend, as it is clear now – after several attempts to plead and as demonstrated by the documents attached to the SAC – that amendment would be futile.

---

[6] Plaintiffs grossly mischaracterize the Australian court's orders. The Australian court issued what amounts to a temporary restraining order pending its hearing on Bolin China's interlocutory application, which the court ultimately dismissed in part. (Dkt. 73-7.)

Dated: June 10, 2024

UMBERG ZIPSER LLP

*s/ Molly J. Magnuson*
Molly J. Magnuson
Attorneys for Defendants 2082 Technology, LLC dba Bolin Technology, Hoi "Kyle" Lo, and Jennifer Lee

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the 2082 Defendants, certifies that this brief contains 5,948 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 10, 2024

UMBERG ZIPSER LLP

*s/ Molly J. Magnuson*
Molly J. Magnuson
Attorneys for Defendants 2082 Technology, LLC dba Bolin Technology, Hoi "Kyle" Lo, and Jennifer Lee