RYAN Q. KEECH (SBN 280306)
Ryan.Keech@klgates.com
GABRIEL M. HUEY (SBN 291608)
Gabriel.Huey@klgates.com
CASSIDY T. YOUNG (SBN 342891)
Cassidy.Young@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California 90067
Telephone: 310.553.5000
Fax No.: 310.553.5001

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BIRDDOG TECHNOLOGY LIMITED, an Australian company; and BIRDDOG AUSTRALIA PTY, LTD, an Australian company,

Plaintiffs,

v.

2082 TECHNOLOGY, LLC DBA BOLIN TECHNOLOGY, a California limited liability company; BOLIN TECHNOLOGY CO., LTD., a Chinese limited company; HOI "KYLE" LO, an individual; JENNIFER LEE, an individual; and DOES 3 through 25, inclusive,

Defendants.

Case No. 2:23-cv-09416 CAS (AGRx)

[Assigned to the Honorable Christina A. Snyder]

**PLAINTIFFS BIRDDOG TECHNOLOGY LIMITED'S AND BIRDDOG AUSTRALIA PTY LTD'S OPPOSITION TO BOLIN LIMITED'S MOTION TO DISMISS NINTH CLAIM FOR RELIEF**

Date: July 8, 2024
Time: 10:00 a.m.
Courtroom: 8D

Complaint Filed: November 7, 2023
FAC Filed: January 12, 2024
SAC Filed: April 3, 2024

**TABLE OF CONTENTS**


**I. INTRODUCTION** .......... 1

**II. RELEVANT FACTUAL BACKGROUND** .......... 2

**A. Mr. Lo and Ms. Lee Seek Out a Business Relationship Between BirdDog and the Bolin Defendants.** .......... 2

**B. BirdDog and the Bolin Defendants Enter into an NDA and Six Purchase Agreements.** .......... 3

**C. The Bolin Defendants Repudiate their Obligations Under the Contracts at Issue.** .......... 3

**D. The Bolin Defendants Intentionally Interfere with BirdDog's Economic Relationships.** .......... 4

**III. JUDICIAL STANDARD** .......... 5

**IV. ARGUMENT** .......... 5

**A. BirdDog Adequately Pleads Its Claim for Intentional Interference With Prospective Economic Advantage.** .......... 5

**V. CONCLUSION** .......... 9

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 5

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) ..... 5

*DocMagic, Inc. v. Ellie Mae, Inc.*,
745 F. Supp. 2d 1119 (N.D. Cal. 2010) ..... 6

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ..... 5

*Gordian Med., Inc. v. Percival*,
2020 WL 5921947 (C.D. Cal. Aug. 27, 2020) ..... 7, 8

*Hybrid Financial Ltd. v. Hammitt, Inc.*,
2023 WL 3150092 (C.D. Cal. Mar. 6, 2023) ..... 5

*Oracle Am., Inc. v. CedarCrestone, Inc.*,
2013 WL 3243885 (N.D. Cal. June 26, 2013) ..... 6

*Reprod. Health Servs. v. Strange*,
22 F.4th 1346 (11th Cir. 2022) ..... 5

*Reprod. Health Servs. v. Strange*,
3 F.4th 1240, 1258 (11th Cir. 2021) ..... 5

*Ringcentral, Inc., v. Nextiva, Inc.*,
2021 WL 2476879 (N.D. Cal. June 17, 2021) ..... 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
599 F. Supp. 2d 1179 (N.D. Cal. 2009) ..... 5

**Court Rules**

Fed. R. Civ. P. 8(a)(2) ..... 5

Fed. R. Civ. P. 12(b)(6) ..... 5

# I. INTRODUCTION

Defendant Bolin Technology Co., Ltd.'s ("Bolin Limited") Motion to Dismiss BirdDog's Ninth Claim for Relief must be denied. As an initial matter, Bolin Limited is incorrect that BirdDog has failed to plead a claim for intentional interference with economic advantage. As explained in opposition to Defendants 2082 Technology, LLC dba Bolin Technology ("Bolin LLC"), Hoi "Kyle" Lo, and Jennifer Lee's motion to dismiss, BirdDog has adequately addressed the concerns raised in the Court's March 11, 2024 Order. Dkt. 97 at 16:1–19:27. Bolin Limited simply rehashes the other defendants' arguments, and this Motion therefore fails for the same reasons.

The instant Motion, as with Bolin Limited's concurrently filed *forum non conveniens* motion, is replete with misrepresentations and outright lies. First, Bolin Limited states that there is "already a pending action between the parties in Australia." Mot. at 5:6. Not so. The Australian Action is between BirdDog and Bolin Limited only. Bolin LLC, Lo, and Lee are not parties to that action, but they are key parties to this action who, as this Court has already recognized, BirdDog has sufficiently alleged several claims against. Second, Bolin Limited states that the Australian Action is "further advanced than the present case." Mot. at 5:6–7. But the delays in this action have been caused almost entirely by Bolin Limited's unlawful attempts to deprive this Court of jurisdiction and forum shop in favor of Australia.

Finally, Bolin Limited characterizes BirdDog's struggles to identify as a party and serve Bolin Limited as an "oddity." Mot. at 6:4–5. Bolin Limited, however, is at fault for BirdDog's inability to complete service until only recently. First, BirdDog did not initially name Bolin Limited as a defendant because the Bolin Defendants at all times represented themselves to BirdDog as a single entity. Second, once Bolin Limited was named as a defendant, Lo (Bolin Limited's CEO) evaded service of the complaint by fleeing the country.

In sum, Bolin Limited's Motion asserts baseless arguments and is a mere rehash of arguments already made by the other defendants. This Motion should be denied.

## II. RELEVANT FACTUAL BACKGROUND[1]

### A. Mr. Lo and Ms. Lee Seek Out a Business Relationship Between BirdDog and the Bolin Defendants.

Based in Australia, BirdDog is an internationally renowned vendor of streaming video technology. SAC ¶ 2. Bolin LLC and Bolin Limited (collectively, the "Bolin Defendants") are each controlled by Chief Executive Officer Mr. Lo and managed by Chief Operating Officer Ms. Lee, with Bolin Limited operating as the manufacturing arm of Bolin LLC. SAC ¶ 3. Mr. Lo and Ms. Lee control and manage the Bolin Defendants from their home in Arcadia, California and from their offices in Brea, California. SAC ¶ 3, 10.

Beginning in April 2017, Mr. Lo and Ms. Lee sought out BirdDog executives to begin a business relationship between the Bolin Defendants and BirdDog. SAC ¶ 35. Mr. Lo represented that the Bolin Defendants had the present intent and capability to fulfill BirdDog's precise manufacturing needs. *Id.* Based on these and similar representations, BirdDog agreed to engage Bolin LLC and Bolin Limited and started an economic relationship that would eventually result in BirdDog sharing sensitive confidential information and trade secrets and in the Bolin Defendants becoming BirdDog's primary supplier of camera products. SAC ¶¶ 4–5, 40–42, 96–99, 105.

[1] Because the instant motion to dismiss is limited to the Ninth Claim for Relief in the SAC, this section focuses on the factual allegations pertaining to that claim only and does not address other aspects of the Bolin Defendants' unlawful scheme.

**B. BirdDog and the Bolin Defendants Enter into an NDA and Six Purchase Agreements.**

As part of its efforts to protect its competitively sensitive confidential information, BirdDog signed the Bolin Defendants to a comprehensive Non-Disclosure Agreement (the "NDA"). SAC ¶ 37, Ex. A. At all times during these initial conversations and when signing the NDA, Mr. Lo and Ms. Lee held themselves out to be making representations on behalf of both Bolin Limited and Bolin LLC. SAC ¶¶ 35–39.

On numerous occasions between 2019 and 2022, BirdDog Chief Executive Dan Miall met Mr. Lo and Ms. Lee at, among other locations, their personal residence in Arcadia, California and at the offices of the Bolin Defendants in Brea, California. SAC ¶ 41–42. Beginning in June 2021 through May 2023, BirdDog and the Bolin Defendants entered into six purchase agreements wherein the Bolin Defendants agreed to promptly produce and timely deliver various camera products to BirdDog. SAC ¶¶ 46–53, Exs. B–G. Although the written portions of these purchase agreements list Bolin Limited as the "vendor" (since Bolin Limited is the manufacturing arm of the Bolin enterprise), Mr. Lo agreed to each of these transactions on behalf of both Bolin Limited and Bolin LLC. *Id.*

**C. The Bolin Defendants Repudiate their Obligations Under the Contracts at Issue.**

It soon became clear that Bolin LLC, Bolin Limited, Mr. Lo, and Ms. Lee had devised a plan to convince BirdDog to entrust them with BirdDog's funds and highly confidential information; hold, brazenly misuse, and misappropriate those funds and highly sensitive information to apply pressure on BirdDog; create competing cameras; and steal BirdDog's clients and economic relationships for themselves. SAC ¶¶ 4–6, 40–42, 45-53, 54–87. Defendants took these actions as part of their scheme to ***become*** BirdDog by misappropriating BirdDog's confidential and proprietary information to produce and distribute competing camera products. SAC

¶ 63. When BirdDog rejected Defendants' hostile takeover overtures (SAC ¶¶ 54–59), Defendants repudiated each of their existing agreements, stole BirdDog's money, misappropriated BirdDog's confidential information and trade secrets, and utilized BirdDog's assets to develop, manufacture, and ultimately sell competing cameras. SAC ¶¶ 60–67.

It was ***only*** due to BirdDog's good faith trust in Mr. Lo and Ms. Lee's repeated representations that BirdDog paid these funds to Defendants and provided them with its trade secrets. SAC ¶¶ 36, 38, 46–47, 49–50, 52–53. Then, when BirdDog simply requested the return of its more than $3,000,000 in funds, the Bolin Defendants, Mr. Lo, and Ms. Lee flatly refused. SAC ¶¶ 6, 113, 119, and 122.

### D. The Bolin Defendants Intentionally Interfere with BirdDog's Economic Relationships.

Due to Mr. Lo and Ms. Lee's conduct, BirdDog has been unable to fulfill orders and ship products and is further being damaged through Defendants' unlawful possession and use of BirdDog's confidential and proprietary information to compete with BirdDog in the marketplace. SAC ¶¶ 67, 71. This has caused specific, identifiable disruption to BirdDog's valuable customer relationships: for instance, after the Bolin Defendants repudiated the six agreements and failed to deliver the products as promised thereunder, BirdDog had back orders for the X120 camera with a total value of approximately $734,359.15 that it was unable to fulfill. SAC ¶ 68. Additionally, BirdDog has calculated that it has suffered a loss totaling over $1.25 million in revenue opportunities in Europe, the Middle East, and Africa for the quarter ending on March 31, 2024 caused by the Bolin Defendants' failure to produce and timely deliver BirdDog cameras. SAC ¶ 69. Unsurprisingly, BirdDog customers have publicly expressed disappointment in BirdDog's failure to fulfill its orders after the Bolin Defendants' actions. SAC ¶ 70. Some have also expressed a clear intent to buy products from the Bolin Defendants rather than from BirdDog moving forward. *Id.*

## III. JUDICIAL STANDARD

A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), dismissal is only appropriate when a party "fail[s] to state a claim upon which relief can be granted." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). In other words, the complaint must only "contain sufficient factual allegations 'to raise a right to relief above the speculative level.'" *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1184 (N.D. Cal. 2009).

As BirdDog has previously pointed out, "question[s] of fact [are] inappropriate for resolution on a motion to dismiss." *Hybrid Financial Ltd. v. Hammitt, Inc.*, 2023 WL 3150092, at *1 (C.D. Cal. Mar. 6, 2023) (*quoting Greenwich Ins. Co. v. Rodgers*, 729 F. Supp. 2d 1158, 1164 (C.D. Cal. 2010)). The court must, rather, accept all allegations of material fact as "true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 37-38 (9th Cir. 1996); *accord Reprod. Health Servs. v. Strange*, 3 F.4th 1240, 1258 (11th Cir. 2021) (court must "accept as true the allegations in the pleadings of the non-moving party and draw all reasonable inferences in that party's favor"), *rev'd on other grounds*, 22 F.4th 1346 (11th Cir. 2022). A court should "'assume the [] veracity' of 'well pleaded factual allegations' and 'determine whether they plausibly give rise to an entitlement of relief.'" *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citations omitted)).

## IV. ARGUMENT

### A. BirdDog Adequately Pleads Its Claim for Intentional Interference With Prospective Economic Advantage.

The SAC sufficiently addresses the deficiencies outlined by the Court. In the Court's March 11 Order, it held that BirdDog needed to allege the economic relationships that were harmed with more specificity. In response, BirdDog added

specific examples of economic relationships with customers that were harmed, which illustrated that the harm to BirdDog caused by Defendants' actions was well known to the public and to Defendants themselves.

In particular, the SAC explains that BirdDog was unable to fulfill approximately $734,359.15 worth of backorders and has lost over $1.25 million in revenue opportunities in Europe, the Middle East, and Africa as a direct result of the Bolin Defendants' failure to deliver the cameras promised under the agreements. SAC ¶¶ 67–68. Further, BirdDog included specific examples of customers who lost trust in BirdDog products as a result of the Bolin Defendants' failure to perform, with one customer explicitly stating that he cancelled his BirdDog order and bought a similar product from Bolin instead. SAC ¶ 70 ("Makes me glad ***I cancelled my order for birddog X120 and went with the Bolin 220***.") (emphasis added).

These illustrative examples of specific business relationships that were harmed by the Bolin Defendants' actions are sufficient to plead a claim for intentional interference with prospective economic advantage. Bolin Limited argues that BirdDog's allegations of "various unfulfilled orders and 'revenue opportunities'" is insufficient. Mot. at 8:24–26. But in order to sufficiently state an intentional interference claim, BirdDog need only "identify at least one specific, ongoing business relationship that was disrupted" by Defendants such that the group of economic relationships at issue is identifiable from the pleading. *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1154 (N.D. Cal. 2010).

Here, the SAC sufficiently identifies the economic relationships that were harmed as two distinct groups: (1) the pre-existing customers whose orders BirdDog was unable to fulfill as a result of the Bolin Defendants' failure to deliver, and (2) the customers who had previously ordered BirdDog products and began instead ordering Bolin products after the Bolin Defendants' failure to deliver. These are two easily definable groups whose identities can be learned by Defendants through discovery. *Oracle Am., Inc. v. CedarCrestone, Inc.*, 2013 WL 3243885, at *3–4 (N.D. Cal. June

26, 2013) (upholding allegations of a "specific group" of plaintiff's former customers that became defendant's customers as sufficient to state intentional interference claim because allegations involved "a limited group of customers whose identities should be in [defendant's] possession or could be obtained through discovery").

Next, Bolin Limited argues that BirdDog fails to plead Bolin Limited's knowledge of BirdDog's economic relationships simply because BirdDog fails to sufficiently plead the economic relationships. Mot. at 9:16–27. But as explained above, BirdDog does sufficiently plead the economic relationships at issue. Moreover, the SAC alleges that Bolin Limited had knowledge of the specific economic relationships that were disrupted. In particular, Bolin Limited cannot claim to lack knowledge of their disruption of BirdDog's economic relationships where the SAC alleges that BirdDog customers began buying products from Bolin instead. SAC ¶ 70; *see Gordian Med., Inc. v. Percival*, 2020 WL 5921947, at *5–6 (C.D. Cal. Aug. 27, 2020) (holding that plaintiff adequately alleged defendant's knowledge of plaintiff's economic relationships with customers where customers transferred business from plaintiff to defendant).

The SAC also alleges that the Bolin Defendants had knowledge of BirdDog's existing business relationships and the orders that BirdDog needed fulfilled. Indeed, the Bolin Defendants intentionally extracted this information from BirdDog as part of its calculated effort to take over BirdDog's business. The SAC alleges that BirdDog shared detailed information with the Bolin Defendants about BirdDog's "business, including its developing and evolving camera manufacturing needs, [and] ***its customers***." SAC ¶ 36 (emphasis added). The Bolin Defendants induced BirdDog to share this information "in an effort to obtain control of BirdDog and take over its customer relationships." SAC ¶ 45. Similarly, Defendants induced BirdDog to disclose trade secret information related to specific customers' needs, requirements, and pricing information. SAC ¶¶ 30, 41, 42. In sum, the SAC alleges not only that Defendants were aware of BirdDog's existing economic relationships that were

harmed, but that the Bolin Defendants actively and repeatedly elicited this information from BirdDog as part of its scheme to usurp this business from BirdDog. Accordingly, BirdDog has sufficiently pled the knowledge element of this claim. *Gordian*, 2020 WL 5921947, at *2, 6 (plaintiff sufficiently pled knowledge requirement where defendant intentionally defrauded plaintiff "to gain access to [p]laintiff's facilities and customers).

Finally, Bolin Limited argues that BirdDog pleads that Bolin Limited caused the harm to BirdDog's economic relationships in "purely conclusory form." Mot. at 10:10. To the contrary, the SAC is replete with allegations of how Defendants' unlawful scheme was directly aimed at stealing BirdDog's business and its customers. *See, e.g.*, SAC ¶ 5 (describing Defendants' plan to "steal BirdDog's clients and economic relationships for themselves"), ¶¶ 44–45 (describing Defendants' "wrongful scheme to ***become*** BirdDog"), ¶¶ 58–60 (describing Defendants' hostile takeover attempt). BirdDog also alleges that the Bolin Defendants repudiated their obligation to provide camera products to BirdDog that BirdDog needed to fulfill customer orders. *See, e.g.* SAC ¶¶ 60–62 (describing Defendants' "hard stop" on production under the purchase agreements that has not been reversed). BirdDog then alleges that this scheme was successful and was a direct cause of the harm to BirdDog's business: "The Bolin Defendants' unlawful scheme, which is interfering significantly with BirdDog's relationships with its customers, is thus coming to a head: ***BirdDog has been unable to fulfill orders and ship products because of the Bolin Defendants' actions***." SAC ¶ 67 (emphasis added).

Thus, BirdDog specifically alleges that the Bolin Defendants' failure to deliver camera products under the purchase agreements as promised has directly caused harm to BirdDog's customer relationships because BirdDog has been unable to fulfill its customers' orders. Bolin Limited argues that BirdDog's allegations somehow contradict themselves because one example alleged by BirdDog involved a customer

who cancelled their order, and another involved a customer who states that BirdDog's fallout with Bolin is "very worrysome" and "could be the end of Birddog." Mot. at 10:18–27. But these examples are perfectly in line with the rest of BirdDog's allegations—BirdDog trusted and relied on the Bolin Defendants, the Bolin Defendants betrayed that trust, and now customers are either cancelling orders due to BirdDog's inability to fulfill those orders, expressing frustration at BirdDog's inability, or losing faith in BirdDog's future as a business. These allegations are sufficient to satisfy the causation element of BirdDog's intentional interference claim. *Ringcentral, Inc., v. Nextiva, Inc.*, 2021 WL 2476879, at *8 (N.D. Cal. June 17, 2021) (stating that causation requires only that customers "take action . . . to proximately cause disruption to [plaintiff's] prospective economic relationships").

In sum, BirdDog has sufficiently pled each element of its Ninth Claim for Relief for intentional interference with prospective economic advantage.

## V. CONCLUSION

For the foregoing reasons, BirdDog respectfully requests that the Court deny Defendants' Motion in its entirety. Alternatively, to the extent the Court finds any of the claims are not sufficiently pled, BirdDog respectfully requests leave to amend.

Respectfully submitted,

**K&L GATES LLP**

Dated: June 17, 2024

By: */s/ Cassidy T. Young*
Ryan Q. Keech
Gabriel M. Huey
Cassidy T. Young

*Attorneys for Plaintiffs*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 2,707 words, which complies with the word limit of L.R. 11-6.1.

**K&L GATES LLP**

Dated: June 17, 2024

By: *_/s/ Cassidy T. Young_*
Ryan Q. Keech
Gabriel M. Huey
Cassidy T. Young

*Attorneys for Plaintiffs*